UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK** | Case No.: 3:25-cv-273 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **SANDRA COLLIER** 1737 Ravenwood Ave. Dayton, OH 45406 | |
| and | |
| **MARY T. SCOTT, ESQ.** 7710 Reading Rd., Suite 102 Cincinnati, Ohio 45237 | |
| Defendants. | |

Plaintiff Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering"), for its Complaint against Defendants Sandra Collier ("Collier") and Defendant Mary T. Scott, Esq. ("Scott") states as follows:

## INTRODUCTION

1.     This action involves a deliberate scheme by Kettering's former System Director of the Innovation, Research, and Grants Department to steal confidential, proprietary, and trade secret information, not only from Kettering, but from its clinical trial sponsors. In orchestrating this scheme carried out over the course of several months, Collier also unlawfully stole protected health information ("PHI") of Kettering's patients. After Kettering terminated Collier's employment, she and her counsel attempted to unlawfully extort Kettering for millions of dollars.

2.      Were Collier's misappropriation and her and Scott's extortion attempt not malicious enough, much of the information Collier stole occurred *after* Kettering terminated her employment. Although Collier's misappropriation began in April 2025, two weeks after she was hired, it was only *after* Kettering terminated her employment that Collier unlawfully accessed Kettering's email system to forward confidential, proprietary, and trade secret information to a third party. Notably, Collier's LinkedIn page also states that Collier has her own consulting business, The Collier Consortium, through which she provides, among other things, clinical data review, clinical project management, development and implementation of clinical specialty project plans, feasibility research, and development of clinical stud-related trackers and monitoring tools. In total, Collier stole at least 311 emails and attachments, most containing confidential, proprietary, and trade secret information, including information regarding Kettering's patients, operations, finances, strategy, personnel matters, relationships with sponsors and consultants, and clinical trials, as well as information from clinical trial sponsors regarding their proprietary clinical trial protocols, agreements, pharmaceuticals, and devices.

3.      Through this action, Kettering seeks injunctive relief, damages, and all other remedies available to halt Collier's misappropriation, Collier's and Scott's attempted extortion, and prevent further irreparable harm to Kettering because of Collier's unlawful actions.

### THE PARTIES

4.      Kettering is a non-profit corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Dayton, Ohio.

5.      Sandra Collier is an individual who, upon information and belief, is a citizen and resident of Dayton, Ohio. Collier was employed by Kettering as its System Director of the Innovation, Research, and Grants ("IRG") Department from on or about April 10, 2025 until

2

Kettering terminated her employment, effective June 22, 2025. (Declaration of Archie Jones ("Jones Dec.") ¶ 3, 10, attached as **Exhibit A**). Mary T. Scott is an individual and Defendant Collier's attorney who, upon information and belief, resides in Hamiliton County, Ohio.

<u>JURISDICTION AND VENUE</u>

6.      This Court has subject matter jurisdiction over Kettering's claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction) because the Complaint alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*., as well as a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, and Kettering's other claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      This Court has personal jurisdiction over Collier and Scott because they have each committed tortious acts within the State of Ohio.

8.      Venue is proper in this District pursuant to 28 USC § 1391(b)(1) and § 1391(b)(2) because Collier and Scott reside in this District and a substantial part of the events giving rise to this action occurred in this District.

<u>FACTUAL ALLEGATIONS</u>

<u>Kettering's Clinical Research Institute and the IRG Department</u>

9.      Kettering is comprised of a system of medical centers, emergency centers, and outpatient facilities that serve the communities of southwest Ohio. (Declaration of Michelle Pershing ("Pershing Dec.") ¶ 3, attached as **Exhibit B**). In addition to patient care, Kettering's Research Institute also has a robust clinical research program through which it contracts with

industry-sponsored pharmaceutical and device partners ("Sponsors") to conduct clinical trials. (*Id.* at ¶ 4).

10.     Within the Research Institute is the IRG Department, which is responsible for three primary areas: (a) clinical trials; (b) service line development and accreditation; and (c) grants and sponsored programs. (*Id.* at ¶ 5).

11.     Through its clinical trials program, Kettering's IRG Department is able to connect its patients to new medicines, protocols, and treatment options—advancing the level of care available to the community. (*Id.* at ¶ 6). Research is performed by a team of experts—including physicians, advanced practice providers, nurses, pharmacists, and research coordinators. (*Id.*). To protect privacy and keep patients safe, every clinical trial is reviewed by an Institutional Review Board ("IRB"). (*Id.*). Kettering competes with other healthcare systems across the world for clinical trial work from Sponsors and has spent many years and millions of dollars building and growing its clinical research program. (*Id.* at ¶ 4). According to Collier's own estimation, the clinical trial work conducted by the IRG Department could result in $750,000 to $1.5 million in annual revenue to Kettering. (*Id.*).

**<u>Kettering Efforts to Protect Its Confidential and Proprietary Information, as well as the</u>**
**<u>Confidential and Proprietary Information of Its Sponsors</u>**

12.     Kettering has in place policies, procedures and systems that protect its confidential and proprietary information from disclosure to others and from use by any one for purposes other than Kettering's interest. (Jones Dec. ¶ 4; Declaration of David Whittridge ("Whittridge Dec.") ¶ 3, attached as **Exhibit C**).

13.     Kettering requires all employees to sign, as a condition of their employment, an Information Security, Privacy, and Confidentiality Agreement ("Confidentiality Agreement"), pursuant to which each Kettering employee agrees not to disclose confidential information to third

parties and from using any such information for non-job-related purposes. (Jones Dec. ¶ 5; Whittridge Dec. ¶ 4).

14. Employees are also required, as part of their orientation, to complete various online training modules that address confidentiality and information security, including "HIPAA, Privacy Rule," "HIPAA, Security Rule," and "Information Security, Privacy, and Confidentiality Agreement." (Jones Dec. ¶ 6). Collier completed these specific modules during her orientation on April 10, 2025. (*Id*.).

15. Kettering's Information Security, Privacy, and Confidentiality Agreement policy states that "[b]y signing the [Confidentiality] Agreement, [employees] acknowledge their understanding that confidential information is not to be accessed, used, discussed, or disclosed with others, except as allowed by policy, applicable laws/regulations, and patient authorizations." (Jones Dec. ¶ 7; Whittridge Dec. ¶ 5). The policy provides that the Confidentiality Agreement will be signed "through applicable Kettering Health orientation." (*Id*.).

16. Kettering's Conduct and Discipline policy similarly prohibits employees from, among other things: (a) accessing or disclosing patient, employee, or Kettering health records, including PHI, without authorization; (b) improper use of computers; (c) theft; and (d) breaching confidentiality. (Jones Dec. ¶ 8).

17. In addition to its own policies and Confidentiality Agreement, Kettering's IRG Department also enters into strict confidentiality and non-disclosure agreements with its Sponsors to maintain the confidentiality of the sensitive and proprietary information necessary to conduct clinical trials involving drugs and novel therapies in a highly competitive pharmaceutical market. (Pershing Dec. ¶ 7). As System Director for the Department, Collier was aware of these contractual

obligations and despite that knowledge, misappropriated Sponsor information in violation of the agreements. (*Id.*). For example:

a. Recipient Confidential Disclosure Agreement for Study No. P-Monofer-CHF-02 between Kettering and Pharmacosmos A/S, effective April 24, 2025 (signed by Collier), states that "[Kettering] agrees not to use or disclose Confidential Information for any other purpose other than the sole purpose of determining its interest in participating in the Study[.]" (*Id.*).

b. Clinical Trial Agreement for Study $^{18}$F-FET, TLX101-CDx between Kettering and Telix Pharmaceuticals (Innovations) Pty Ltd, effective September 18, 2024, contains a confidentiality provision that states:

> [Kettering] agrees not to (i) use for any purpose other than to perform the Study, or (ii) disclose to third parties other than to individuals who are bound by obligations of confidentiality and non-use which are as restrictive as those set forth herein and who need to know such information to perform the Study, any trade secrets, privileged records or other confidential or proprietary information created or supplied in connection with the Study under this Agreement, disclosed to or developed by Sponsor pursuant to this Agreement, or relating to the Study, Study Drug or any Sponsor products used in or arising from the Study (collectively, "Sponsor Confidential Information"). For clarity, the Study Data, Study Records and Study Inventions shall be deemed Sponsor Confidential Information hereunder.
>
> (*Id.*).

c. Sponsor Initiated Clinical Study Agreement for Protocol MEN-15-001 between Kettering and Mentor Worldwide, LLC, effective July 6, 2017, contains a confidentiality provision that states:

> All information, including, but not limited to the Study Product or SPONSOR's operations, such as SPONSOR's patent application, formulas, manufacturing processes, basis scientific data, prior clinical data and formulation supplied by SPONSOR to [Kettering]

and not previously published are considered confidential and shall remain the sole property of SPONSOR.

