# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK**<br><br>Plaintiff,<br><br>v.<br><br>**SANDRA COLLIER, et al.**<br><br>Defendants. | Case No.: 3:25-cv-00273<br><br>Judge Walter H. Rice<br><br>Magistrate Judge Caroline H. Gentry |

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT MARY T. SCOTT, ESQ. FROM REPRESENTING DEFENDANT SANDRA COLLIER

Pursuant to Rules 3.7 and 1.7(a) of the Ohio Rules of Professional Conduct, Plaintiff Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering") moves the Court to disqualify Defendant Mary T. Scott, Esq. ("Attorney Scott") from representing her Co-Defendant, Sandra Collier ("Collier"), in this action. A memorandum in support follows.

                                                         Respectfully submitted,

                                                         */s/ James G. Petrie*
                                                         James G. Petrie (0059446)
                                                         Jill K. Bigler (083789)
                                                         Chris T. Page McGinnis (0099165)
                                                         Epstein Becker & Green, P.C.
                                                         250 West Street, Suite 300
                                                         Columbus, Ohio 43215
                                                         Phone: 614.872.2500
                                                         Fax: 614.633.1713
                                                         jpetrie@ebglaw.com
                                                         jbigler@ebglaw.com
                                                         ctpage@ebglaw.com
                                                         *Counsel for Plaintiff*

**MEMORANDUM IN SUPPORT**

I.    **INTRODUCTION AND FACTUAL BACKGROUND**

This case presents a unique scenario that all but demands intervention by the Court to prevent Attorney Scott from representing her Co-Defendant, Collier, in this action. Attorney Scott has made herself a necessary witness by submitting sworn testimony to the Court in the form of declarations that goes to the heart of each of Kettering's claims against Collier. Additionally, Attorney Scott's and Collier's sworn testimony reveals the existence of an unwaivable conflict of interest.

    A.  **Collier's Employment with Kettering**

As set forth in detail in its Complaint, Collier was formerly employed by Kettering as the System Director of the Innovation, Research, and Grants Department. (Complaint ("Compl."), Doc. #1, ¶ 5). In that role, Collier was responsible for overseeing Kettering's clinical trial research program, which connects patients with new medicines, protocols, and treatment options. (*Id*. at ¶ 11). Collier held a position of trust with Kettering and had access to confidential, proprietary, and trade secret information. (*Id*. at ¶ 26).

Unbeknownst to Kettering, however, Collier was working behind the scenes from almost the day she set foot onto Kettering's campus to steal Kettering's and its clinical trial sponsors' ("Sponsors") trade secrets and other confidential information in a scheme carried out over the course of several months. (*Id*. at ¶¶ 1, 2, 33-55). Much of the purloined information was taken *after* Kettering terminated Collier, effective June 22, 2025, for behavioral and performance-based reasons. (*Id*. at ¶¶ 1, 2, 35-37).

    B.  **Attorney Scott's Relationship with Collier and the Extortion Letter**

On July 28, 2025, Kettering received a letter from Collier's counsel, Attorney Scott, in which she demanded that Kettering pay Collier millions of dollars or else she would disclose

2

alleged clinical misconduct and other alleged violations to regulatory agencies, Sponsors, and media outlets (the "Extortion Letter"). (Ex. F to Compl., Doc. #1-7). Attorney Scott's Extortion Letter threatened that the amount of money Collier would accept "pales in comparison to the financial consequences the hospital will suffer[,]" along with the "criminal penalties that will likely be imposed once this information becomes public." (*Id*. at PageID 95). Attorney Scott's Extortion Letter closed with an equally ominous warning: "Ms. Collier has nothing further to lose. The hospital, however, does." (*Id*. at PageID 96).

### C. Kettering Discovers Collier's Misappropriation

After receiving the Extortion Letter, which plainly admitted that Collier had Kettering's and its Sponsors' trade secrets and confidential information in her possession (*id*. at PageID 97), Kettering began an investigation that revealed the full extent of Collier's misappropriation scheme. (Compl. ¶ 33). In total, Kettering discovered at least 311 emails and attachments—amounting to ***thousands*** of pages—that Collier forwarded to her personal email account, as well as an email account belonging to a third party, Vanessa (vanessa@totalwellnessresearch.com). (*Id*. at ¶¶ 33-37). Many of those documents are described in detail in the Complaint. (*Id*.).

### D. Kettering's Claims Against Collier and Attorney Scott

With its trade secrets and confidential information now unlawfully in the hands of Collier, whom Kettering has reason to believe owns a competing company, as well as at least one third party, Kettering moved swiftly for injunctive relief.

