Mary T. Scott, Esq.
Trinity Law, LLC
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
(513) 953-2499
mtfoster@trinitylawllc.com

July 28, 2025

VIA CERTIFIED MAIL, EMAIL, AND HAND DELIVERY
Kettering Health
Attn: Legal Department & Executive Leadership
Kettering Health Main Campus
3535 Southern Blvd.
Kettering, Ohio 45429

RE: Legal Demand – Criminal and Regulatory Compliance Violations, Civil Rights Abuses, HIPAA Breaches,  Patient Endangerment, and Institutional Liability (Sandra Collier)

To the Executive Leadership and Legal Team:

Please be advised that this firm, Trinity Law, LLC, represents Sandra Collier, former System Director of  Innovation, Research, and Grants at Kettering Health (KH). Ms. Collier, a 54-year-old African-American   woman and current oncology patient of KH, experienced retaliatory termination following her discovery and reporting  of substantial and repeated regulatory compliance violations within your KH hospital system and Clinical Research Department. This correspondence outlines the specific criminal, regulatory, civil, and ethical breaches committed and/or facilitated by key personnel at Kettering Health.


I. CRIMINAL | CIVIL CONDUCT BY IDENTIFIED PERSONNEL

The following individuals participated in and/or enabled criminal misconduct and retaliation:

- Mike Gentry, Chief Executive Officer: Conspired to hide Fraud and regulatory compliance violations committed in the conduct of clinical research at KH and committed retaliation against Ms. Collier by discussing/approving her termination.

- Daniel Wolcott, President of Acute Care: Conspired to hide Fraud and regulatory compliance violations committed in the conduct of clinical research at KH and committed retaliation against Ms. Collier by discussing/approving her termination.

- Dr. Brian Schwartz, Executive Director Cardiology Line/ Principal Investigator (PI): Conspired to hide Fraud committed in the conduct of clinical research at KH, failed to

maintain proper PI oversight, impeded audit efforts, impeded the implementation of QA/QC guardrails, permitted unqualified staff to conduct clinical research tasks, signed non-compliant submissions, and committed retaliation against Ms. Collier by discussing/approving her termination.

- Dr. Franklin Handel, Cardiology Principal Investigator (PI): Conspired to hide fraud committed in the conduct of clinical research at KH, failed to maintain proper PI oversight, instructed unqualified staff to perform clinical research tasks, impeded audit efforts, impeded the implementation of QA/QC guardrails, retaliated against Ms. Collier by discussing/approving her termination, and failed to properly disclose conflicts of interest (COI).

- Dr. Albert Bonnema, Chief Medical Officer of Innovation: Suppressed regulatory reform efforts, enabled falsification of oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, participated in the discussion and dissemination of Ms. Collier's PHI and HIPAA breach, conspired to hide fraud in the KH clinical research department (IRG), and retaliated against Ms. Collier by discussing/approving her termination.

- Mary Connolly, PhD, System Director of Innovation, Research, and Grants (IRG): Participated in the discussion and dissemination of Ms. Collier's PHI, participated in the HIPAA breach, suppressed regulatory reform efforts, enabled falsification of oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, continued coordination with PIs despite knowing about compliance lapses, conspired to hide fraud in the KH clinical research department (IRG), and retaliated against Ms. Collier by discussing/approving her termination.

- Audrey Mondock, Corporate Compliance Officer: Failed to report known regulatory violations to the appropriate agencies, coordinated with PIs despite awareness of compliance issues, suppressed regulatory reform efforts, impeded internal audits, enabled falsification of oversight records, blocked QA/QC guardrails, conspired to hide fraud in the KH clinical research department (IRG), and retaliated against Ms. Collier by approving her termination.

- Kenneth Chaij, Executive Director, Network Oncology Service Line: Overlooked violations of Ms. Collier's protected health information (PHI) and the HIPAA violation, conspired to hide the HIPAA violation, and retaliated against Ms. Collier by discussing/approving her termination.

- Tricia Tobe, RN, Clinical Director, Network Oncology: Overlooked violations of Ms. Collier's PHI and HIPAA, conspired to hide the HIPAA violation, and retaliated against Ms. Collier by discussing/approving her termination.

- Rebekah Tyre, RN, Oncology Nurse Manager: Initiated the HIPAA Violation against Ms. Collier, disseminated Ms. Collier's PHI, colluded to commit slander against Ms. Collier, and unnecessarily accessed Ms. Collier's EPIC files.

- Andrea Molina, CRC / IRG Operations Manager: Initiated/conspired in the discussion and dissemination of Ms. Collier's PHI, colluded in the HIPAA violation against Ms. Collier, overlooked unqualified staff performing prohibited tasks, falsified/misrepresented clinical research documentation, suppressed regulatory compliance reform efforts, enabled falsification of oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, continued coordination with PIs despite knowing about regulatory compliance violations, conspired to hide fraud in the KH clinical research department (IRG), initiated retaliatory actions against Ms. Collier and committed conspiracy by participating in discussions supporting her termination.

