**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK**<br><br>Plaintiff,<br><br>v.<br><br>**SANDRA COLLIER, et al.**<br><br>Defendants. | Case No.: 3:25-cv-00273<br><br>Judge Walter H. Rice<br><br>Magistrate Judge Caroline H. Gentry |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY**
**PLAINTIFF'S COUNSEL**

I.       **INTRODUCTION**

On August 15, 2025, Plaintiff Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering") filed a Motion to Disqualify Defendant Mary T. Scott, Esq. ("Attorney Scott") from representing her Co-Defendant, Sandra Collier ("Collier") pursuant to Rules 3.7 and 1.7(a) of the Ohio Rules of Professional Conduct on the grounds that Attorney Scott made herself a necessary witness in this case and that Attorney Scott and Defendant Collier had an unwaivable conflict of interest.

Later in the day on August 15, 2025, Attorney Scott submitted to the Court via email[1] "Defendants' Opposition to Plaintiff's Motion to Disqualify Counsel, Cross-Motion to Disqualify Plaintiff's Counsel, Notice of Counterclaims, and Request for Sanctions."

On August 18, 2025, the Court issued a Scheduling Order directing Defendants to file "[a]ny cross-motion [to disqualify Plaintiff's counsel]…no later than **5:00 p.m. on Tuesday,**

---

[1] This document has not been filed with the Court via PACER.

**August 19, 2025**." (Scheduling Order, Doc. #7, ¶ 2) (emphasis in original). At 5:18 p.m. on Thursday, August 21, 2025—more than two days after the Court's deadline—Defendants filed, without leave of Court, a "Motion in Opposition to Plaintiff's Motion to Disqualify" in which they ask the Court to deny Kettering's motion to disqualify Attorney Scott, order the undersigned to withdraw as counsel, and enter an order staying discovery pending substitution of counsel for the undersigned. (Doc. #8 at PageID 168). For purposes of this brief, Kettering will address Defendants' purported Cross-Motion to Disqualify the undersigned and to stay discovery ("Cross-Motion").[2]

Defendants' Cross-Motion is premised on two non-sensical, wholly unsupported bases: (1) the undersigned "are direct actors in drafting and filing the complaint accusing [Attorney] Scott of extortion" and "are witnesses to the communications with [Kettering] and to the decision not to seal filings" in violation of Prof. Cond. R. 3.7; and (2) the undersigned "conspired with Kettering leadership to suppress whistleblowing, placing its own interests adverse to [Kettering]'s compliance obligations" thereby creating an unwaivable conflict of interest. (Cross Motion, Doc. #8, PageID 167).

Defendants' Cross-Motion is as non-sensical as it is baseless and should be denied.

## II. THE COURT SHOULD DENY DEFENDANTS' CROSS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

As this Court is aware, on August 13, 2025, Kettering, through the undersigned counsel, filed this action against Collier and Attorney Scott, alleging the following claims—as to Collier: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act; (2) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act; (3) violation of the

---

[2] Kettering has addressed Defendants' opposition to Kettering's motion to disqualify Attorney Scott in a separate filing, which is being filed contemporaneously with the Court.

Computer Fraud and Abuse Act; (4) breach of confidentiality agreement; and (5) tortious interference with contract—and as to Attorney Scott: (6) civil extortion.

The basis for Kettering's civil extortion claim against Attorney Scott was a July 28, 2025 letter she sent to Kettering demanding that Kettering pay Collier tens of millions of dollars or else she would disclose alleged clinical misconduct and other alleged violations to regulatory agencies, Sponsors, and media outlets (the "Extortion Letter"). (Ex. F to Compl., Doc. #1-7). Attorney Scott's Extortion Letter gave Kettering five days to respond, threatening that the amount of money Collier would accept "pales in comparison to the financial consequences the hospital will suffer" and the "criminal penalties that will likely be imposed once this information becomes public." (*Id*. at PageID 95). Attorney Scott's Extortion Letter closed with an equally ominous warning: "Ms. Collier has nothing further to lose. The hospital, however, does." (*Id*. at PageID 96).

### A. The Undersigned are Not Necessary Witnesses

Defendants first argue that the undersigned are necessary witnesses to this case in violation of Prof. Cond. R. 3.7 because they "draft[ed] and fil[ed] the complaint accusing [Attorney] Scott of extortion" and "are witnesses to the communications with [Kettering] and to the decision not to seal filings." (Cross-Motion, Doc. #8, PageID 167).

The mere fact that the undersigned counsel represent Kettering with respect to *Kettering's* claim against Attorney Scott does not make the undersigned necessary witnesses in any conceivable plane of reality. It was Kettering's lawful right to assert a claim against Attorney Scott after it received Attorney Scott's Extortion Letter. The undersigned's communications with Kettering regarding that claim are privileged and inadmissible under any plausible interpretation of the law. Unlike Attorney Scott, who destroyed the attorney-client privilege with Collier when she revealed attorney-client communications in the declaration she filed with the Court (*see* Doc.

