**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – DAYTON**

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE d/b/a KETTERING HEALTH,** | : Case No. 3:25-cv-00273 |
| | |
|   **Plaintiff \| Counter Claim Defendant,** | : Judge Walter H. Rice |
| | : Magistrate Judge Caroline H. Gentry |
| **v.** | : |
| | |
| **SANDRA COLLIER; and MARY T. SCOTT, Esq.,** | : |
| | : |
|   **Defendants Counter Claim/Third-Party Plaintiffs,** | : |
| | : |
| v. | |
| | |
| **EPSTEIN BECKER & GREEN, P.C.** 250 West Street, Suite 300 Columbus, OH 43215 | : |
| | : |
|     **Third-Party Defendant,** | : |
| | |
| **and** | : |
| | |
| **JAMES G. PETRIE, ESQ.** 250 West Street, Suite 300 Columbus, OH 43215 | : |
| | : |
|     **Third-Party Defendant,** | : |
| | |
| **and** | : |
| | |
| **JILL K. BIGLER, ESQ.** 250 West Street, Suite 300 Columbus, OH 43215 | : |
| | : |
|     **Third-Party Defendant,** | : |

and                                        :

**CHRIS T. PAGE MCGINNIS, ESQ.**          :
**250 West Street, Suite 300**
**Columbus, OH 43215**                     :

    **Third-Party Defendant,**            :

and                                        :

**KETTERING ADVENTIST**                    :
**HEALTHCARE d/b/a KETTERING**
**HEALTH,**                                :

    **Counter-Claim Defendant,**          :

and                                        :

**MIKE GENTRY**                            :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

    **Third-Party Defendant,**            :

**DANIEL WOLCOTT**                         :
**3535 SOUTHERN BLVD.**
**Kettering, OH 45429**                    :

    **Third-Party Defendant,**            :

and                                        :

**AUDREY MONDOCK**                         :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

    **Third-Party Defendant,**            :
and

**DR. BRIAN SCHWARTZ**                    :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

      **Third-Party Defendant,**          :

**and**                                    :

**DR. FRANKLIN HANDEL**                    :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

      **Third-Party Defendant,**          :

**and**                                    :

**DR. ALBERT BONNEMA**                     :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

      **Third-Party Defendant,**          :

**and**                                    :

**MARY CONNOLLY**                          :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

      **Third-Party Defendant,**          :

**and**                                    :

**KEN CHAIJ**                              :
**3535 Southern Blvd.**
**Kettering, OH 45429**                    :

      **Third-Party Defendant,**          :

**and**                                    :

**TRISHA TOBE**                            :
**3535 SOUTHERN BLVD.**

Kettering, OH 45429    :

  Third-Party Defendant,  :

          :

**REBEKAH TYRE**    :
3535 Southern Blvd.
Kettering, OH 45429    :

  Third-Party Defendant,  :

**and**         ;

**ANDREA MOLINA**   :
3535 Southern Blvd.
Kettering, OH 45429    :

  Third-Party Defendant,  :

**and**         :

**CHRIS SEGAR**    :
3535 Southern Blvd.
Kettering, OH 45429    :

  Third-Party Defendant,  :

**and**         :

**LESLIE FLORES**    :
3535 Southern Blvd.
Kettering, OH 45429    :

  Third-Party Defendant,  :

**and**         :

**ALLISON DYMACEK**   :
3535 Southern Blvd.
Kettering, OH 45429    :

  Third-Party Defendant.  :

**COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Counter-Plaintiffs: Sandra Collier and Mary T. Scott, Esq. Counter-Defendants/

Third-Party Defendants: Kettering Adventist Healthcare d/b/a Kettering Health ("Kettering");

Epstein Becker & Green, P.C. ("EBG"); James G. Petrie ("Petrie"); Jill K. Bigler ("Bigler");

Chris T. Page McGinnis ("McGinnis"); Mike Gentry ("Gentry"); Daniel Wolcott ("Wolcott");

Audrey Mondock ("Mondock"); Dr. Brian Schwartz ("Schwartz"); Dr. Franklin Handel

("Handel"); Dr. Albert Bonnema ("Bonnema"); Mary Connolly ("Connolly"); Ken Chaij

("Chaij"); Tricia Tobe ("Tobe"); Rebekah Tyre ("Tyre"); Andrea Molina ("Molina"); Chris Seger

("Seager") Leslie Flores ("Flores"); and Allison Dymacek ("Dymacek").

A. **JURISDICTION AND VENUE**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because these claims arise

under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968), the

Whistleblower Protection Act, Title VII, the Americans with Disabilities Act, the Rehabilitation

Act, and 42 U.S.C. § 1981. The Court has supplemental jurisdiction over related state-law claims

under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b) because a substantial part

of the events giving rise to these claims occurred in this District.

