# EXHIBIT A



Kettering Health Main Campus

3535 Southern Blvd.
Kettering, OH 45429
(937) 298-4331

ketteringhealth.org

Kenneth Chaij, Executive Director Oncology Service Line
Tricia Tobe, Clinical Director Oncology Services
Dr. Bonnema, Chief Medical Information Officer
Archie Jones, Human Resources Manager-KHMC

June 19, 2025

Greetings All,

Please accept this communication as a **Formal Written Complaint** against **Rebekah Tyre and Andrea Molina**. Neither are members of my care team. This document will be delivered in-person and via certified mail.

On or about 12Mar2025, Ms. Tyre had a conversation with Ms. Molina (in front of others) citing the below detailed information. Ms. Molina further shared this information with and additional IRG staff. At the time Ms. Collier was a private patient. Ms. Collier had a pending contract to accept the role Director of IRG. The details discussed include but are not limited to:

- Your new Director (Sandra Lee Collier) is a patient of KHCC oncology department.
- She (Ms. Collier) is a breast cancer patient.
- She (Ms. Collier) had a bilateral mastectomy earlier this month.
- She (Ms. Collier) is mean to the staff.
- She (Ms. Collier) demands narcotics but comes to appointments in high heel shoes.

Rebekah Tyre and Andrea Molina has caused me and many on my team undue stress and irreparable harm. This spread of gossip is the foundation of many current IRG performance failures and lack of collaboration. This behavior is gossiping, bullying, fear mongering, and includes many false statements. My complaints against Ms. Tyre and Ms. Molina include but are not limited to:

1. **HIPAA Violation**- openly discussed personal protected health information (private citizen/employee)
2. **Menacing**- behavior of both employees was intended to be menacing to Ms. Collier
3. **Slander**- several statements are false and the behavior of both was intended to slander Ms. Collier
4. **Hostile Work environment**- behavior of both created a hostile workplace for a new employee.

Respectfully,

Sandra Lee Collier

System Director- Innovation, Research, and Grants

Sandra.collier@ketteringhealth.org

# EXHIBIT B



3535 Southern Boulevard
Kettering, OH 45429
937.298.4331
ketteringhealth.org

17Jun2025

Mike Gentry, Chief Executive Officer
Dr. Bonnema, Chief Medical Information Officer
Archie Jones, Manager-HR Main Campus
Garth Gabriel, Director Human Resources

Good morning,

**Please accept this letter as a Formal Complaint.**
Andrea Molina has caused me and many on my team undue stress, irreparable harm, and is a continual workplace distraction with her underperformance, bullying, fear mongering, inattention to the work at hand, and by filing false claims with the CMO and Human Resources Department. My complaints include but are not limited to:

1. **Workplace Bullying and Harassment** thru <u>continuous unmerited and</u> <u>unsubstantiated complaints</u> to Human Resources and our CMO Dr. Al Bonnema about me and other employees of color or protected status.
2. **Fraud** by <u>misrepresenting</u> herself as a Kettering Health employee authorized to conduct background checks, conducting information gathering, and researching me (System Director) without verbal or written consent; all with ill intent.
3. **Unprofessionalism**: <u>lacking knowledge</u> of the proper conduct of clinical research studies, <u>making unfounded disparaging remarks</u> about me (the System Director of IRG) to site visitors (monitor).
4. **Bullying** by sending many emails citing <u>FAKE quotes</u> and misrepresenting facts; insinuating the I have excluded her from details, information, and tasks during the Technology Breach. (Said tasks are all the responsibility of the Director, none of these tasks belong to the Ops Manager)
5. **Retaliation** by making *false claims* to HR/CMO about my knowledge of Clinical Trial Conduct and information contained on my CV ***after*** I alerted the CMO, HR, and Kettering Health Compliance Officer of the <u>inefficiencies, deficits, and fraud</u> occurring by Ms. Molina and her direct reports.
6. **Creating a Hostile Workplace** that is <u>intimidating, hostile and abusive</u> to me and other women of color and one having impaired mental processing capabilities.
7. **Violation of Privacy, Discussion/Disclosure of protected health information, and Invasion of Privacy** by accessing, reviewing, and disseminating my private, protected health information, gaining access to it via Kettering Health portals.

I have requested intervention numerous times. I have expressed to HR and my CMO this hostile work environment is adversely affecting my physical, emotional, and mental health. Meetings have been set but Ms. Molina has been allowed to cancel them. Kettering Health has not appropriately corrected or disciplined Ms. Molina thus her behavior continues. As I feel I have exhausted all possible remedies, I am filing this **Formal Official Complaint.**

**Respectfully, Sandra Lee Collier**

# EXHIBIT C

Get <u>Outlook for iOS</u>

---

**From:** Bonnema, Albert (MD) <Albert.Bonnema@ketteringhealth.org>

**Sent:** Wednesday, April 30, 2025 3:38:11 PM

**To:** Collier, Sandra <Sandra.Collier@ketteringhealth.org>

**Cc:** Collins, Sandi <Sandi.Collins@ketteringhealth.org>

**Subject:** 1:1 Meeting and Research Strategy

Sandra

Sandi, my EA, will be reaching out to you to schedule a 1:1 meeting as soon as possible. I hope you are coming to the Research Strategy meeting tomorrow afternoon in our Corporate office at Prestige Plaza. I will be out on Friday.

