# EXHIBIT F

| Sponsors |
| --- |
| 3M Healthcare |
| Abbott |
| Abbott Vascular |
| Abbvie |
| Abiomed, Inc |
| Acrivon Therapeutics |
| Advanced Accelerator Applications |
| American Heart Association |
| Amgen |
| AngioDynamics |
| AOA |
| Apollomics, Inc. |
| Aptis Medical |
| Aravive, Inc. |
| Arcus Biosciences, Inc. |
| ASCO (American Society of Clinical Oncology) |
| AstraZeneca |
| Avanos Medical |
| Bayer |
| Beckman Coulter |
| Bilimetrix |
| BioClin Therapeutics, Inc. |
| BioMed Valley Discoveries, Inc. |
| BioNTech SE |
| Biosense Webster |
| Boehringer Ingelheim |
| Boston Scientific |
| CanariaBio |
| Cardiac Dimensions |
| Cardiovascular Systems, Inc |
| CereMark Pharma, LLC |
| Clovis Oncology, Inc |
| Collaboration with Premier |
| ConforMIS |

| Sponsors |
|---|
| ConforMIS/iDocData |
| Curonix |
| Daiichi Sankyo |
| DCOP |
| DCRI |
| DePuy |
| Effector Therapeutics |
| Episurf Medical |
| F.Hoffmann-La Roche Ltd |
| Gala of Hope Foundation |
| GE Healthcare |
| Genelux Corporation |
| Genetesis |
| GOG Foundation |
| Greenwich LifeSciences |
| GT Medical Technologies |
| Gynecologic Oncology Group |
| HELP for NOWS Consortium |
| ImmunoGen |
| Incyte Corporation |
| Integra LifeSciences Corp |
| Intuitive Foundation/GOG |
| Janssen |
| Jazz Pharmaceuticals |
| Kettering Medical Center |
| K-Group Beta |
| Laurent Pharmaceuticals |
| Medline |
| Medtronic |
| Medtronic/University of Buffalo |
| Mentor Worldwide LLC, Braynham, MA |
| Mentor Worldwide, LLC |
| Merck |
| Merck Sharp & Dohme LLC |
| |

| Sponsors |
|---|
| Mersana Therapeutics, Inc. |
| MicroVention, Inc. |
| Minneapolis Heart Institute Foundation |
| Mirati |
| Molnlycke |
| Monteris Medical |
| Monteris Medical |
| MT Group |
| National Science Foundation |
| Navidea Biopharmaceuticals, Inc |
| Nektar Therapeutics |
| Neovasc Inc |
| NeuroRx, Inc. |
| Neuros Medical, Inc. |
| Novartis Pharmaceuticals |
| Novo Nordisk |
| NovoCure, Ltd. |
| OncoQuest Inc. |
| Penumbra |
| Pfizer |
| Pharmacosmos A/S |
| Puma Biotechnology, Inc |
| RayzeBio, Inc |
| Regeneron Pharmaceuticals, Inc |
| Sino Medical Sciences Technology Inc. (SINOMED) |
| Skeletal Dynamics |
| Smith & Nephew, Inc. |
| Sofie Biosciences, Inc |
| Soin Neuroscience Inc. (Dr. Soin) |
| Spine BioPharma |
| SpringWorks Therapeutics, |
| Strata Oncology |
| Sutro Biopharma |
| TELIX |
|  |

| Sponsors |
|---|
| Telix International |
| Telix Pharmaceuticals |
| Tenax Therapeutics |
| University Hospital Collaboration (IIT) |
| University of Texas Southwestern Medical Center |
| Urgo, Medical |
| Vascular Biogenics Ltd. (VBL Therapeutics)/GOG |
| Veracyte |
| National Institute of Neurological Disorders (NINDS) |
| National Heart Lung and Blood Institute (NHLBI) |
| National Institutes of Health (NIH) |
| Biomedical Adv Research & Development Authority (BARDA) |
| Operation Warp Speed (OWS) |
| U.S. Department of Health & Human Services (HHS) |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

# EXHIBIT G

 Outlook

---

## RE: Ocean(a) SAE sign-off in EDC (Subject 302)

---

**From** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Date** Fri 2/14/2025 9:58 AM

**To**   Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>; Mekonnen, Lucy
        <Lucy.Mekonnen@ketteringhealth.org>

I completed it for you.



