# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KETTERING ADVENTIST HEALTHCARE | : | Case No. 3:25-cv-00273 |
| d/b/a Kettering Health Network, | : | |
| | : | Judge Walter H. Rice |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| v. | : | |
| | : | |
| SANDRA COLLIER, et, al. | : | |
| | : | |
| Defendants. | : | |

# DEFENDANTS 'COMBINED EMERGENCY MOTION TO VACATE IMPROPER ORDERS, STAY DISCOVERY, DENY PROTECTIVE ORDER, AUTHORIZE REGULATORY REPORTING, AND INVESTIGATE EX PARTE COMMUNICATIONS

## I. PRELIMINARY STATEMENT

Defendants Sandra Collier and Mary T. Scott, Esq. respectfully move this Court for emergency relief to restore due process, halt ongoing procedural abuses, and safeguard federally protected whistleblower disclosures.

Between August 13 and August 27, 2025, Defendants received no CM/ECF notifications of critical filings or Court orders, including Docs. 7 and 14, despite active registration and receipt of notices in every other case and for their own filings in this matter. During this blackout, Plaintiff acted with apparent advance knowledge of undisclosed modified scheduling orders, served unauthorized discovery, and sought protective orders to suppress disclosures implicating patient safety, HIPAA compliance, and regulatory fraud.

The Court should:

1. Vacate Docs. 7 and 14 due to lack of lawful notice;

2. Stay all discovery pending resolution of pending dispositive motions;

3. Deny Plaintiff's protective order and any sealing requests;

4. Authorize whistleblower reporting to regulators and IRBs; and

5. Investigate ex parte communications and compel disclosures.

## II. PROCEDURAL BACKGROUND AND TIMELINE

This litigation stems from Plaintiff's retaliatory conduct against whistleblower Sandra Collier after she reported systemic violations of FDA, HIPAA, and clinical research regulations. Despite repeated attempts to resolve compliance failures confidentially, Plaintiff terminated Ms. Collier, sued her, named her counsel personally, and sought TROs to seize whistleblower-protected materials.

***Key procedural events include:***

August 13–27, 2025: Defendants received no CM/ECF notifications of filings or orders;

August 18, 2025: Scheduling Order entered (Doc. 7) without notice;

August 26, 2025: Plaintiff emailed chambers referencing a "modified order" before Doc. 14 was docketed;

August 27, 2025: Doc. 14 imposed retroactive discovery deadlines without lawful notice.

## III. LEGAL ARGUMENTS

### A. Orders Entered Without Notice Are Voidable

Orders issued without proper notice violate constitutional due process. See <u>Mullane v. Central Hanover Bank</u>, 339 U.S. 306, 314 (1950). Under Fed. R. Civ. P. 5(b)(2)(E) and S.D. Ohio Civ. R. 5.2(b), service is effective only upon actual transmission via CM/ECF.  Because Defendants received no CM/ECF notifications for Docs. 7 or 14 until August 28, 2025, these orders should be vacated.

Plaintiff Failed to Properly Serve Defendants Under the Federal Rules and Local Rules. Plaintiff's initiation of this action was procedurally defective because proper service of process was never made, violating Fed. R. Civ. P. 4, Fed. R. Civ. P. 5, and S.D. Ohio Civ. R. 5.2. The failure to comply with these rules undermines the validity of all subsequent deadlines and orders.

1. <u>Governing Rules on Proper Service</u>:

Under Fed. R. Civ. P. 4(c)(1), a summons must be served with a copy of the complaint; the plaintiff is responsible for ensuring timely, proper service. See Murphy <u>Bros., Inc. v. Michetti Pipe Stringing, Inc</u>., 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition, is fundamental to any procedural due process right.").

Where a party knows the opposing party is represented by counsel, service must be made through counsel via CM/ECF or other authorized methods:

- Fed. R. Civ. P. 5(b)(1): "If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."

- Fed. R. Civ. P. 5(b)(2)(E): Service via CM/ECF is effective upon transmission where the attorney is registered with the court's electronic filing system.

- S.D. Ohio Civ. R. 5.2(b): In this District, "Electronic filing through the ECF system constitutes service ... and is complete upon transmission."

- In the absence of ECF service, the rules require either:

  1. Personal service or certified mail under Rule 4, or

  2. A signed waiver of service under Rule 4(d).

2. <u>Sixth Circuit Authority</u>:

The Sixth Circuit consistently enforces these requirements:

- <u>LSJ Inv. Co. v. O.L.D., Inc.</u>, 167 F.3d 320, 322 (6th Cir. 1999) (service of process rules "are not mere technicalities" but prerequisites to a court's jurisdiction).

- <u>King v. Taylor</u>, 694 F.3d 650, 655–56 (6th Cir. 2012) (failure to comply with Rule 4 service requirements renders service "void," not merely defective).

- <u>Friedman v. Estate of Presser</u>, 929 F.2d 1151, 1156 (6th Cir. 1991) (strict compliance with Rule 4 is required; "actual knowledge of the lawsuit is insufficient").

3. <u>Application to This Case</u>.