> (*Id.*).

d.  Master Clinical Trial Agreement between Kettering and Amgen Inc., effective

February 20, 2023, contains a confidentiality provision that states:

> In view of Company's proprietary rights and interests, [Kettering] agrees to maintain as confidential all information received from or on behalf of Company or obtained as a result of performance of this Agreement or developed under a Study…At no time shall such information be employed for any purpose other than as described herein or disclosed to any third party without the prior written consent of Company.

> (*Id.*).

18.     Due to the sensitivity of the critical work performed in the IRG Department, Kettering restricts physical access to the suite in which the Department is located by, among other things, requiring employees to use a key to enter. (*Id.* at ¶ 8). As added layers of security, inside the suite is a locked cabinet accessed with a keypad, and inside the cabinet is the key to the office in which regulatory binders containing clinical trial information are kept. (*Id.*). Additionally, patient binders, which also contain clinical trial information, are locked in the suite, as well as stored in the Clinical Research Coordinator offices, which are located in the lower level of Kettering's hospital. (*Id.*). The Clinical Research Coordinator offices are badge access (limited to IRG Department members) and within those offices are locked filing cabinets in which the patient binders are stored. (*Id.*). The industry standard, which Kettering follows, is to keep the information contained in both types of binders secured behind at two locks. (*Id.*).

19.     Kettering also restricts access to its computer systems by, among other things, maintaining advanced computer security systems and requiring the entry of a username and

password to gain access to Kettering's computer system, which includes trade secrets, as well as confidential and proprietary information. (Whittridge Dec. ¶ 6).

### Collier's Employment with Kettering

20.     Kettering hired Collier on April 10, 2025 as its System Director of the IRG Department. (Jones Dec. ¶ 3).

21.     On April 10, 2025, Collier digitally executed the Confidentiality Agreement. (*Id*. at ¶ 5). A true and accurate copy of the Agreement, as well as confirmation of Collier's acceptance of its terms is attached as **Exhibit D**. (*Id*. at ¶ 5).

22.     The Confidentiality Agreement includes, as confidential information, personnel/HR records, patient medical records, personal information stored in department computers, financial information, information related to Kettering's operations, methods, intellectual property, strategies, and techniques. Ex. D.

23.     By signing the Confidentiality Agreement, Collier agreed to "access, use, and disclose Confidential Information in keeping with the above-mentioned policies and only an on job-related need-to-know basis." Ex. D. Collier further agreed that she would "not disclose Confidential Information to…anyone…except as permitted by Kettering Health policies and procedures as well as applicable law and regulation in order to carry out my responsibilities as required to perform my work[.]" Ex. D.

24.     Under the Confidentiality Agreement, Collier also agreed to "protect the confidentiality of all Confidential Information, while employed by Kettering Health and after I leave Kettering Health." Ex. D. Collier further agreed that "[a]ll Confidential Information remains on the property of Kettering Health and may not be removed or kept by me when I leave Kettering

Health except as permitted by Kettering Health policies and procedures or specific agreements or arrangements applicable to my situation." Ex. D.

25.    As System Director for the IRG Department, Collier was responsible for, among other things, direction and oversight for sponsored research initiatives conducted within Kettering and in association with collaborative research partners; oversight in the day-to-day conduct of research operations per IRG-developed policies and procedures, and grant administration; business development for clinical trials and other funded research opportunities; and sponsored research and clinical trials, including study-start-up, clinical trial agreement and budget negotiation, regulatory compliance, recruitment, enrollment, trial execution. (Pershing Dec. (*Id*. at ¶ 9).

26.    As a result of her position with Kettering, Collier had access to confidential, proprietary, and trade secret information, not only from Kettering, but also from its Sponsors and consultants. (*Id*. at ¶ 10).

27.    In connection with Collier's employment, Kettering issued Collier a laptop computer and provided her access to Kettering's network files. (Whittridge Dec. ¶ 7).

28.    Collier's tenure with Kettering was short-lived due to her inability to successfully lead the IRG Department. (Jones Dec. ¶ 9). After Kettering received multiple complaints from IRG staff about Collier's unprofessional behavior and leadership style, Kettering suspended Collier on June 20, 2025. (*Id*.). During the suspension meeting, HR Manager Archie Jones instructed Collier that she was not permitted to access Kettering's computer systems, including email, nor was she permitted on site. (*Id*.). He further instructed Collier to have no contact with any member of the IRG department based on her treatment of employees, the divide she created in the Department, as well as to prevent her from continuing to direct work or to try to obtain information from employees. (*Id*.).

9

29.     Kettering terminated Collier's employment, effective June 22, 2025. (*Id*. at ¶ 10). According to Collier's LinkedIn page, Collier currently works as Director – Global Sales & Clinical Project Management for her own consulting business, The Collier Consortium. A copy of Collier's LinkedIn page is attached as **Exhibit E**. In that role, Collier provides, among other things, clinical data review, clinical project management, development and implementation of clinical specialty project plans, feasibility research, and development of clinical stud-related trackers and monitoring tools. (*Id*.).

### Collier's and Scott's Attempt to Extort Kettering

30.     On July 28, 2025, Kettering received a letter from Scott on Collier's behalf. In the letter, Scott alleged that Kettering terminated Collier in retaliation for discovering and reporting alleged regulatory compliance violations during her short tenure at Kettering. A true and accurate, redacted copy of the letter (Letter") is attached as **Exhibit F**. The Letter outlines various alleged claims and violations, including wire fraud, conspiracy, RICO violations, HIPAA breach, and employment discrimination. Ex. E. Scott closed her Letter by stating that Collier's "initial demand begins in the high eight-figure range," and that if Kettering does not negotiate, "we will proceed without further notice by immediately notifying the list of regulatory agencies, sponsors, and [contract research organizations]…of your egregious conduct. Ex. E. In addition, we will immediately issue a Press Release to national and local media outlets…to disclose the serious violations outlined above publicly." Ex. E.

31.     Scott then attached draft letters to various sponsors, as well as a press release, which she stated she intends to send to "NBC, ABC, CBS, CNN, The New York Times, The Washington Post, STAT News, Reuters, The Associated Press, and National Public Radio (NPR)." Ex. E.

Kettering is not reproducing or attaching those letters or the press release here because they are defamatory on their face. Ex. E.

32.     Scott's Letter admits that Collier stole the following documents and information from Kettering: (a) "[i]nternal emails and meeting notes between research staff, principal investigators (PIs), and administrators;" (b) "[r]ecordings and transcripts of meetings with hospital executives and compliance officers;" (c) "compliance plans;" (d) "[r]edacted patient logs;"[1] and (e) "[c]hecklists and audit logs." Ex. E.

**Collier's Theft of Confidential and Proprietary Information from Kettering**

33.     Following its receipt of Scott's July 28, 2025 Letter, Kettering began an investigation into the allegations set forth in the Letter. (Whittridge Dec. ¶ 8). That investigation included a review of Collier's Kettering email account, which revealed that Collier had been forwarding emails from her Kettering email account to her personal Gmail account (collierclinicalresearch2@gmail.com) as early as April 24, 2025—a mere two weeks after she was hired. (*Id*.).