On August 13, 2025, Kettering filed this action against Collier and Attorney Scott, alleging the following claims—as to Collier: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act; (2) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act; (3) violation of the Computer Fraud and Abuse Act; (4) breach of confidentiality agreement; and (5) tortious interference with contract—and as to Attorney Scott: (6) civil extortion. With the

3

Complaint, Kettering also filed a Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"), which seeks to prevent Collier from further misappropriating the trade secrets and confidential information that she fully admits are still in her possession. (Motion for TRO, Doc. # 3; *see also* Declaration of Sandra Collier ("Collier Dec."), ¶ 6, Doc. # 4-2).

### E. <u>Attorney Scott's Continued Representation of Collier</u>

On August 13, 2025, Attorney Scott emailed Ms. Bethany Russell, Judicial Assistant for your Honor, and stated that she was acting as counsel for Collier and would be representing herself pro se in this matter. On August 14, 2025, Attorney Scott filed an opposition to Kettering's Motion for TRO (Doc. # 4), which included declarations from Attorney Scott (Declaration of Mary T. Scott ("Scott Dec."), Doc. # 4-1) and her client, Collier (Doc. # 4-2). Attorney Scott's declaration leaves no doubt that she has made herself a necessary witness in this case, as prohibited by Prof. Cond. R. 3.7, by providing material testimony going directly to the merits of Kettering's claims against Collier. (Scott Dec. ¶¶ 3, 4). Attorney Scott's declaration, coupled with Collier's declaration, the Opposition, and the Extortion letter, also demonstrate the presence of a conflict of interest.

Perhaps recognizing the tenuous position Attorney Scott had now placed herself in by offering into evidence her own sworn testimony, some of which conflicts with her client's own testimony, she attempted to thwart any potential disqualification by filing an "Informed Consent / Conflict Waiver, which purports to waive the conflict between her and Collier under Prof. Cond. 3.7 and R. 1.7. (Doc. # 4-3). As set forth more fully below, the application of Prof. Cond. R. 3.7 cannot be waived and the conflict arising under Prof. Cond. R. 1.7 is unwaivable. Attorney Scott must be disqualified as Coller's attorney.

4

II.     **LEGAL STANDARD**

"[T]rial courts have the 'inherent authority to supervise members of the bar appearing before [them] and this necessarily includes the power to disqualify counsel in specific cases[,]' such as when 'an attorney cannot, or will not, comply with the Code of Professional Responsibility[1] when representing a client.'" *Wynveen v. Corsaro*, 2017-Ohio-9170, ¶ 14 (8th Dist.), quoting *Fried v. Abraitis*, 2016-Ohio-934, ¶ 11 (8th Dist.); *see also Pettit v. 4 PD OSU 1 LLC*, Franklin C.P. No. 21-CV-6192, 2022 WL 20717029, at *2 (June 2, 2022) ("A trial court has wide discretion in the consideration of a motion to disqualify counsel.").

III.     **ARGUMENT**

    A.     **The Court Should Disqualify Attorney Scott under Prof. Cond. R. 3.7 Because She is a Necessary Witness to the Claims Against Collier.**

Prof. Cond. R. 3.7(a), states "[a] lawyer shall not act as an advocate at a trial in which the lawyer is ***likely*** to be a necessary witness." (Emphasis added). Here, we have moved beyond likelihood and squarely into certainty. Yesterday, Attorney Scott filed a declaration containing her own sworn testimony going directly to the merits of each of Kettering's five claims against her client.

As set forth above and in detail in its Complaint and Motion for TRO, Kettering alleges that Collier misappropriated Kettering's and its Sponsors' trade secrets (Counts I and II), breached her confidentiality agreement with Kettering (Count IV), and tortiously interfered with Kettering's contracts with its Sponsors (Count V) by, among other things, sending trade secrets and confidential information to a third party—Vanessa (vanessa@totalwellnessresearch.com). Paragraph 3 of Attorney Scott's declaration offers testimony that goes directly to these claims:

---

[1] "The codified Rules of Professional Conduct govern questions of lawyer disqualification." *Escort, Inc. v. noLimits Enters., Inc.*, No. 1:18-CV-323, 2018 WL 6980926, at *3 (S.D. Ohio Nov. 20, 2018), report and recommendation adopted sub nom. *Escort, Inc. v. Nolimits Enters.. Inc.*, No. 1:18CV323, 2019 WL 132686 (S.D. Ohio Jan. 8, 2019) (recognizing that "this Court abides by 'the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits.'") (quoting Model Federal Rules of Disciplinary Enforcement).