- Chris Seger, MS, Lead Clinical Research Coordinator: Initiated/Conspired to commit fraud in the conduct of clinical research, conspired in the discussion and dissemination of Ms. Collier's PHI, colluded in the HIPAA violation against Ms. Collier, slandered Ms. Collier, conducted clinical research tasks without proper delegation and training, overlooked unauthorized staff performing prohibited tasks, falsified/misrepresented documentation, suppressed regulatory compliance reform efforts, falsified oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, continued coordination with PIs despite knowing about regulatory compliance violations, conspired to hide fraud in the KH clinical research department (IRG), initiated retaliatory actions against Ms. Collier and committed conspiracy by participating in discussions supporting her termination.

- Leslie Flores, MS, Clinical Research Coordinator: Conspired to commit fraud in the conduct of clinical research, conspired in the discussion and dissemination of Ms. Collier's PHI, colluded in the HIPAA violation against Ms. Collier, slandered Ms. Collier, conducted clinical research tasks without proper delegation and training, overlooked unauthorized staff performing prohibited tasks, falsified/misrepresented documentation, suppressed regulatory compliance reform efforts, falsified oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, continued coordination with PIs despite knowing about regulatory compliance violations, conspired to hide fraud in the KH clinical research department (IRG), participated in retaliatory actions against Ms. Collier and committed conspiracy by participating in discussions supporting her termination.

- Allison Dymacek, RN Clinical Nurse Coordinator/Clinical Research Regulatory Manager: Conspired to commit fraud in the conduct of clinical research, conspired in the discussion and dissemination of Ms. Collier's PHI, colluded in the HIPAA violation against Ms. Collier, slandered Ms. Collier, overlooked unauthorized staff performing prohibited tasks, falsified/misrepresented documentation, suppressed regulatory compliance reform efforts, falsified oversight records, impeded audit efforts, blocked the implementation of QA/QC guardrails, continued coordination with PIs despite knowing about regulatory compliance violations, conspired to hide fraud in the KH clinical research department (IRG), initiated retaliatory actions against Ms. Collier and committed conspiracy by participating in discussions supporting her termination.

APPLICABLE STATUTES AND PENALTIES:

Based upon the conduct as mentioned above, in addition to the regulatory violations that the hospital may face, the following is the list of criminal statutes that are directly implicated and are applicable to the individuals mentioned above and the possible penalties that may be imposed:

- 18 U.S.C. 1 § 1001 (False Statements): Up to 5 years imprisonment; $250,000 (individual) or $500,000 (institution).
- 18 U.S.C. 1 § 1343 (Wire Fraud): Up to 20 years imprisonment per instance of falsified electronic data transmission.
- 18 U.S.C. 1 § 371 (Conspiracy): Criminal penalties for coordinated efforts to obstruct federal oversight —up to 5 years.
- 18 U.S.C. 1 § 1962 (Racketeer Influenced and Corrupt Organizations Act): If predicate acts (e.g., fraud,  tampering) form a pattern, treble damages, forfeiture, and up to 20 years imprisonment may apply.
- 18 U.S.C. § 1513 (Racketeer Influenced and Corrupt Organizations Act): (e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

These violations are not isolated errors but part of a corporate-wide conspiracy to misrepresent clinical research data, collusion to commit and conceal fraud, deflect internal scrutiny, and an organized action to interfere with the livelihood of Ms. Collier.

II. HIPAA VIOLATIONS AND PATIENT PRIVACY BREACH

Kettering Health suffered a significant HIPAA data breach in May 2025 involving the protected health information (PHI) of over 730,000 individuals. Despite legal obligations under 45 C.F.R. § 164.404 and  Ohio Revised Code § 1349.19, your administration failed to

notify in writing the affected individuals of the breach.  This breach, compounded by outdated and noncompliant software, jeopardized patient trust and safety.

In addition to the hospital-wide data breach in May 2025, Ms. Tyre and Ms. Molina unlawfully disseminated Ms. Collier's PHI, maliciously sullied her reputation, and exposed her to undue ridicule, thereby creating a hostile work environment.

APPLICABLE STATUTES AND PENALTIES:

- 45 C.F.R. §§ 160.404: Civil penalties range from $100 to $50,000 per violation; annual cap of $1.5  million per category.
- ORC § 3798.04: Imposes civil penalties for delayed or improper breach notification.
- 18 U.S.C. § 1030 (Unauthorized Access to Protected Systems): If personal devices or outdated software were used to improperly access research or PHI data, potential federal criminal liability applies.
- FDA 21CFR Part11§: Digital Record Keeping requirements

## III. CIVIL RIGHTS VIOLATIONS AND WORKPLACE DISCRIMINATION

Ms. Collier, an African American woman over the age of 50 and a current Oncology patient of Kettering Health Hospital, was retaliated against for reporting regulatory compliance violations and seeking to improve corporate regulatory compliance. Following her protected disclosures, she was subjected to:

- ■ Character defamation to sponsors and colleagues,
- ■ Exclusion from critical meetings,
- ■ Refusal to issue her PHI log-in/access details and full EPIC record,
- ■ Complete halt of  her departmental oversight authority, and
- ■ Termination of employment.