3

#4-1, ¶¶ 3-4), the undersigned have not waived their attorney-client privilege with Kettering by submitting sworn testimony to the Court nor do they intend to. The factual bases of Kettering's claim against Collier exist solely within the personal knowledge of Kettering and its corporate representatives—not the undersigned.

In short, under Defendants' interpretation of Prof. Cond. R. 3.7, the legal profession would cease to exist. Lawyers would become necessary witnesses incapable of representation every time they filed litigation on behalf of a client. Such an interpretation is absurd and, frankly, sanctionable. Although Defendants have sent the undersigned an unfounded "Rule 11" letter, it is Attorney Scott who has and continues to make "legal contentions" that are not warranted by "existing law or a nonfrivolous argument for extending, modifying,  or reversing existing law or for establishing new law," as well as "factual contentions" that lack "evidentiary support." Fed. R. Civ. P. 11(b)(2), (3).

The undersigned are not necessary witnesses. Defendants' Cross-Motion should be denied.

**B.  <u>There is No Conflict of Interest Between the Undersigned and Kettering</u>**

Defendants' next argument is equally farcical and unsupported by any evidence. Defendants claim that the undersigned "conspired with Kettering leadership to suppress whistleblowing, placing [their] own interests adverse to [Kettering]'s compliance obligations" thereby creating a conflict of interest. (Cross-Motion, Doc. #8, PageID 167). There is no conspiracy, nor has there been a suppression of any whistleblowing activity.

Kettering swiftly took appropriate legal action against Collier for her misappropriation of Kettering's and its clinical trial sponsors' trade secrets and confidential information, which included Collier's sending of such information to a third party—a critical fact that she and Attorney Scott have repeatedly ignored. In the face of such unequivocal evidence, Defendants continue to deflect, claiming that Collier is acting as a whistleblower, which is simply not the case. The reality

is that Collier threatened to report Kettering to regulatory agencies unless it paid her "high eight figures"—in other words, Collier, through Attorney Scott, attempted to unlawfully extort Kettering. Defendants have not behaved in a manner that suggests they are acting out of an interest for the integrity of Kettering's clinical research program. Rather, based on the Extortion Letter, it is Collier and Attorney Scott who appear to be acting solely out of an interest of personal gain.

Having been called out for such unlawful behavior, Defendants have filed a baseless Cross-Motion smacks of retaliatory animus, particularly when Defendants do not even attempt to support their Cross-Motion with any facts or law. Under no circumstances are Kettering and the undersigned directly adverse, nor is there a substantial risk that the undersigned's ability to represent Kettering in this action will be limited. The undersigned's representation of Kettering in this case in no way, shape, or form implicates Prof. Cond. R. 1.7 or any other conflict of interest rule under the Rules of Professional Conduct.

### C. <u>Discovery Should Proceed as Ordered by the Court</u>

In their Cross-Motion, Defendants request that the Court stay discovery "until independent counsel appears for [Kettering]." (*Id*. at PageID 167). Defendants argue that allowing discovery to proceed "while [the undersigned] remain[] personally implicated…risks tainting the evidentiary record, violating privilege, and prejudicing Defendants." Defendants arguments are not well-taken.

The Court's Scheduling Order directs the parties to "serve discovery requests" and "one subpoena" by 5:00 p.m. on Tuesday, August 26, 2025. (Scheduling Order, Doc. #7, ¶ 3). The purpose of such discovery is to assist the parties in preparing for the "Preliminary Injunction Motion." (*Id*. at ¶ 5). Even if the undersigned were conflicted out (they are not), proceeding with discovery would not taint the evidentiary record, violate privilege, or prejudice either party.

Defendants appear to be seeking a stay for no reason other than to delay the proceedings. The Court should reject Defendants' request and allow discovery to proceed as ordered by the Court.

## III.    CONCLUSION

Defendants' Cross-Motion is seen for what it truly is—an ill-advised, frivolous attempt to retaliate against Kettering for taking appropriate, lawful, and well-grounded action against Collier and Attorney Scott. The Court should not countenance such baseless tit-for-tat behavior. The Court should deny Defendants' Cross-Motion to Disqualify Plaintiff's Counsel and allow discovery to proceed.

Respectfully submitted,

*/s/ James G. Petrie*

James G. Petrie (0059446)
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
ctpage@ebglaw.com
*Counsel for Plaintiff*

6

## CERTIFICATE OF SERVICE

I certify that on August 22, 2025, the foregoing *PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL* was filed and served via the Court's electronic filing system on the following:

Mary T. Scott, Esq.
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
mtfoster@trinitylawllc.com
*Defendant and Counsel for*
*Co-Defendant Sandra Collier*

/s/ James G. Petrie
James G. Petrie (0059446)

7