B. **PARTIES**

1. Counter-Plaintiff Sandra Collier ("Collier") is a former System Director of Innovation,
   Research, and Grants at Kettering Health, residing in Ohio.

2. Counter-Plaintiff Mary T. Scott, Esq.("Scott") is an Ohio attorney and owner of Trinity
   Law, LLC.

3. Counter-Defendant Kettering Adventist Healthcare d/b/a Kettering Health ("Kettering") is an Ohio nonprofit hospital system that provides standard of care; conducts and oversees clinical research and receives federal funds.

4. Counter-Defendant Epstein Becker & Green, P.C. ("EBG") is a national law firm doing business in Ohio.

5. Counter-Defendants James G. Petrie, Jill K. Bigler, and Chris T. Page McGinnis are attorneys with Epstein Becker & Green, P.C., who acted individually and as agents of Epstein Becker & Green, P.C. and Kettering Health.

6. Counter-Defendant Mike Gentry ("Gentry") was the Chief Executive Officer (CEO) of Kettering Health and at all times relevant herein.

7. Counter-Defendant Daniel Wolcott ("Wolcott") was the President of Acute Care at Kettering Health at all times relevant herein.

8. Counter-Defendant Ken Chaij ("Chaij") was the Executive Director of the Oncology Service Line at Kettering Health at all times relevant herein.

9. Counter-Defendant Tricia Tobe ("Tobe") was the Operations Director, Oncology Service Line at Kettering Health at all times relevant herein.

10. Counter-Defendant Audrey Mondock ("Mondock") was the Chief Compliance Officer (CCO) at Kettering Health at all times relevant herein.

11. Counter-Defendant Dr. Brian Schwartz ("Schwartz) was the Director of the Heart and Vascular Service Line at Kettering Health at all times relevant herein.

12.  Counter-Defendant Dr. Franklin Handel ("Handel") was a Cardiologist at Kettering Health at all times relevant herein.

13. Counter-Defendant Dr. Albert Bonnema ("Bonnema") was the Chief Medical Information Officer (CMIO) at Kettering Health at all times relevant herein.

14. Counter-Defendant Mary Connolly ("Connolly") was the acting System Director of Innovation, Research, and Grants (IRG) at Kettering Health at all times relevant herein.

15. Counter-Defendant Rebekah Tyre ("Tyre") is the Nurse Manager of the Oncology Service Line at Kettering Health at all times relevant herein.

16. Counter-Defendant Andrea Molina ("Molina") was the Operations Manager of Innovation, Research, and Grants (IRG) at Kettering Health at all times relevant herein.

17. Counter-Defendant Chris Seger ("Seger") was the Cardiology Team Lead- Clinical Research Coordinator (CRC) IRG at Kettering Health at all times relevant herein.

18. Counter-Defendant Leslie Flores ("Flores") was a Clinical Research Coordinator, Cardiology Team IRG at Kettering Health at all times relevant herein.

19. Counter-Defendant Allison Dymacek ("Dymacek") was the RN Clinical Research Coordinator IRG at Kettering Health at all times relevant herein.

**C. STATEMENT OF FACTS**

20. On March 3, 2025, Collier underwent a bilateral mastectomy. Collier is a current/active cancer patient of the Kettering Oncology Department. On March 10, 2025, Collier accepted the role of System Director- Innovation, Research, and Grants.

21. On March 12, 2025, Collier attended her 9-day postoperative appointment with her Kettering Oncology-Plastic Surgeon at 9:30 a.m. Collier told her care team (Surgeon, NP ) that she had accepted a job with Kettering as the System Director of IRG. Between 12-2pm, Tyre, the Oncology Nurse Manager (whom Collier had never met), approached 3 IRG staff, asking if they had a new Director. The IRG staff confirmed, stating Collier had not started working yet. Tyre committed a HIPAA Violation against Collier by accessing and disseminating Collier's private health information (PHI); portraying Collier to the IRG staff as "mean" and "narcotic-seeking" (Exhibit A).

22. IRG operations manager Molina participated in this HIPAA violation against Collier, further sharing Collier's PHI across the IRG department and Kettering network. Over the coming weeks, IRG staffers Connolly, Molina, Seger, Dymacek, and Flores furthered this HIPAA Violation against Collier, discussing and disseminating her PHI with Handel, Schwartz, Wolcott, Mondock, Gentry, the Kettering network, and the metro Dayton area. These IRG staffers and Kettering Leadership met several times to collaborate to terminate Collier's employment.