My first words of advice, many patients are coming to Kettering Health because we offer healthcare services and research that are the only hope for some patients and families – your team is an enabler for that care – you have a sacred duty.

v/r

DrB

**Albert (Al) Bonnema, MD MPH FAAFP FAMIA**
Chief Medical Information Officer
Kettering Health
O: (937) 384-4847

 Outlook

## Fw: 1:1 Meeting and Research Strategy

**From** Collier, Sandra <Sandra.Collier@ketteringhealth.org>

**Date** Thu 6/26/2025 8:05 PM

**To** Sandra Lee Collier <collierclinicalresearch2@gmail.com>

**Respectfully,**

Sandra Lee Collier

**Sandra Lee Collier, BSc, ACRP, SOCRA**
**System Director- Innovation, Research, and Grants**

*Kettering Health Office of Innovation, Research, & Grants*

3535 Southern Blvd. Kettering, OH 45429

Office: (937) 298-4331

Cell: (937) 607-7079/ Personal Cell (313) 575-9557

sandra.collier@ketteringhealth.org



*Explore our clinical research options*:
Clinical Research | Kettering Health

**From:** Collier, Sandra <Sandra.Collier@ketteringhealth.org>
**Sent:** Monday, May 5, 2025 12:38 AM
**To:** Bonnema, Albert (MD) <Albert.Bonnema@ketteringhealth.org>
**Cc:** Collins, Sandi <Sandi.Collins@ketteringhealth.org>; Collier, Sandra <Sandra.Collier@ketteringhealth.org>
**Subject:** Re: 1:1 Meeting and Research Strategy

Hi Dr. Bonnema,

I look forward to meeting with you this coming week. Yes, the IRG Team is primary in the conduct of quality Clinical Trials at Kettering Health. Both of my parents died from Cancer. Each of them participated in clinical trials that extended their lives and improved their quality of life as they fought Cancer. I'm excited to continue the commitment to accuracy and excellence as I lead the IRG Team. The best Directors are solidly embedded in their team working side-by-side. And I'm one of the best! Have a great weekend!

# Collier, Sandra

| | |
|---|---|
| **From:** | Collier, Sandra |
| **Sent:** | Monday, May 12, 2025 5:33 PM |
| **To:** | Bonnema, Albert (MD) |
| **Cc:** | Jones, Archie; Mondock, Audrey; Kimes, Jessica; Collier, Sandra |
| **Subject:** | RE: Cease and Desist on Research Audits |

Hi Dr. Bonnema,

I am not conducting an "audit".

I am pulling together information for our meeting tomorrow.

I requested information from each CRC. Most happily obliged.

Your request is well heeded. Thank you.

**Respectfully,**

*Sandra Lee Collier*

**Sandra Lee Collier, BSc, ACRP, SOCRA**
**System Director- Innovation, Research, and Grants**

*Kettering Health Office of Innovation, Research, & Grants*
3535 Southern Blvd. Kettering, OH 45429
Office: (937) 298-4331
Cell: (937) 607-7079/ Personal Cell (313) 575-9557
sandra.collier@ketteringhealth.org



*Explore our clinical research options:*
Clinical Research | Kettering Health

---

**From:** Bonnema, Albert (MD) <Albert.Bonnema@ketteringhealth.org>
**Sent:** Monday, May 12, 2025 4:34 PM
**To:** Collier, Sandra <Sandra.Collier@ketteringhealth.org>
**Cc:** Jones, Archie <Archie.Jones@ketteringhealth.org>; Mondock, Audrey <Audrey.Mondock@ketteringhealth.org>;
Kimes, Jessica <Jessica.Kimes@ketteringhealth.org>
**Subject:** Cease and Desist on Research Audits

Sandra
At Kettering Health, Compliance investigates allegations of research misconduct. You have brought some very serious issues to my attention. Please do not perform any further audits or reviews while Compliance investigates your concerns.
Thanks

**Albert (Al) Bonnema MD MPH**
Chief Medical Information Officer
CMO

# EXHIBIT D

7/1/25, 7:31 PM                                    Gmail - Re: Research Integrity

 **Gmail**                    Sandra Lee Collier <collierclinicalresearch2@gmail.com>

## Re: Research Integrity
4 messages

**Collier, Sandra** <Sandra.Collier@ketteringhealth.org>          Sun, May 18, 2025 at 11:27 AM
To: "Mondock, Audrey" <Audrey.Mondock@ketteringhealth.org>, "Pershing, Michelle"
<Michelle.Pershing@ketteringhealth.org>
Cc: "Baldwin, Sandy" <Sandy.Baldwin@ketteringhealth.org>, "Collier, Sandra" <Sandra.Collier@ketteringhealth.org>,
"Jones, Archie" <Archie.Jones@ketteringhealth.org>, "Gabriel, Garth" <Garth.Gabriel@ketteringhealth.org>

Hi Audrey,
Thank you for your email. Yes, I'm happy to meet with you. I accepted this position at Kettering Health with enthusiasm
and excitement. My goal was to collaborate with the team to ensure proper study conduct and expand the department
further. This department can easily provide $750,000 to $1.5million in annual revenue to KHN. (Yes, I can show ROI) But
we must do it right.