### Chris Seger

Clinical Research Coordinator

Innovation & Research

ketteringhealth.org

---

**From:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>
**Sent:** Thursday, February 13, 2025 7:18 PM
**To:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>
**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>
**Subject:** Re: Ocean(a) SAE sign-off in EDC (Subject 302)

I may need some help with this

Get Outlook for iOS

---

**From:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>
**Sent:** Thursday, February 13, 2025 11:20:55 AM
**To:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>
**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>
**Subject:** Ocean(a) SAE sign-off in EDC (Subject 302)

Good morning Dr. Handel –

The Ocean(a) monitor is asking if you could sign-off on the reported SAE's at your earliest convenience 🌎

Thank you,

**Lucy Mekonnen**

Clinical Research Coordinator

Innovation & Research



O 937-395-6610

F 937-395-8018

ketteringhealth.org

 Outlook

---

## RE: PI Sign-off Needed for Ocean(a)

---

**From** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Date** Tue 5/6/2025 2:26 PM

**To** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>; Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>

**Cc** Molina, Andrea <Andrea.Molina@ketteringhealth.org>

Lucy,

I helped Dr. Handel sign off on the EDC CRFs this afternoon.

Thanks for following up with these patients!

-Chris

 **Chris Seger**

Clinical Research Coordinator

Innovation & Research

ketteringhealth.org

---

**From:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>
**Sent:** Tuesday, May 6, 2025 1:52 PM
**To:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>
**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>
**Subject:** PI Sign-off Needed for Ocean(a)
**Importance:** High

Good afternoon –

Would you be able to sign-off for subject 301's recent completed visits in the EDC?

Thank you ,

**Lucy Mekonnen**

Clinical Research Coordinator

Innovation & Research

 **Kettering** HEALTH

**O** 937-395-6610

**F** 937-395-8018

ketteringhealth.org

 Outlook

---

## RE: PI Sign-off Needed for Ocean(a) Subject 303's Week 84 Visit

---

**From** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Date** Fri 6/13/2025 9:41 AM

**To**   Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>; Handel, Franklin (MD)
<Franklin.Handel@ketteringhealth.org>

Hi Lucy,

Dr. Handel and I signed off on these visits today.

Thanks for you hard work on this.

-Chris

 **Chris Seger**

Clinical Research Coordinator

Innovation & Research

ketteringhealth.org

---

**From:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>
**Sent:** Wednesday, June 11, 2025 10:45 AM
**To:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>
**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>
**Subject:** PI Sign-off Needed for Ocean(a) Subject 303's Week 84 Visit

Good morning Dr. Handel —

Would you be able to sign-off for subject 303's recent completed visits in the EDC?

Thank you ,

Lucy

 **Outlook**

---

**Re: PI Sign-off Needed for Ocean(a) Subject 302's Week 108 Visit**

---

**From** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>

**Date** Thu 6/19/2025 8:08 AM

**To**   Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>; Seger, Chris <Chris.Seger@ketteringhealth.org>

**Cc**   Seger, Chris <Chris.Seger@ketteringhealth.org>

No problem, we will take care of it when you return. Enjoy your time off!

Get Outlook for iOS

---

**From:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>

**Sent:** Thursday, June 19, 2025 7:52:24 AM

**To:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>; Seger, Chris <Chris.Seger@ketteringhealth.org>

**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Subject:** Re: PI Sign-off Needed for Ocean(a) Subject 302's Week 108 Visit

Will be out of town until Monday on vacation

Get Outlook for iOS

---

**From:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>

**Sent:** Thursday, June 19, 2025 6:34:45 AM

**To:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>; Seger, Chris <Chris.Seger@ketteringhealth.org>

**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Subject:** Re: PI Sign-off Needed for Ocean(a) Subject 302's Week 108 Visit

Good morning Dr.Handel -

I actually can't send a DOCUSIGN for this one, it requires a sign off in Medidata! @Seger, Chris would you be able to show Dr.Handel if you have time?

Thank you,

Lucy

Get Outlook for iOS

---

**From:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>

**Sent:** Wednesday, June 18, 2025 7:40:38 PM

**To:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>

**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>

**Subject:** Re: PI Sign-off Needed for Ocean(a) Subject 302's Week 108 Visit

Can you send to me by Docusign?