Here, Plaintiff failed to properly serve Defendants:

- Defendants never received a summons, either electronically or by mail, despite being known to be represented by counsel.

- Plaintiff did not file or serve a waiver of service under Rule 4(d).

- Defendants first learned of the lawsuit via an unsolicited email attaching a TRO request — which was also never served via ECF, certified mail, or personal service.

- No CM/ECF notices of the complaint, the TRO motion, or subsequent orders (Docs. 7 and 14) were received until the Aug. 28, 12:03 a.m. daily summary.

Because no proper service was made, Plaintiff failed to trigger Defendants 'obligation to respond or comply with deadlines. See <u>Murphy Bros</u>., 526 U.S. at 350 ("An individual or entity is not obliged to engage in litigation unless properly served."). The purported deadlines in Docs. 7 and 14 cannot bind Defendants absent effective service.

4. <u>Relief Requested</u>

The Court should:

1. Find service defective and void as a matter of law.

2. Vacate any deadlines imposed prior to proper service.

3. Require Plaintiff to effectuate service properly through CM/ECF or other Rule-compliant means before deadlines are reset.

**B. Discovery Must Be Stayed Pending Dispositive Motions**

Federal courts possess broad discretion to stay discovery where threshold dispositive issues are pending, especially where discovery would be unduly burdensome, inequitable, or premature. See Hahn v. Star Bank, N.A., 190 F.3d 708, 719 (6th Cir. 1999) ("A district court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."); Gettings v. Building Laborers Local 310 Fringe Benefit Fund, 349 F.3d 300, 304 (6th Cir. 2003) (stay appropriate where dispositive motions raise threshold issues impacting claims and defenses).

This principle flows from the Supreme Court's holding that one of the purposes of Rule 12(b) dispositive motions is to "spare litigants the burden of unnecessary pretrial proceedings" where legal issues may render discovery unnecessary. Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified immunity doctrine is to free officials from the burdens of discovery and trial where entitlement to immunity can be established."). While Iqbal addressed qualified immunity, the Sixth Circuit applies its reasoning broadly to justify stays when dispositive motions may resolve entire claims. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (discovery should not proceed where dispositive issues may fully dispose of the case).

1.  Multiple Dispositive Motions Are Currently Pending.

Defendants have filed pending dispositive motions challenging the sufficiency of Plaintiff's complaint, asserting affirmative defenses, and contesting allegations underpinning Plaintiff's TRO, protective order, and sealing requests. These motions, if granted, would substantially narrow or entirely dispose of Plaintiff's claims, rendering full-scale discovery unnecessary and wasteful.

Proceeding with depositions, interrogatories, and subpoenas at this stage would:

- Force Defendants to incur unnecessary costs and expend resources responding to expansive discovery on claims that may not survive dispositive review;

- Risk prematurely disclosing protected whistleblower materials while threshold jurisdictional and legal defenses remain unresolved; and

- Create irreparable prejudice given the procedural irregularities surrounding service and notice.

2. Orders Setting Discovery Deadlines Were Entered Without Proper Notice

The equities strongly favor a stay because the discovery schedule itself was imposed under Docs. 7 and 14, which were entered without proper notice:

- On August 18, 2025, Doc. 7 established strict discovery parameters and deadlines, requiring Defendants to serve objections by August 29, 2025.

- On August 26, 2025, the Court issued Doc. 14 modifying Doc. 7 and requiring witness lists and 30(b)(6) deposition notices by the same day .

- Defendants were not served with the complaint via summons, waiver, or CM/ECF.

- Defendants did not receive CM/ECF notices of Doc. 7 or Doc. 14 until the August 28, 2025 daily summary (See Ex. A).

Plaintiff, meanwhile, acted as if it had advance knowledge of modifications, emailing chambers about a "modified order" on August 27 — before Doc. 14 was docketed. This asymmetrical access compounds the prejudice and undermines the legitimacy of discovery deadlines derived from these orders.

3. Discovery Would Prejudice Defendants and Create Unnecessary Burdens

Allowing discovery to proceed under these circumstances would be inequitable and would prejudice Defendants in several ways:

- Compressed deadlines: Under Doc. 7, Defendants were required to respond to discovery within 11 days of purported service, despite never receiving summons or waiver.

- Expanded demands: Plaintiff served discovery exceeding the limits expressly imposed by Doc. 7, without leave of Court.

- Unresolved conflicts of interest: EBG's simultaneous representation of Kettering, individually named employees, and itself as a third-party defendant creates significant discovery complications, including privilege disputes and advocate-witness conflicts.

- Whistleblower disclosures at risk: Defendants 'pending counterclaims involve federally protected disclosures under the False Claims Act and HIPAA; discovery demands seeking this information before dispositive rulings threaten premature exposure of protected materials.

Under these circumstances, proceeding with discovery would contravene the purpose of Rule 1 — securing "the just, speedy, and inexpensive determination of every action" — by forcing unnecessary cost and burden on Defendants.

4. <u>Precedent Favors a Stay in Similar Circumstances</u>

Federal courts, including the Sixth Circuit, consistently hold that discovery should be stayed where pending dispositive motions may narrow or eliminate claims:

- <u>Hahn v. Star Bank</u>, 190 F.3d at 719 — Stays appropriate when dispositive motions raise preliminary issues affecting claims or defenses.