34.     Between April 24, 2025 and June 20, 2025, the day Kettering suspended her, Collier forwarded approximately 122 emails and attachments to her personal Gmail account. (Pershing Dec. ¶ 11). Many of these emails and attachments contained Kettering's and/or its Sponsors' confidential and trade secret information. (*Id*.). For example:

---

[1] The PHI Collier forwarded from her Kettering email account to her personal Gmail account is **not** redacted. *See* paragraph 34 below.

a.  On **April 28, 2025**, Collier forwarded herself the following:

    i.  Q1_CoC Report 9.1 Clinical Research Accruals _18FEB2025_Molina.pptx: This file is an internal Kettering presentation that contains confidential information regarding Kettering's operations.

b.  On **May 1, 2025**, Collier forwarded herself the following:

    i.  Spreadsheet of studies and CRC - 2025 MAY.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including clinical trials.

    ii.  Allie's Regulatory Brain(Status).csv: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including clinical trials.

c.  On **May 4, 2025**, Collier forwarded herself the following:

    i.  01ARP2025 Collaborative Check-In: This email contains confidential information regarding Kettering's operations.

    ii.  Re: REMASTer MRI check: This email contains confidential information regarding Kettering's operations.

    iii.  Morgan Lemacks Deep6 Prescreening - Just Culture Algorithm v 3.1: This email contains confidential information regarding Kettering's operations.

    iv.  User_fullname,_Displ_1744116762870.xlsx: This spreadsheet contains confidential information regarding Kettering's operations.

v.   Employee Conduct and Discipline Form.Morgan Lemacks. 08APR2025.doc: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

vi.   Initial Warning Attachment. Morgan Lemacks.08APR2025.pdf: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

vii.   Morgan Signed Action Plan 17MAR2025.pdf: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

viii.   Fw: TELIX101-FET Subject 002 SAE: This email contains confidential information regarding Kettering's operations and personnel matters.

ix.   TELIX FET AE 01 Subject 002.pdf: This file contains confidential information regarding Kettering's operations and clinical trial patients.

x.   UPDATED TELIX FET AE 01 Subject 002.pdf: This file contains confidential information regarding Kettering's operations and clinical trial patients.

xi.   Re: 18F-TLX101-CDx-002 FET PET EAP Glioma - Subject 02-001 Documents for eReg: This file contains confidential information regarding Kettering's operations.

xii.   AE Documentation - Morgan Lemacks HR File: This email contains confidential information regarding Kettering's operations, personnel matters, and clinical trial patients.

13

      xiii.    RE: IRG/ Team Meetings/ Operational, System Updates, Kudos/ Thoughts: This email contains confidential information regarding Kettering's operations, personnel matters, and clinical trial patients.

      xiv.    Business Case SBAR for Position Requisition 2025_4.30.2025 Grants Specialist.docx: This file contains confidential information regarding Kettering's operations.

d.  On **May 15, 2025**, Collier forwarded herself the following:

      i.    RE: [encrypt] RTW-Kamara Applegate # 164413 RTW NWR With Restrictions: This email contains confidential information regarding Kettering employee medical information and personnel matters.

e.  On **June 17, 2025**, Collier forwarded herself the following:

      i.    ATHENA Guidelines.docx: This file is an internal Kettering document that contains confidential Sponsor clinical trial guidelines.

      ii.    Microsoft_Excel_Worksheet.xlsx: This spreadsheet contains confidential clinical trial information and unredacted PHI of 30 different clinical trial participants.

      iii.    Mentor Protocol #: MEN-15-001: This file is a 55-page confidential Sponsor protocol, which states: "The confidential information in this document is provided to you as an Investigator or Consultant for review by you, your staff, and the applicable Institutional Review Board. Your acceptance of this document constitutes agreement that you will not disclose the information contained herein to others without written authorization."

iv.   Johnson&Johnson MedTech Athena Post-Approval Study MEN-15-001 Protocol Amendment 5 Training: This file is a 6-page Sponsor training presentation that contains confidential information.

v.   Johnson&Johnson MedTech UHP-L Study Newletter #31 15 May 2025: This file is a Sponsor newsletter, which states: "CONFIDENTIAL — For ATHENA Investigational Site Use Only."

vi.   Athena Visit Checklist: This file is an internal Kettering checklist created for the Athena study.

vii.   Ocean(a) Guideline.docx: This file is an internal Kettering document that contains confidential Sponsor clinical trial guidelines.

viii.   Ocean(a) – Outcomes AMGEN: This file is a Sponsor memorandum regarding Central Lab Updates, which states: "Confidential - For participating investigators and study personnel only."

ix.   Amgen Protocol Number Olpasiran (AMG 890) 20180244: This file is an approximately 25-page Sponsor amendment, which states "Amgen Proprietary – Confidential" on each page.

x.   OCEAN(a)-Outcomes – Olpasiran trials of Cardiovascular Events And LipoproteiN(a) reduction – Outcomes trial: This file is an approximately 114-page Sponsor protocol, which states "CONFIDENTIAL" on each page.

xi.   Subject/Participant Level Investigational Product Accountability Record: This file is a Sponsor accountability record, which states: "Amgen – Proprietary and Confidential."

xii.   Ocean(a) – Outcomes: This file is a Sponsor newsletter, which states: "For participating investigators and study personnel only. This newsletter and all information contained within are confidential and proprietary to Amgen Inc…Distribution to or sharing with unauthorized individuals is strictly prohibited."

xiii.  Victorian Guidelines.docx: This file is an internal Kettering document that contains Sponsor clinical trial guidelines.

xiv.   Site User Guide Cenduit Interactive Response Technology 2 (C.I.R.T. 2): This file is a Sponsor user guide, which states: "Cenduit Confidential"

xv.    Microsoft_Excel_Worksheet.xlsx: This spreadsheet contains confidential study information and unredacted PHI of one clinical trial participant.

xvi.   Novartis Research and Development Clinical Trial Protocol: This file is an approximately 103-page Sponsor clinical trial protocol, which states: "Property of Novartis. Confidential. May not be used, divulged, published, or otherwise disclosed without the consent of Novartis."

xvii.  Novartis Research and Development Clinical Trial Protocol: This file is an approximately 104-page Sponsor clinical trial protocol, which states: "Property of Novartis. Confidential. May not be used, divulged, published, or otherwise disclosed without the consent of Novartis."

xviii. Novartis Research and Development: This file is an approximately 39-page U.S. Informed Consent Form, which states: "Property of Novartis.

16

Confidential. May not be used, divulged, published, or otherwise disclosed without the consent of Novartis."

xix. ATHENA Upcoming Office Appointments + MRI's that Need Scheduled.docx: This file is an internal Kettering document that contains unredacted PHI of 11 different clinical trial patients.

xx. RE: IRG Study Status/ Your Studies: This email contains confidential information regarding Kettering's operations and clinical trial participants.

f. On **June 19, 2025**, Collier forwarded herself the following:

i. Master Cardiac Trial Visit List.xlsb 1.xlsx: This file is an internal Kettering spreadsheet that contains unredacted PHI of 78 different clinical trial patients.

ii. Study Status IRB-06.09.2025.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and various clinical studies.

(*Id*.).

35. On June 20, 2025, Kettering suspended Collier and informed her that she was not permitted to access Kettering's computer systems, including her email account. (Jones Dec. ¶ 9).

36. Kettering subsequently terminated Collier's employment, effective June 22, 2025. (*Id*.). Despite no longer having authorization to access Kettering's computer systems, Collier continued to access her Kettering email account without authorization between June 25, 2025 and July, 11, 2025. (Pershing Dec. ¶ 12). During that almost three-week period ***after*** her employment with Kettering ended, Collier forwarded approximately 189 emails and attachments out of her

17

Kettering email account to her personal Gmail account, but this time, Collier also forwarded approximately 63 of those emails and attachments to a third party: vanessa@totalwellnessresearch.com. (*Id*.).

37.     Upon information and belief, the email address vanessa@totalwellnessresearch.com belongs to Vanessa LeFebvre ("LeFebvre"), Manager of Clinical Trial Management at Innovaderm Research, Inc. Notably, Collier listed LeFebvre as a reference when she applied to work at Kettering and also suggested that Kettering retain LeFebvre to conduct an audit of the IRG Department prior to her termination of employment. (Pershing Dec. ¶ 13; Declaration of Audrey Mondock ¶ 3, attached as **Exhibit G**). Many of the emails and attachments Collier forwarded during this time frame—again, *after* her employment with Kettering ended—also contained Kettering's and/or its Sponsors' confidential and trade secret information. (Pershing Dec. ¶ 14). For example:

    a.   Emails forwarded to vanessa@totalwellnessresearch.com:

        i.   On **June 26, 2025**, Collier forwarded "Vanessa" the following:

            (1)   Fw: Telix 177Lu-TLX591-203; Site: USA29; PI: Sheikh; Kettering Medical Center; Imaging Questionnaire Request (PET & SOC): This is an email string between a Sponsor, Kettering, and an imaging lab with which a Sponsor contracted regarding a clinical trial. It states: "***KH Confidentiality Notice** This email may contain legally privileged and confidential information from Kettering Health intended only for the individual or entity named above as the intended recipient. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying*

18

*of this communication is prohibited*." ("KH Confidentiality Warning").