5

"Neither I nor Ms. Collier sent any documents or information to any regulator, sponsor, or the public…" (Scott Dec. ¶ 3).

Further, at Count III, Kettering alleges that Collier unlawfully accessed its computer systems without authorization. Paragraph 4 of Attorney Scott's declaration offers testimony going directly to this claim: "Ms. Collier accessed only her own mailbox and materials using credentials KH failed to deactivate. I never directed or encouraged Ms. Collier to circumvent security or to access any system without authorization." (*Id*. at ¶ 4).

The moment Attorney Scott filed her declaration, Attorney Scott made herself a necessary witness to Kettering's claims against Collier and, under such circumstances, disqualification is mandatory. This is because "'[t]he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.'" *Reo v. Univ. Hosps. Health Sys*., 2019-Ohio-1411, ¶ 18 (11th Dist.), quoting *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256, 257 (1987). As the *Reo* court observed:

> Prof. Cond. R. 3.7 was adopted because '[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.' *Id*. at Official Comment 1. For example, 'the trier of fact may be confused or misled by a lawyer serving as both advocate and witness.' *Id*. at Official Comment 2. In addition, 'the combination of roles may prejudice that party's rights in the litigation.' *Id*. This is so because '[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.' *Id*. When the roles are combined, '[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as analysis of the proof.'

*Reo*, 2019-Ohio-1411, ¶ 20.

Though Prof. Cond. R. 3.7(a) contains three exceptions, none apply here.[2]

Attorney Scott's testimony relates to contested issues—namely, whether Collier misappropriated trade secrets and confidential information, breached her confidentiality

---

[2] "[T]he burden of proving that one of the exceptions to Prof.Cond.R. 3.7 applies falls upon the attorney seeking to claim the exception." *Goebel v. Hopkins*, 2024-Ohio-194, ¶ 17 (12th Dist.).

6

agreement, accessed Kettering's computer systems without authorization, and tortiously interfered with Kettering's contracts with its Sponsors. (*Id*. at 3.7(a)(1)). Attorney Scott's testimony plainly does not relate to the nature and value of legal services rendered in this case. (*Id*. at 3.7(a)(2)). And Attorney Scott's disqualification would not work a substantial hardship on Collier. (*Id*. at 3.7(a)(3)). This case is straightforward, was filed two days ago, and does not have a long history given Collier's short tenure at Kettering. *See e.g.*, *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 430 (1995) (finding no substantial hardship where case was "neither particularly complex nor involved[,]" nor in a "late stage" with a "lengthy history."); *Rock v. Sanislo*, 2009-Ohio-6913, ¶¶ 18-19 (9th Dist.) (Substantial hardship "requires more than a showing of mere financial hardship" or "long time familiarity.").

Moreover, while Attorney Scott attempted to obtain a waiver from Collier with respect to her being a necessary witness in this case (Doc. # 4-3), that waiver is invalid. Unlike Prof. Cond. Rule 1.7 (Conflict of Interest), the plain language of Prof. Cond. Rule 3.7 does not allow waivers. *See Premium Prods., Inc. v. Pro Performance Sports*, LLC, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014) ("Application of the witness-advocate rule is mandatory and may not be waived by the lawyer's client.") (citation omitted). In applying Virginia's counterpart to Ohio's Prof. Cond. Rule 3.7, the E.D. Virginia aptly observed that "[t]he rule is not subject to client waiver because the interests served by the rule extend beyond those of a single client. Rather, the witness-advocate rule is a "'prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole.'" *Id*., quoting *Estate of Andrews by Andrews v. United States*, 804 F.Supp. 820, 823 (E.D.Va.1992); *see also* Prof. Cond. Rule 3.7, Comments 1-4.

In short, the Court must disqualify Attorney Scott under Prof. Cond. Rule 3.7 as she is a material witness. She became one as soon as she provided sworn testimony with respect to *each*

of Kettering's claims against Collier, no exception applies, and Prof. Cond. Rule 3.7 may not be waived.

### B. The Court Should Disqualify Attorney Scott under Prof. Cond. R. 1.7 Because A Conflict Exists Between Her and Collier.

In addition to Attorney Scott's mandatory disqualification pursuant to Prof. Cond. R. 3.7, the Court should also disqualify her under Prof. Cond. R. 1.7 based on an unwaivable conflict of interest.