APPLICABLE CIVIL STATUTES:

- Title VII, 42 U.S.C. § 2000e (race and gender discrimination)
- Americans with Disabilities Act (ADA), 42 U.S.C. § 12112
- Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623
- ORC § 4112.02 (Ohio civil rights protections)

These violations justify monetary compensation, equitable remedies, and punitive damages in excess of   seven figures, particularly given her role as a senior executive with direct impact on institutional  compliance.

## IV. INSTITUTIONAL EXPOSURE AND CONTRACTUAL RISK

Kettering Health's revenue exceeds $1.1 billion, with tens of millions of dollars derived from pharmaceutical research, grant funding, and sponsor relationships. Your institution currently contracts with high-profile entities including Amgen, Pfizer, Merck, Novartis, Janssen, Boston Scientific, and Medtronic. These sponsors rely on accurate data reporting, GDP, and ICH-GCP-compliant infrastructure.

BASED ON EVIDENCE IN OUR POSSESSION:

• PIs filed fraudulent Conflict of Interest reports (COI),

• Unauthorized medical staff administered drug/investigational product (IP),

• Unqualified staff conducted medical procedures and assessments,

• Departmental Regulatory documents are non-compliant,

• Departmental Standard Operating Procedures(SOPs) remain outdated,

• Departmental digital record-keeping remains non-compliant, violating 1997 requirements,

• Key trial clinical trial data were fabricated, lost, or misreported.


This exposes the organization to:

• FDA clinical hold orders,

• Sponsor/CRO contract termination,

• Mandated Sponsor/CRO audits and clawbacks,

• Reputational and stockholder liability for data contamination.


V. SETTLEMENT AND PUBLIC DISCLOSURE

While we intend to negotiate in good faith, our initial demand begins in the high eight-figure range, given the gravitas of this situation. Understanding that should this information become public knowledge, be reported to the regulatory agencies, Sponsors /CRO's, and media outlets, the amount that Ms. Collier will ultimately accept pales in comparison to the financial consequences the hospital will suffer from fines, statutory penalties, sanctions and legal expenses to defend the plethora of lawsuits that are sure to come from business partners, Sponsors/CROs, regulatory agencies, and patients. Not to mention the operational liability, loss of licensures, loss of funding, and the imposition of criminal penalties that will likely be imposed once this information becomes public.

Regardless of the monetary compensation required and owed to Ms. Collier, our ultimate goal is accountability and protection for the public.   As a result, a proper resolution will necessarily include your commitment and assurance of future compliance and your renewed dedication to patient care and safety.

Therefore, you are hereby given ***five (5) business days from the date of this letter*** to respond with your intent to engage in meaningful settlement discussions. Should you fail to respond within that timeframe, we will proceed without further notice by immediately notifying the list of regulatory agencies, sponsors, and CROs (attached hereto as Exhibit B) of your egregious conduct. In addition, we will immediately issue a Press Release to national and local media outlets (attached hereto as Exhibit E) to disclose the serious violations outlined above publicly.

To be clear, absent resolution, we are prepared to provide specific notice and cooperate fully with the following:

REGULATORY AGENCIES

- Office of Inspector General (HHS-OIG)
- US Environmental Protection Agency (EPA)
- U.S. Food and Drug Administration (FDA)
- European Medicines Agency (EMA)
- The Consumer Product Safety Commission (CPSC)
- Medicines and Healthcare products Regulatory Agency (MHRA)
- National Institute of Health (NIH)
- Pharmaceuticals and Medical Devices Agency (PMDA
- Central Drugs Standard Control Organization (CDSCO)
- United States Department of Veterans Affairs Medicines and Healthcare Products Regulatory Agency
- Institutional Review Boards: ADVARRA, WCG, National Cancer Institute IRB
- State Medical Board of Ohio
- Ohio Board of Nursing
- American Medical Association

OHIO CIVIL RIGHTS COMMISSION (OCRC) AND EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)

We will file formal complaints with the EEOC and/or  OCRC to secure Ms. Collier's private right to sue Kettering Health directly for the discriminatory and retaliatory treatment she was subjected to as an African American woman of color, over the age of 50, with a known disability. Specifically, we will seek statutory, compensatory, and punitive damages under Title VII, 42 U.S.C. § 2000e (race and gender discrimination), Americans with Disabilities Act (ADA), 42 U.S.C. § 1211,  Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 and ORC § 4112.02 (Ohio civil rights protections) and any/all civil tort remedies available at law and equity to compensate Ms. Collier for damages.

NEWS OUTLETS

We have prepared and enclosed a Press Release to be disseminated to the following: NBC, ABC, CBS, CNN, The New York Times, The Washington Post, STAT News, Reuters, The Associated Press, and National Public Radio (NPR). (see attached Exhibit E).

We urge you to take this matter seriously. Ms. Collier has nothing further to lose. The hospital, however,  does. We await your expedient response.

Respectfully,

Mary T. Scott, Esq.
Counsel for Sandra Collier

Attachments:
Exhibit A – Sponsor Letters  (Partial List)
Exhibit B – Evidence Summary and Breach Declaration
Exhibit C – HIPAA Violation Analysis
Exhibit D – Draft Press Release and Media Contact List