23. Collier began her role at Kettering April 2025. (Exhibit E) Collier noted the 150+ Sponsor Companies for which Kettering conducts clinical research studies. (Exhibit F)

24. In the ordinary conduct of her job duties, Collier identified thousands of patient safety, regulatory and compliance violations across the IRG department: clinical subject safety violations; data-integrity failures; wire/computer fraud; compliance violations; regulatory failures; unequal pay and workloads affecting clinical research coordinators (CRCs) of color; unqualified personnel performing clinical procedures; Staff dosing Investigational Products (IP) without proper delegation;  unreviewed Suspected Unsuspected Serious Adverse Reaction (SUSAR) reports; unreported adverse events; lab reports not reviewed by physicians; a lack of quality-assurance and quality-control policies; outdated standard operating procedures; shared credentials; insufficient authorization controls; failure to follow ALCOA+ Principals (Attributable, Legible, Contemporaneous, Original, Accurate); failure to follow ICH-GCP (Good Clinical Practices); failure to follow Good Documentation Practices (GDP); failures to disclose Conflicts of Interest (COI); improperly handled Investigational Product (IP);  and a wrongly handled data breach. Collier appropriately escalated the noted compliance and safety concerns to Bonnema (CMIO) and Mondock  (CCO). (Exhibits C, D, G, H, I, K, L, M, N, O, P, Q, R, V)

25. Collier noted it is standard practice for the clinical research department (IRG staff) to use personal computers, personal email, and personal printers in the conduct of IRG business. Weekly, the IRG staff work from home and remotely on the Kettering Main Hospital campus. The IRG staff do not have individually assigned laptops.

26. On May 7, 2025, Collier met with Bonnema (CMIO), providing detailed examples of her clinical findings and concerns. Collier requested a department-wide purchase of laptops; Bonnema (CMIO) approved. (Exhibit J)

27. Collier requested an external audit; provided Bonnema with suggestions for departmental improvements; requested CRC/IRG staff certification and training; suggested numerous corrective measures, and multiple QA/QC guardrails. She outlined her plan for implementing the corrections. Bonnema (CMIO) did not support Collier in her role. Collier explained to Bonnema that Kettering IRG has a legal and ethical responsibility to report the variances to the proper regulatory and compliance agencies, as well as the Sponsors. Bonnema failed to support Collier's reform efforts and failed to make appropriate regulatory report.

28. On May 12, 2025, Bonnema accepted 16 phone calls from underperforming IRG staff. Bonnema did not redirect the IRG staff to their Director. Instead, Bonnema commanded Collier, "Cease and Desist Research Audits". Bonnema (CMIO) impeded Collier from conducting the tasks of her role as System Director.

29.  On May 20, 2025, a data breach/security incident occurred against the Kettering network. The IRG staff, including Collier, were directed to use only personal computers, personal email, and alternative Wi-Fi to maintain Kettering operations. Collier preserved internal materials in the conduct of her regular job duties to direct the business of IRG; to support IRG study activities; to facilitate remediation meetings; and for privileged legal consultation.

30. On 02 June 2025, Collier met with Mondock, the Kettering Chief Compliance Officer (CCO) (Exhibit C). Collier presented her findings: subject safety failures, regulatory and compliance violations, systemic ALCOA, GDP, and ICH-GCP violations, wire/computer fraud, and non-compliant electronic signature practices dating back to 1997, etc. (Exhibit D,H). Collier outlined her IRG reform plan: implementing training, discipline, and procedural corrections across IRG.

31. Collier explained to Mondock that Kettering had a legal and ethical responsibility to report the variances to the proper regulatory and compliance agencies, as well as the Sponsors. Mondock failed to support Collier's reform efforts and actively interfered with Collier's implementation of QA/QC guardrails and corrective measures.

32. On June 19, 2025, Collier filed a formal request for Disclosure of Protected Health Information, including the complete medical record, demographic sheet, Imaging/EKG, History and Physical, Labs, and the full report of log-ins/users to Collier's EPIC/ Electronic Medical Record. Kettering has failed to respond. (Exhibit U )

33. In a closed-door conversation on June 19, 2025, Collier was told of the March 2025 HIPAA violation against her. Collier immediately documented the HIPAA Violation to HR and Kettering Leadership. (Exhibit A,E) Kettering Leadership, CMIO, and HR placed Collier on administrative leave that same day.

34. Across several meetings between 07 May 2025 and 26 June 2025, Gentry, Wolcott, Mondock, Schwartz, Handel, Bonnema, Connolly, Chaij, Tobe, Tyre, Molina, Seger, Flores, and Dymacek gathered in person and via zoom. Gentry, Wolcott, Bonnema, and

Connolly gave final approval and signed off on the termination of Collier's employment at Kettering. Collier was advised of her termination on June 29, 2025. (Exhibit E).

35. On July 28, 2025, through counsel, Collier sent a demand letter to Kettering Leadership, detailing the numerous IRG failures, the HIPAA violation, and Priority Reportable Regulatory Agency and FDA Violations. In good faith, Collier requested a meeting to de-escalate the matter, implement a corrective compliance plan, and address the wrongful termination of Collier's employment. Collier attempted to mediate/negotiate with Kettering and EGB several times.