I'm majorly concerned that certain team members are intentionally refusing me access to properly QC information
impeding my role as Director IRG. I have brought forth many suggestions to improve the integrity of our department. I'm
appalled at the slander, interference, and malicious behavior diverting attention away from proper study conduct in
response to me simply trying to bring our department into compliance. Additionally, I was taken aback by the "Cease and
Decease" email I received from Dr. Bonnema thus interfering with me preparing for a meeting with HR and him. I have
also shared many specific details with Michelle Pershing, HR, and Dr. Al Bonnema.

I will forward a copy of an email I sent to the IRG Team defining my concerns and a couple solutions we need to enact
for proper study coverage. I have been told by the bad actors (Andrea, Allison, Chris, and Leslie) that Mary Connelly and
Dr. Al Bonnema have directed the team to "stay home" and "no, you don't have to listen to her". (Sandra)

Please set a meeting at your earliest convenience. I look forward to a thorough review and the ability to respectfully
move forward. I'd prefer to meet with you in person. Thanks again. Happy Sunday!

Get Outlook for iOS

---

**From:** Mondock, Audrey <Audrey.Mondock@ketteringhealth.org>
**Sent:** Sunday, May 18, 2025 8:19 AM
**To:** Collier, Sandra <Sandra.Collier@ketteringhealth.org>
**Cc:** Baldwin, Sandy <Sandy.Baldwin@ketteringhealth.org>
**Subject:** Research Integrity

Hi Sandra,

I hope you're having a nice weekend. I am reaching out to you as a follow up to the email Dr. Bonnema sent earlier this week. I was on PTO for a few days.

I am available to meet if you have concerns that have not been addressed/resolved about the way we are conducting research, the integrity of our
documentation, etc. Please let me know if you'd like us to schedule a meeting.

Thanks!

**Audrey Adams Mondock**

Chief Compliance Officer/Vice President, Corporate Integrity

Compliance



|                              | O 937-762-1431           |
|------------------------------|--------------------------|
|                              | F 937-762-1039           |
|                              | ketteringhealth.org      |

**KH Confidentiality Notice**

*This email may contain legally privileged and confidential information from Kettering Health intended only for the individual or entity named above as the intended recipient. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of this communication is prohibited. If you received this communication in error, please notify us by email and promptly delete the original message.*

# EXHIBIT E

# Kettering HEALTH

March 10, 2025

Dear Sandra,

I am pleased to offer you a role as Director serving the area of Innovation & Research. This role reports to Dr. Albert Bonnema, CMIO. It is full-time, exempt, and 80-hours per pay period. The compensation for your efforts in this position will be $80.92/Hour ($168,300 annually).

In addition, we are offering you the following taxable incentive(s). Corresponding agreements will be available for your review and signature prior to your start date.

- USD $15,000.00 Sign-on Bonus with a 2 years work commitment

This offer is contingent on your agreement to obtain a doctoral degree within 5 years 6 months of hire. You are required to provide proof of completion to Human Resources within that timeframe. If proof is not provided, the mandatory requirements section of the KH-Conduct and Discipline Policy may apply.

In this role, you will be eligible to participate in the Key Result Areas (KRA) Bonus Plan, which includes; Employee Engagement, Patient Experience, Quality, and Finance. In this team-based bonus plan, all leaders have the responsibility and privilege to impact these areas. Your bonus percent ranges from **0-18%**, based on the organization's percentage KRA achievement. The bonus is prorated based on your hire date for payment in the following year.

Additionally, with this position comes an extensive benefits package outlined below:

- Medical & Dental benefits
- Disability, both short and long term
- Life Insurance coverage at 2x the annual salary (core)
- Pay for Performance – Key Results Incentive Plan
- Eligibility for participation in the KH retirement plan

Your employment is contingent upon, but not limited to successfully completing the following: pre-employment physical and background investigative report.

Kettering Health is looking forward to supporting your success. We are confident you will find the position both challenging and rewarding. We look forward to serving with you as we strive to fulfill our mission within this community.

Sincerely,

Signed by Sandra Collier | COLLIERCLINICALRESEARCH2@GMAIL.COM | 3/10/2025 7:13:07 PM EDT | 104.230.72.249

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 13 of 27 PAGEID #: 299

 Gmail                          Sandra Lee Collier <collierclinicalresearch2@gmail.com>

## IRG/ Admin Leave/ Formal Explanation Request

1 message

**Sandra Lee Collier** <collierclinicalresearch2@gmail.com>            Thu, Jun 19, 2025 at 5:08 PM
To: archie.jones@ketteringhealth.org, Albert.Bonnema@ketteringhealth.org, Sandra Lee Collier
<collierclinicalresearch2@gmail.com>

Hi Gentlemen,
Please provide me in writing here in specificity a detailed explanation for putting me on Administrative Leave. Thank
you.