Get Outlook for iOS

**From:** Mekonnen, Lucy <Lucy.Mekonnen@ketteringhealth.org>
**Sent:** Wednesday, June 18, 2025 2:05:57 PM
**To:** Handel, Franklin (MD) <Franklin.Handel@ketteringhealth.org>
**Cc:** Seger, Chris <Chris.Seger@ketteringhealth.org>
**Subject:** PI Sign-off Needed for Ocean(a) Subject 302's Week 108 Visit

Good morning Dr. Handel –

Would you be able to sign-off for subject 302's recent completed visits in the EDC?

Thank you ,

Lucy

# EXHIBIT H

This content is from the eCFR and is authoritative but unofficial.

## Title 21 —Food and Drugs
## Chapter I —Food and Drug Administration, Department of Health and Human Services
## Subchapter A —General

**Part 11** Electronic Records; Electronic Signatures

  **Subpart A** General Provisions

    § 11.1 Scope.

    § 11.2 Implementation.

    § 11.3 Definitions.

  **Subpart B** Electronic Records

    § 11.10 Controls for closed systems.

    § 11.30 Controls for open systems.

    § 11.50 Signature manifestations.

    § 11.70 Signature/record linking.

  **Subpart C** Electronic Signatures

    § 11.100 General requirements.

    § 11.200 Electronic signature components and controls.

    § 11.300 Controls for identification codes/passwords.

# PART 11—ELECTRONIC RECORDS; ELECTRONIC SIGNATURES

**Authority:** 21 U.S.C. 321-393; 42 U.S.C. 262.

**Source:** 62 FR 13464, Mar. 20, 1997, unless otherwise noted.

## Subpart A—General Provisions

### § 11.1 Scope.

(a) The regulations in this part set forth the criteria under which the agency considers electronic records, electronic signatures, and handwritten signatures executed to electronic records to be trustworthy, reliable, and generally equivalent to paper records and handwritten signatures executed on paper.

(b) This part applies to records in electronic form that are created, modified, maintained, archived, retrieved, or transmitted, under any records requirements set forth in agency regulations. This part also applies to electronic records submitted to the agency under requirements of the Federal Food, Drug, and Cosmetic Act and the Public Health Service Act, even if such records are not specifically identified in agency regulations. However, this part does not apply to paper records that are, or have been, transmitted by electronic means.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-2 Filed: 08/24/25 Page: 15 of 22 PAGEID #: 328

(c) Where electronic signatures and their associated electronic records meet the requirements of this part, the agency will consider the electronic signatures to be equivalent to full handwritten signatures, initials, and other general signings as required by agency regulations, unless specifically excepted by regulation(s) effective on or after August 20, 1997.

(d) Electronic records that meet the requirements of this part may be used in lieu of paper records, in accordance with § 11.2, unless paper records are specifically required.

(e) Computer systems (including hardware and software), controls, and attendant documentation maintained under this part shall be readily available for, and subject to, FDA inspection.

(f) This part does not apply to records required to be established or maintained by §§ 1.326 through 1.368 of this chapter. Records that satisfy the requirements of part 1, subpart J of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(g) This part does not apply to electronic signatures obtained under § 101.11(d) of this chapter.

(h) This part does not apply to electronic signatures obtained under § 101.8(d) of this chapter.

(i) This part does not apply to records required to be established or maintained by part 117 of this chapter. Records that satisfy the requirements of part 117 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(j) This part does not apply to records required to be established or maintained by part 507 of this chapter. Records that satisfy the requirements of part 507 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(k) This part does not apply to records required to be established or maintained by part 112 of this chapter. Records that satisfy the requirements of part 112 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(l) This part does not apply to records required to be established or maintained by subpart L of part 1 of this chapter. Records that satisfy the requirements of subpart L of part 1 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(m) This part does not apply to records required to be established or maintained by subpart M of part 1 of this chapter. Records that satisfy the requirements of subpart M of part 1 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(n) This part does not apply to records required to be established or maintained by subpart O of part 1 of this chapter. Records that satisfy the requirements of subpart O of part 1 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(o) This part does not apply to records required to be established or maintained by part 121 of this chapter. Records that satisfy the requirements of part 121 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

(p) This part does not apply to records required to be established or maintained by subpart R of part 1 of this chapter. Records that satisfy the requirements of subpart R of part 1 of this chapter, but that also are required under other applicable statutory provisions or regulations, remain subject to this part.