- <u>Gettings</u>, 349 F.3d at 304 — Courts have "broad discretion" to stay discovery pending resolution of legal questions central to the action.

- <u>Yuhasz v. Brush Wellman, Inc</u>., 341 F.3d 559, 566 (6th Cir. 2003) — In whistleblower FCA actions, discovery can be stayed to prevent unnecessary burdens where dispositive questions are pending.

- <u>Bangas v. Potter</u>, 145 F. App'x 139, 141 (6th Cir. 2005) — Discovery stayed until threshold jurisdictional issues resolved.

- <u>Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.</u>, 201 F.R.D. 1, 2 (D.D.C. 2001) — "[S]tay of discovery is appropriate where a dispositive motion has the potential to terminate litigation and thereby eliminate the need for discovery."

5. <u>Application</u>.

Here, a stay is warranted because:

- Dispositive motions are pending that may resolve or significantly narrow the claims;

- Discovery deadlines arise from Docs. 7 and 14, which were entered without notice and under circumstances suggesting ex parte communications;

- Plaintiff's discovery tactics exceed court-imposed limits and risk exposing protected whistleblower materials; and

- The equities weigh heavily against burdening Defendants with costly, expedited discovery before threshold issues are resolved.

For these reasons, the Court should exercise its broad discretion to stay all discovery pending resolution of Defendants' dispositive motions, vacate discovery deadlines set in Docs. 7 and 14, and reset the schedule only after threshold issues are adjudicated.

**C. Plaintiff's Protective Order Should Be Denied. Plaintiff can not meet its burden for a protective order; blanket sealing is foreclosed by the Sixth Circuit's strong presumption of openness.**

Standard (Protective Order). The movant bears the burden to show, with specific facts, "good cause" for any Rule 26(c) protection; conclusory assertions of harm or embarrassment are insufficient. Nix v. Sword, 11 F. App'x 498, 500 (6th Cir. 2001) (affirming denial where movant failed to make a particularized showing); <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36–37 (1984) (trial courts must balance interests; order must be narrowly tailored).

1.  Standard (Sealing/Judicial Records).

The Sixth Circuit applies a "strong presumption" of public access; the party seeking sealing must provide "compelling reasons" with document-by-document, line-by-line justifications and specific factual findings by the Court. Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305–08 (6th Cir. 2016); Rudd Equip. Co. v. John Deere Constr. & Forestry Co., 834 F.3d 589, 593–97 (6th Cir. 2016); Procter & Gamble Co. v. Bankers Tr. Co., 78 F.3d 219, 227 (6th Cir. 1996); Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179–80 (6th Cir. 1983). S.D. Ohio Civ. R. 5.2.1 requires leave and a showing of good cause.

2. Record.

Plaintiff publicly accused Defendants of theft/extortion without sealing those allegations, yet now seeks a broad protective order/sealing to conceal alleged research-compliance issues and suppress a whistleblower (Ex. D). Nothing in Doc. 7 or Doc. 14 authorizes blanket secrecy; those orders simply set schedules and discovery mechanics .

3. Application.

The request should be denied. Plaintiff offers no particularized showing of harm, let alone the compelling reasons required to seal judicial records. Given the public health stakes (clinical research integrity), transparency interests are at their apex. Shane, 825 F.3d at 305–06; Brown & Williamson, 710 F.2d at 1179–80.

## D. Whistleblower Disclosures Are Federally Protected

Efforts to suppress whistleblower disclosures through protective orders, sealing, or retaliatory litigation violate federal law and frustrate congressionally mandated reporting obligations.

1. False Claims Act Anti-Retaliation Protections

The False Claims Act (FCA) broadly protects employees and their counsel who attempt to stop violations of law, including by reporting misconduct to oversight agencies and other authorities. See 31 U.S.C. § 3730(h). The Sixth Circuit interprets § 3730(h) expansively to cover internal complaints, external reports, and attorney-assisted disclosures

- McDonnell v. Cardiothoracic & Vascular Surgical Assocs., 983 F.3d 369, 378–80 (6th Cir. 2020) ("Protected activity includes lawful acts … taken to stop one or more FCA violations, whether or not the plaintiff actually files a qui tam action.").

- Kreipke v. Wayne State Univ., 807 F.3d 768, 782–83 (6th Cir. 2015) (employee engaged in protected activity when raising concerns about misuse of federal research funds).

Here, Ms. Collier repeatedly raised internal concerns about research compliance violations implicating federal sponsors, IRBs, and the FDA. The demand letter documented those deficiencies and invited remediation, making it quintessentially protected activity. Plaintiff's effort to seal the letter, suppress disclosures, and sue both the whistleblower and her counsel runs directly afoul of § 3730(h)'s anti-retaliation purpose.

2. HIPAA's Whistleblower Exception.

HIPAA regulations independently authorize disclosures by whistleblowers to attorneys and oversight authorities without fear of retaliation. See 45 C.F.R. § 164.502(j)(1):

"A covered entity is not in violation … if a workforce member … discloses protected health information to an attorney retained for the purpose of determining legal options or to a health oversight agency or accreditation organization."