(2)     Fw: IRB Approval BNT327-06 and Alejandro Calvo: This is an email string between a Sponsor and Kettering regarding a clinical trial. It contains the KH Confidentiality Warning. The Sponsor's email similarly states: "This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual or entity named in the e-mail address. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited."

(3)     Fw: Documents Needed: Embrace Clinical Trial: This is an email from a Sponsor regarding a clinical trial. It states: "This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential and protected by law from unauthorized disclosure. Any unauthorized review, use, disclosure or distribution is prohibited."

(4)     Fw: (Amendment to review) ATHENA- MEN-15-001- Schmidt-Kettering Medical- PA5 -CTA Amendment 5: This is an email string between a Sponsor and Kettering regarding a clinical trial. It states: "*Confidentiality Notice: This e-mail transmission may contain confidential or legally privileged information that is*

*intended only for the individual or entity named in the e-mail address. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited.*"

(5)     Fw: Dr Soin and TKA Study w/Synaptrix: This is an internal Kettering email that contains confidential information regarding Kettering's operations and clinical trials.

(6)     Fw: (redline CTA) GOG-3116 - PI Reid CTA and Budget Womens Cancer Center/Kettering Cancer Care: This is an email between a Sponsor and Kettering regarding a clinical trial. It contains the KH Confidentiality Warning.

(7)     Fw: CTA for your review > GOG-3116 Dr Thomas Reid (And introduction to new director!): This is an attorney-client privileged internal Kettering email string with Kettering's in-house legal team regarding a clinical trial agreement.

(8)     5 GOG 3116 PI Reid Kettering Adventist Healthcare GOG 3116 PI Reid CTA 20June2025 3rdSiteReply.docx: This is a redlined clinical trial agreement between Kettering and Sponsor that contains attorney work product from Kettering's in-house legal team.

(9)     ALZ-NET Protocol, 10 Jan 2025.pdf: This is a 45-page clinical trial protocol from the Alzheimer's Network for Treatment and Diagnostics (ALZ-NET). It states "CONFIDENTIAL" on each

page and further states: "This protocol was designed and developed by the American College of Radiology and the Alzheimer's Association. It is intended to be used only in conjunction with institution-specific IRB approval for study entry. No other use or reproduction is authorized by ACR[.]"

(10) Clinical Service Agreement Request - Kettering.pdf: This is an internal Kettering file that contains confidential information regarding Kettering's operations.

ii. On **June 27, 2025**, Collier forwarded "Vanessa" the following:

(1) Fw: Document review: This is an email from Kettering to clinical trial consultant with confidential information regarding Kettering's operations.

(2) Kettering Health - Status Report.docx: This file is an approximately 14-page Radiopharmaceutical Clinical Trials Status Report prepared by a consultant for Kettering, which contains information regarding Kettering's clinical research competitors, its strategic directions, and operations.

(3) Radiopharma capabilities expansion plan.docx: This file is an approximately 28-page Radiopharmaceutical Clinical Trials Capabilities Expansion Phased Implementation Roadmap prepared by a consultant for Kettering, which contains information regarding Kettering's operations, including its expansion of its radiopharmaceuticals trials program.

(4)     Investigational PET Tracer Production Requirements.docx: This file is an approximately 27-page document prepared by a consultant for Kettering, which contains confidential information regarding Kettering's operations, including its expansion of its radiopharmaceuticals trials program.

(5)     KetteringHealth-External-Box-Links.docx: This file contains active links to documents provided by Kettering to its consultant, which contain confidential information regarding Kettering's operations, including its expansion of its radiopharmaceuticals trials program. The documents include:

(a) Kettering Imaging Assessment, January 2025: This is an approximately 86-slide presentation regarding Kettering's scanner capacity.

(b) Lab Upgrades Justifications_v10.10.docx: This file outlines expansions and upgrades needed for Kettering's clinical trials, including financial information.

(c) 2024 PET dose expense analysis_v2.xlsx: This spreadsheet contains confidential information regarding Kettering's operations and finances.

(d) $$ Research std fees-10.30.2024.xlsx: This spreadsheet contains confidential information regarding Kettering's operations and finances.

(e) Standard Clinical Trial Fees-KetteringHealth-with rates.docx: This file is an internal Kettering document containing confidential information regarding its clinical trial fees and associated tasks.

(f) PET Active Study List IRG as of 1.22.2025.xls: This file is an internal Kettering spreadsheet, which contains confidential information regarding Kettering's operations, including its clinical trials.

(g) ClinicalTrialsTeam_Bracken-KetteringHealth-Information-Request-06Jan2025-MSWord version.docx: This file is a document prepared by Kettering's consultant, which contains confidential information regarding Kettering's operations, including radiopharmaceutical research administration and processes, research IT and data management infrastructure, staffing, capabilities, equipment, facilities, and finances.

(h) 2025-1-28 Molecular Imaging Strategic and Operational Plan--FromBruce.docx: This file is an approximately 21-page document that contains confidential information regarding Kettering's strategic and operational plan for molecular imaging.

(i) SFQ_GE-208-401 Cerianna SFQ_KetteringHealth_23Dec2021.pdf: This file is a site feasibility questionnaire

completed by Kettering for a clinical trial, which contains confidential information regarding Kettering's operations.

(j) SFQ_TLX101CDx-002_FET-PET EAP_RETURNED 10-31-23.docx: This file is an expanded access site feasibility questionnaire for a clinical trial, which contains confidentiality information regarding Kettering's operations.

(k) SFQ_RCC-Expanded Access EA FQ Returned 9-12-23.pdf: This file is an expanded access site feasibility questionnaire for a clinical trial, which contains confidentiality information regarding Kettering's operations.

(l) SFQ_STARBURST FQ Returned 9-12-23.pdf: This file is a site feasibility questionnaire for a clinical trial, which contains confidentiality information regarding Kettering's operations.

(m) RAM Lic Kettering Health Network Amend 97 101624 Redacted v2.pdf: This file is a four-page License for Radioactive Material from the Ohio Department of Health, which is statutorily considered a security record and states "OFFICIAL USE ONLY. Withold from Public Disclosure under Revised Code 149.433(A) & (B)."

(n) SOP_Protocol Feasibility Checklist (03-01-23).docx: This file is an internal Kettering protocol feasibility checklist,

which contains confidential information regarding Kettering's operations.

(o) Criteria for accepting a clinical trial MI.xlsx: This file is an internal Kettering protocol feasibility checklist, which contains confidential information regarding Kettering's operations.

(p) FE_STARBURST-_CTRA_-_Agreement_-_TLXDOC-4747_-_19_April_2024.pdf: This file is a study agreement between Kettering and a Sponsor, which states "Telix Confidential" on each page and contains a confidentiality and non-disclosure provision prohibiting Kettering from disclosing or revealing confidential information to any third party except as permitted by law.

(6)   Fw: (redline CDA) Institution CDA_ ICON 7940/0001_Tenax Therapeutics, Inc._LEVEL-2 Study_PH-HFpEF: This is an email string between Kettering and a Sponsor regarding a clinical trial.

(7)   7940-0001_USA_Kettering Adventist Healthcare_(Franklin Handel)_CDA for Signature_21Apr2025.pdf: This file is a Recipient Confidential Disclosure Agreement between Kettering and a Sponsor, which states "Strictly Confidential" and prohibits Kettering from using or disclosing confidential information for

25

any purpose other than the sole purpose of determining Kettering's interest in participating in a clinical trial.

(8) FE_DSI_CDA_Kettering_DS7300-188_Calvo-Kettering_Final _ 5.5.2025.pdf: This file is a Confidentiality Agreement between Kettering and a Sponsor, which prohibits Kettering from using confidential information for any purpose except to determine the feasibility of Kettering participating in a clinical trial or from disclosing confidential information to any third person without prior written consent of the Sponsor.

iii. On **July 2, 2025**, Collier forwarded "Vanessa" the following:

(1) Fw: [Private] AbbVie M25-231/GOG-3115 / Central/Local IRB/EC Sites / Protocol v2.0 + IB ed13 + ICFs + Subject Materials / Site Notification: This is an email string between Kettering and a Sponsor regarding a clinical trial.