Prof. Cond. R. 1.7(a) provides that, "[a] lawyer's acceptance or continuation of representation of a client creates a conflict of interest if…(1) the representation of that client will be directly adverse to another current client[; or] (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's own personal interests." (emphasis in original). "A 'material limitation' conflict exists when a lawyer represents…co-defendants in litigation and there is a substantial discrepancy in the clients' testimony, incompatible positions in relation to another party, potential cross-claims, or substantially different possibilities of settlement of the claims or liabilities in question." *Id*. at Cmt. 15.

If a conflict of interest is created pursuant to the above, a lawyer is prohibited from accepting or continuing representation "unless all of the following apply: (1) the lawyer will be able to provide competent and diligent representation to each affected client; (2) each affected client gives *informed consent*, *confirmed in writing*; [and] (3) the representation is not precluded by division (c) of this rule." Prof. Cond. R. 1.7(b) (emphasis in original).

Here, a conflict exists between Attorney Scott and Collier under Prof. Cond. R. 1.7(a)(1) and (2), and, despite the Collier's purported waiver, Attorney Scott will not be able to provide competent and diligent representation to Collier, as evidenced by the filings already submitted to the Court.

8

First, Attorney Scott and Collier appear to be taking adverse positions regarding Collier's infiltration of Kettering's computer systems after her termination of employment. In her declaration, Attorney Scott, while waiving attorney-client privilege (presumably with Collier's permission), avers that "Ms. Collier accessed only her own mailbox and materials using credentials KH failed to activate," and that she "never directed or encouraged Ms. Collier to…access any system without authorization[.]" (Scott Dec. ¶ 4). Collier, on the other hand, admits she knowingly accessed "multiple accounts," including "email, Teams, [and] payroll" "despite [her] termination" to "retrieve[] communications to share with [Attorney Scott]." (Collier Dec. ¶ 2). These two positions pit Attorney Scott and Ms. Collier against each other, making them directly adverse.

Similarly, both Attorney Scott and Collier swore in their declarations that Collier never "sent *any* documents or information to…*the public*." (Collier Dec. ¶ 2; Scott Dec. ¶ 2) (emphasis added). However, Attorney Scott has taken a contrary position in the Opposition, claiming that Collier "did not *unduly* transmit data to third parties." (Opposition, Doc. #4, PageID 140) (emphasis added). Attorney Scott's argument fundamentally undercuts the testimony of her own client and demonstrates, despite the purported waiver, that she cannot provide competent and diligent representation to Collier in this action.

Equally concerning is the fact that Collier and Attorney Scott are taking materially incompatible positions regarding the content of Scott's Extortion Letter. Collier swears in her declaration that she "never threatened KH." (*Id*. at ¶ 2). Instead, she avers that "[i]f KH chose not to remediate, I reserved my right to report concerns to appropriate *authorities*[.]" (*Id.*) (emphasis added). The Extortion Letter, however, contains explicit threats and goes far beyond reporting alleged concerns to authorities, providing:

> Should you fail to respond within [five business days], we will proceed without further notice by immediately notifying the list of regulatory agencies, *sponsors*, and *CROs*…of your egregious conduct. In addition, we will immediately issue a

9

> Press Release to *national and local media* outlets…to disclose the serious violations outlined above publicly.

(Doc. # 1-7 at PageID 95).

Attorney Scott's personal interests in defending against the civil extortion claim could have an adverse effect on her representation of Collier. For example, when deposed, Attorney Scott will have to testify whether and to what extent Collier authorized or directed her to send the Extortion Letter. That testimony could create liability for Collier, which would put them directly at odds. "The principles of loyalty and independent judgment are fundamental to the attorney-client relationship and underlie the conflict of interest provisions of these rules…[T]he lawyer's personal interest…should [not] be permitted to dilute the lawyer's loyalty to the client." Prof. Cond. R. 1.7, Cmt. 1.

Here, the record firmly establishes that Attorney Scott has a direct and very personal conflict of interest and cannot demonstrate that she is able to provide competent and diligent representation to her co-defendant Collier in this matter.

**IV.   CONCLUSION**

For the foregoing reasons, Kettering respectfully requests that the Court issue an ordering disqualifying Attorney Scott from representing Collier in this case.

Respectfully submitted,

*/s/ James G. Petrie*
James G. Petrie (0059446)
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
ctpage@ebglaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

      I certify that on August 15, 2025, the foregoing *PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT MARY T. SCOTT, ESQ. FROM REPRESENTING DEFENDANT SANDRA COLLIER* was filed and served via the Court's electronic filing system on the following:

Mary T. Scott, Esq.
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
mtfoster@trinitylawllc.com
*Defendant and Counsel for
Co-Defendant Sandra Collier*

                                                  */s/ James G. Petrie*
                                                  James G. Petrie (0059446)