36. EGB misleadingly requested an extension of Colliers' 2-week timeline to 3+ weeks, including August 18, 2025. EGB stated, "Regarding any settlement negotiations, we will need an additional two weeks." Functioning with the intent to remediate and de-escalate, Collier graciously gave EGB the extension. (Exhibit S)

37. EGB/Kettering misleadingly, with ill intent, requested extra time. Rather than meeting with Collier to remedy the situation, on August 14, 2025, Defendants EGB/Kettering initiated an ex parte call to the CRD/Judicial Assistant to Judge Walter H. Rice, leaving the assistant a voicemail seeking an emergency TRO. EGB intentionally misled the court to believe EGB was seeking to negotiate with Collier. EGB did not. EGB made no effort toward negotiations; provided the Judges' chambers false information; misused judicial process; filed an erroneous, retaliatory public complaint against Collier and Scott; secretly sought an inappropriate temporary restraining order; moved to disqualify counsel; and fraudulently accused Scott of extortion. (Exhibit S, T)

## COUNT 1 – CIVIL RICO, 18 U.S.C. § 1962(c)v

38. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–37 as if fully set forth herein.

39. Enterprise and Conduct. Kettering Health, Epstein Becker & Green, P.C., and the individually named actors constituted an association-in-fact enterprise in that they conducted through hospital operations, business interactions, interpersonal communications, and coordinated litigation tactics to conceal regulatory and compliance misconduct, suppress whistleblowing, interfered with Colliers' ability to earn a living, and protect revenue.

40. Pattern and Predicate Acts. Within ten years, Defendants committed at least two related predicate acts: (a) mail and wire fraud, 18 U.S.C. §§ 1341, 1343, by transmitting materially false or misleading research data, safety reports, and compliance attestations to sponsors and others; (b) obstruction of justice, 18 U.S.C. §§ 1503, 1512, by destroying or concealing audit logs and access records and by weaponizing litigation to deter reporting; and (c) retaliation against a witness or informant, 18 U.S.C. § 1513(e), by terminating Colliers employment and branding Plaintiffs as criminals.

41. Causation and Injury. Plaintiffs suffered injury to health, business, property, and reputation, including lost income and clients. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (civil RICO requires injury to business or property); Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 404 (6th Cir. 2012) (Rule 9(b) applies to fraud predicates).

## COUNT 2 – RICO CONSPIRACY, 18 U.S.C. § 1962(d)

42. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–41 as if fully set forth herein.

43. Agreement and Overt Acts. Defendants knowingly agreed to facilitate the § 1962(c) violation. The Kettering defendants committed wire-fraud; met and planned to conceal the wire fraud, regulatory, and compliance violations; interfered with Collier's ability to carry out the duties of her role as Director at Kettering;  following Collier's escalation to the CCO (a legal, compliance officer), they collaborated to put Collier on Administrative Leave, and colluded to terminate her Kettering employment, which interfered with her ability to earn a living.

44. Overt acts included filing a public complaint that accused Collier and Scott of illegal conduct designed to strip Collier of counsel and to stop Scott's advocacy; engaging in ex-parte communication with the Judge's chambers; submitting an "emergency" TRO intended to confiscate the documented evidence of their wrongdoing that Collier had gathered pursuant to her legal and ethical regulatory reporting responsibilities; acting to conceal their wrongdoing, manufacturing a "conflict" in an attempt to disqualify counsel to silence Collier as a legally protected whistleblower.

45. Causation and damages.  As a direct and proximate result of Kettering's behaviors, agreements, and malicious acts, Collier and Scott suffered irreparable emotional, financial, and reputational harm.

## COUNT 3 – OHIO WHISTLEBLOWER PROTECTION, R.C. § 4113.52

46. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1-45  as if fully set forth herein.

47. Protected Reports and Retaliation. Collier made good-faith reports to the Kettering Compliance Officer and Kettering Leadership regarding subject safety failures, Regulatory, Compliance, and FDA violations; failures to follow ICH-GCP, ALCOA, and GDP requirements; and physicians/staff conducting undelegated trial procedures. Collier made report of her findings to Kettering Leadership seeking support of IRG staff training; support implementing QA/QC guardrails; alerting them of the legal and ethical requirements to bring the IRG department into compliance.

48. Kettering retaliated against Collier by interfering with Collier's conduct of  her job responsibilities, ordering her to stop auditing, placing her on administrative leave, and terminating her employment.

49.  Causation and damages. As a direct and proximate result of Kettering's behaviors, agreements, and malicious acts, Collier suffered irreparable emotional, financial, and reputational harm.

## COUNT 4 – WRONGFUL DISCHARGE IN VIOLATION Of PUBLIC POLICY

50. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–49 as fully set forth herein.