Respectfully,

**Sandra Lee Collier**
Sandra Lee Collier,



 Outlook

## Administrative Issues

**From** Bonnema, Albert (MD) <Albert.Bonnema@ketteringhealth.org>

**Date** Thu 6/19/2025 5:46 PM

**To** Garber, Kathren <Kathren.Garber@ketteringhealth.org>; Geyer, Daniel <Daniel.Geyer@ketteringhealth.org>; Wiggins, Alexandra <Alexandra.Wiggins@ketteringhealth.org>; Flores, Leslie <Leslie.Flores@ketteringhealth.org>; Applegate, Kamara <Kamara.Applegate@ketteringhealth.org>; Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>; Seger, Chris <Chris.Seger@ketteringhealth.org>; Kemper, Anna <Anna.Kemper@ketteringhealth.org>; Jones, Jacob <Jacob.Jones@ketteringhealth.org>

**Cc** Pershing, Michelle <Michelle.Pershing@ketteringhealth.org>; Jones, Archie <Archie.Jones@ketteringhealth.org>

Sandra and Andrea will not be available by call, online, etc. We will need to identify gaps in responsibilities that need to be covered during this time. I will come over tomorrow morning to work with Michelle.

Thank you for your support to our patients, providers, and KH and we'll work together on a way forward.
drb

## Albert (Al) Bonnema MD MPH

Chief Medical Information Officer

CMO



O 937-384-4847

ketteringhealth.org

## PURPOSE:

The purpose of this policy is to define the guidelines regarding employee conduct and discipline.

## DEFINITIONS:

Human error: Inadvertently doing other than what should have been done: a slip, lapse or mistake.

At-Risk Behavior: Behavioral choice that increases risk where risk is not recognized or is mistakenly believed to be justified.

Reckless Behavior: Behavioral choice to consciously disregard a substantial and unjustifiable risk.

Coaching: Development process designed to help employees achieve and sustain top performance.

Corrective/Disciplinary Action: A process for dealing with job-related behavior that does not meet expected and communicated performance standards.

Last Chance Agreement: A document outlining necessary improvements needed to maintain employment. Any violation after receiving this document will result in termination. There is no Disciplinary Period associated with a last chance agreement.

Disciplinary Period: A one-year period of time following the last disciplinary action.

Action Plan: A documented plan to guide employees on how to improve performance/behavior. The plan may include elements such as current and expected performance, timelines, measures of performance improvement, and/or potential outcomes based on whether enough improvement is achieved as determined by department leadership. This document is completed and attached at each level of discipline excluding attendance.

Introductory Period: A six-month period following the date of hire for employees or effective date of transfers and promotions, in which performance is observed to determine how well the employee is meeting the requirements and expectations of the job.

## POLICY:

Kettering Health's (KH) progressive discipline policy and procedures are designed to provide a structured corrective action process to improve and prevent a recurrence of undesirable employee behavior and performance issues.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 16 of 27 PAGEID #: 302

KH expects all employees to fulfill performance expectations, to comply with standards of behavior, KH policies, procedures, and to act respectfully and courteously at all times during all interactions with others. When an employee's job performance, professional conduct, adherence to safety guidelines or other policy-related issues fail to meet standards, as determined by the employee's department leader, the employee may receive coaching or discipline until the performance, conduct, or safety concerns(s) are addressed and sufficiently improved. The acts listed in Exhibit "A", although not all inclusive, constitute a violation of conduct. The following items should be considered when choosing the appropriate level of discipline:

1. Corrective actions previously given;

2. Documented performance discussions;

3. Recommendations as a result of a Just Culture event investigation;

4. Previous performance evaluations;

5. Overall work history at KH;

6. Introductory period;

7. Disciplinary period.

Corrective Action Steps

KH utilizes a progressive, corrective action process in order to assist the employee in correcting the identified problem. Corrective action at the Initial Warning level and above must be reviewed by a representative from Human Resources (HR). Corrective Action typically includes the following levels and requires an action plan associated with each level:

1. Initial Warning - a documented disciplinary action concerning the alleged policy violation or misconduct.

2. Written Warning - a documented disciplinary action regarding the continued policy violations or misconduct which place the employee on notice of the seriousness of the action.

3. Final Written Warning - a documented disciplinary action regarding the continued policy violations, misconduct, or a severe violation which place the employee on notice of the seriousness of the action. This discussion places the employee on notice that further policy violations and/or misconduct will result in termination of employment.

4. Termination of Employment - discharge of employment for continued policy violations, misconduct, OR the commission of a single, serious violation will be determined at the discretion of KH, depending on the circumstances involved. The discharge must be reviewed and supported by a representative from HR prior to taking action.

---

**Kettering Health (KH) Organization-Wide Policy**
KH adopts this policy for KH Main Campus, KH Miamisburg, KH Dayton, KH Washington Township, KH Greene Memorial, Soin Medical Center, KH Hamilton, KH Troy, KH Medical Group, KH Transportation Services, all hospital off-sites and KH facilities, KH Senior Living, and KH System Services.

The Action Plan and Discipline documents can be found on myHR.

KH reserves the right to combine or skip steps depending on the facts of each situation and the nature of the offense. Some of the factors that will be considered are whether the offense is repeated despite coaching, counseling or training, the employee's work record, successful completion of introductory period, successful completion of disciplinary period, and the impact the conduct and performance issues have on the organization. Some offenses may be egregious enough to warrant immediate termination.

After receiving corrective action at the initial warning or above, the employee will be subject to a one-year disciplinary period. However, even after the disciplinary period has passed prior disciplinary history or patterns of behaviors may still be taken into account when determining appropriate level of discipline. The discipline forms remain in the employee's file during their entire tenure with the organization, unless an appeal decision overturns a discipline level. If an employee receives a Last Chance Agreement, that Agreement remains active with that employee throughout their tenure.