*[62 FR 13464, Mar. 20, 1997, as amended at 69 FR 71655, Dec. 9, 2004; 79 FR 71253, 71291, Dec. 1, 2014; 80 FR 56144, 56336, Sept. 17, 2015; 80 FR 74352, 74547, 74667, Nov. 27, 2015; 81 FR 20170, Apr. 6, 2016; 81 FR 34218, May 27, 2016; 86 FR 68830, Dec. 3, 2021]*

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-2 Filed: 08/24/25 Page: 16 of 22 PAGEID #: 329

## § 11.2 Implementation.

(a) For records required to be maintained but not submitted to the agency, persons may use electronic records in lieu of paper records or electronic signatures in lieu of traditional signatures, in whole or in part, provided that the requirements of this part are met.

(b) For records submitted to the agency, persons may use electronic records in lieu of paper records or electronic signatures in lieu of traditional signatures, in whole or in part, provided that:

(1) The requirements of this part are met; and

(2) The document or parts of a document to be submitted have been identified in public docket No. 92S-0251 as being the type of submission the agency accepts in electronic form. This docket will identify specifically what types of documents or parts of documents are acceptable for submission in electronic form without paper records and the agency receiving unit(s) (e.g., specific center, office, division, branch) to which such submissions may be made. Documents to agency receiving unit(s) not specified in the public docket will not be considered as official if they are submitted in electronic form; paper forms of such documents will be considered as official and must accompany any electronic records. Persons are expected to consult with the intended agency receiving unit for details on how (e.g., method of transmission, media, file formats, and technical protocols) and whether to proceed with the electronic submission.

## § 11.3 Definitions.

(a) The definitions and interpretations of terms contained in section 201 of the act apply to those terms when used in this part.

(b) The following definitions of terms also apply to this part:

(1) *Act* means the Federal Food, Drug, and Cosmetic Act (secs. 201-903 (21 U.S.C. 321-393)).

(2) *Agency* means the Food and Drug Administration.

(3) *Biometrics* means a method of verifying an individual's identity based on measurement of the individual's physical feature(s) or repeatable action(s) where those features and/or actions are both unique to that individual and measurable.

(4) *Closed system* means an environment in which system access is controlled by persons who are responsible for the content of electronic records that are on the system.

(5) *Digital signature* means an electronic signature based upon cryptographic methods of originator authentication, computed by using a set of rules and a set of parameters such that the identity of the signer and the integrity of the data can be verified.

(6) *Electronic record* means any combination of text, graphics, data, audio, pictorial, or other information representation in digital form that is created, modified, maintained, archived, retrieved, or distributed by a computer system.

(7) *Electronic signature* means a computer data compilation of any symbol or series of symbols executed, adopted, or authorized by an individual to be the legally binding equivalent of the individual's handwritten signature.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-2 Filed: 08/24/25 Page: 17 of 22  PAGEID #: 330

(8)  *Handwritten signature* means the scripted name or legal mark of an individual handwritten by that individual and executed or adopted with the present intention to authenticate a writing in a permanent form. The act of signing with a writing or marking instrument such as a pen or stylus is preserved. The scripted name or legal mark, while conventionally applied to paper, may also be applied to other devices that capture the name or mark.

(9)  *Open system* means an environment in which system access is not controlled by persons who are responsible for the content of electronic records that are on the system.

## Subpart B—Electronic Records

## § 11.10 Controls for closed systems.

Persons who use closed systems to create, modify, maintain, or transmit electronic records shall employ procedures and controls designed to ensure the authenticity, integrity, and, when appropriate, the confidentiality of electronic records, and to ensure that the signer cannot readily repudiate the signed record as not genuine. Such procedures and controls shall include the following:

(a)  Validation of systems to ensure accuracy, reliability, consistent intended performance, and the ability to discern invalid or altered records.

(b)  The ability to generate accurate and complete copies of records in both human readable and electronic form suitable for inspection, review, and copying by the agency. Persons should contact the agency if there are any questions regarding the ability of the agency to perform such review and copying of the electronic records.