Application here: Plaintiff's accusations of "unauthorized disclosures" are baseless because Ms. Collier and counsel acted squarely within HIPAA's whistleblower exception by compiling compliance documentation and preparing reports for FDA, OIG, IRBs, NIH, ORI, and sponsors.

4. Mandatory FDA and IRB Reporting

Plaintiff operates federally regulated clinical trials subject to strict reporting obligations under FDA and IRB frameworks:

- 21 C.F.R. § 312.32(c): Requires investigators to report "adverse events," "serious and unexpected outcomes," and any protocol deviations impacting patient safety.

- 21 C.F.R. § 56.108(b): IRBs must ensure "prompt reporting" of noncompliance to FDA and sponsors.

Plaintiff's research department failed to follow these rules, creating patient safety risks (see Exs. B, D, G, H). Defendants are legally obligated to report such deficiencies; any protective order impeding those reports would directly conflict with federal mandates.

4. <u>Application. The Court should</u>:

1. Deny Plaintiff's sealing and protective-order requests because they impermissibly restrict federally protected disclosures.

2. Affirmatively authorize Defendants and counsel to provide documents and testimony to FDA, OIG, ORI, NIH, IRBs, and study sponsors.

3. Recognize that Plaintiff's retaliatory litigation underscores the need for judicial protection of whistleblowers consistent with § 3730(h), HIPAA, and FDA/IRB rules.

### E. Appearance of Ex Parte Communications Warrants Immediate Inquiry

The timeline of events, combined with the August 13 exchange between Plaintiff's counsel and the Court's secretary, demonstrates, at minimum, the appearance of improper ex parte communications that prejudiced Defendants and undermines confidence in the fairness of these proceedings.

1. <u>Governing Standards</u>.

Judicial ethics prohibit judges and their staff from engaging in, or permitting, ex parte communications on substantive matters without notice to all parties:

- Canon 3(A)(4), Code of Conduct for U.S. Judges: "A judge must not initiate, permit, or consider ex parte communications … concerning a pending or impending matter."

- ABA Model Rule 3.5(b): Prohibits lawyers from communicating with judicial staff on substantive matters without notice to opposing counsel.

- Courts act to protect against both actual impropriety and the appearance of impropriety where one side obtains non-public information or strategic guidance. See United <u>States v. Microsoft Corp.</u>, 253 F.3d 34, 114–15 (D.C. Cir. 2001) (appearance of impropriety required corrective measures).

2. <u>The August 13 Email and Voicemail Exchange</u>:

On August 13, 2025, before Defendants even had access to the complaint or TRO filings, the following occurred:

- Plaintiff's counsel James Petrie emailed defense counsel informing her for the first time that a lawsuit and TRO had been filed, attaching copies to that email because no summons, waiver, or CM/ECF service had been effected at that point.

- Almost simultaneously, Petrie left a voicemail with chambers referencing the case and advising the Court's secretary, Bethany, that Plaintiff "should file a TRO if negotiations fail."

- Bethany responded by email to Petrie acknowledging receipt of his voicemail, confirming chambers had been contacted ex parte about substantive litigation matters.

At the time of these communications:

- Plaintiff and chambers both knew Defendants were represented by counsel.

- Neither Bethany nor Petrie included defense counsel in the voicemail, the response email, or any summary of what was discussed.

- The voicemail itself has never been disclosed, and Defendants have no knowledge of its full contents.

3. <u>False Negotiation Narrative</u>

Petrie's voicemail implied that Plaintiff was "attempting negotiations" and that a TRO would only be pursued if those discussions failed.

This is demonstrably false.

- Defendants sent Plaintiff a detailed demand letter outlining significant federal research compliance violations, inviting remediation and open dialogue.

- Plaintiff never responded to discuss remediation, compliance, or settlement.

- Instead, Plaintiff weaponized that demand letter by:

    1. Filing this lawsuit and a TRO without notice or proper service,

    2. Mischaracterizing the demand letter as "extortion," and

    3. Using the TRO and lawsuit to suppress whistleblower disclosures and conceal regulatory misconduct.

This misrepresentation to chambers — framed as an ongoing negotiation that never existed — underscores the lack of transparency surrounding Plaintiff's August 13 voicemail and email exchange.

4. <u>Subsequent Evidence of Asymmetrical Access</u>

The August 13 exchange was not an isolated event but part of a broader pattern:

- On Aug. 26, Plaintiff served expanded discovery exceeding the limits in Doc. 7 (Ex. B).

- On Aug. 27, Plaintiff emailed chambers referencing a "modified order" before Doc. 14 (dated Aug. 26) was publicly docketed .

- Defendants had no CM/ECF notice of Doc. 14 until the 12:03 a.m. daily summary on Aug. 28 (Ex. A).

This sequence strongly suggests Plaintiff had advance, undisclosed access to chambers or rulings.

4. <u>Application</u>.