(2) IMGN-853 M25-231 Protocol_ V2.0_English_22-Apr-2025.pdf: This file is an 84-page Sponsor Protocol for Study M25-231, which states "Confidential Information. No use or disclosure outside AbbVie is permitted without prior written authorization from AbbVie" on each page.

(3) IMGN-853 M25-231 Protocol_ V2.0_English_Redline_27-Apr-2025.pdf: This file is an 88-page redlined Sponsor Protocol for Study M25-231, which states "Confidential Information. *No use*

*or disclosure outside AbbVie is permitted without prior written authorization from AbbVie*" on each page.

(4)     IMGN853 IB v13.pdf: This file is an approximately 85-page Investigator's Brochure for Mirvetuximab Soravtansine (IMGN853), which states which states "Confidential Information. *No use or disclosure outside AbbVie is permitted without prior written authorization from AbbVie*" on each page and contains the following confidentiality statement: "This Investigator's Brochure contains trade secrets and other confidential information. Accordingly, the brochure shall be treated as confidential and restricted to its intended use; namely, the guidance of the clinical investigator. This material is the sole property of AbbVie and shall not be disclosed to or used by others except as authorized in writing by AbbVie. This material may be disclosed to and used by the clinical investigator's staff and associates as may be necessary to conduct the clinical study."

(5)     IMGN853 IB v13.pdf: This file is an approximately 152-page redlined Investigator's Brochure for Mirvetuximab Soravtansine (IMGN853), which states which states "Confidential Information. *No use or disclosure outside AbbVie is permitted without prior written authorization from AbbVie*" on each page and contains the following confidentiality statement: "This Investigator's Brochure contains trade secrets and other

27

confidential information. Accordingly, the brochure shall be treated as confidential and restricted to its intended use; namely, the guidance of the clinical investigator. This material is the sole property of AbbVie and shall not be disclosed to or used by others except as authorized in writing by AbbVie. This material may be disclosed to and used by the clinical investigator's staff and associates as may be necessary to conduct the clinical study."

(6)  M25-231 Vendor Oversight Plan for LabCorp -Central Laboratory Services_v1.0_08Apr2025.docx: This file is a Vendor Oversight Plan—Central Laboratory, which states "This information is confidential to AbbVie."

(7)  M25-231_LabCorp Laboratory Manual_created 8Apr25_received from LabCorp on 16Apr25.pdf: This file contains a Specimen Collection Manual, which states: "This document contains confidential, proprietary information of Ventana Medical Systems, Inc."

(8)  Protocol v2.0 Investigator's Agreement.pdf: This file contains the investigator responsibilities for Protocol M25-231. It states: "CONFIDENTIAL INFORMATION. *No use or disclosure outside AbbVie is permitted without prior written authorization from AbbVie.*"

(9)     Translation Certification_Spanish_OSDI.pdf: This file is a certification for Study M25-231, which states "RWS Confidential."

(10)    WCG cILD process guidelines.pdf: This file contains IRB process guidelines for a clinical trial, which states "WCG Confidential."

(11)    Fw: 177LU-TLX591-203_Telix Pharmaceuticals_Site Startup_Arif Sheikh: This is an email string between Kettering and a Sponsor regarding a clinical trial. It states: "**IMPORTANT** - PLEASE READ: This electronic message, including its attachments, is CONFIDENTIAL and may contain PROPRIETARY or LEGALLY PRIVILEGED or PROTECTED information and is intended for the authorized recipient of the sender. If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, or distribution of this message or any of the information included in it is unauthorized and strictly prohibited."

(12)    2025 Research Strategy Overview for handouts.pptx: This file is an internal Kettering presentation containing confidential information regarding Kettering's research strategy and operations.

(13)    Fw: (EASi-HF reduced) Reminder: IQVIA invites you to respond to survey 1378-0018_Boehringer Ingelheim_Heart

29

Failure_revision 1 global_07 Jan 2025 by 31-Jul-2025 - Dr. Franklin Handel: This is an email string between Kettering and a Sponsor regarding clinical trials. It states: "IMPORTANT - PLEASE READ: This electronic message, including its attachments, is CONFIDENTIAL and may contain PROPRIETARY or LEGALLY PRIVILEGED or PROTECTED information and is intended for the authorized recipient of the sender. If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, or distribution of this message or any of the information included in it is unauthorized and strictly prohibited." It also contains the KH Confidentiality Warning.

iv.   On **July 8, 2025**, Collier forwarded "Vanessa" the following:

(1)   Fw: MK2870-033 | GOG-3119 Dr. PI Reid Site Number Change: Current Site Number 6030 to New Site Number 5001_PI Reid Site: 5001: This email is from a Sponsor to Kettering regarding a clinical trial. It states: "This e-mail message, together with any attachments, contains information of Merck & Co., Inc…and/or its affiliates, that may be confidential, proprietary copyrighted and/or legally privileged…It is intended solely for the use of the individual or entity named on this message."

(2)   Fw: For Review GOG 3115 PI Reid AbbVie M25-231/GOG-3115 [LOI, CTA, and Budget Updates]: This is email string

between Kettering and a sponsor regarding a clinical trial. It contains the KH Confidentiality Warning.

(3)    Fw: STRIKE-PE Enrollment Update - 07July2025: This is an email from a Sponsor with enrollment sites and statistics. It states "CONFIDENTIAL: For use in conjunction with Penumbra's STRIKE-PE Study only."

(4)    Fw: (Amendment to review) ATHENA- MEN-15-001- Schmidt-Kettering Medical- PA5 -CTA Amendment 5: This is an email between Kettering and a Sponsor regarding a clinical trial. It states: "*Confidentiality Notice: This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual or entity named in the e-mail address. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited.*" It further contains the KH Confidentiality Warning.

v.    On **July 10, 2025**, Collier forwarded "Vanessa" the following:

(1)    Fw: IMGN853-0421_Patient and Physician Brochures; Sponsor name change documents: This is an email to Kettering from a Sponsor regarding a clinical trial. It states: "**IMPORTANT** - PLEASE READ: This electronic message, including its attachments,    is CONFIDENTIAL and    may    contain PROPRIETARY    or    LEGALLY    PRIVILEGED    or

PROTECTED information and is intended for the authorized recipient of the sender. If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, or distribution of this message or any of the information included in it is unauthorized and strictly prohibited."

b. Emails forwarded to Collier's Gmail account:

   i. On **June 25, 2025**, Collier forwarded herself the following:

      (1) Studies Report with revenue-05.13.2025.xls: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and finances.

   ii. On **June 26, 2025**, Collier forwarded herself the following:

      (1) Fw: AMG 133 | 20230227 | Site 66052 | Handel | *Updated: GLAS Packet: This is an email string between a Sponsor and Kettering regarding a clinical trial. It contains the following instruction: "IMPORTANT - PLEASE READ: This electronic message, including its attachments, is CONFIDENTIAL and may contain PROPRIETARY or LEGALLY PRIVILEGED or PROTECTED information and is intended for the authorized recipient of the sender." It also states: "This communication contains Amgen Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program."

(2)     RE: AMG 133 | 20230227 | Site 66052 | Handel | *Updated: GLAS Packet Password: This is an email from a Sponsor to Kettering regarding a clinical trial, which contains the password for a previously sent protocol. The email states: "This communication contains Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program."

(3)     PSP Original Protocol dd08May2025.pdf: This file is a Sponsor's Investigator's Agreement, which states: "CONFIDENTIAL."

(4)     Fw: AMG 133 | 20230227 | Site 66052 | Handel | *Updated: GLAS Packet: This is an email string between a Sponsor and Kettering regarding a clinical trial. It contains the following instruction: "IMPORTANT - PLEASE READ: This electronic message, including its attachments, is CONFIDENTIAL and may contain PROPRIETARY or LEGALLY PRIVILEGED or PROTECTED information and is intended for the authorized recipient of the sender." It also states: "This communication contains Amgen Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program."