51. Clear Public Policy. Ohio public policy prioritizes regulatory compliance, data integrity, subject safety, nondiscrimination, and the protection of whistleblowers. Collier's termination breached these policies.

52. Lack of an overriding justification for their conduct. See Kulch v. Structural Fibers, Inc., 78 Ohio St. 3d 134, 151–53 (1997); Collins v. Rizkana, 73 Ohio St. 3d 65, 69–70 (1995). Collier made legitimate efforts to fulfill her job duties as assigned and expected. Kettering blocked her efforts, shut down her implementation of proper policies and procedures, and excluded Collier from pertinent meetings.

53. To cover their crimes and escape accountability, Kettering retaliated against whistleblower Collier by placing her on administrative leave, terminating her employment, and filing a derogatory, fraudulent public complaint against her.

54. Causation and Damages. As a direct and proximate result of Kettering's conduct, Kettering impeded Collier's ability to make a living. Collier suffered irreparable emotional, physical, and reputational harm and a direct impact to her ability to earn a living.

## COUNT 5 – ABUSE OF PROCESS

55. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–54 as fully set forth herein.

56. Elements and Application. Defendants initiated legal proceedings and used them for an ulterior purpose: intimidation and suppression of whistleblowing. Acts not proper in the regular conduct of proceedings include extrajudicial republication, ex parte communications, and a motion to disqualify filed to violate protected activity. See Yaklevich v. Kemp, Schaeffer & Rowe Co., 68 Ohio St. 3d 294, 298 (1994).

57. Agreement and Overt Acts. Through their relationship as client/counsel, Kettering and EGB knowingly filed a fraudulent and insufficient public complaint against Collier and Scott. Their acts were intended to breach Collier's protected whistleblower status and to manufacture a conflict between Collier and Scott to leave Collier without counsel and to humiliate and tarnish her reputation utilizing the fictitious filing, Further ERB, through Defendant named attorneys engaged an ex parte communication knowing Collier had legal representation to file an emergency TRO for the purpose of taking the evidence Collier had gathered to cover up the unlawful conduct of Kettering as a further retaliatory measure against Collier as a whistleblower and intimidate counsel.

58. Defendants intended to strip Collier of her right to have her chosen counsel by manufacturing a conflict by naming Scott as a defendant in the complaint to disqualify Scott as counsel without lawful basis. Kettering/EGB ignored proper due process by disregarding Collier's attempts to remediate, then falsely telling the court that EGB tried to negotiate.

59. Causation and damages. As a direct and proximate result of Kettering and EGB Defendants' misuse of lawful court processes, Collier and Scott suffered irreparable emotional, financial, and reputational harm.

**COUNT 6 – DEFAMATION PER SE (EXTRAJUDICIAL REPUBLICATION)**

60. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–59 as fully set forth herein.

61. Agreement and Overt Acts. Defendants published and republished false statements accusing Plaintiffs of criminal misconduct to non-party audiences by failing to file the complaint under seal and publicly accusing Plaintiffs of criminal offenses of "theft" and "extortion, damaging their reputation.  Said actions constitute defamation per se causing presumed and special damages, lost clients and revenue. See Hecht v. Levin, 66 Ohio St. 3d 458, 460–61 (1993).

62. Causation and Injury. As a direct result of  Defendants' conduct, Plaintiffs suffered injury to health, business, property, and irreparable harm to their professional and personal reputation, causing lost income and clients.

## COUNT 7 – FALSE LIGHT INVASION OF PRIVACY

63. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–62 as fully set forth herein.

64. Agreement and Overt Acts. Defendants publicized Plaintiffs in a false, highly offensive light with knowledge or reckless disregard for its falsity. See Welling v. Weinfeld, 113 Ohio St. 3d 464, 473 (2007). EGB filed a public complaint against Collier and Scott. EGB misused and abused the judicial process with the intent and design to steal documents evidencing Kettering's wrongdoings as well as Collier's personal cell phone and laptop.

65. Causation and Injury. As a direct approximate result of Defendants' conduct, Plaintiffs suffered injury to health, business, and reputation, including lost income and clients.

## COUNT 8 – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS/EXPECTANCIES (SCOTT)

66. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–65 as fully set forth herein.

67. Agreement and Overt Acts. Scott maintained ongoing client relationships and prospective engagements; Defendants knew and intentionally interfered with our existing as well as perspective client relationships by publicly branding her as a  criminal, accusing her of being an "extortionist" without making such filing  under seal, without lawful basis to do so causing clients to reconsider ongoing representation and prospective clients to withdraw.  See Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St. 3d 171, 176–78 (1999).

68. Causation and Injury. As a direct approximate result of Defendants' malicious conduct Plaintiff suffered injury to her health, business, and reputation, including lost income and clients.