Nothing in this policy creates, or should be construed to create any legal obligation on behalf of KH to guarantee employment or to follow any particular sequence or procedure in coaching or implementation of the disciplinary action.

When there is a need to address a leader's performance or behavior, written notification should be provided to the leader of the concerns and expectations (this could be in the form of an action plan, Last Chance Agreement, or other type of written communication). Due to the higher expectations of leaders, the corrective action process may be abbreviated prior to termination of employment. Mandatory Requirements

An employee who fails to comply with mandatory deadline dates will be immediately removed from the schedule and will not return until the requirement has been fulfilled in the required timeframe. The employee will be given a final warning or the next appropriate level of corrective action at the time they are removed from the schedule. Failure of the employee to become compliant within 10 calendar days of the deadline will result in termination. Examples include annual mandatory education , mandatory vaccinations (i.e. influenza shot), mandatory licensure, or mandatory certifications as defined in the employees' job description.

Suspension

Under certain circumstances, it may be necessary to suspend the employee during the investigation. Such circumstances include, but are not limited to, the anticipation of a lengthy event investigation and event investigations involving potential or actual harm to persons or property. If an employee is suspended during an investigation, a representative from Human Resources must be involved in the determination and coordination of the process. If an employee is suspended during an investigation, he/she is not permitted to work in any KH facility or department during the investigation and is not permitted to access any KH facility unless there for medical care for the employee or a family member. In the event an employee must access a KH facility during a suspension period, the employee must avoid contact with the employee's department and coworkers, unless specifically authorized otherwise.

---

**Kettering Health (KH) Organization-Wide Policy**

KH adopts this policy for KH Main Campus, KH Miamisburg, KH Dayton, KH Washington Township, KH Greene Memorial, Soin Medical Center, KH Hamilton, KH Troy, KH Medical Group, KH Transportation Services, all hospital off-sites and KH facilities, KH Senior Living, and KH System Services.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 18 of 27 PAGEID #: 304

During the investigation, the employee will not receive regular pay, however PTO will be utilized from their available balance. Should an employee be returned to work without discipline, the leader will submit a Payroll Correction case in myHR in order to reimburse the employee's PTO. If an employee does not have a PTO balance during suspension, the leader will submit a Payroll Correction case in myHR in order to reimburse the employee for time off. If an employee is returned to work with discipline or is terminated, there may be no reimbursement for time off or PTO hours used at the discretion of KH.

Attendance Guidelines

Employees are needed on a regular basis to meet scheduled assignments and are important to the operation of the department in which they are hired. When employees are absent, their services are missed, and an additional burden is placed on those present. For that reason, it is essential that employees meet their assigned schedule. An occurrence is how KH tracks absenteeism. Occurrences are issued when employees are not able to work their assigned shift without receiving prior approval.

Unscheduled day off: Employee fails to provide proper notice, per departmental guidelines, for a scheduled day of work. One missed day will be counted as one (1) occurrence, this includes consecutive scheduled days missed following the initial missed day. (i.e. If an employee is off sick for (3) consecutive scheduled days, then (1) occurrence would result.) If the employee is not on an approved leave of absence and the unscheduled absence extends beyond (3) three or more consecutive workdays, another (1) occurrence may result for every (3) three consecutive workdays missed beginning on the fourth workday missed.

If the consecutive absence is related to Covid-19, employees will only receive one occurrence. This exception is in line with CDC guidelines for Healthcare Personnel and acknowledges that COVID-19 is currently the only illness with a mandatory quarantine period.

Note: If an employee is absent three (3) or more consecutive workdays/due to illness then the employee must meet the requirements outlined, if applicable, in the EH-KH Return to Work Requirements policy or the HR-KH Leave of Absence policy.

An unscheduled day off on a day previously requested off and denied by the leader is considered a Standards of Behavior violation and may result in disciplinary action.

An unscheduled day off on a KH observed holiday will be counted as two (2) occurrences.

No Call/No Show: Employee fails to communicate, or arrive to work, within the first two hours of the scheduled shift is considered a No Call/No Show. Two separate days in a row of No Call/No Show are two separate incidents. The first incident of a No Call/No Show is an automatic Final Written Warning. The second incident results in termination of employment.

Tardiness: Tardiness is not being at the assigned workplace ready to perform duties or complete responsibilities at the scheduled starting time. One (1) tardy is equal to a half (1/2) occurrence. Two (2) tardies are equal to one (1) occurrence. However, if an employee is late and has not worked at least 50% of their scheduled shift or more the employee will receive (1) occurrence.

---

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 19 of 27  PAGEID #: 305

Leaving Early:  Leaving early is not completing your scheduled shift.   One (1) time leaving early is equal to a half (1/2) occurrence. Two (2) instances of leaving early are equal to one (1) occurrence. Employees who leave early but have not worked at least 50% of their scheduled shift will receive one (1) occurrence. Note: this does not apply to times when an employee is sent home as part of the overstaffing plan.

Patterns of Absence: Although occurrences will roll off an employee's record after the rolling 12-month period, established patterns of absences or tardiness will be considered a Standards of Behavior violation and may result in the next level of discipline (e.g. routine absences on a certain day of the week, calling off repeatedly on scheduled KH observed holidays, leaving early, or failing to provide proper notice per departmental guidelines).