(c)  Protection of records to enable their accurate and ready retrieval throughout the records retention period.

(d)  Limiting system access to authorized individuals.

(e)  Use of secure, computer-generated, time-stamped audit trails to independently record the date and time of operator entries and actions that create, modify, or delete electronic records. Record changes shall not obscure previously recorded information. Such audit trail documentation shall be retained for a period at least as long as that required for the subject electronic records and shall be available for agency review and copying.

(f)  Use of operational system checks to enforce permitted sequencing of steps and events, as appropriate.

(g)  Use of authority checks to ensure that only authorized individuals can use the system, electronically sign a record, access the operation or computer system input or output device, alter a record, or perform the operation at hand.

(h)  Use of device (e.g., terminal) checks to determine, as appropriate, the validity of the source of data input or operational instruction.

(i)  Determination that persons who develop, maintain, or use electronic record/electronic signature systems have the education, training, and experience to perform their assigned tasks.

(j)  The establishment of, and adherence to, written policies that hold individuals accountable and responsible for actions initiated under their electronic signatures, in order to deter record and signature falsification.

(k)  Use of appropriate controls over systems documentation including:

    (1)  Adequate controls over the distribution of, access to, and use of documentation for system operation and maintenance.

    (2)  Revision and change control procedures to maintain an audit trail that documents time-sequenced development and modification of systems documentation.

## § 11.30 Controls for open systems.

Persons who use open systems to create, modify, maintain, or transmit electronic records shall employ procedures and controls designed to ensure the authenticity, integrity, and, as appropriate, the confidentiality of electronic records from the point of their creation to the point of their receipt. Such procedures and controls shall include those identified in § 11.10, as appropriate, and additional measures such as document encryption and use of appropriate digital signature standards to ensure, as necessary under the circumstances, record authenticity, integrity, and confidentiality.

## § 11.50 Signature manifestations.

  (a)  Signed electronic records shall contain information associated with the signing that clearly indicates all of the following:

    (1)  The printed name of the signer;

    (2)  The date and time when the signature was executed; and

    (3)  The meaning (such as review, approval, responsibility, or authorship) associated with the signature.

  (b)  The items identified in paragraphs (a)(1), (a)(2), and (a)(3) of this section shall be subject to the same controls as for electronic records and shall be included as part of any human readable form of the electronic record (such as electronic display or printout).

## § 11.70 Signature/record linking.

Electronic signatures and handwritten signatures executed to electronic records shall be linked to their respective electronic records to ensure that the signatures cannot be excised, copied, or otherwise transferred to falsify an electronic record by ordinary means.

## Subpart C—Electronic Signatures

## § 11.100 General requirements.

  (a)  Each electronic signature shall be unique to one individual and shall not be reused by, or reassigned to, anyone else.

  (b)  Before an organization establishes, assigns, certifies, or otherwise sanctions an individual's electronic signature, or any element of such electronic signature, the organization shall verify the identity of the individual.

  (c)  Persons using electronic signatures shall, prior to or at the time of such use, certify to the agency that the electronic signatures in their system, used on or after August 20, 1997, are intended to be the legally binding equivalent of traditional handwritten signatures.

    (1)  The certification shall be signed with a traditional handwritten signature and submitted in electronic or paper form. Information on where to submit the certification can be found on FDA's web page on Letters of Non-Repudiation Agreement.

Case: 3:25-cv-00273-JLG-CHG Doc #: 12-2 Filed: 08/24/25 Page: 19 of 22 PAGEID #: 332

(2) Persons using electronic signatures shall, upon agency request, provide additional certification or testimony that a specific electronic signature is the legally binding equivalent of the signer's handwritten signature.

[62 FR 13464, Mar. 20, 1997, as amended at 88 FR 13018, Mar. 2, 2023]

## § 11.200 Electronic signature components and controls.

(a) Electronic signatures that are not based upon biometrics shall:

(1) Employ at least two distinct identification components such as an identification code and password.

(i) When an individual executes a series of signings during a single, continuous period of controlled system access, the first signing shall be executed using all electronic signature components; subsequent signings shall be executed using at least one electronic signature component that is only executable by, and designed to be used only by, the individual.