These communications create, at minimum, the appearance of improper ex parte contact. The Court should:

1. Order full disclosure of the August 13 Bethany-to-Petrie email and Petrie's voicemail to chambers;

2. Require chambers and Plaintiff's counsel to certify the scope and substance of all communications with chambers since August 13, 2025; and

3. Clarify that any representations about "negotiations" are unsupported and cannot justify Plaintiff's TRO or discovery posture.

4. Reset any affected deadlines and ensure all future substantive contacts include all counsel of record.

Such remedial action is necessary to restore fairness, cure prejudice, and protect the integrity of these proceedings.

### F. Epstein Becker & Green's Representation Creates Unresolvable Conflicts of Interest Warranting Judicial Scrutiny

The Notice of Appearance filed on August 28, 2025 confirms that Epstein Becker & Green, P.C. ("EBG") simultaneously represents:

1. Kettering Health Network,

2. Three individually named attorneys alleged to have participated in the events underlying Defendants 'claims — James G. Petrie, Jill K. Bigler, and Chris T. McGinnis, and

3. Itself as a third-party defendant .

This creates multiple, overlapping conflicts of interest under the Ohio Rules of Professional Conduct and federal ethics rules, raising concerns about divided loyalty, impaired advocacy, and improper concealment of misconduct.

1. <u>Conflicts in Representing Kettering, Its Employees, and Itself</u>

EBG is attempting to represent four distinct parties with inherently divergent interests:

- Kettering Health Network, whose institutional defense requires demonstrating compliance with federal research regulations to sponsors, CROs, IRBs, and regulators.

- Individual employees (including Petrie, Bigler, and McGinnis) whose personal exposure arises from alleged misconduct tied to regulatory violations, suppression of adverse event reports, and concealment of study deviations.

- EBG itself, as a named third-party defendant facing potential liability for its own role in advising and implementing litigation tactics alleged to suppress whistleblower disclosures

This representation conflicts with Ohio Prof. Conduct Rule 1.7(a), which prohibits representation when:

1. "The representation of one client will be directly adverse to another client," or

2. "There is a significant risk that the lawyer's responsibilities to one client will be materially limited by duties to another.

   Here, EBG cannot zealously represent Kettering while also defending employees who engaged in actions that may expose Kettering to liability. Nor can EBG objectively advise its employees or Kettering on risk exposure where its own conduct is implicated. See <u>In re Dresser Indus.</u>, 972 F.2d 540, 544 (5th Cir. 1992) (finding conflicts where counsel's role in "formulating challenged actions" made it impossible to provide disinterested advice).

2. <u>Conflicts Between Kettering and Its Sponsors / CROs / IRB</u>

Beyond litigation, Kettering owes contractual and regulatory duties to its sponsors, CROs, and IRBs, requiring:

- Accurate reporting of adverse events (21 C.F.R. § 312.32),

- Oversight by qualified investigators (21 C.F.R. § 312.53),

- Disclosure of noncompliance impacting study integrity (21 C.F.R. § 56.108)

Defendants 'disclosures and demand letter identified extensive compliance violations — including failures to report SUSARs, unqualified staff performing procedures, and concealment of protocol deviations — placing Kettering at odds with its contractual obligations.

Instead of addressing these failures, Kettering — through EBG — seeks protective orders and sealing to suppress disclosures, creating a direct conflict between Kettering's regulatory obligations and its litigation strategy.

3. <u>Heightened Concerns Where Counsel Represents Itself</u>

The conflict deepens because EBG is both counsel and a litigant. Its lawyers — including Petrie, Bigler, and McGinnis — are fact witnesses to critical events, including:

- Receipt and handling of Defendants 'demand letter outlining regulatory violations,

- Communications with chambers, including ex parte voicemail and email exchanges,

- Decisions to characterize whistleblower disclosures as "extortion" rather than remediation efforts.

Under Ohio Prof. Conduct Rule 3.7(a) ("Lawyer as Witness Rule"), a lawyer shall not act as an advocate in a matter where they are likely to be a necessary witness. See <u>United States v. Locascio</u>, 6 F.3d 924, 933 (2d Cir. 1993) (advocate-witness conflicts prejudice the integrity of proceedings).

Here, EBG's dual role compromises its ability to litigate objectively and impairs Defendants 'ability to obtain unbiased testimony regarding these key facts.

4. <u>Impact on the Integrity of the Proceeding</u>.

These conflicts go to the heart of this litigation.

- EBG's advice and actions are central to Defendants 'counterclaims and third-party claims.

- Kettering's obligations to its sponsors and regulators are incompatible with EBG's attempts to suppress whistleblower disclosures.

- The simultaneous representation of institutional, individual, and self-interests creates a significant risk of concealment of misconduct, impaired advocacy, and compromised discovery.

5. Application: The Court should:

   1. Order full disclosure from EBG identifying:

      ° All clients it represents in this matter,

      ° Any conflict waivers obtained, and

      ° Steps taken to mitigate divided loyalty.

   2. Consider requiring independent counsel for:

      ° Kettering's individually named employees, and

      ° EBG itself, given its role as a third-party defendant.

   3. Require Kettering to disclose whether its sponsors, CROs, and IRBs have been notified of these conflicts and underlying regulatory issues.