(5)     Fw: MK1084-004 Quarterly Request Regulatory and Site Staff Updates (if applicable) | PI: Calvo Site # 0106: This is an email from a Sponsor regarding a clinical trial. It states "Proprietary" at the top of the email and contains the following language at the bottom: "This e-mail message, together with any attachments, contains information of Merck & Co., Inc…and/or its affiliates, that may be confidential, proprietary copyrighted and/or legally privileged."

(6)     Certification/Disclosure Form: This file is a Sponsor form that states "Confidential" at the top.

(7)     Fw: [Confidential] MK2870-037 1st L, Advanced or Metastatic NS-NSCLC _EGFR-   Site   Interest   Assessment_Dr. Calvo_Kettering Health_OH: This email string is between a Sponsor and Kettering regarding a clinical trial. The subject line for the email string states "Confidential" and the email from the Sponsor states "Confidential" at the top" and contains the following language at the bottom: "This e-mail message, together with any attachments, contains information of Merck & Co., Inc…and/or its affiliates, that may be confidential, proprietary copyrighted and/or legally privileged."

(8)     Expiring CV, CITI, COI.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and clinical trials.

34

(9)     DSMB letter_2025-05-07_VICTORION_.pdf: This file is a Safety Review Meeting Recommendation from a Sponsor that states "CONFIDENTIAL"

(10)    Protocols_Export_2025-06-10-081609.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and clinical trials.

(11)    Fw: 18135-03666-Bi-Weekly-25Jun2025: This is an email from a Sponsor with confidential information regarding clinical trials and clinical trial patients.

(12)    03666-Bi Weekly-25Jun2025.xlsx: This is a spreadsheet from a Sponsor that contains confidential information regarding clinical trials and clinical trial patients.

(13)    The emails and documents referenced at paragraph 37(a)(i)(1)-(10).

iii.    On **June 27, 2025**, Collier forwarded herself the following:

(1)     Fw: Document review: This is an email string between Kettering and a clinical trial consultant with confidential information regarding Kettering's operations. It contains the KH Confidentiality Warning.

(2)     The emails and documents referenced at paragraph 37(a)(ii)(1)-(8).

iv.    On **June 28, 2025**, Collier forwarded herself the following:

(1)    Fw: Telix 177Lu-TLX591-203; Site: USA29; PI: Sheikh; Kettering Medical Center; Imaging Questionnaire Request (PET & SOC): This is an email string between a Sponsor, Kettering, and an imaging lab with which a Sponsor contracted regarding a clinical trial. It contains the KH Confidentiality Warning.

(2)    Evaluation Completion 5.6.2025.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering operations and personnel matters.

v.    On **July 2, 2025**, Collier forwarded herself the following

(1)    Fw: AMG 133 | 20230227 | Site 66052 | Handel | *Updated: GLAS Packet: This is an email string between Kettering and its Sponsor regarding clinical trials. The email states: "This communication contains Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program." It further states: "*This communication contains Amgen Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program.*"

(2)     FORM-494922 FDF .pdf: This file is a Sponsor's Financial Disclosure Certification Form, which states: "Amgen Proprietary - Confidential."

(3)     Oncology Protocol Synopses and workloads_30APR2025.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including various information about clinical trials.

(4)     Re: REMASTer MRI check: This email contains confidential information regarding Kettering's operations.

(5)     Morgan Lemacks Deep6 Prescreening - Just Culture Algorithm v 3.1: This email contains confidential information regarding Kettering's operations.

(6)     User_fullname,_Displ_1744116762870.xlsx: This spreadsheet contains confidential information regarding Kettering's operations.

(7)     Employee Conduct and Discipline Form.Morgan Lemacks. 08APR2025.doc: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

(8)     Initial Warning Attachment. Morgan Lemacks.08APR2025.pdf: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

37

(9)     Morgan Signed Action Plan 17MAR2025.pdf: This spreadsheet contains confidential information regarding Kettering's operations and personnel matters.

(10)    Fw: TELIX101-FET Subject 002 SAE: This email contains confidential information regarding Kettering's operations and personnel matters.

(11)    TELIX FET AE 01 Subject 002.pdf: This file contains confidential information regarding Kettering's operations and clinical trial patients.

(12)    UPDATED TELIX FET AE 01 Subject 002.pdf: This file contains confidential information regarding Kettering's operations and clinical trial patients.

(13)    Re: 18F-TLX101-CDx-002 FET PET EAP Glioma - Subject 02-001 Documents for eReg: This file contains confidential information regarding Kettering's operations.

(14)    AE Documentation - Morgan Lemacks HR File: This email contains confidential information regarding Kettering's operations, personnel matters, and clinical trial patients.

(15)    01ARP2025 Collaborative Check-In: This email contains confidential information regarding Kettering's operations.

vi.    On **July 2, 2025**, Collier forwarded herself the following:

(1)     Fw: GE HealthCare - GE-282-201(FAPI46) PERISCOPE Newsletter - July 2025: This is an email from a Sponsor to

Kettering regarding a clinical trial in which the Sponsor writes: "As always, please keep the contents of this email confidential, in accordance with our CDA/NDA agreements."

(2)     Fw: Hand Hygiene Audit Submissions Update & Next Steps: This email contains confidential information regarding Kettering's operations.

(3)     Fw: KHMC Hand Hygiene Compliance - June 30th: This email contains confidential information regarding Kettering's operations.

(4)     VP Scorecard - Productivity PPE 25.06.21.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations.

(5)     The emails and documents referenced at paragraph 37(a)(iii)(1)-(13).

vii.    On **July 8, 2025**, Collier forwarded herself the following:

(1)     Fw: Leader Alert: Annual Evaluations Report 7/8/2025: This email contains confidential information regarding Kettering's operations.

(2)     Evaluation Completion Report 7.8.2025.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and personnel matters.

(3)     Fw: 18135 - 03666 - Bi-Weekly - 07Jul2025: This is an email from a Sponsor with confidential information regarding clinical trials and clinical trial patients.

(4)     03666-Bi Weekly-07Jul2025.xlsx: This file is a spreadsheet from a Sponsor with confidential information regarding clinical trials and clinical trial patients.

(5)     Fw: CKJX839B12302_5207_Handel_Follow up visit: This is an email to Kettering from a Sponsor regarding a clinical trial. It states: "CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure…If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited."

(6)     Fw: AMG 133 | 20230227 | Site 66052 | Handel | *Updated: GLAS Packet: This is an email string between a Sponsor and Kettering regarding a clinical trial. It contains the following instruction: "IMPORTANT - PLEASE READ: This electronic message, including its attachments, is CONFIDENTIAL and may contain PROPRIETARY or LEGALLY PRIVILEGED or PROTECTED information and is intended for the authorized recipient of the sender." It also states: "This communication

40

contains Amgen Confidential Information and is only being shared because you have been identified as an individual with a business need to know and require this information for the purposes of supporting this program."

(7) FORM-494922 FDF .pdf: This file is a Sponsor's Financial Disclosure Certification Form, which states: "Amgen Proprietary - Confidential."

(8) AMG 133 20230227 Original Protocol PSP.pdf: This file is an Investigator's Agreement from a Sponsor, which states "CONFIDENTIAL."

(9) The emails and documents referenced at paragraph 35(a)(iv)(1)-(4).

viii. On **July 10, 2025**, Collier forwarded herself the following:

(1) The email referenced at paragraph 37(a)(v)(1).

ix. On **July 11, 2025**, Collier forwarded herself the following

(1) Studies Report with revenue-05.13.2025.xls: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including clinical trials and finances.

(2) Expiring CV, CITI, COI.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations and clinical trials.

       (3)     Sponsor Contacts V2 (6-19-24).xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including a contact list for the Sponsors with which it works.

       (4)     Allie's Regulatory Brain.xlsx: This file is an internal Kettering spreadsheet that contains confidential information regarding Kettering's operations, including clinical trials.

(*Id.*).

38.    Many of Collier's email forwards took place in short bursts between late at night or very early in the morning. (*Id.* at ¶ 15).

39.    On July 16, 2025, Collier attempted to access Kettering's computer systems five different times, but Kettering's information security system blocked her access. (Whittridge Dec. ¶ 9). Collier attempted to access Kettering's computer systems again on July 17, 2025, but was again blocked by Kettering's information security system. (*Id.*).