## COUNT 9 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–68 as fully set forth herein.

70. Agreement and Overt Acts. Defendants' extreme and outrageous conduct—including weaponizing the court process to intimidate, undermine, and discredit a whistleblower and her counsel—caused severe emotional distress. See Yeager v. Local Union 20, 6 Ohio St. 3d 369, 374 (1983).

71. Causation and Injury. As a direct and proximate result of Defendants' intentional and malicious conduct Plaintiff Scott suffered severe emotional distress as a result of the

impact and injury to her business, property, and reputation, including the loss of income and clients.

## COUNT 10 – SPOLIATION OF EVIDENCE

72. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–71 as fully set forth herein.

73. Agreement and Overt Acts. Kettering knew litigation was probable upon receipt of the demand. On information and belief, it destroyed or failed to preserve QA/QC records, access logs, and emails, disrupting Plaintiffs' case and causing damages. See Smith v. Howard Johnson Co., 67 Ohio St. 3d 28, 29–30 (1993).

74. Causation and Injury. As a direct approximate  result of Defendants' conduct Plaintiff suffered injury to Colliers' legally required access to her own PHI causing irreparable harm affecting her health and reputation, including lost income.

## COUNT 11 – CIVIL CONSPIRACY

75. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–74 as fully set forth herein.

76. Agreements and Overt Acts. Defendants maliciously combined to commit unlawful acts, including abuse of process, defamation, intentional infliction of emotional distress, and concealment of regulatory violations, causing injury. See Kenty v. Transamerica Premium Ins. Co., 72 Ohio St. 3d 415, 419 (1995). EGB and Kettering filed a frivolous, unsupported lawsuit against Plaintiffs Collier and Scott. Kettering Leadership and staff collaborated to commit numerous subject safety infractions; committed countless

regulatory and compliance violations; failed to implement proper Standard Operating Procedures; and are more than 27 years late implementing an appropriate platform of signatory. In an effort to hide these violations, Kettering/EGB conspired against Collier and terminated her employment for the purpose of concealing their wrongdoing and impede protected whistleblower activity.

77. Causation and Injury. as a direct and approximate result of Defendants' joint efforts to conceal the pervasive wrongful conduct and deterring Plaintiff's whistleblower activities by terminating Collier, she suffered injury to health, employment, future business, and reputation, including lost income and clients .

## COUNT 12 – UNAUTHORIZED DISCLOSURE OF MEDICAL INFORMATION / BREACH OF CONFIDENTIALITY

78. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1-78 as fully set forth herein.

79. Agreement and Overt Acts. Numerous Kettering personnel accessed, discussed, and disseminated Collier's confidential medical information without authorization, causing harm. See Biddle v. Warren Gen. Hosp., 86 Ohio St. 3d 395, 401 (1999).

80. Kettering staff knowingly engaged in a HIPAA Violation against Collier. This undermined Collier's ability to effectively communicate across internal and external stakeholders. Kettering staff and Leadership used Colliers PHI to discriminate against her and misrepresent Colliers' physical and emotional health.

81. Causation and Injury. As a direct and proximate result of defendants wrongful conduc, Plaintiff suffered injury to physical health, employment, and reputation, including lost income and future clients.

### COUNT 13 – DECLARATORY AND INJUNCTIVE RELIEF

82. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–81 as fully set forth herein.

83. Agreements and Overt Acts. An actual controversy exists regarding the legality of Defendants' conduct and ongoing retaliation and disparagement. Plaintiffs seek a permanent injunction requiring cessation of retaliation; retractions to extrajudicial recipients; preservation and production of research records and access logs; adoption of a remedial compliance plan; non-disparagement and non-interference with Scott's practice; and notifications consistent with law. See 28 U.S.C. §§ 2201–2202; Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980).

### COUNT 14 – TITLE VII RETALIATION, 42 U.S.C. § 2000e-3(a)

84. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–55 as fully set forth herein.

85. Agreements and Overt Acts. Collier engaged in protected activity by exposing wire fraud, opposing discrimination, and reporting compliance failures. Kettering knew; adverse actions followed, with but-for causation shown by temporal proximity and hostile responses. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

86. Causation and Injury. As a direct and proximate result of  Defendants unlawful conduct, Plaintiff suffered injury to health, business, property, and reputation, including lost income and clients.

### COUNT 15 – OHIO REV. CODE CHAPTER 4112
### (DISCRIMINATION/RETALIATION)

87. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–86 as if fully rewritten herein.

88. Kettering discriminated and retaliated against Collier in violation of R.C. 4112.02(A), (I), with remedies under R.C. 4112.99.  Kettering treated Collier  unfavorably and disparate treatment (intentional) and/or based on a protected characteristic under federal or state law.