The levels of discipline for the Attendance Guidelines and the Conduct and Discipline Policy are combined. While it is understood that sickness will occur, excessive absenteeism is not in keeping with departmental policy or KH's attendance guidelines. Discipline may be issued once an employee has reached five (5) or more unprotected occurrences during a rolling 12-month period. If this is the first discipline of any kind that the employee has received, they will receive an Initial Warning. If they have had prior discipline and already received a warning(s), they will receive the next appropriate level of discipline.

After that, each time an employee accrues one (1) occurrence beyond five (5) occurrences or above, they will receive the next appropriate level of discipline.

Notwithstanding the corrective action steps identified above, the specific corrective action steps determined will be at the leader's discretion, upon consultation with Human Resources.  Multiple occurrences for consecutive absences or for one missed holiday may advance the level.  For example, if an employee has received an initial warning and they call-off on a KH observed holiday which counts as two occurrences, they may receive a final written warning.

**Kettering Health (KH) Organization-Wide Policy**

**KH adopts this policy for KH Main Campus, KH Miamisburg, KH Dayton, KH Washington Township, KH Greene Memorial, Soin Medical Center, KH Hamilton, KH Troy, KH Medical Group, KH Transportation Services, all hospital off-sites and KH facilities, KH Senior Living, and KH System Services.**

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 20 of 27 PAGEID #: 306

Exhibit "A"

Examples of Violations of Conduct

The following acts, although not all-inclusive, constitute a violation of conduct:

1. Not adhering to Standards of Behavior.

2. Violation of KH policy and procedure.

3. Falsification or unauthorized access/disclosure of patient, employee or Kettering Health records including protected health information.

4. Falsification of hours worked. Clocking in and/or out for another employee or allowing another employee to clock in and/or out. Failure to clock in and/or out as required.

5. Repeated or reckless disregard of duties, inattention to duties, loafing or idleness.

6. Sleeping on duty.

7. Failure to fulfill job requirements or standards of efficiency and productivity.

8. Insubordination or refusal of an employee to follow instructions, perform assigned work or participate in a work-related investigation.

9. Loitering before or after scheduled work time.

10. Unauthorized possession, use or sale of controlled substances.

11. Reporting to work under the influence of alcohol or drugs.

12. Fighting, gambling or possession of dangerous weapons on KH property.

13. Harassment of another employee, patient or visitor, including harassment related to age, color, race, gender, religion, national origin, disability status, sexual orientation, gender identity, military or veteran status, genetic information, or any other characteristic or status that is protected by law.

14. Acting in a disorderly manner or using profanities, obscenities or abusive language that is offensive or threatening to others.

15. Misrepresentation or falsification of information related to any KH activity (e.g. employment documents, billing, medical records).

---

### Kettering Health (KH) Organization-Wide Policy
**KH adopts this policy for KH Main Campus, KH Miamisburg, KH Dayton, KH Washington Township, KH Greene Memorial, Soin Medical Center, KH Hamilton, KH Troy, KH Medical Group, KH Transportation Services, all hospital off-sites and KH facilities, KH Senior Living, and KH System Services.**

16. Repeatedly or recklessly violating safety rules or common safety practices which includes unsafe or unsanitary conditions for oneself, coworkers, or patients.

17. Willfully hindering the work efforts of others.

18. Failure of an employee to detect and/or report violations of the Kettering Health's Code of Ethical Conduct, including failure to comply with state and federal healthcare program laws and regulations.

19. Intentional destruction of KH property or property of others, or reckless use of KH property.

20. Improper use of computers and/or software including but not limited to unauthorized access to the Internet, installing unauthorized software and unlicensed applications.

21. Theft.

22. Dishonesty, slander, defamation.

23. Failure to report a conviction for a criminal offense and/or bringing harm to the reputation of KH.

24. Violation of KH policy on solicitation or distribution of literature while on organization premises.

25. Asking or inappropriately accepting tips, gifts, or other gratuities from patients and visitors.

26. Recording of phone calls or meetings with leaders, or any other recording of groups of employees, when any of the parties are on KH premises, without proper consent of every person involved.

27. Breach of confidentiality.

28. Improper use of personal electronic devices (, cell phone, blue tooth ear piece, etc.). Personal electronic devices may not interfere with KH business, operations, patient care, patient or employee rights, or work requirements.

29. Failure of an employee who is On-call to respond or arrive within the specified time following the on-call grid or departmental policy.

30. Any behavior, including retaliation or threat of retaliation, that would discourage an employee from reporting a violation of Kettering Health's Code of Ethical Conduct, Standards of Behavior, Kettering Health policies or participating in a Kettering Health investigation.

---

**Kettering Health (KH) Organization-Wide Policy**
KH adopts this policy for KH Main Campus, KH Miamisburg, KH Dayton, KH Washington Township, KH Greene Memorial, Soin Medical Center, KH Hamilton, KH Troy, KH Medical Group, KH Transportation Services, all hospital off-sites and KH facilities, KH Senior Living, and KH System Services.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-1 Filed: 08/24/25 Page: 22 of 27  PAGEID #: 308

**SPONSORING DEPT:**         Human Resources
**DEPARTMENTS AFFECTED:**    All KH Departments
**DATE OF ORIGIN:**              1/24/00



June 25,2025

Dear Sandra Collier,

This letter serves as notification that effective **6/22/25**, you will move to the Transition Cost Center for 2 pay periods**.**

During your time in the transition cost center, you will not be eligible for any additional compensation, including merit/market increases, etc. After the transition period, you will be eligible to receive a severance package.