(ii) When an individual executes one or more signings not performed during a single, continuous period of controlled system access, each signing shall be executed using all of the electronic signature components.

(2) Be used only by their genuine owners; and

(3) Be administered and executed to ensure that attempted use of an individual's electronic signature by anyone other than its genuine owner requires collaboration of two or more individuals.

(b) Electronic signatures based upon biometrics shall be designed to ensure that they cannot be used by anyone other than their genuine owners.

## § 11.300 Controls for identification codes/passwords.

Persons who use electronic signatures based upon use of identification codes in combination with passwords shall employ controls to ensure their security and integrity. Such controls shall include:

(a) Maintaining the uniqueness of each combined identification code and password, such that no two individuals have the same combination of identification code and password.

(b) Ensuring that identification code and password issuances are periodically checked, recalled, or revised (e.g., to cover such events as password aging).

(c) Following loss management procedures to electronically deauthorize lost, stolen, missing, or otherwise potentially compromised tokens, cards, and other devices that bear or generate identification code or password information, and to issue temporary or permanent replacements using suitable, rigorous controls.

(d) Use of transaction safeguards to prevent unauthorized use of passwords and/or identification codes, and to detect and report in an immediate and urgent manner any attempts at their unauthorized use to the system security unit, and, as appropriate, to organizational management.

(e) Initial and periodic testing of devices, such as tokens or cards, that bear or generate identification code or password information to ensure that they function properly and have not been altered in an unauthorized manner.

DocuSign Envelope ID: 3B5BAB1E-14A6-414C-BF32-2CBF307DDE74



**INNOVATION, RESEARCH & GRANTS**
KETTERING HEALTH

# Principal Investigator Agreement

**Principal Investigator** ('INVESTIGATOR'): Franklin Handel, MD
**Protocol** ('STUDY'): [ARTEMIS] Effects of ziltivekimab versus placebo on cardiovascular outcomes in patients with acute myocardial infarction

Innovation, Research & Grants (IRG) at Kettering Adventist Healthcare dba Kettering Health (KH) is pleased to be informed of your research STUDY to be conducted at KH. Your interest and participation as an investigator are crucial to the success of this trial. It is our sincere hope that you find your involvement as an investigator to be rewarding.

**Listed are the primary responsibilities expected of an Investigator:**

1. Protocol adherence in the examination and treatment of study subjects.
2. Knowledge and understanding of the protocol, study medication/device, and sequence of events.
3. Accepts responsibility for compliant and ethical conduct of the approved research study.
4. Protects the rights and welfare of the subjects.
5. Follows sponsor and IRB requirements for reporting any serious adverse reactions and/or unanticipated effects on subjects which may occur because of the study.
6. Ensures accuracy of the case report forms. This also includes sign off in electronic data capture platform.
7. Provides supervision of study staff and delegates research activities to research staff as appropriate.
8. Reviews and signs appropriate documents and reports pertaining to the study.
9. Cooperates with internal and external monitoring and auditing by the sponsor, appropriate regulatory authorities, and Kettering Health.
10. Accepts responsibility for record management and retention.
11. Informs the IRB of record of any change in study personnel including personal contact information, address, phone numbers, and email address.
12. Adheres to institutional policy for reporting HIPAA disclosures.
13. Attends sponsor required meetings, which includes site qualification visits, site initiation visits, and closeout.
14. Be available at least by phone during interim monitoring visits.
15. Complete general research training through CITI Program before start of trial and ensure certificates are maintained. The following 3 courses are required by Kettering Health to participate in research:
    1) Group 1 Biomedical – Human Subject Protections
    2) Group 11 GCP – Good Clinical Practice
    3) Conflict of Interest in Research
16. Provide communication and education to physicians and providers on the trial.
17. Complete an annual financial disclosure for Kettering Health Institutional Review Board via Cayuse.
18. Engage in responsive communication (e.g., amendment training, patient safety related questions).
19. Identify and recruit Sub-Investigators

**Listed are typical examples of your responsibilities that will be delegated to a Clinical Research Coordinator or other research support staff:**

1. Assists the principal investigator in the coordination of all aspects of the study in accordance with protocol.
2. Monitors and manages subject compliance.
3. Acts as a liaison between study subject and the investigator.