   4. Reserve the right to disqualify EBG from any representation where conflicts prove unresolvable.

### F. Denial of Plaintiff's Request for an Additional 21 Days

Plaintiff's request for an additional 21 days to respond should be denied as procedurally improper and inequitable.

1. <u>Governing Standard</u>

- Fed. R. Civ. P. 12(a)(1)(A)(i): Responsive pleadings are due within 21 days of service.

- S.D. Ohio Civ. R. 6.1: Parties may stipulate to extensions totaling no more than 21 days without court approval; any request beyond that requires a motion demonstrating good cause.

- Rule 6(b)(1)(B): Courts evaluate excusable neglect based on four factors:

  1. Danger of prejudice

  2. Length of delay

  3. Reason for delay

  4. Good faith (Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 522 (6th Cir. 2006);

     Howard v. Nationwide Prop. & Cas. Ins. Co., 306 F. App'x 265, 266 (6th Cir. 2009))

2. Record Application.

Plaintiff cannot establish good cause:

- Plaintiff leveraged retroactive deadlines set in Docs. 7 and 14 (e.g., Aug. 26, Aug. 29) while Defendants had no CM/ECF notice .

- Plaintiff then sought more time for itself, effectively asking the Court to reward gamesmanship.

- Defendants, operating blind, complied where possible under expired deadlines — Plaintiff should not gain additional advantage for creating the procedural trap.

     Moreover, Plaintiff is not entitled to additional time to answer or otherwise respond because Defendants were improperly served on August 13, 2025 — without summons, waiver of service, or proper CM/ECF notification — and yet were required, pursuant to Doc. 7 issued on August 18, 2025, to file an answer to the complaint by August 19, 2025. This greatly shortened Defendants 'response time and forced them to address multiple TRO-related filings and deadlines simultaneously, despite lacking proper service and notice. Out of equity and fairness, Plaintiff's request to extend its own deadlines should be denied, as Defendants were afforded no comparable opportunity.

3. Application.  The Court should:

  1. Deny Plaintiff's 21-day extension outright as procedurally improper and prejudicial.

2. If the Court resets deadlines because Docs. 7 and 14 are vacated, any new timelines should be evenly applied.

3. Defendants expressly reserve objections and appellate rights if the Court nonetheless grants Plaintiff additional time.

### G. Plaintiff's Pattern of Litigation Misconduct Warrants Sanctions Under Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Authority

This case has evolved into a pattern of bad-faith litigation tactics designed to suppress federally protected whistleblower disclosures, conceal regulatory misconduct, and gain unfair procedural advantage. Plaintiff's conduct — enabled and directed by its counsel, Epstein Becker & Green, P.C. ("EBG") — warrants immediate corrective action under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent power to manage proceedings and protect their integrity.

1. <u>Rule 11 Standard</u>.  Under Fed. R. Civ. P. 11(b), attorneys certify that filings are:

- Warranted by law,

- Supported by non-frivolous arguments,

- Grounded in fact after reasonable inquiry, and

- Not presented for improper purposes, such as harassment or unnecessary delay.

Sanctions are appropriate where filings are objectively unreasonable at the time made. <u>Rentz v. Dynasty Apparel Indus., Inc</u>., 556 F.3d 389, 395–401 (6th Cir. 2009). Safe-harbor procedures have been satisfied via Defendants 'Rule 11 letter and proposed sanctions motion (Ex. F).

Despite Defendants 'service of a Rule 11 safe-harbor letter on August 22, 2025 (Ex. F), expressly notifying Plaintiff and its counsel of ongoing ethical violations and improper litigation tactics, Plaintiff's counsel has continued to engage in conduct that exacerbates prejudice and undermines the integrity of these proceedings. Specifically:

1. On August 27, 2025, Plaintiff referenced a "modified order" in communications before Doc. 14 was even docketed, strongly suggesting undisclosed communications with chambers and creating the appearance of improper ex parte influence.

2. Plaintiff served expanded discovery demands on August 26, 2025 that exceeded the strict discovery limits set forth in Doc. 7 without prior leave of Court, violating both the scheduling order and Rule 26(b).

3. Plaintiff's counsel continues to rely on the false narrative of "ongoing negotiations" conveyed in the August 13 voicemail to the Court's secretary, Bethany, despite the fact that no such negotiations have ever occurred and Plaintiff has made no effort to address the regulatory violations outlined in Defendants 'demand letter.

4. Plaintiff has taken advantage of retroactive deadlines imposed by Docs. 7 and 14 despite Defendants 'lack of proper CM/ECF notice, forcing Defendants into a procedural disadvantage.

Plaintiff's persistence in these actions — after explicit notice under Rule 11 — demonstrates that these are not inadvertent missteps but part of a deliberate pattern of bad faith litigation conduct. Under these circumstances, corrective relief, sanctions, and heightened judicial scrutiny are necessary to restore fairness and protect the integrity of the judicial process.

2. Pattern of Misconduct Supporting Sanctions

Improper Service and Deprivation of Notice

Plaintiff failed to properly serve Defendants in violation of Fed. R. Civ. P. 4 and 5(b):

- No summons was ever issued or served.

- No waiver of service was requested or executed.

- No TRO or complaint filings were served via CM/ECF.

Defendants only became aware of the lawsuit when counsel James Petrie emailed a courtesy copy of the complaint and TRO request on August 13, 2025 — after contacting chambers ex parte that same day.

Despite failing to effect service, Plaintiff proceeded to seek and obtain scheduling orders (Docs. 7 and 14) imposing retroactive deadlines without providing Defendants a meaningful opportunity to comply. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (service of process is a prerequisite to a party's obligation to engage in litigation).

3. Ex Parte Communications and False Negotiation Narrative

On August 13, 2025, Plaintiff's counsel:

- Left a voicemail for the Court's secretary, Bethany, advising that Plaintiff should "file a TRO if negotiations fail."

- Bethany responded via email acknowledging receipt of this voicemail.

- Neither the voicemail nor the email were shared with defense counsel, even though chambers and Plaintiff knew Defendants were represented.

This creates, at minimum, the appearance of improper ex parte communications concerning substantive matters, violating Canon 3(A)(4) and ABA Model Rule 3.5(b).

Worse, Petrie's voicemail misrepresented that Plaintiff was engaged in "negotiations." In fact, no negotiations occurred:

- Defendants delivered a detailed demand letter outlining extensive federal regulatory violations and invited remediation.

- Plaintiff never attempted resolution and instead weaponized the demand letter by:

    1. Filing this lawsuit,

    2. Seeking a TRO without notice, and

    3. Mischaracterizing whistleblower disclosures as "theft" and "extortion."

4. <u>Subsequent events compound the concern</u>:

- On Aug. 27, Plaintiff referenced a "modified order" in communications before Doc. 14 was docketed.

- Defendants first received notice of Doc. 14 via the 12:03 a.m. Aug. 28 daily summary.

These actions demonstrate asymmetrical access to chambers and procedural advantage gained through undisclosed contacts.

5. <u>Weaponizing Protective Orders to Conceal Regulatory Misconduct</u>

Plaintiff's litigation strategy seeks to:

- Publicly accuse Defendants of theft and extortion, while

- Simultaneously requesting blanket sealing and a protective order to suppress whistleblower disclosures detailing noncompliance and patient safety risks.

This runs directly counter to Sixth Circuit precedent establishing a strong presumption of openness in matters implicating public health and safety:

- <u>Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.</u>, 825 F.3d 299, 305–08 (6th Cir. 2016).

- <u>Brown & Williamson Tobacco Corp. v. FTC</u>, 710 F.2d 1165, 1179–80 (6th Cir. 1983).

Plaintiff's misuse of court processes to conceal regulatory failures threatens public health, sponsor obligations, and data integrity in ongoing clinical trials.

6. <u>Multi-Layered Conflicts of Interest</u>

The Notice of Appearance filed Aug. 28, 2025 reveals that EBG simultaneously represents:

- Kettering Health Network,

- Three individually named attorneys — Petrie, Bigler, and McGinnis,

- EBG itself as a third-party defendant

This creates unresolvable conflicts because:

- Kettering's institutional defense depends on demonstrating compliance with sponsor and regulatory obligations.

- Individual employees face personal exposure for conduct undermining those obligations, creating directly adverse interests.

- EBG is a fact witness to:

    ○ Receipt and handling of the demand letter,

    ○ The August 13 voicemail/email exchange,

    ○ Strategic decisions to characterize whistleblower activity as unlawful.

Under Ohio Prof. Conduct Rules 1.7 and 3.7, EBG's dual role as advocate and witness compromises the integrity of these proceedings and undermines Defendants 'ability to obtain unbiased discovery.

7. <u>Legal Authority for Sanctions</u>

- Rule 11: Sanctions warranted for objectively unreasonable filings made for improper purposes. Rentz, 556 F.3d at 395–401.

- 28 U.S.C. § 1927: Attorneys who "unreasonably and vexatiously" multiply proceedings may be required to pay excess costs and fees. First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 517–24 (6th Cir. 2002).

- Inherent Authority: Courts may impose sanctions for bad-faith conduct threatening the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991)

8. <u>Requested Relief</u>. Given this cumulative misconduct, Defendants respectfully request that the Court:

1. Order full disclosure of all communications between Plaintiff's counsel and chambers since Aug. 13, 2025.

2. Deny Plaintiff's protective order and require adherence to Shane's heightened sealing standard.

3. Disqualify EBG from representing any party where conflicts are unresolvable.

4. Impose sanctions under Rule 11 and § 1927, including:

   ◦ Attorneys 'fees,

   ◦ Costs associated with responding to improper filings, and

   ◦ Such other relief as the Court deems just.

5. Reserve the Court's inherent authority to refer this matter for disciplinary review if warranted.

## IV. PRAYER FOR RELIEF

For the reasons stated above, and based on the cumulative record of procedural irregularities, ex parte communications, conflicts of interest, and litigation misconduct, Defendants respectfully request that the Court:

1. <u>Vacatur of Improper Orders</u>

- Vacate Docs. 7 and 14 in their entirety due to lack of proper service, absence of effective notice, and procedural irregularities undermining due process;

- Reset all scheduling and discovery deadlines on proper notice to all parties.

2. <u>Immediate Stay of Discovery</u>

- Stay all discovery obligations pending resolution of Defendants 'pending dispositive motions and threshold jurisdictional and legal issues;

- Prohibit Plaintiff from pursuing discovery demands beyond the limits set in Doc. 7 or otherwise without leave of Court.

3. <u>Denial of Protective Order and Sealing Requests</u>

- Deny Plaintiff's proposed protective order and reject any requests for blanket sealing;

- Apply the Sixth Circuit's heightened standard under Shane Group v. Blue Cross Blue Shield, 825 F.3d 299 (6th Cir. 2016), requiring document-by-document, line-by-line justifications before sealing any portion of the record.

4. <u>Authorization of Whistleblower Reporting.</u>

- Affirmatively authorize Defendants and counsel to fulfill federally mandated reporting obligations to:
  - ○ FDA, OIG, ORI, NIH,
  - ○ Institutional Review Boards (IRBs),
  - ○ Study sponsors, and
  - ○ Contract Research Organizations (CROs);
- <u>Clarify that such disclosures are expressly permitted</u> under 31 U.S.C. § 3730(h), 45 C.F.R. § 164.502(j), and 21 C.F.R. §§ 312.32, 56.108.

5. <u>Investigation of Ex Parte Communications</u>

- Compel Plaintiff's counsel, chambers staff, and the Clerk's Office to disclose:
  - ○ The August 13, 2025 voicemail and email exchange between Plaintiff's counsel and the Court's secretary,
  - ○ Any other communications concerning "negotiations," TRO filings, or scheduling matters, and
  - ○ The circumstances under which Plaintiff referenced a "modified order" before Doc. 14 was docketed;
- Order certification from chambers and Plaintiff's counsel that all substantive communications since August 13, 2025, are disclosed fully and completely.

6. <u>Conflict of Interest Disclosures</u>

- Order Epstein Becker & Green, P.C. ("EBG") to disclose:
  - ○ All parties and individuals represented in this matter,
  - ○ Any conflict waivers obtained,

- Steps taken to address conflicts arising from EBG's representation of Kettering, its individually named employees, and EBG itself as a third-party defendant;

- Require Kettering to disclose whether it has notified sponsors, CROs, IRBs, and regulators of the compliance violations underlying Defendants 'disclosures.

7. <u>Potential Disqualification of Counsel</u>

- Reserve the right to disqualify EBG from representing any party in this action if conflicts prove unresolvable, particularly given:

  - EBG's role as advocate and fact witness regarding the demand letter, ex parte communications, and litigation strategy; and

  - EBG's simultaneous representation of parties with adverse interests.

8. <u>Sanctions</u>

- Impose sanctions on Plaintiff and/or its counsel under:

  - Fed. R. Civ. P. 11 (At the conclusion of the 21 day Safe Harbor Period)

  - 28 U.S.C. § 1927, and/or

  - The Court's inherent authority;

- Sanctions may include:

  - Attorneys 'fees incurred responding to improper filings and TRO-related burdens;

  - Costs caused by Plaintiff's misuse of protective orders, sealing attempts, and improper discovery demands; and

  - Such other relief as the Court deems just and appropriate.

9. <u>Expedited Status Conference</u>

- Schedule an expedited status conference within 7 days to address:

  - Resetting deadlines,

  - Pending dispositive motions,

- ◦ Discovery limitations,

- ◦ Conflicts of interest, and

- ◦ Any unresolved issues impacting the fairness and efficiency of these proceedings.

Respectfully Submitted,

/s/ Mary T. Scott
Mary T. Scott (0081729)
7710 Reading Rd., Suite 102
Cincinnati, OH 45237
(513) 953-2499 Phone
(513) 753-7153 Fax
mtfoster@trinitylawllc.com
*Counsel for Defendants Sandra Collier
And Mary T. Scott (Pro se)*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF

system on all counsel of record on August 29, 2025.

/s/ Mary T. Scott
*Counsel for Defendants Sandra Collier
And Mary T. Scott (Pro se)*

## MINI-INDEX OF EXHIBITS (A–G)

**Exhibit A:** CM/ECF Daily Summary (Aug. 28, 2025) – demonstrates failure of notice between Aug. 13–27, 2025.

**Exhibit B:** Plaintiff's Aug. 26, 2025 email (3 depositions + subpoenas) – exceeds Doc. 7 limits.

**Exhibit C:** Plaintiff's Aug. 27, 2025 email to chambers referencing a 'modified order' pre-docketing.

**Exhibit D:** Plaintiff's Proposed Protective Order – overbroad sealing effort lacking good cause.

**Exhibit E:** Order Modifying August 18 Scheduling Order (Doc. 14) – retroactive deadlines entered without notice.

**Exhibit F:** Rule 11 Safe Harbor Letter – preserves sanctions for frivolous filings.

**Exhibit G:** Demand Letter (July 28, 2025) – protected whistleblower disclosures and remedial proposals.