40.    Undeterred, on July 17, 2025, Collier requested access to three different studies that are under IRB oversight through WCG, one of the commercial IRBs commonly used for clinical research trials. (Pershing Dec. at ¶ 16). The IRB is responsible for reviewing and approving each study involving human subjects research to ensure the rights and welfare of research subjects are protected. (*Id.*). The IRB portals contain all protocols, amendments, and any patient-facing materials, including informed consent forms. (*Id.*). The portals also include various types of serious adverse events and safety concerns, if any. (*Id.*).

41.    Collier's requests to the IRB, which were all made using her personal Gmail account, were forwarded to Kettering's IRG team, who denied each request. (*Id.* at ¶ 17).

a. At 6:50 p.m. on July 17, 2025, Kettering received notice that Collier requested access to the IRB portal for SIT-217374 (IRB tracking ID 20216416):



b. At 7:14 p.m. on July 17, 2025, Kettering received notice that Collier requested access to the IRB portal for SIT-250017 (IRB tracking ID 20062111):



c. At 11:50 p.m. on July 17, 2025, Kettering received notice that Collier requested access to the IRB portal for SIT-254193 (IRB tracking ID 20243443):

Request submitted by

**Sandra Lee Collier**
collierclinicalresearch2@gmail.com
Kettering Health

Requested site to access

Sponsor | Sponsor Protocol ID
**Telix Pharmaceutical (Innovations) Pty Ltd | 18F-TLX101-CDx-002**
**Principal Investigator: Mark Hoeprich**
Country:            • **United States**
IRB Tracking ID:    • **20243443**

(*Id*.).

42.    If Collier is not required to abide by her legal obligations to Kettering, the damages that Kettering will sustain can never be fully compensated by an award of money damages alone. (*Id*. at ¶ 18).

43.    In particular, the loss of revenue and good will with its Sponsors that Kettering will suffer due to Collier's removal, use, or disclosure of Kettering's and/or its Sponsors' confidential information and trade secrets is inherently uncertain and can never be fully calculated. (*Id*.).

## <u>COUNT I</u>
### Trade Secret Misappropriation Under the
### Defend Trade Secrets Act, 18 U.S.C. § 1836
### (Against Collier)

44.    Kettering realleges and incorporates by reference herein the allegations set forth above.

45.    Kettering owned and possessed certain highly confidential, proprietary, and trade secret information, as alleged above.

44

46.     This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped, and ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

47.     Kettering has taken reasonable and industry-acceptable measures to keep such information secret and confidential.

48.     This confidential, proprietary, and trade secret information derives significant independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

49.     In violation of Kettering's and its Sponsors' rights, Collier brazenly misappropriated the confidential, proprietary, and trade secret information in the improper, malicious, and unlawful manner as alleged herein.

50.     The highly confidential, proprietary, and trade secret information accessed and stolen by Collier includes (but is not limited to) the files identified in paragraphs 34 and 37 above.

51.     Collier's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

52.     If Collier's conduct is not remedied, and if Collier is not enjoined, Collier will continue to misappropriate, disclose, and use for her own benefit and to Kettering's and its Sponsors' detriment, Kettering's and its Sponsors' trade secret information.

53.     As the direct and proximate result of Collier's unlawful conduct as aforesaid, Kettering has suffered and, if Collier's conduct is not stopped, Kettering will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

54.     Because Kettering's remedy at law is inadequate, Kettering seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Kettering's business is reliant on its reputation and its ability to maintain and grow its clinical trial research program in a competitive market and will continue suffering irreparable harm absent injunctive relief.

55.     Kettering has a substantial likelihood of success on the merits because of Collier's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

<div align="center">

**COUNT II**
**Trade Secret Misappropriation Under the**
**Ohio Uniform Trade Secrets Act, Ohio Revised Code § 1333.61, *et al*.**
**(Against Collier)**

</div>

56.     Kettering realleges and incorporates by reference herein the allegations set forth above.

57.     Kettering owned and possessed certain confidential, proprietary, and trade secret information, as alleged above.

58.     This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped, and ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

59.     Kettering has taken reasonable measures to keep such information secret and confidential.

60.     This confidential, proprietary, and trade secret information derives significant independent economic value from not being generally known to and not being readily ascertainable

through proper means by another person who could obtain economic value from the disclosure or use of the information.

61.     In violation of Kettering's and its Sponsors' rights, Collier misappropriated the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein.

62.     The confidential, proprietary, and trade secret information accessed and stolen by Collier includes (but is not limited to) the files identified in paragraphs 34 and 37 above.

63.     Collier's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

64.     If Collier's conduct is not remedied, and if Collier is not enjoined, Collier will continue to misappropriate, disclose, and use for her own benefit and to Kettering's and its Sponsors' detriment, Kettering's and its Sponsors' trade secret information.

65.     As the direct and proximate result of Collier's conduct as aforesaid, Kettering has suffered and, if Collier's conduct is not stopped, Kettering will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

66.     Because Kettering's remedy at law is inadequate, Kettering seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Kettering's business is reliant on its reputation and its ability to maintain and grow its clinical trial research program in a competitive market and will continue suffering irreparable harm absent injunctive relief.

67.     Kettering has a substantial likelihood of success on the merits because of Collier's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

## COUNT III
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030
### (Against Collier)

68.     Kettering realleges and incorporates by reference herein the allegations set forth above.

69.     Starting on or about June 20, 2025 and continuing through July 11, 2025, Collier knowingly accessed a Kettering protected computer without authorization in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").

70.     By accessing a Kettering protected computer without authorization and taking Kettering's and its Sponsors' confidential and trade secret information, Collier violated the provision of the CFAA that imposes liability on any party who intentionally accesses a computer without authorization or exceeds access and thereby obtains information from any protected computer.

71.     Collier directed and actively participated in the improper and excessive access to a Kettering protected computer for the purpose of accessing and downloading Kettering's and its Sponsors' confidential and trade secret information. Therefore, Collier is liable for the loss suffered by Kettering.

72.     Collier actively participated in improperly taking Kettering's and its Sponsors' confidential and trade secret information, which included theft of the files in paragraphs 34 and 37 above, to the benefit of Collier and the detriment of Kettering and its Sponsors.

73.     By intentionally accessing a Kettering computer without authorization and/or exceeding her authorized access to Kettering's computer with an intent to defraud Kettering, and obtaining Kettering's and its Sponsors' confidential and trade secret information identified in paragraphs 34 and 37 above, Collier violated the CFAA, which imposes liability on any party who intentionally accesses a protected computer without authorization or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value.

74.     By intentionally and without authorization and/or in excess of her authority accessing a Kettering computer network, Collier violated the provision of the CFAA that imposes liability on any party who recklessly causes damage as a result of intentionally accessing a protected computer without authorization.

75.     By intentionally and without authorization and/or in excess of her authority accessing a Kettering computer, Collier violated the provision of the CFAA that imposes liability on any party who causes damage and loss as a result of intentionally accessing a protected computer without authorization.

76.     Kettering has suffered "damage" as defined by the CFAA. Specifically, Collier's wrongful act of stealing Kettering's and its Sponsors' confidential and trade secret information has caused Kettering direct harm.

77.     As a result of the wrongful acts of Collier, Kettering has also suffered, and continues to suffer, "loss" as defined by the CFAA, including but not limited to, costs associated with investigating Collier's wrongful acts and initiating actions in response to the damage she caused to Kettering's protected computer.

78.     Kettering respectfully requests that the Court: (a) order that Collier immediately return to Kettering all of Kettering's and its Sponsors' information that she downloaded or

otherwise took from Kettering; (b) enjoin Collier from using any of Kettering's or its Sponsors' information; (c) enjoin Collier from accessing, or attempting to access, Kettering's system or any data contained therein; (d) enjoin Collier from providing any of Kettering's or its Sponsors' information to any third party; and (e) enter judgment in favor of Kettering and against Collier.

79.     Additionally, as a result of Collier's conduct, Kettering has incurred reasonable and necessary attorneys' fees.  As such, Kettering respectfully requests that it be permitted to recover all costs, reasonable attorney fees and expenses, as provided by statute.

## COUNT IV
### Breach of Contract – Confidentiality Agreement
### (Against Collier)

80.     Kettering realleges and incorporates by reference herein the allegations set forth above.

81.     Collier voluntarily executed the Confidentiality Agreement at the outset of her employment with Kettering.

82.     The Confidentiality Agreement is a valid and binding contract, in exchange for which Collier received good and valuable consideration, including at-will employment with Kettering.

83.     By committing the above-described acts, Collier repeatedly violated her Confidentiality Agreement, including by violating her confidentiality covenant by using and disclosing Kettering's confidential information to and for the benefit of a third party and for her own personal gain.

84.     Kettering has performed all of its obligations under the Confidentiality Agreement.

85. As a direct and proximate result of Collier's breaches of the Confidentiality Agreement, Kettering has been severely damaged for which it seeks damages and injunctive relief as more particularly set forth above and below.

<div align="center">

**COUNT V**
**Tortious Interference with Contract**
**(Against Collier)**

</div>

86. Kettering realleges and incorporates by reference herein the allegations set forth above.

87. Collier was aware of the contracts Kettering had with its Sponsors, including its contractual obligation to refrain from using or disclosing its Sponsors' confidential and proprietary information to third parties.

88. Collier, improperly and without privilege, interfered in Kettering's contracts with its Sponsors by misappropriating its Sponsors' confidential and proprietary information and disclosing it to a third party.

89. The foregoing conduct was willful, malicious and intentional and has already caused and will continue to cause significant damage to Kettering with respect to its important relationships with its Sponsors.

90. As a direct and proximate result of Collier's wrongful conduct, Kettering has suffered and will continue to suffer extensive injury and harm in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

## COUNT VI
### Civil Extortion, Ohio Revised Code §§ 2307.60, 2905.11
### (Against Scott)

91.     Kettering realleges and incorporates by reference herein the allegations set forth above.

92.     Ohio Revised Code § 2307.60(A)(1) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

93.     Ohio Revised Code § 2905.11(B) provides that "[n]o person, with purpose to obtain any valuable thing or valuable benefit […] shall […] [u]tter or threaten any calumny against any person" or "[e]xpose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute[.]"

94.     "Calumny" is a "misrepresentation intended to harm another's reputation; the act of uttering false charges or misrepresentations maliciously calculated to harm another's reputation." *State v. Bishop*, 2025-Ohio-2664, ¶ 37 (5th Dist.).

95.     Scott sent the Letter to Kettering "with purpose to obtain [a] valuable thing or valuable benefit[.]" Unless Kettering paid Collier an amount "in the high eight-figure range," Scott affirmatively stated she would, without further notice, release the false charges and representations contained in the Letter within five business days.

96.     Indeed, Scott stated in the Letter that Defendants' release of the false charges and misrepresentations in the Letter would "expose[ ]" Kettering to "[r]eputational and stockholder

liability[.]" Scott also stated in the Letter that "Collier has nothing further to lose. The hospital, however, does."

97.     Scott's Letter amounts to threatening Kettering with calumny and/or "expos[ing] […] matter tending to subject [Kettering] to hatred, contempt, or ridicule, or to damage [Kettering's] business repute" because, among other things:

    a.      The Letter's statement that Kettering "filed fraudulent Conflict of Interest (COI) reports" is false.

    b.      The Letter's statement that "[u]nauthorized medical staff of Kettering administered "drug/investigational product (IP)" is false.

    c.      The Letter's statement that "[u]nqualified staff conducted medical procedures and assessments" is false.

    d.      The Letter's statement that "Departmental Regulatory documents are non-compliant" is false.

    e.      The Letter's statement that "Departmental Standard Operating Procedures (SOPs) remain outdated" is false.

    f.      The Letter's statement that "Departmental digital record-keeping remains non-compliant, violating 1997 requirements" is false.

    g.      The Letter's statement that "[k]ey trial clinical trial data were fabricated, lost, or misreported" is false.

98.     Scott maliciously calculated and designed each of the false charges and misrepresentations identified in subparagraphs 97(a)-(g) above so that Kettering's reputation would be harmed if Scott publicized the statements as she threatens to do in the Letter.

99.    Jointly and separately, each of the false charges and misrepresentations identified in subparagraphs 97(a)-(g) above would harm Kettering's reputation if Scott publicized the statements as she threatens to do in the Letter.

100.    Ohio Revised Code § 2905.11(C) provides that "[w]hoever violates division (B) of this section is guilty of extortion, a felony of the third degree."

101.    Scott engaged in extortion and violated Ohio Revised Code § 2905.11(B) when she sent the threatening Letter to Kettering.

102.    Scott's criminal extortion above has caused Kettering damages, including, but not limited to, compensatory damages to be proven at trial, the costs incurred in maintaining this civil action, and attorneys' fees pursuant to Ohio Revised Code § 2307.60(A)(1).

103.    Further, on account of Scott's criminal extortion above, Plaintiff is entitled to damages, including recovery of punitive or exemplary damages pursuant to Ohio Revised Code §§ 2307.60(A)(1) and 2315.21.

## JURY TRIAL DEMAND

Kettering hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kettering Adventist Healthcare respectfully requests that the Court enter judgment in its favor and against Defendant Sandra Collier and Defendant Mary T. Scott as follows:

1. As to Collier, a Seizure Order requiring the seizure of all electronic devices in Collier's possession, custody or control, and that such devices be provided to the Court so that a forensic analysis of the devices can be conducted by an independent computer forensic

expert approved by the Court;

2. As to Collier, an Order requiring that Collier provide to Kettering any and all hard copies of Kettering's or its Sponsors' documents or files in her possession or control;

3. As to Collier, an Order requiring that Google preserve all electronic mail for any and all email accounts owned by Collier (including collierclinicalresearch2@gmail.com) and that Collier be ordered to allow for a forensic review of each e-mail account by an independent computer expert approved by the Court;

4. As to Collier, an Order requiring that Google preserve Collier's iCloud account and that Collier be ordered to allow for a forensic review of the iCloud account by an independent computer expert approved by the Court;

5. As to Collier, temporary, preliminary, and permanent injunctive relief restraining Collier from further misappropriating or using Kettering's or its Sponsors' confidential or trade secret information;

6. As to Collier, temporary, preliminary, and permanent injunctive relief restraining Collier from further misappropriating or using Kettering's Sponsors' confidential or trade secret information;

7. As to Collier, that Collier is temporarily, preliminarily and permanently:

   a. restrained from keeping, retaining, transmitting, possessing or in any way using, disclosing or having continuing access to Kettering's or its Sponsors' documents or information;

   b. required to provide to Kettering, and allow Kettering to seize, freeze, and examine any and all communications devices, computers, or other electronic devices of Collier to assure that she is not keeping, retaining, transmitting,

possessing or in any way using, disclosing or having continuing access to Kettering's or its Sponsors' documents or information and to determine with whom such documents or information have been shared or disclosed;

c.  required to provide Kettering's or its designated agents access to, and the right to inspect, any and all computers or other electronic device that now contain or ever contained Kettering's documents or information;

d.  required, other than as provided in subparagraph (e), to refrain from altering, discarding, destroying, or otherwise changing in any and all computers or other electronic device or email or other account or storage media of any kind or character that now contain or ever contained Kettering's or its Sponsors' documents or information, and must preserve same for future inspection;

e.  required to provide to Kettering, and Kettering's counsel, with a document in a form acceptable to Kettering and to any relevant iCloud storage provider or email account provider authorizing the removal and deletion from such account or service any and all emails and attachments containing Kettering's or its Sponsors' documents or information;

8.  As to Defendants, compensatory, consequential and incidental damages;

9.  As to Defendants, punitive or exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), Ohio Revised Code §§ 1333.63(B), 2307.60(A)(1), and/or 2315.21, and/or other applicable law;

10. As to Defendants, reasonable attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1836(b), Ohio Revised Code §§ 1333.64(C), 2307.60(A)(1), and/or other applicable law;

11. As to Collier, for the immediate return of all Kettering's and its Sponsors' property taken, including any and all documents or other means of information storage containing Kettering's or its Sponsors' property and confidential information;

12. As to Defendants, pre-judgment and post-judgment interest on that award; and

13. As to Defendants, such other and further relief as this Court deems equitable and just.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ James G. Petrie*
_____
James G. Petrie (0059446)
*Trial Counsel*
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
cpagemcginnis@ebglaw.com

*Counsel for Plaintiff*

</div>