89. Further Kettering took adverse action against Collier because she engaged in a legally protected whistleblower activity by suspending and terminating her after reporting violations and regulatory misconduct,

90. Causation and Injury. As a direct and proximate result of Defendants' wrongful conduct Plaintiff suffered injury to health, business, property, and reputation, including lost income and clients.

### COUNT 16 – 42 U.S.C. § 1981 (RACE DISCRIMINATION/RETALIATION)

91. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1-90 as if fully rewritten herein..

92. Collier's employment is a contractual relationship protected by § 1981. Kettering terminated and blacklisted her because of her race and for opposing racial discrimination. See <u>CBOCS W., Inc. v. Humphries,</u> 553 U.S. 442, 446–57 (2008).

93. Causation and Injury. As a direct and proximate result of Defendant Kettering discriminatory treatment Plaintiff suffered injury to health, business, property, and reputation, including lost income and clients.

## COUNT 17 – ADA AND REHABILITATION ACT

94. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–93 as if fully rewritten herein..

95. Collier is a qualified individual with a disability as a current Cancer patient treating at Kettering Oncology Center . Kettering used and disclosed her medical status to discredit her, failed to accommodate, and retaliated against her, violating 42 U.S.C. § 12112 and 29 U.S.C. § 794.

96. Causation and Injury. As a direct and proximate result of Defendants  discriminatory conduct Collier suffered injury to health, business, property, and reputation, including lost income and clients.

## COUNT 18 – TITLE VII DISPARATE TREATMENT (RACE/SEX)

97. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–96 as if fully rewritten herein.

98. Collier is a Black woman who was qualified and performing her job. She was blocked from duties; meetings were canceled; and she was terminated, while similarly situated underperforming white predecessors were treated more favorably. Kettering's explanations are pretextual.

99. Causation and Injury. Collier suffered injury to health, business, property, and reputation, including lost income and clients.

### COUNT 19 - PUNITIVE DAMAGES

100. Incorporation by Reference. Counter-Plaintiffs incorporate ¶¶ 1–99 as if fully rewritten herein.

101. In Ohio and federal law, punitive damages are awarded to punish egregious conduct and deter similar behavior, not to compensate the plaintiff.  Under Ohio Rev. Code § 2315.21(C), punitive damages are recoverable where the plaintiff proves by clear and convincing evidence that the defendant acted with Actual Malice — hatred, ill will, or a spirit of revenge; or Conscious Disregard — intentional conduct creating a great probability of substantial harm to others." Preston v. Murty, 32 Ohio St.3d 334, 336 (1987).

102. Defendants' Conduct Toward Collier. Regulatory Misconduct Endangering the Public. Kettering ignored repeated reports of FDA, ICH-GCP, HIPAA, and sponsor violations. Unqualified individuals conducted clinical procedures, including blood draws causing patient injuries. Forged signatures and falsified CTMS records jeopardized the safety of

patients and invalidated data relied upon by hundreds of pharmaceutical and device companies.

103. Retaliation and Malice. After Collier lawfully reported deficiencies, Defendants: Terminated her without cause. Labeled her a "data thief" and falsely accused her of stealing protected health information. Violated her personal HIPAA rights by disclosing her cancer diagnosis and double mastectomy to unauthorized third parties. Defendants' intent was to destroy her reputation and silence her warnings.

104. Discriminatory Conduct. As a 54-year-old woman of color, Collier suffered systemic discrimination: Unequal pay for similar roles. Retaliation-based stress causing medical leave among other women of color. Constructive dismissal of diverse employees in the research department.

105. Great Probability of Substantial Harm. Kettering's misconduct has compromised thousands of patient safety outcomes and hundreds of millions of dollars in research funding. Their conscious choice to silence Collier while continuing these practices demonstrates reckless indifference to both public safety and federal compliance mandates. Collier is Entitled Punitive Damages.

106. Defendants Conduct Towards Scott. Bad Faith Litigation Tactics: Kettering & EBG through counsel improperly named you personally as a defendant to intimidate and disqualify Scott from representing Collier. They filed an unsealed complaint accusing you of crimes (extortion, theft) without evidentiary basis, damaging your professional reputation and causing irreparable harm with prospective clients.

107. Abuse of Process. Instead of addressing regulatory violations, Kettering & EBG weaponized litigation: Sought TROs and gag orders to silence Scott and Collier. Publicly alleged criminal conduct knowing these claims lacked merit. Orchestrated conflicts of interest to forcibly remove counsel.

108. Actual Malice. Naming Scott as a defendant without legal justification, coupled with defamatory allegations, demonstrates hatred, ill will, and a spirit of revenge. Federal courts recognize that punitive damages are appropriate where defendants weaponize litigation to destroy reputations and chill protected advocacy. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432 (1996).

109. Scott's claims for punitive damages derive from: Defamation — public filings accusing you of crimes. Abuse of Process — using litigation to silence and disqualify you. Intentional Infliction of Emotional Distress — subjecting you to reputational, professional, and emotional harm. Preston v. Murty, 32 Ohio St.3d 334 (1987) — punitive damages available for malicious intent. Wright v. Suzuki Motor Corp., 204 F. Supp. 2d 1314 (S.D. Ohio 2002) — punitive damages appropriate where conduct demonstrates reckless disregard for plaintiff's rights. Moskovitz, supra — punitive damages supported where defendants knowingly disseminate falsehoods to suppress lawful disclosure. Scott is entitled to punitive damages.

**APPENDIX A – FEDERAL REPORTING TIMELINES (FDA / ICH-GCP / HIPAA)**

• IND Safety Reports: unexpected fatal or life-threatening suspected adverse reactions reported within seven days; other serious and unexpected events within fifteen days. 21 C.F.R. § 312.32(c)(1)(i)–(ii).

• IDE Device Effects: unanticipated adverse device effects reported within ten working days. 21 C.F.R. § 812.150(b)(1).

• IRB Prompt Reporting: unanticipated problems involving risks to subjects or others must be promptly reported. 21 C.F.R. § 56.108(b)(2).

• Investigator Responsibilities and Records: Investigators must protect subjects, follow the protocol, and maintain accurate, complete, and current records. 21 C.F.R. §§ 312.60, 312.62.

• Monitoring and Noncompliance: sponsors and monitors must oversee compliance and handle deviations. ICH E6(R2) §§ 4.11, 5.18.4.

• HIPAA Breach Notification: without unreasonable delay and no later than sixty days after discovery. 45 C.F.R. § 164.404.

**TABLE OF EXHIBITS**

Exhibit A      HIPAA Complaint

Exhibit B  Formal HR Complaint against Molina

Exhibit C  Emails between Collier and Bonnema

Exhibit D  Emails between Collier and Mondock

Exhibit E  Collier HR: LOH, Administrative Leave, LOT, Severance Offer

Exhibit F  Sponsor  List

Exhibit G  Subject Safety, Wire Fraud, Credentialing Sharing

Exhibit H  PI Statement/Director statement

Exhibit I  ISF, Regulatory Deficiencies

Exhibit J  Purchase approval: Laptops & Compliant signature platform

Exhibit K  Subject Safety: Physician dosing drug against Sponsor/PI Agreement and without delegation

Exhibit L  ALCOA, GDP, GCP violations: Delegation and Training Logs

Exhibit M  ALCOA, GDP, GCP violations: PI CVs

Exhibit N  Subject Safety, Discrimination: IRG Team Workload/Salary inequalities

Exhibit O  Failure to disclose Conflict of Interest

Exhibit P  Improper handling of the Investigational product (IP)

Exhibit Q  Failed Investigator Agreement, Standard of Care Statement

Exhibit R    ALCOA, GDP, GCP violations: 2017 unsigned document

Exhibit S    EGB Failure to Negotiate

Exhibit T    EGB ex-parte communication w/Judges' chambers & threat against Collier

Exhibit U    Deficient SUSAR review

Exhibit V    AE/SAE/SUSAR reporting irregularities

Exhibit W    IRG Understaffed, CRCs undertrained

Exhibit X    Demand Letter to Kettering (28Jul2025)

## DAMAGES AND PRAYER FOR RELIEF

Based upon the foregoing, Counter-Plaintiffs Sandra Collier respectfully requests judgment against all Counter-Defendants, jointly and severally, awarding:

1. Back pay, front pay, and make-whole relief.

Counter-Plaintiffs Sandra Collier and Mary T. Foster, Esq. respectfully request judgment against all Counter-Defendants, jointly and severally, awarding:

2. Compensatory damages for reputational, emotional, and other harms;

3. Exemplary damages (where applicable and permitted)

4. Punitive damages (where appropriate and permitted);

5. Treble damages and attorneys' fees and costs under 18 U.S.C. § 1964(c);

6. Declaratory and injunctive relief as pled;

7. Fees and costs under applicable fee-shifting statutes; and

8. Attorney fees along with such other and further relief as the Court deems just and proper.

Counter-Plaintiffs expressly reserve all affirmative defenses and the right to seek sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, this Court's inherent authority, and Southern District of Ohio Local Rule 83.3(b).

Respectfully submitted,


**/s/ Mary T. Scott, Esq.**

Mary T. Scott, Esq.
Trinity Law, LLC
7710 Reading Rd., Suite 102
Cincinnati, OH 45237
(513) 953-2499
mtfoster@trinitylawllc.com
*Counsel for Defendants and Counter-Plaintiffs*
*Sandra Collier and Mary T. Scott, Esq (Pro se)*


### CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, the foregoing integrated filing was submitted for electronic filing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record who are registered CM/ECF users.

/s/Mary T. Foster, Esq.

Mary T. Foster, Esq.