Please see the attached draft severance agreement for details. You do not need to sign the draft at this time; after you have completed reviewing it, please make an appointment with the Leader Partner to sign the final agreement.

You will be asked to sign and date this letter to confirm you have received the draft agreement. If you have any questions, please contact HR Leader Partner**.**

Sincerely,

**Archie Jones, MBA, SHRM-CP**

Manager

Kettering Health Main Campus & Kettering College

Human Resources

Helpful Contacts:

| NAME | TITLE | Contact |
|---|---|---|
| Archie Jones | HR Manager | Archie.jones@ketteringhealth.org; 937-395-8391 |
|  |  |  |

I understand this offer of severance pay is available for up to 21 days from the date below when I received the severance agreement draft. After 21 days the offer will expire.

Employee Signature                                    Date

Attachment: Severance Agreement draft

Updated 4/2024



# Kettering HEALTH

## AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") is entered into between **Sandra Collier** ("Employee") and Kettering Health ("Employer") as of the date last written below, for the purpose of resolving all outstanding claims between Employee and Employer as follows:

1.      <u>Termination of Employment.</u>  The employment relationship between Employee and Employer ends permanently, effective **June 22nd, 2025.**

2.      <u>Payments by Employer.</u>  Employer agrees to make the following payments:

    A.  Employer shall pay to Employee their base rate of pay **$80.92** per hour for 40 hours per week for **16 weeks** (beginning the week of **July 20, 2025**) until the day a new job at Kettering Health begins or until **November 9th, 2025**, whichever comes first ("Severance Period"). (Gross pay less appropriate payroll withholdings).  After the Agreement is signed and the rescission period (8.B. below) is completed, these payments will be paid in accordance with Employer's normal payroll schedule and at the base rate of the Employee upon their last day of active employment with the Employer.  Employee's PTO bank will be paid out at the beginning of the Severance Period in the usual way.

    B.  If Employee has received special assistance from Employer, such as for education assistance, relocation reimbursement, sign on bonus, retention bonus, and/or specialized training, and Employee has committed to being available to work for Employer for a certain length of time as a condition of that special assistance, then this Agreement supersedes those special assistance agreements.  Any unamortized obligation that resulted from special assistance is forgiven and canceled as a result of this Agreement, unless Employee becomes re-employed by Employer prior to the expiration of the Severance Period.  In that case, the special assistance agreement shall remain in effect and the period of time Employee was not actively employed shall nonetheless count toward the length of service requirement.

    C.  Employee's medical insurance coverage which was in effect at the time severance payments began will continue in effect during the Severance Period, and Employee's share of premiums will be deducted from the severance payments in the usual way. Eligibility for medical coverage after the severance payments end shall be offered through the medical benefit continuation program available to all employees upon involuntary termination.  It is Employee's sole responsibility to apply for this continuation of health insurance.  Employer assumes no responsibility for Employee's failure to obtain health insurance coverage, for whatever reason.  In the event Employee becomes reemployed by another employer during the Severance Period and becomes eligible to participate in that employer's health insurance plan, coverage and payments under this paragraph shall cease.  It is Employee's obligation to notify Employer that this has occurred.

Updated 4/2024                                                                                                                                    1



D. All other benefits (including dental and vision) cease on the date employment ceases (paragraph 1) and will not be in effect during the Severance Period. It is Employee's sole responsibility to apply for continuation of life insurance or other benefits that are available on a home billed basis. Such applications must be made within 30 days following the date listed in paragraph 1.

E. During the Severance Period the Employee will not be eligible for any additional compensation, including merit/market increases, lump sum payments, KRA/RSP payment, etc.

3.    Other Consideration Granted by Employer. Employer agrees to provide employment verification for Employee. Employer shall provide dates of employment and most recent position held through a third party. Employee agrees to contact The Work Number ("TWN") to obtain this information as follows: online at www.theworknumber.com or by calling 1-800-367-5690 and using KH Employer Code 17699.

4.    Confidentiality. The parties agree that the existence of this Agreement and Release and its terms shall remain confidential. Employee shall not disclose the existence of this Agreement and Release or its terms to any person other than Employee's spouse, Employee's attorney, a financial advisor, and/or accountant retained by Employee for the purpose of advising Employee in that person's professional capacity. Employee shall advise any third party who receives information contained in this Agreement that they are also bound by this confidentiality provision. Employee is ultimately responsible for any direct or indirect disclosure of the terms of this Agreement by Employee or someone who learned about this existence or terms of this Agreement from Employee. The parties agree to notify all other parties within 72 hours if any party receives a subpoena or any other instrument of legal compulsion that would require it to disclose the existence of this Agreement and Release or its terms. If the party receiving the subpoena properly gives the notice described above and ultimately is required to comply with the subpoena, that party shall not be held liable by any other party for any resulting breach of confidentiality.

Employee agrees to abide by any common law and/or statutory obligations relating to protection and non-disclosure of KH's trade secrets and/or confidential and proprietary documents and confidential information.

To the extent permitted by applicable law, Employee agrees to make no criticism or negative statements about Employer, its management, its methods of operation, its role as corporate or community citizen, or its treatment of Employee.

5.    Release of Claims. Employee agrees to release Employer and its owners, directors, officers, employees, agents, successors, assigns, and all other affiliated persons and entities from any and all claims, known or unknown, arising out of the employment relationship as of the date Employee executes this Agreement and Release ("Releasees"). Employee agrees that this Agreement and Release represents full settlement of all claims whatsoever arising out of his/her employment by Employer. Employee further agrees that at no time after the effective date of

Updated 4/2024

2



this Agreement and Release will Employee bring any claim or make any attempt to collect any damages whatsoever from Employer or its owners, directors, officers, employees, agents, successors, assigns, and all other affiliated persons and entities for any violation of any federal, state, or local statute, rule, or ordinance. Employee further agrees that at no time after the effective date of this Agreement and Release will Employee bring any claim or make any attempt to collect any damages from Employer or its owners, directors, officers, employees, agents, successors, assigns, and all other affiliated persons and entities under any common law theory sounding in tort, contract, or otherwise. This release specifically encompasses, but is not limited to, claims brought under the Age Discrimination in Employment Act, the Americans with Disabilities Act Amendments Act of 2013, the Rehabilitation Act of 1973, the Civil Rights Act of 1964 (and the 1991 Amendments thereto), the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, Chapter 4112 of the Ohio Revised Code, and any other federal, state, or local legislation. This release is not meant to waive an Employee's right to file any cause of action that cannot be waived pursuant to agreement, including Employee's right to file an administrative agency action. However, Employee does expressly waive their right to recover any damages whatsoever pursuant to the filing of an administrative agency action, to the extent allowed by law, and agrees that the consideration received by this Agreement is sufficient for that representation. Employee further represents and agrees that Employee has reported or will report, in writing, to Kettering Health's Director of Compliance any and all compliance-related concerns and information of which Employee has and/or had (as of the Date of Termination in Paragraph 1 of this Agreement) knowledge, including any potential violations of Medicare, Medicaid, Federal False Claims and/or other laws by Kettering Health and/or any Releasees or of conduct by any representative of Kettering Health and/or any Releasee that could lead to liability under such laws on the part of Kettering Health and/or any Releasee. Except for matters reported as provided in the prior sentence, Employee has no knowledge, concerns or information with respect to Kettering Health and/or any of the Releasees' operations which in the Employee's opinion may create regulatory or other liability for Kettering Health and/or any of the Releasees.

6.      No Admission of Liability. Nothing in this Agreement and Release shall be construed to be an admission of liability by Employer or its owners, directors, officers, employees, agents, successors, assigns, or any other affiliated person and entity for any alleged violation of any of Employee's statutory rights or any common law duty imposed upon Employer.

7.      Adequate Consideration. Employee agrees that the consideration provided for by Paragraphs 2 and 3 of this Agreement is above and beyond any amounts already owed to Employee and is adequate consideration for all promises and releases contained in this Agreement and Release.

8.      Representations by Employee. Pursuant to the Age Discrimination Employment Act of 1967, as amended, and in compliance with the Older Workers Benefit Protection Act, Employee represents that the following statements are true statements of fact:

A.      Employee has been given twenty-one (21) days to consider this Agreement and Release.

Updated 4/2024                                                                                          3



B.    Employee is aware that Employee has seven (7) days after signing this Agreement and Release to revoke Employee's consent.

C.    Employee has been advised by Employer to consult legal counsel for advice regarding this Agreement and Release.

D.    To the extent that Employee executes this Agreement and Release prior to the expiration of the twenty one (21) day period specified in (A) above, Employee acknowledge that Employee was afforded the opportunity to have a period of at least twenty one (21) days to consider it before executing it and that Employee's execution of this Agreement and Release prior to the expiration of said period was Employee's free and voluntary act.

E.    Employee agrees that this Agreement and Release is written in a manner that enables Employee to fully understand its content and meaning.

9.    Entire Agreement. This Agreement and Release expresses the entire agreement between the parties and can only be modified by a subsequent written agreement between the parties.

10.    Severability. Should any provision of this Agreement and Release, or the application thereof, be held invalid or unenforceable by a court of competent jurisdiction, the remainder of this Agreement, or alternative applications thereof, other than the provision(s) which shall have been held invalid or unenforceable, shall not be affected and shall continue to be valid and enforceable to the fullest extent permitted by law or equity.

11.    Medicare/Medicaid. Employee represents and warrants that no Medicare or Medicaid payments have been made to him or on his behalf. Employee also represents and warrants that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any matters released in this Agreement. Employee further agrees that he, not the Employer, shall be responsible for satisfying any/all such liens, claims, demands, subrogated interests, or causes of action that exist or have been asserted or that may in the future exist or be asserted

12.    Ohio Law Governs. This Agreement and Release shall be construed in accordance with the laws of the state of Ohio, except to the extent that federal law preempts those law

The parties signify their agreement by executing this document as of the date last written below.

_____          _____

Employee                                                    Kettering Health

                                                                    By:_____
                                                                          (Please Print Name & Title)

Date: _____          Date: _____

Updated 4/2024                                                                                              4