DocuSign Envelope ID: 3B5BAB1E-14A6-414C-BF32-2CBF307DDE74

4. Maintains an updated clinical study site binder and regulatory file binder.

5. Creates and/or completes case report forms per study source documents.

6. Manages the storage of the test article as appropriate to each trial.

7. Documents administration and distribution of test article.

8. Reports adverse events to investigator, sponsor, and the IRB, as indicated.

9. Study documents are properly submitted to the IRB and ensure IRB approval is obtained prior to implementing the research study or any study changes, including annual continuing review and closure.

## Investigator Attestation

I (INVESTIGATOR) have entered into agreement with Kettering Health (INSTITUTION) to conduct the STUDY.

- I agree to conduct the STUDY in accordance with the ethical principles that are consistent with the policies and procedures of the KH Innovation, Research & Grants Department, and IRB of record.
- I agree to the guidelines of the International Conference on Harmonization (ICH), Good Clinical Practices (GCP) E6(R2), available at www.fda.gov.
- I agree to uphold the integrity of the INSTITUTION by demonstrating the protection of human subjects.
- I agree not to participate in other clinical research trials that may be a conflict of interest.
- I agree not to disclose any confidential information unless prior written approval has been received.
- I understand that intellectual property relating to this study belongs to the STUDY Sponsor in accordance with INSTITUTION'S policies, unless otherwise described in the clinical trial agreement.
- I have discussed the trial with appropriate physician peers and have alignment.
- I have obtained support for this trial from leaders of the service line(s) impacted by this STUDY.
- I agree to familiarize myself and comply with all applicable policies adopted by the KH Innovation, Research and Grants Department.

Do we have this patient population (i.e., this is not a rare population)?

☒ Yes
☐ No

Does this vary from KH's current standard of care?

☐ Yes
☒ No

☒ I agree to utilize DocuSign to execute study documents

I commit to be engaged and available to the research team throughout the lifespan of the trial. I can be contacted the following ways within 24 hours:

☒ Email _____
☐ Cell (call and text) _____
☐ Teams
☐ Practice Manager or administrative point of contact: _____

**INVESTIGATOR**

By: _____

Name: Franklin Hander

Title: **Principal Investigator**

Date: 4/15/2024

**INSTITUTION**

By: _____

Name: **Mary Connolly, PhD, CRCP, ACRP-CP**

Title: **Network Director, Innovation, Research & Grants**

Date: 4/17/2024

**DocuSign**

## Certificate Of Completion

Envelope Id: 3B5BAB1E14A6414CBF322CBF307DDE74
Subject: ***Research***Complete with DocuSign: Start-up Documents for ARTEMIS
Source Envelope:
Document Pages: 9
Certificate Pages: 4
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-05:00) Eastern Time (US & Canada)

Signatures: 5
Initials: 1

Status: Completed

Envelope Originator:
Allison Dymacek
3535 Southern Blvd,
Kettering, OH  45429
Allison.Dymacek@ketteringhealth.org
IP Address: 204.110.16.10

## Record Tracking

Status: Original
    4/9/2024 3:38:51 PM

Holder: Allison Dymacek
    Allison.Dymacek@ketteringhealth.org

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Franklin Handel, MD<br>fhandel@aol.com<br>1-9374759216<br>Security Level: Email, SMS, Account Authentication (None) | DocuSigned by:<br>4E45CC41F1EE48D...<br><br>Signature Adoption: Drawn on Device<br>Signed by link sent to 1-9374759216<br>Using IP Address: 204.110.25.222<br>Signed using mobile | Sent: 4/9/2024 3:47:35 PM<br>Resent: 4/11/2024 7:37:54 AM<br>Resent: 4/15/2024 2:42:09 PM<br>Viewed: 4/15/2024 2:42:33 PM<br>Signed: 4/15/2024 2:44:38 PM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 4/15/2024 2:42:33 PM<br>    ID: 71a91056-2cac-4a2f-bd5c-6d55620451bf | | |

| Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/9/2024 3:47:35 PM |
| Certified Delivered | Security Checked | 4/15/2024 2:42:33 PM |
| Signing Complete | Security Checked | 4/15/2024 2:44:38 PM |
| Completed | Security Checked | 4/15/2024 2:44:38 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure