IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KETTERING ADVENTIST HEALTHCARE

d/b/a KETTERING HEALTH NETWORK,

               Plaintiff,

      vs.                         CASE NO. 3:25-cv-273

SANDRA COLLIER and MARY T. SCOTT,

               Defendant.

          TRANSCRIPT OF PROCEEDINGS

    ORAL HEARING ON MOTIONS TO DISQUALIFY COUNSEL

PRESIDING:  THE HONORABLE WALTER H. RICE

DATE:  Monday, August 25, 2025

APPEARANCES:

For the Plaintiff:

By:   James G. Petrie, Esq.
      Jill K. Bigler, Esq.
      Epstein, Becker & Green, PC
      250 West Street
      Suite 300
      Columbus, Ohio  43215
      (614) 872-2420
      jpetrie@ebglaw.com
      jbigler@ebglaw.com

For the Defendant:

By:   Mary T. Scott, Esq.
      7710 Reading Road
      Suite 102
      Cincinnati, Ohio  45237
      (513) 953-2499
      mtfoster@trinitylawllc.com

Also Present:

    Bethany Russell, Courtroom Deputy Clerk
    Daniel Wiest, Law Clerk
    James Smerbeck, Law Clerk
    Arabella Loera, Extern
    Averee Richardson, Extern

Court Reporter:  Caryl L. Blevins, RPR, CRR
                Walter H. Rice Federal Building
                U.S. Courthouse
                200 W. Second Street
                Dayton, Ohio  45402
                (937) 512-1511
                caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript produced by computer.

Monday, August 25, 2025

4:38 p.m.

(Proceedings had via Zoom.)

THE COURT: Well, good afternoon, all. This is C3-25-273, Kettering Adventist Healthcare versus Sandra Collier and others, the other being Mary T. Scott.

Ms. Collier is present remotely, as is her counsel and codefendant, Mary Scott. Counsel for the Plaintiffs, I have Mr. James Petrie and Ms. Jill Bigler.

Is Mr. McGinnis on the call, either by phone or Zoom, Mr. Petrie?

MR. PETRIE: No, Your Honor.

THE COURT: All right. Now, we are here for purposes of an oral hearing on the cross-motions to disqualify counsel, and I'm going to turn first to Plaintiff's counsel to argue why Ms. Scott should be disqualified, and some of the questions I'm going to ask may seem obvious insofar as the answer is concerned, but I'm trying to both learn and to make a record.

Mr. Petrie or Ms. Bigler, why are the interests of Ms. Scott and Ms. Collier adverse, either under 1.7 or 1.37, and if their interests are adverse, why isn't the waiver of the conflict sufficient?

MR. PETRIE: Your Honor, excuse me. The interests are not in align because the two declarations that Ms. Scott

provided provide information that will make it difficult for Ms. Scott to represent the -- Ms. Collier.

For instance, one of the allegations in which they take an adverse position is regarding Ms. Collier's infiltration of the Kettering computer system after her termination, and the declaration for Ms. Scott, while waiving attorney-client privilege, avers that Ms. Collier accessed her own mailbox and materials using credentials that Kettering failed to activate (sic).

Ms. Scott also said that she did not direct or encourage Ms. Collier to access any system without authorization.

Ms. Collier, on the other hand, admits she knowingly accessed multiple accounts, including emails, Teams messages, and payroll, despite her termination. The two positions pit Ms. Scott and Ms. Collier against each other because -- making them directly adverse.

Similarly, Ms. Scott and Ms. Collier swore on their declarations that Ms. Collier never sent any documents to -- or information to the public; however, Ms. Scott has taken a contrary position in the opposition that she filed, claiming that Collier did not, quote, unduly transmit data to third parties.

With that admission that her client is -- has actually transmitted data to third parties, again makes them

adverse, and Ms. Scott's argument fundamentally undercuts the testimony of her own client, despite a -- a purported waiver, and there are waivers that simply cannot be -- cannot be enforceable when we have Ms. Scott and Ms. Collier making material -- materially incompatible positions in the context of Ms. Scott's demand letter.

Ms. Collier swears in her declaration that she never threatened Kettering; instead, she says -- she avers that if Kettering chose not to remediate, I will reserve my rights to report concerns to appropriate authorities.

The letter that was sent, however, contains explicit threats that go far beyond reporting alleged concerns to the authorities, providing statements like should you fail to respond within five days, we will proceed without further notice by immediately notifying the list of regulatory agent sponsors of your -- your egregious conduct, and in addition, they will issue press releases to national and local news.

Ms. Scott's personal interest in defending the civil extortion claim could also have an adverse impact on her representation of Ms. Collier.

THE COURT:  Mr. Petrie, I -- go ahead, sir.  I did not mean to cut you off.

MR. PETRIE:  Oh, that's okay, Your Honor.  Thank you.  For example, when deposed, which we intend to depose

Ms. Scott, she will have to testify whether and to what extent Collier was authorized or directed her to send the letter. That testimony could create liability for Ms. Collier and put them directly at odds.

Another issue for this situation is that in the reply, the memo -- I guess the cross-motion, Ms. Scott has now taken the position that she doesn't have personal knowledge regarding the information in her declaration, so now we're at a point where she is either -- well, she says, and I quote -- she says she holds no independent factual knowledge; everything she knows arises from privileged communications with her client and she has no firsthand knowledge of contested issues, and yet the plain reading of the declaration reveals that she has either perjured herself or she's made material misrepresentations to the Court.

The perjury would be her swearing under oath that she had personal knowledge of what she's testifying about, and now she is taking the position -- a different position, that she doesn't have that -- any -- any independent factual knowledge and she says that everything that she knows arose from alleged communications with her client.

She waived the attorney-client privilege in the declaration. So she's taking a different position, and our position -- it is our position she's taking a different position and that is undermining her own client's position.

THE COURT: All right. Is there anything further, sir?

MR. PETRIE: Excuse me. No, Your Honor.

THE COURT: All right. Certainly what you've said about various contradictions can be used against Ms. Scott if she is deposed, called to testify by Plaintiff, or takes the witness stand on her own volition, but I don't see how a conflict between all she knows is what her client told her and -- on the one hand, and on the other, saying she has personal knowledge of the facts in her declaration, I don't see how that inconsistency is adverse to her -- to her client.

Would you respond to that?

MR. PETRIE: Your Honor, I -- I think it is adverse because she is -- if she doesn't have personal knowledge but she represents to the Court that she does, then she's committing perjury.

If she -- if she is defending herself against perjury, how can she be focusing her attention on Ms. -- Ms. Collier's -- her case and what's in her best interest?

THE COURT: Well, I hear what you're saying. First of all, she's not been accused of -- of perjury. We have two statements, one in a memorandum, one in a declaration, that I'll assume, purely arguendo, are inconsistent, but I don't see how defending herself against

inconsistent statements, if that's the wrong term -- I don't see how an inconsistency between a declaration and a statement in a memorandum is adverse to the interests of her client.

She may be distracted, but I don't see how, as a matter of law, I can say there is a conflict between two codefendants, one of whom is the attorney for the -- for the other.

Now, the only inconsistency that sticks out is -- and I'm using your description -- where Ms. Collier said I didn't do something and Ms. Scott said I did not unduly or did not caution her to do something unduly pervasive.

I'll make that point and then I'll go on to say that that appears to be the only statement in her declaration that you're going to be able to get into evidence because the rest of it -- the privilege, the attorney-client privilege, has obviously been waived by her filing the declaration, but everything other than I didn't do versus I didn't unduly do would appear to me to be inadmissible as statements of her own client and, therefore, history -- hearsay.

Please direct your attention to that, if you would.

MR. PETRIE: She has -- it's our position, Your Honor, that she has waived the attorney-client privilege by

providing the declaration as to -- as to all the claims, and so we will be deposing her, and what her testimony is, is going to be material and necessary because there's just, as far as we know right now, two people that have been engaged in gathering the documents and, you know, doing the -- writing the letter.

As I -- as I said before, if you -- she has waived the attorney-client privilege, so the drafting of that letter and who's responsible for it and who approved it is going to be material to the claims, and so she's going to be a necessary witness.

THE COURT: What about the evidentiary point I raised that anything she learned from her client, while arguably not protected by the attorney-client privilege because that's been waived, is nonetheless hearsay and inadmissible?

MR. PETRIE: Well, Your Honor, we are going to depose -- or we're going to have Ms. Collier testify about it, which is going to bring in the -- bring in the -- take care of hearsay, and then we are going to attack her credibility with her -- her lawyer's different position about it.

THE COURT: Well, let's assume that Ms. Collier can't claim the privilege because that's been waived. Are you saying that any statement that Ms. Scott may have made

to Ms. Collier is -- it's either hearsay or it's not offered for the truth. If it's not offered for the truth and, therefore, not hearsay, how is it relevant?

MR. PETRIE: Well, Your Honor, we would have to take the depositions to understand, you know, what -- what all the background is. Your -- your hypothetical is hard to -- to respond to without, you know, having the -- having more -- having discovery done about it.

THE COURT: I agree with that last statement that you made, Mr. Petrie, and I'll get back to you in a moment.

Ms. Scott, would you address the issues with regard to Plaintiff's attempt to disqualify you? I'll get to your motion to disqualify Plaintiff's counsel in a moment.

MS. SCOTT: Thank you, Your Honor. Your Honor, this case is not about ethics. It's about retaliation, ultimately against my client, who's a whistleblower. The information when I indicated to this Court that is -- no, let me go back.

My client is a whistleblower. I was not party to the gathering or obtaining of any of the documentation that she came to me with. This was all after the fact.

What I am doing is -- and what I still stand by today is the fact that we sent a demand letter giving Kettering another opportunity to right their wrong and to

correct their misdeeds.

My client, who is a whistleblower, went to Kettering, tried to work with them to correct their issues, and instead of addressing their huge in -- violations, violations which require and mandate reporting to not only the regulatory bodies but to the sponsors themselves, and I would also argue public policy that it was required to be notified to the public at large, she gave them that opportunity and they fired her in retaliation.

This -- and sending them the information, our demand, was simply that. We outlined what their clients did, the information we had. We made no unlawful threat to them. In fact, we asked for them to correct their misdeeds as part of any type of settlement.

We didn't coerce them to give them anything -- give us anything that we didn't -- weren't lawfully entitled to, which was for them to remunerate Ms. Collier for the damage they did to her personally.

She alleged several acts against them of discrimination, of HIPAA violations, of violating -- retaliatory conduct, wire fraud, all these things they did personally against my client prior to me getting involved in this matter, and instead of addressing those issues, they fired her.

And as a result, in knowing and seeing and

discovering the plethora of misdeeds and conduct, it has -- they have tried to turn what was a lawful privileged demand letter into extortion, and it is our position, Your Honor, that they did so as a continuation of the retaliatory contact -- con -- tactics in order to try to discredit, in order to try to get to the documentations that my client, who is a whistleblower, has in her possession.

They did this with the emergency TRO and they manufactured, literally manufactured a conflict by naming me as a codefendant. That cannot be the lawful basis to disqualify me. Rule 3.7, Your Honor, only applies if my testimony is necessary and unavailable elsewhere. That's pursuant to Puritas Metal Products v Cole.

All of the relevant facts concerning anything, how documents were obtained or anything of that nature, can come directly from Ms. Collier, not from me.

I have personal knowledge as to what my client expressed to me, but I don't have personal knowledge as to the depths of what all transpired except for my communications with my client.

They claim my letter was extortion, and it's only extortion if I threaten wrongful and if I have no legal rights to act. There is documented evidence of their continued violation. Lawful advocacy and regulatory reporting is not extortion.

THE COURT: Ms. Scott, I understand that your position is that nothing you did amounted to civil extortion. That's your position on the merits of the litigation.

We're not here to -- to argue that. I respect your argument, but it's beyond the scope of our get-together this afternoon.

I want you to confine your remarks simply to their motion, Plaintiff's counsel's motion to disqualify you as representative of Ms. Collier.

MS. SCOTT: Yes, sir. The reality is, Your Honor, my -- I don't have any testimony that's going to be necessary or relevant. All relevant facts are going to come from my client and their clients regarding any legitimacy of the -- the issues and matters within this litigation.

I am simply responding to the fact that this alleged conflict arose strictly because they -- and it's very difficult to extrapolate one from the other to the extent that they made false claims against me personally to create a conflict with my client by saying what I did, my conduct specifically in submitting to them a demand letter, amounted to extortion.

So in response, number one, I am not -- my client and I have been aligned this entire time.

THE COURT: All right.

MS. SCOTT: I -- our -- our issues -- I don't have any facts independent from my client.

In addition to that, excuse me, my role has been strictly legal advocacy, drafting, advising, and enforcing Mrs. Collier's whistleblower rights, and I don't have a conflict with her.

Unsupported allegations, Your Honor, is what we're dealing with, and -- and me attempting to explain that information to the Court does not justify me being disqualified.

There's no divided loyalty that I have, no personal interest that would conflict me from representing her.

THE COURT: I understand your position, Ms. Scott, and I don't want to stop you, but on the other hand, you've made your point.

Is there anything else you'd like to briefly add before I give Mr. Petrie the -- the last word?

MS. SCOTT: Yes, Your Honor. Give me one second here, please.

THE COURT: Take your time.

MS. SCOTT: In addition to what I've said, Your Honor, whistleblower protections override their motions. Pursuant to Ohio Revised Code 4113.52, it protects employees who report whistleblower -- report violations threatening to

the public.  Under the Sarbanes-Oxley Act, it protects employees and representatives from retaliation for reporting corporate fraud.

Plaintiff's motion is an attempt to chill lawful disclosure, Your Honor, and to retaliate -- retaliate against a whistleblower, and the law clearly indicates that drafting a lawful demand letter does not make me a necessary witness.

Me attempting to explain that what they have accused me of does not amount to what they have alleged does not put me at odds with my client.  Public policy and federal whistleblower protections forbid disqualifications based on lawful reporting.

Like I said, I -- my -- there is no divided loyalty and no personal interest.  The allegations are unsupported and retaliatory, and at this point, my being disqualified, it -- they don't -- it would be inappropriate where it puts my client at -- at risk of not having proper representation or as a retaliatory measure -- measure to -- to continue to silence her.

THE COURT:  Thank you, Ms. Scott.

MS. SCOTT:  Thank you.

THE COURT:  Thank you.  The issue, of course, is -- let me withdraw that.

Let me hear from Mr. Petrie first and then I will

make a ruling. Mr. Petrie, very briefly in response to what Ms. Scott has said.

MR. PETRIE: Thank you, Your Honor. Ms. Scott at the very earliest stages made it readily apparent that -- that she's unable to separate her own advocacy for herself and her -- and her client.

She has largely in the multiple filings that we've had in this 10 days focused on the civil extortion claim against her specifically, but those claims are only presented for the -- the -- the claims that we have in the TRO had nothing to do with civil extortion, and she has sought to blend her role as counsel for her client and her desire for herself to advocate for herself to show that she -- she can't separate the two.

She has brought up the civil extortion claim in every pleading and in the -- in her oral arguments now. Here we have a case where she clearly is a material witness, and she can't -- she can't waive that, and she has shown that she is not able to do, which is very difficult, when you are -- when you are a Defendant and you are the -- the advocate, to -- to separate those, and she's already shown it in the -- in all of the pleadings that she has -- that she has filed.

We did not manufacture a conflict. We -- we -- at no time did we allege that her representation was unlawful,

but it's a clear violation of the Rules of Professional Conduct, and she's -- she's bound to -- bound to provide them.

We don't have a nefarious motive here. She -- she took these actions. She filed her declaration. She has to take responsibility for that and the -- and the implications that go with that, and so, Your Honor, we -- we continue to believe that it's a clear case that she's not able to perform -- she's not able to service her client. She should be disqualified for the reasons we discussed.

THE COURT: All right, Mr. Petrie, Ms. Scott. Thank you both. I don't believe I can, and therefore, I won't rule on Plaintiff's motion to disqualify Ms. Scott as counsel for Ms. Collier.

I think whenever and whatever the facts are, joining a Defendant's attorney as a codefendant, even though the codefendant and counsel are named in separate counts, is a risky thing to do.

I -- I don't in any way, shape, or form, Mr. Petrie, because I don't in any way conclude because I have no evidence to conclude that you've named Ms. Scott for a nefarious reason.

I can see -- I don't see that any of the arguments that have been made by Plaintiff's counsel seeking the disqualification of Ms. Scott are such as to be sufficient

for me to rule as a matter of law that her interests are adverse to those of her client.

Now, it may well be that such an adversarial interest will be demonstrated.  I'm not saying that it will, I'm saying that it could be demonstrated by discovery.

Ms. Scott is a Defendant in this case.  Plaintiff has named her as such.  Pardon me.  You are entitled, Mr. Petrie, to depose Ms. Scott.

Normally, I would say you can't depose her on any attorney-client protected matters.  I think to the extent she has, in effect, opened the door or waived that privilege by her declaration, that removes that impediment.

You can certainly examine her on the inconsistency in the declaration between, on the one hand, I know only what my attorney has told me versus -- I believe that was in a memorandum -- versus what she said in her declaration, that she is responding to it with what she knows personally, but merely because someone has made an inconsistent statement upon which she can be questioned does not mean that she and her client have adverse interests.

If I were to give advice to Ms. Scott, which she's not asked me for, but I'll use the judge's privilege to volunteer same, I would -- let me say this:  It may well be that discovery will reveal an adverse interest.

She may wish to consult with an attorney who deals

with these questions of disqualification motions, interests adverse to a client, and the like for advice that I'm not permitted to give at this stage of the case, but I will say that, yes, she's a witness that can be deposed, she can be deposed upon any inconsistencies between statements in a memorandum and statements about her personal knowledge of some events which she disavowed in the memorandum.

The motion to disqualify Ms. Scott is overruled without prejudice to renewal should Plaintiffs discover in any discovery or any further filings or at any stage of this case grounds to urge, reasons for disqualification that might be more favored by the Court.

I would simply say this: That I'm here to rule on whatever motions are filed, but if you intend to supplement your motion to disqualify Ms. Scott, it's best done early rather than later because bringing in new counsel will simply delay this litigation, run up costs, neither of which are particularly good for either client.

So Plaintiff's motion to disqualify is overruled without prejudice to renewal as the context for some of these statements is more fully developed.

So I do agree with that statement that you made at the end of your initial presentation, and I do accept it as accurate. Let's see what develops.

Ms. Scott, you have moved to disqualify

Plaintiff's counsel. I know it's your intention -- not intention, but contention -- contention that Plaintiff's counsel did this simply to remove you from the case and that's why the extortion count was added followed by a motion to disqualify.

So I understand that that's your position, but I would like you to address the question, not the merits of the litigation, but the question of disqualification on why I should take them off of the case, please, if you would.

MS. SCOTT: Yes, Your Honor. Our position for having them disqualified is because we have filed as well a third-party complaint for which they are Defendants, which I placed them on notice prior to doing so, and the -- the basis of which goes back to my client's status as a whistleblower and our legitimate attempts to work with them and then having that information weaponized and used as an abuse of process, and with them, where my -- any -- any inconsistencies or whatever that was indicated on my -- in my declaration or whatever are -- can be easily addressed; however, the issues with whether or not they are aware and they're under the obligation -- and we all have a -- an oath to not just make sure we take care of our clients but that public policy for the health and safety of the public is also respected.

Their -- this is a situation where their

information is going to -- they're going to have to testify regarding their conduct with regards to their client, them advising their client to continue to cover up and not address the real issues that brought us to the table with this entire matter, and that is the regulatory conflicts, the retaliations, and with them being their attorney and them making the decisions to file, you know, damning, very much so, public claims that, as -- like I said, I'm not going to argue the merits of those things, but in our estimation are just as viable, and most likely more so, than the claims for which they found the basis to remove me as counsel, we would have the opportunity to -- to depose them and to find out to the extent that they were aware that their client violated the -- the multiple laws and regulatory rules.

They are complicit, not just information, but their actions amount to complicity, especially with some of the tactics for which we believe were -- are unfound, and we have outlined those issues in our complaint against them naming them as well as Defendants in this matter.

And like my -- my information can be gotten directly from the documents, any testimony that I would have, Your Honor, for which they want to go ahead and depose me for, they can get that information from my client's -- from the documents presented; however, the information

that's within our complaint against them as well as Kettering and the bad actors, they are part and parcel to that. They have information.

Ours is waivable because I don't have independent facts. They had the information, and it's not -- and it's going to diverge against their clients at the end of the day, and they cannot correct the actual conflict that exists between their client, their client who is Kettering, the entity, the individual doctors, and individual actors that have been named as well as the sponsors whom their client has an obligation and responsibility to whom they are trying to prevent from having necessary information that conflicts with them.

So there -- there is a lot of conflict of interest that's inherent in this particular situation that they cannot get around.

THE COURT: Okay. Thank you, Ms. Scott.

Mr. Petrie, briefly, if you would respond.

MR. PETRIE: I'm going to defer to Ms. Bigler.

THE COURT: All right. Ms. Bigler?

MS. BIGLER: Thank you, Your Honor. I would acknowledge the fact that, yes, there have been third-party claims filed against us, but that fact alone does not create a conflict of interest. It doesn't create any sort of adverse interest between us and the remaining Defendants.

We are not necessary witnesses.  We have no independent personal knowledge of the reasons that Kettering had to file the complaint in this case.

I did want to address a few things that Ms. Scott is alleging against us individually, that we are part of a coverup, that we are complicit.  Your Honor, these are reckless allegations that are not backed by fact, they're not backed by law.

If anything, the cross-motion to dismiss here is the retaliatory filing, if anything.  The cross-motion here was not supported by any facts, again, was not supported by any law, is not, you know, supported by the Rules of Professional Conduct here.

There's simply no conflict, and you know, Ms. Scott has not provided any sort of logical argument or facts that would support the existence of a conflict.

THE COURT:  Thank you, Ms. Bigler.

Ms. Scott, you're entitled to the last word.

MS. SCOTT:  Your Honor, at the -- at the end of the day, there is a conflict of interest, and though they say that they have no independent knowledge, they made the decision to seek an emergency TRO trying to get the documents that are in Ms. Collier's possession.

They made the decision to file the causes of actions that they did that has also equally reckless and

retaliatory motives behind them.  Them simply saying they don't have any information is -- is really not true.

In this particular matter, they made several acts, they took several positions that should have culminated in perhaps conversations, perhaps other measures, even if conduct is deemed to be unlawful, to go through the proper measures and -- and go to the Bar.

There's different things you do when you believe there has been a conflict or there is some -- some wrongdoing.  When conflicts are manufactured and put out there, say about me putting this -- my -- my declaration, my declaration was in response to their filing.  It wasn't separate and apart.  It was in response to.

Had they not filed to disqualify me, there would not have been a need -- a need for me to have to address that because I would have strictly just addressed the underlying cause, which is, as they say in their -- what she just said, reckless and retaliatory.

So at the end of the day, their position to decide to come -- to make me a -- a codefendant, that was their decision, and they had a conversation with their clients.

So they have interest there that if they were really on the side of their client, would -- they would have taken a different approach because, at the end of the day, the very things that they're seeking, to get stuff to be

re -- withdrawn and covered and sealed, they made mine public.

They -- they made decisions not to seal things, to expose as intimidation factor and as a harassment issue rather than factual allegations for which they can lawfully and legally support.

At the end of the day, their positions and decisions they've made, those are key issues and they're in the center of our allegations for which they are necessary witnesses.

THE COURT:  All right.  Ms. Scott, thank you for your comments.  Ms. Bigler, thank you for yours.

Of course, they know about the case because their client, I'm assuming, I've never heard this operate in any other fashion, came to them with their, their client's version of what occurred.  Whether that version is accurate in whole or in part, we're several steps away from testing that in any way, shape, or form.

The remedy for a filing of a frivolous complaint or a complaint that is I'm going to use the word scandalous. I'm using that word in a legal sense, is a Rule 11 motion seeking sanctions and worse and a report to the Bar Association.

The remedy of a Defendant who has been the subject of that type of complaint or whose client, in this case,

client and codefendant who has been a victim of that, is a Rule 11 finding and not, respectfully, a motion to disqualify them as counsel in the case.

I don't see -- now, the facts may eventually bear out everything you've said, but based on what's before me now, these are attorneys who were brought a factual situation to their attention and at the client's request, filed a lawsuit on the client's behalf. There's nothing in this lawsuit that on its face raises the issue of a conflict under the Rules of Evidence.

Now, whether they should have converted what you feel to be a proper demand letter into a claim against you for civil extortion is a Rule 11 matter, and it's a matter that you ask the Court for sanctions if the litigation reveals -- reveals that your premises are correct, but following disqualification of Plaintiff's counsel in this case simply because they acceded to their client's wish to vindicate the client's rights that they feel have been ignored, that is not on its face improper, would, quite frankly, subject any lawyer who writes a demand letter to a charge of extortion, and that's not the way it should be.

And I don't think I have any more to say except they have a right to depose you, and you as a party Defendant have a right to depose them if you can work out the logistics of that between the two sides, but I don't

believe -- and you're welcome to try to point this out to me -- I don't believe they have waived or their client has waived the attorney-client privilege, and they may well raise that privilege during the taking of the depositions, but as of now, that motion to disqualify counsel is overruled.

I do have one thing to raise, two things, before we adjourn. We are talking on September the -- we are talking at some time not set forth in the scheduling -- no, I withdraw that.

We are talking Monday, September 8th, on any objections to discovery, a discovery plan filed by opposing parties, and if you feel that -- and Mr. Petrie, if you feel that you should not be required to be deposed, then you simply make that one of your objections and I will rule on it.

I do want to raise a particular issue. One of the Defendants in the third-party complaint is a Franklin Handel, who was my personal physician for probably some 10 years, and my relationship with him has ended, and basically he was the physician that prescribed certain medication for me, put me through certain tests to determine my physical condition.

I had no social relationship with him, and what I want you, Ms. Scott, and you, Mr. Petrie and Ms. Bigler, to

speak with your clients, tell them that, and if that raises any problem in your minds about whether I can be impartial in this case, let's discuss it, but I did want to reveal that to you, and I did not realize the issue until I read the third-party complaint this morning.

Mr. Petrie, anything else we should discuss at this point?

MR. PETRIE: Yes, Your Honor. With regard to the order you were referencing, in -- in number three, it says, and one subpoena testificandum for each side.

Is that -- do we actually -- is this just a notice of deposition?

THE COURT: If I'm following you, Mr. Petrie, you're talking about the 30(b)(6) deposition?

MR. PETRIE: No. It's -- it's above that, Your Honor, but I don't know if that --

MS. SCOTT: My apologies for interrupting. Was that filed, the order filed? When did we receive that order? Because I've been waiting for an order.

THE COURT: Which order are you speaking of, Ms. Scott?

MS. SCOTT: Whatever order -- I apologize, Your Honor. Whatever he's reading from.

THE COURT: I don't know what he's reading from because I can't -- at the moment, I cannot follow him.

MS. SCOTT:  Okay.

THE COURT:  He may -- he may be talking about the order I filed on the 18th of August, which set forth the various timetables for certain steps leading to the preliminary injunction.  It was filed at docket number 7.

MS. SCOTT:  Okay, because I didn't get notice of filing.  Okay.

MR. PETRIE:  So your -- Your Honor, it says that Plaintiff and the Defendants collectively shall serve discovery requests consisting of no more than 10 interrogatories, 10 requests for production of documents, and then the -- the next part of it is, and one subpoena ad test -- testificandum -- I don't know how to pronounce that.

THE COURT:  Testificandum.

MR. PETRIE:  Thank you -- for each side.

THE COURT:  Yes.

MR. PETRIE:  Is that for a 30(b)(6) or is that...

THE COURT:  That's for a 30(b)(6), and paragraph number three is incomplete in the sense that it does not ask you to list the lay witnesses or the parties that you wish to discover.  So that's my omission, for which I apologize.

MR. PETRIE:  Oh, no problem, Your Honor.  Thanks for the clarification.

THE COURT:  Okay.  Ms. Scott, did you receive this entry?

MS. SCOTT: Absolutely not, Your Honor. My apologies. And I'm looking now, too, and I never received notification. I received notification of docket number 8 but not docket number 7. I'm not sure why I would not have received it.

THE COURT: All right. Let's make certain we have your email or, if you still use this term, fax number so we can get that to you first thing in the morning.

MS. SCOTT: Yes, sir. I can go online. If it's docket number 7, I can go and look it up and pull it down also, sir. I just hadn't received notice of it.

THE COURT: I understand. If you check the docket and for some reason don't see it, call my assistant first thing in the morning.

MS. SCOTT: Yes, sir, will do.

THE COURT: All right. Mr. Petrie, anything further?

MR. PETRIE: No, Your Honor.

THE COURT: Ms. Scott, anything further?

MS. SCOTT: No, Your Honor. I just would like to let the Court know that we are familiar with the Rule 11 and we did serve opposing counsel with a Rule 11 letter --

THE COURT: Yes.

MS. SCOTT: -- in -- in the interim, so we're attempting to try to follow the necessary protocols prior to

instituting any additional motions.

THE COURT:  Thank you, Ms. Scott.

Ms. Bigler, I didn't mean to ignore you.  Is there anything further at this point?

MS. BIGLER:  No, Your Honor.  Thank you.

THE COURT:  All right.  There being nothing further, then, I want to thank everyone for their courtesies.  I will file an entry journalizing the decision I made on the cross-motions to disqualify.

It may well be brief, simply referring to my rulings and the reasons set forth on the record.  I want everyone to have a nice and a safe evening.  Thank you all.

MR. PETRIE:  Thank you, Your Honor.

MS. SCOTT:  Thank you, Your Honor.

MS. BIGLER:  Thank you, Your Honor.

(Hearing concluded at 5:41 p.m.)

CERTIFICATE OF REPORTER


     I, Caryl L. Blevins, Federal Official Realtime Court

Reporter, in and for the United States District Court for

the Southern District of Ohio, do hereby certify that

pursuant to Section 753, Title 28, United States Code, that

the foregoing is a true and correct transcript of the

stenographically reported proceedings held in the

above-entitled matter and that the transcript page format is

in conformance with the regulations of the Judicial

Conference of the United States.




s/Caryl L. Blevins_____
CARYL L. BLEVINS, RPR, CRR
FEDERAL OFFICIAL REALTIME COURT REPORTER

**1**

**1.37** [1] - 3:21
**1.7** [1] - 3:21
**10** [4] - 16:8, 27:19, 29:10, 29:11
**102** [1] - 1:22
**11** [5] - 25:21, 26:2, 26:13, 30:21, 30:22
**18th** [1] - 29:3

**2**

**200** [1] - 2:6
**2025** [2] - 1:12, 3:1
**25** [2] - 1:12, 3:1
**250** [1] - 1:16
**28** [1] - 32:6

**3**

**3.7** [1] - 12:11
**30(b)(6** [3] - 28:14, 29:17, 29:18
**300** [1] - 1:17
**3:25-cv-273** [1] - 1:6

**4**

**4113.52** [1] - 14:24
**43215** [1] - 1:17
**45237** [1] - 1:22
**45402** [1] - 2:7
**4:38** [1] - 3:2

**5**

**512-1511** [1] - 2:7
**513** [1] - 1:23
**5:41** [1] - 31:16

**6**

**614** [1] - 1:18

**7**

**7** [3] - 29:5, 30:4, 30:10
**753** [1] - 32:6
**7710** [1] - 1:21

**8**

**8** [1] - 30:3
**872-2420** [1] - 1:18
**8th** [1] - 27:11

**9**

**937** [1] - 2:7
**953-2499** [1] - 1:23

**A**

**able** [4] - 8:15, 16:19, 17:8, 17:9
**above-entitled** [1] - 32:9
**absolutely** [1] - 30:1
**abuse** [1] - 20:17
**acceded** [1] - 26:17
**accept** [1] - 19:23
**access** [1] - 4:11
**accessed** [2] - 4:8, 4:14
**accounts** [1] - 4:14
**accurate** [2] - 19:24, 25:16
**accused** [2] - 7:22, 15:10
**acknowledge** [1] - 22:22
**Act** [1] - 15:1
**act** [1] - 12:23
**actions** [3] - 17:5, 21:17, 23:25
**activate** [1] - 4:9
**actors** [2] - 22:2, 22:9
**acts** [2] - 11:19, 24:3
**actual** [1] - 22:7
**ad** [1] - 29:12
**add** [1] - 14:17
**added** [1] - 20:4
**addition** [3] - 5:17, 14:3, 14:22
**additional** [1] - 31:1
**address** [5] - 10:11, 20:7, 21:4, 23:4, 24:15
**addressed** [2] - 20:19, 24:16
**addressing** [2] - 11:4, 11:23
**adjourn** [1] - 27:8
**admission** [1] - 4:24
**admits** [1] - 4:13
**Adventist** [1] - 3:5
**ADVENTIST** [1] - 1:3
**adversarial** [1] - 18:3
**adverse** [14] - 3:21, 3:22, 4:4, 4:17, 5:1, 5:20, 7:11, 7:15, 8:3, 18:2, 18:20, 18:24, 19:2, 22:25
**advice** [2] - 18:21, 19:2
**advising** [2] - 14:4,

21:3
**advocacy** [3] - 12:24, 14:4, 16:5
**advocate** [2] - 16:13, 16:21
**afternoon** [2] - 3:4, 13:7
**agent** [1] - 5:16
**agree** [2] - 10:9, 19:22
**ahead** [2] - 5:22, 21:23
**align** [1] - 3:25
**aligned** [1] - 13:24
**allegations** [6] - 4:3, 14:7, 15:15, 23:7, 25:5, 25:9
**allege** [1] - 16:25
**alleged** [5] - 5:12, 6:21, 11:19, 13:17, 15:10
**alleging** [1] - 23:5
**alone** [1] - 22:23
**amount** [2] - 15:10, 21:17
**amounted** [2] - 13:2, 13:22
**answer** [1] - 3:18
**apart** [1] - 24:13
**apologies** [2] - 28:17, 30:2
**apologize** [2] - 28:22, 29:21
**apparent** [1] - 16:4
**appear** [1] - 8:19
**APPEARANCES** [1] - 1:13
**applies** [1] - 12:11
**approach** [1] - 24:24
**appropriate** [1] - 5:10
**approved** [1] - 9:9
**Arabella** [1] - 2:3
**arguably** [1] - 9:14
**argue** [4] - 3:16, 11:7, 13:5, 21:9
**arguendo** [1] - 7:24
**argument** [3] - 5:1, 13:6, 23:15
**arguments** [2] - 16:16, 17:23
**arises** [1] - 6:11
**arose** [2] - 6:20, 13:17
**assistant** [1] - 30:13
**Association** [1] - 25:23
**assume** [2] - 7:24, 9:23
**assuming** [1] - 25:14
**attack** [1] - 9:20
**attempt** [2] - 10:12, 15:4

**attempting** [3] - 14:8, 15:9, 30:25
**attempts** [1] - 20:15
**attention** [3] - 7:19, 8:22, 26:7
**attorney** [13] - 4:7, 6:22, 8:7, 8:17, 8:25, 9:8, 9:14, 17:16, 18:10, 18:15, 18:25, 21:6, 27:3
**attorney-client** [8] - 4:7, 6:22, 8:17, 8:25, 9:8, 9:14, 18:10, 27:3
**attorneys** [1] - 26:6
**August** [3] - 1:12, 3:1, 29:3
**authorities** [2] - 5:10, 5:13
**authorization** [1] - 4:12
**authorized** [1] - 6:2
**Averee** [1] - 2:4
**avers** [2] - 4:7, 5:8
**aware** [2] - 20:20, 21:13

**B**

**backed** [2] - 23:7, 23:8
**background** [1] - 10:6
**bad** [1] - 22:2
**Bar** [2] - 24:7, 25:22
**based** [2] - 15:13, 26:5
**basis** [3] - 12:10, 20:14, 21:11
**bear** [1] - 26:4
**Becker** [1] - 1:16
**behalf** [1] - 26:8
**behind** [1] - 24:1
**best** [2] - 7:20, 19:15
**Bethany** [1] - 2:2
**between** [8] - 7:8, 8:2, 8:6, 18:14, 19:5, 22:8, 22:25, 26:25
**beyond** [2] - 5:12, 13:6
**Bigler** [9] - 1:15, 3:9, 3:20, 22:19, 22:20, 23:17, 25:12, 27:25, 31:3
**BIGLER** [3] - 22:21, 31:5, 31:15
**blend** [1] - 16:12
**BLEVINS** [1] - 32:15
**Blevins** [3] - 2:5, 32:3, 32:14
**bodies** [1] - 11:6
**bound** [2] - 17:2
**brief** [1] - 31:10

**briefly** [3] - 14:17, 16:1, 22:18
**bring** [2] - 9:19
**bringing** [1] - 19:16
**brought** [3] - 16:15, 21:4, 26:6
**Building** [1] - 2:5

**C**

**C3-25-273** [1] - 3:5
**cannot** [6] - 5:3, 5:4, 12:10, 22:7, 22:16, 28:25
**care** [2] - 9:20, 20:22
**CARYL** [1] - 32:15
**Caryl** [2] - 2:5, 32:3
**caryl_blevins@ohsd .uscourts.gov** [1] - 2:8
**case** [15] - 7:20, 10:16, 16:17, 17:8, 18:6, 19:3, 19:11, 20:3, 20:9, 23:3, 25:13, 25:25, 26:3, 26:17, 28:3
**CASE** [1] - 1:6
**causes** [1] - 23:24
**caution** [1] - 8:12
**center** [1] - 25:9
**certain** [4] - 27:21, 27:22, 29:4, 30:6
**certainly** [2] - 7:4, 18:13
**CERTIFICATE** [1] - 32:1
**certify** [1] - 32:5
**charge** [1] - 26:21
**check** [1] - 30:12
**chill** [1] - 15:4
**chose** [1] - 5:9
**Cincinnati** [1] - 1:22
**civil** [6] - 5:20, 13:2, 16:8, 16:11, 16:15, 26:13
**claim** [6] - 5:20, 9:24, 12:21, 16:8, 16:15, 26:12
**claiming** [1] - 4:22
**claims** [8] - 9:1, 9:10, 13:19, 16:9, 16:10, 21:8, 21:11, 22:23
**clarification** [1] - 29:23
**clear** [2] - 17:1, 17:8
**clearly** [2] - 15:6, 16:17
**Clerk** [3] - 2:2, 2:2, 2:3
**client** [48] - 4:7, 4:24, 5:2, 6:12, 6:21, 6:22,

7:8, 7:12, 8:4, 8:17, 8:20, 8:25, 9:8, 9:13, 9:14, 10:17, 10:20, 11:2, 11:22, 12:6, 12:17, 12:20, 13:14, 13:20, 13:23, 14:2, 15:11, 15:18, 16:6, 16:12, 17:9, 18:2, 18:10, 18:20, 19:2, 19:18, 21:2, 21:3, 21:14, 22:8, 22:10, 24:23, 25:14, 25:25, 26:1, 27:2, 27:3
**client's** [8] - 6:25, 20:14, 21:24, 25:15, 26:7, 26:8, 26:17, 26:18
**clients** [6] - 11:11, 13:14, 20:22, 22:6, 24:21, 28:1
**Code** [2] - 14:24, 32:6
**codefendant** [6] - 3:8, 12:10, 17:16, 17:17, 24:20, 26:1
**codefendants** [1] - 8:7
**coerce** [1] - 11:15
**Cole** [1] - 12:13
**collectively** [1] - 29:9
**COLLIER** [1] - 1:7
**Collier** [24] - 3:6, 3:7, 3:21, 4:2, 4:7, 4:11, 4:13, 4:16, 4:18, 4:19, 4:22, 5:4, 5:7, 5:21, 6:2, 6:4, 8:10, 9:18, 9:23, 10:1, 11:17, 12:16, 13:10, 17:14
**Collier's** [4] - 4:4, 7:20, 14:5, 23:23
**Columbus** [1] - 1:17
**comments** [1] - 25:12
**committing** [1] - 7:17
**communications** [3] - 6:12, 6:21, 12:20
**complaint** [9] - 20:12, 21:19, 22:1, 23:3, 25:19, 25:20, 25:25, 27:18, 28:5
**complicit** [2] - 21:16, 23:6
**complicity** [1] - 21:17
**computer** [2] - 2:10, 4:5
**con** [1] - 12:5
**concerned** [1] - 3:18
**concerning** [1] - 12:14
**concerns** [2] - 5:10, 5:13
**conclude** [2] - 17:20, 17:21

**concluded** [1] - 31:16
**condition** [1] - 27:23
**conduct** [6] - 5:16, 11:21, 12:1, 13:21, 21:2, 24:6
**Conduct** [2] - 17:2, 23:13
**Conference** [1] - 32:11
**confine** [1] - 13:8
**conflict** [17] - 3:23, 7:8, 8:6, 12:9, 13:17, 13:20, 14:6, 14:12, 16:24, 22:7, 22:14, 22:24, 23:14, 23:16, 23:20, 24:9, 26:9
**conflicts** [3] - 21:5, 22:12, 24:10
**conformance** [1] - 32:10
**consisting** [1] - 29:10
**consult** [1] - 18:25
**contact** [1] - 12:5
**contains** [1] - 5:11
**contention** [2] - 20:2
**contested** [1] - 6:13
**context** [2] - 5:6, 19:20
**continuation** [1] - 12:4
**continue** [3] - 15:20, 17:7, 21:3
**continued** [1] - 12:24
**contradictions** [1] - 7:5
**contrary** [1] - 4:21
**conversation** [1] - 24:21
**conversations** [1] - 24:5
**converted** [1] - 26:11
**corporate** [1] - 15:3
**correct** [6] - 11:1, 11:3, 11:13, 22:7, 26:15, 32:7
**costs** [1] - 19:17
**counsel** [17] - 3:7, 3:8, 3:15, 3:16, 10:13, 16:12, 17:14, 17:17, 17:24, 19:16, 20:1, 20:3, 21:12, 26:3, 26:16, 27:5, 30:22
**COUNSEL** [1] - 1:10
**counsel's** [1] - 13:9
**count** [1] - 20:4
**counts** [1] - 17:17
**course** [2] - 15:23, 25:13
**Court** [10] - 2:5, 6:15, 7:16, 10:18, 14:9,

19:12, 26:14, 30:21, 32:3, 32:4
**COURT** [37] - 1:1, 3:4, 3:13, 5:22, 7:1, 7:4, 7:21, 9:12, 9:23, 10:9, 13:1, 13:25, 14:14, 14:21, 15:21, 15:23, 17:11, 22:17, 22:20, 23:17, 25:11, 28:13, 28:20, 28:24, 29:2, 29:14, 29:16, 29:18, 29:24, 30:6, 30:12, 30:16, 30:19, 30:23, 31:2, 31:6, 32:15
**courtesies** [1] - 31:8
**Courthouse** [1] - 2:6
**Courtroom** [1] - 2:2
**cover** [1] - 21:3
**covered** [1] - 25:1
**coverup** [1] - 23:6
**create** [4] - 6:3, 13:20, 22:23, 22:24
**credentials** [1] - 4:8
**credibility** [1] - 9:21
**cross** [5] - 3:14, 6:6, 23:9, 23:10, 31:9
**cross-motion** [3] - 6:6, 23:9, 23:10
**cross-motions** [2] - 3:14, 31:9
**CRR** [2] - 2:5, 32:15
**culminated** [1] - 24:4
**cut** [1] - 5:23

# D

**d/b/a** [1] - 1:4
**damage** [1] - 11:18
**damning** [1] - 21:7
**Daniel** [1] - 2:2
**data** [2] - 4:22, 4:25
**DATE** [1] - 1:12
**days** [2] - 5:14, 16:8
**Dayton** [1] - 2:7
**dealing** [1] - 14:8
**deals** [1] - 18:25
**decide** [1] - 24:19
**decision** [4] - 23:22, 23:24, 24:21, 31:8
**decisions** [3] - 21:7, 25:3, 25:8
**declaration** [18] - 4:6, 5:7, 6:8, 6:14, 6:23, 7:10, 7:24, 8:2, 8:15, 8:18, 9:1, 17:5, 18:12, 18:14, 18:16, 20:19, 24:11, 24:12
**declarations** [2] - 3:25, 4:19

**deemed** [1] - 24:6
**Defendant** [6] - 1:8, 1:20, 16:20, 18:6, 25:24, 26:24
**Defendant's** [1] - 17:16
**Defendants** [5] - 20:12, 21:20, 22:25, 27:18, 29:9
**defending** [3] - 5:19, 7:18, 7:25
**defer** [1] - 22:19
**delay** [1] - 19:17
**demand** [8] - 5:6, 10:24, 11:11, 12:2, 13:21, 15:7, 26:12, 26:20
**demonstrated** [2] - 18:4, 18:5
**depose** [8] - 5:25, 9:18, 18:8, 18:9, 21:12, 21:23, 26:23, 26:24
**deposed** [5] - 5:25, 7:6, 19:4, 19:5, 27:14
**deposing** [1] - 9:2
**deposition** [2] - 28:12, 28:14
**depositions** [2] - 10:5, 27:4
**depths** [1] - 12:19
**Deputy** [1] - 2:2
**description** [1] - 8:10
**desire** [1] - 16:13
**despite** [2] - 4:15, 5:2
**determine** [1] - 27:22
**developed** [1] - 19:21
**develops** [1] - 19:24
**different** [6] - 6:18, 6:23, 6:24, 9:21, 24:8, 24:24
**difficult** [3] - 4:1, 13:18, 16:19
**direct** [2] - 4:10, 8:22
**directed** [1] - 6:2
**directly** [4] - 4:17, 6:4, 12:16, 21:22
**disavowed** [1] - 19:7
**disclosure** [1] - 15:5
**discover** [2] - 19:9, 29:21
**discovering** [1] - 12:1
**discovery** [7] - 10:8, 18:5, 18:24, 19:10, 27:12, 29:10
**discredit** [1] - 12:5
**discrimination** [1] - 11:20
**discuss** [2] - 28:3,

28:6
**discussed** [1] - 17:10
**dismiss** [1] - 23:9
**disqualification** [5] - 17:25, 19:1, 19:11, 20:8, 26:16
**disqualifications** [1] - 15:12
**disqualified** [5] - 3:17, 14:10, 15:17, 17:10, 20:11
**DISQUALIFY** [1] - 1:10
**disqualify** [15] - 3:15, 10:12, 10:13, 12:11, 13:9, 17:13, 19:8, 19:15, 19:19, 19:25, 20:5, 24:14, 26:3, 27:5, 31:9
**distracted** [1] - 8:5
**District** [2] - 32:4, 32:5
**DISTRICT** [2] - 1:1, 1:1
**diverge** [1] - 22:6
**divided** [2] - 14:11, 15:14
**DIVISION** [1] - 1:2
**docket** [5] - 29:5, 30:3, 30:4, 30:10, 30:12
**doctors** [1] - 22:9
**documentation** [1] - 10:21
**documentations** [1] - 12:6
**documented** [1] - 12:23
**documents** [7] - 4:19, 9:5, 12:15, 21:22, 21:25, 23:23, 29:11
**done** [2] - 10:8, 19:15
**door** [1] - 18:11
**down** [1] - 30:10
**drafting** [3] - 9:8, 14:4, 15:7
**during** [1] - 27:4

# E

**earliest** [1] - 16:4
**early** [1] - 19:15
**easily** [1] - 20:19
**effect** [1] - 18:11
**egregious** [1] - 5:16
**either** [6] - 3:10, 3:21, 6:9, 6:14, 10:1, 19:18
**elsewhere** [1] - 12:12
**email** [1] - 30:7
**emails** [1] - 4:14
**emergency** [2] - 12:8,

23:22
**employees** [2] - 14:24, 15:2
**encourage** [1] - 4:11
**end** [6] - 19:23, 22:6, 23:19, 24:19, 24:24, 25:7
**ended** [1] - 27:20
**enforceable** [1] - 5:4
**enforcing** [1] - 14:4
**engaged** [1] - 9:4
**entire** [2] - 13:24, 21:5
**entitled** [4] - 11:16, 18:7, 23:18, 32:9
**entity** [1] - 22:9
**entry** [2] - 29:25, 31:8
**Epstein** [1] - 1:16
**equally** [1] - 23:25
**especially** [1] - 21:17
**Esq** [3] - 1:15, 1:15, 1:21
**estimation** [1] - 21:10
**ethics** [1] - 10:16
**evening** [1] - 31:12
**events** [1] - 19:7
**eventually** [1] - 26:4
**evidence** [3] - 8:16, 12:23, 17:21
**Evidence** [1] - 26:10
**evidentiary** [1] - 9:12
**examine** [1] - 18:13
**example** [1] - 5:25
**except** [2] - 12:19, 26:22
**excuse** [3] - 3:24, 7:3, 14:3
**existence** [1] - 23:16
**exists** [1] - 22:7
**explain** [2] - 14:8, 15:9
**explicit** [1] - 5:12
**expose** [1] - 25:4
**expressed** [1] - 12:18
**extent** [4] - 6:2, 13:19, 18:10, 21:13
**Extern** [2] - 2:3, 2:4
**extortion** [13] - 5:20, 12:3, 12:21, 12:22, 12:25, 13:3, 13:22, 16:8, 16:11, 16:15, 20:4, 26:13, 26:21
**extrapolate** [1] - 13:18

## F

**face** [2] - 26:9, 26:19
**fact** [7] - 10:22, 10:24, 11:13, 13:16, 22:22, 22:23, 23:7
**factor** [1] - 25:4
**facts** [9] - 7:10, 12:14,

13:13, 14:2, 17:15, 22:5, 23:11, 23:16, 26:4
**factual** [4] - 6:10, 6:19, 25:5, 26:6
**fail** [1] - 5:14
**failed** [1] - 4:9
**false** [1] - 13:19
**familiar** [1] - 30:21
**far** [2] - 5:12, 9:4
**fashion** [1] - 25:15
**favored** [1] - 19:12
**fax** [1] - 30:7
**federal** [1] - 15:12
**FEDERAL** [1] - 32:15
**Federal** [2] - 2:5, 32:3
**few** [1] - 23:4
**file** [4] - 21:7, 23:3, 23:24, 31:8
**filed** [13] - 4:21, 16:23, 17:5, 19:14, 20:11, 22:23, 24:14, 26:8, 27:12, 28:18, 29:3, 29:5
**filing** [5] - 8:18, 23:10, 24:12, 25:19, 29:7
**filings** [2] - 16:7, 19:10
**fired** [2] - 11:9, 11:24
**first** [5] - 3:15, 7:22, 15:25, 30:8, 30:13
**firsthand** [1] - 6:12
**five** [1] - 5:14
**focused** [1] - 16:8
**focusing** [1] - 7:19
**follow** [2] - 28:25, 30:25
**followed** [1] - 20:4
**following** [2] - 26:16, 28:13
**FOR** [1] - 1:1
**forbid** [1] - 15:12
**foregoing** [1] - 32:7
**form** [2] - 17:19, 25:18
**format** [1] - 32:9
**forth** [3] - 27:9, 29:3, 31:11
**Franklin** [1] - 27:18
**frankly** [1] - 26:20
**fraud** [2] - 11:21, 15:3
**frivolous** [1] - 25:19
**fully** [1] - 19:21
**fundamentally** [1] - 5:1

## G

**gathering** [2] - 9:5, 10:21
**get-together** [1] - 13:6

**Green** [1] - 1:16
**grounds** [1] - 19:11
**guess** [1] - 6:6

## H

**hand** [4] - 4:13, 7:9, 14:15, 18:14
**Handel** [1] - 27:19
**harassment** [1] - 25:4
**hard** [1] - 10:6
**HEALTH** [1] - 1:4
**health** [1] - 20:23
**Healthcare** [1] - 3:5
**HEALTHCARE** [1] - 1:3
**hear** [2] - 7:21, 15:25
**heard** [1] - 25:14
**HEARING** [1] - 1:10
**hearing** [1] - 3:14
**Hearing** [1] - 31:16
**hearsay** [5] - 8:21, 9:15, 9:20, 10:1, 10:3
**held** [1] - 32:8
**hereby** [1] - 32:5
**herself** [6] - 6:14, 7:18, 7:25, 16:5, 16:13
**HIPAA** [1] - 11:20
**history** [1] - 8:21
**holds** [1] - 6:10
**Honor** [36] - 3:12, 3:24, 5:24, 7:3, 7:14, 8:25, 9:17, 10:4, 10:15, 12:3, 12:11, 13:11, 14:7, 14:19, 14:23, 15:5, 16:3, 17:7, 20:10, 21:23, 22:21, 23:6, 23:19, 28:8, 28:16, 28:23, 29:8, 29:22, 30:1, 30:18, 30:20, 31:5, 31:13, 31:14, 31:15
**HONORABLE** [1] - 1:11
**huge** [1] - 11:4
**hypothetical** [1] - 10:6

## I

**ignore** [1] - 31:3
**ignored** [1] - 26:19
**immediately** [1] - 5:15
**impact** [1] - 5:20
**impartial** [1] - 28:2
**impediment** [1] - 18:12
**implications** [1] - 17:6
**improper** [1] - 26:19

**IN** [1] - 1:1
**inadmissible** [2] - 8:20, 9:16
**inappropriate** [1] - 15:17
**including** [1] - 4:14
**incompatible** [1] - 5:5
**incomplete** [1] - 29:19
**inconsistencies** [2] - 19:5, 20:18
**inconsistency** [4] - 7:11, 8:2, 8:9, 18:13
**inconsistent** [3] - 7:25, 8:1, 18:18
**independent** [6] - 6:10, 6:19, 14:2, 22:4, 23:2, 23:21
**indicated** [2] - 10:18, 20:18
**indicates** [1] - 15:6
**individual** [2] - 22:9
**individually** [1] - 23:5
**infiltration** [1] - 4:5
**information** [17] - 4:1, 4:20, 6:8, 10:18, 11:10, 11:12, 14:9, 20:16, 21:1, 21:16, 21:21, 21:24, 21:25, 22:3, 22:5, 22:12, 24:2
**inherent** [1] - 22:15
**initial** [1] - 19:23
**injunction** [1] - 29:5
**insofar** [1] - 3:18
**instance** [1] - 4:3
**instead** [3] - 5:8, 11:4, 11:23
**instituting** [1] - 31:1
**intend** [2] - 5:25, 19:14
**intention** [2] - 20:1, 20:2
**interest** [11] - 5:19, 7:20, 14:12, 15:15, 18:4, 18:24, 22:14, 22:24, 22:25, 23:20, 24:22
**interests** [7] - 3:20, 3:22, 3:24, 8:3, 18:1, 18:20, 19:1
**interim** [1] - 30:24
**interrogatories** [1] - 29:11
**interrupting** [1] - 28:17
**intimidation** [1] - 25:4
**involved** [1] - 11:22
**issue** [7] - 5:17, 6:5, 15:23, 25:4, 26:9, 27:17, 28:4

**issues** [10] - 6:13, 10:11, 11:3, 11:23, 13:15, 14:1, 20:20, 21:4, 21:19, 25:8

## J

**James** [3] - 1:15, 2:3, 3:9
**jbigler@ebglaw.com** [1] - 1:19
**Jill** [2] - 1:15, 3:9
**joining** [1] - 17:16
**journalizing** [1] - 31:8
**jpetrie@ebglaw.com** [1] - 1:18
**judge's** [1] - 18:22
**Judicial** [1] - 32:10
**justify** [1] - 14:9

## K

**KETTERING** [2] - 1:3, 1:4
**Kettering** [10] - 3:5, 4:5, 4:9, 5:8, 5:9, 10:25, 11:3, 22:2, 22:8, 23:2
**key** [1] - 25:8
**knowing** [1] - 11:25
**knowingly** [1] - 4:14
**knowledge** [12] - 6:8, 6:11, 6:13, 6:17, 6:20, 7:10, 7:16, 12:17, 12:18, 19:6, 23:2, 23:21
**knows** [4] - 6:11, 6:20, 7:8, 18:17

## L

**large** [1] - 11:8
**largely** [1] - 16:7
**last** [3] - 10:9, 14:18, 23:18
**Law** [2] - 2:2, 2:3
**law** [5] - 8:6, 15:6, 18:1, 23:8, 23:12
**lawful** [6] - 12:2, 12:10, 12:24, 15:4, 15:7, 15:13
**lawfully** [2] - 11:16, 25:5
**laws** [1] - 21:14
**lawsuit** [2] - 26:8, 26:9
**lawyer** [1] - 26:20
**lawyer's** [1] - 9:21
**lay** [1] - 29:20
**leading** [1] - 29:4
**learn** [1] - 3:19

**learned** [1] - 9:13
**legal** [3] - 12:22, 14:4, 25:21
**legally** [1] - 25:6
**legitimacy** [1] - 13:14
**legitimate** [1] - 20:15
**letter** [13] - 5:6, 5:11, 6:3, 9:6, 9:9, 10:24, 12:3, 12:21, 13:21, 15:7, 26:12, 26:20, 30:22
**liability** [1] - 6:3
**likely** [1] - 21:10
**list** [2] - 5:15, 29:20
**literally** [1] - 12:9
**litigation** [5] - 13:4, 13:15, 19:17, 20:8, 26:14
**local** [1] - 5:18
**Loera** [1] - 2:3
**logical** [1] - 23:15
**logistics** [1] - 26:25
**look** [1] - 30:10
**looking** [1] - 30:2
**loyalty** [2] - 14:11, 15:15

### M

**mailbox** [1] - 4:8
**mandate** [1] - 11:5
**manufacture** [1] - 16:24
**manufactured** [3] - 12:9, 24:10
**MARY** [1] - 1:7
**Mary** [3] - 1:21, 3:6, 3:8
**material** [5] - 5:5, 6:15, 9:3, 9:10, 16:17
**materially** [1] - 5:5
**materials** [1] - 4:8
**matter** [9] - 8:6, 11:23, 18:1, 21:5, 21:20, 24:3, 26:13, 32:9
**matters** [2] - 13:15, 18:10
**McGinnis** [1] - 3:10
**mean** [3] - 5:23, 18:19, 31:3
**measure** [2] - 15:19
**measures** [2] - 24:5, 24:7
**mechanical** [1] - 2:9
**medication** [1] - 27:21
**memo** [1] - 6:6
**memorandum** [5] - 7:23, 8:3, 18:16, 19:6, 19:7

**merely** [1] - 18:18
**merits** [3] - 13:3, 20:7, 21:9
**messages** [1] - 4:15
**Metal** [1] - 12:13
**might** [1] - 19:12
**minds** [1] - 28:2
**mine** [1] - 25:1
**misdeeds** [3] - 11:1, 11:13, 12:1
**misrepresentations** [1] - 6:15
**moment** [3] - 10:10, 10:14, 28:25
**Monday** [3] - 1:12, 3:1, 27:11
**morning** [3] - 28:5, 30:8, 30:14
**most** [1] - 21:10
**motion** [15] - 6:6, 10:13, 13:9, 15:4, 17:13, 19:8, 19:15, 19:19, 20:5, 23:9, 23:10, 25:21, 26:2, 27:5
**motions** [6] - 3:14, 14:23, 19:1, 19:14, 31:1, 31:9
**MOTIONS** [1] - 1:10
**motive** [1] - 17:4
**motives** [1] - 24:1
**moved** [1] - 19:25
**MR** [18] - 3:12, 3:24, 5:24, 7:3, 7:14, 8:24, 9:17, 10:4, 16:3, 22:19, 28:8, 28:15, 29:8, 29:15, 29:17, 29:22, 30:18, 31:13
**MS** [21] - 10:15, 13:11, 14:1, 14:19, 14:22, 15:22, 20:10, 22:21, 23:19, 28:17, 28:22, 29:1, 29:6, 30:1, 30:9, 30:15, 30:20, 30:24, 31:5, 31:14, 31:15
**mtfoster@ trinitylawllc.com** [1] - 1:23
**multiple** [3] - 4:14, 16:7, 21:14

### N

**named** [4] - 17:17, 17:21, 18:7, 22:10
**naming** [2] - 12:9, 21:20
**national** [1] - 5:17
**nature** [1] - 12:15

**necessary** [9] - 9:3, 9:11, 12:12, 13:13, 15:7, 22:12, 23:1, 25:9, 30:25
**need** [2] - 24:15
**nefarious** [2] - 17:4, 17:22
**NETWORK** [1] - 1:4
**never** [4] - 4:19, 5:8, 25:14, 30:2
**new** [1] - 19:16
**news** [1] - 5:18
**next** [1] - 29:12
**nice** [1] - 31:12
**NO** [1] - 1:6
**nonetheless** [1] - 9:15
**normally** [1] - 18:9
**nothing** [4] - 13:2, 16:11, 26:8, 31:6
**notice** [5] - 5:15, 20:13, 28:11, 29:6, 30:11
**notification** [2] - 30:3
**notified** [1] - 11:8
**notifying** [1] - 5:15
**number** [8] - 13:23, 28:9, 29:5, 29:19, 30:3, 30:4, 30:7, 30:10

### O

**oath** [2] - 6:16, 20:21
**objections** [2] - 27:12, 27:15
**obligation** [2] - 20:21, 22:11
**obtained** [1] - 12:15
**obtaining** [1] - 10:21
**obvious** [1] - 3:18
**obviously** [1] - 8:17
**occurred** [1] - 25:16
**odds** [2] - 6:4, 15:11
**OF** [3] - 1:1, 1:9, 32:1
**offered** [2] - 10:1, 10:2
**Official** [1] - 32:3
**OFFICIAL** [1] - 32:15
**OHIO** [1] - 1:1
**Ohio** [5] - 1:17, 1:22, 2:7, 14:24, 32:5
**omission** [1] - 29:21
**ON** [1] - 1:10
**one** [14] - 4:3, 7:9, 7:23, 8:7, 13:18, 13:23, 14:19, 18:14, 27:7, 27:15, 27:17, 28:10, 29:12
**online** [1] - 30:9
**opened** [1] - 18:11
**operate** [1] - 25:14

**opportunity** [3] - 10:25, 11:9, 21:12
**opposing** [2] - 27:12, 30:22
**opposition** [1] - 4:21
**oral** [2] - 3:14, 16:16
**ORAL** [1] - 1:10
**order** [9] - 12:5, 12:6, 28:9, 28:18, 28:19, 28:20, 28:22, 29:3
**outlined** [2] - 11:11, 21:19
**override** [1] - 14:23
**overruled** [3] - 19:8, 19:19, 27:6
**own** [6] - 4:8, 5:2, 6:25, 7:7, 8:20, 16:5
**Oxley** [1] - 15:1

### P

**p.m** [2] - 3:2, 31:16
**page** [1] - 32:9
**paragraph** [1] - 29:18
**parcel** [1] - 22:2
**pardon** [1] - 18:7
**part** [5] - 11:14, 22:2, 23:5, 25:17, 29:12
**particular** [3] - 22:15, 24:3, 27:17
**particularly** [1] - 19:18
**parties** [4] - 4:23, 4:25, 27:13, 29:20
**party** [6] - 10:20, 20:12, 22:22, 26:23, 27:18, 28:5
**payroll** [1] - 4:15
**PC** [1] - 1:16
**people** [1] - 9:4
**perform** [1] - 17:9
**perhaps** [2] - 24:5
**perjured** [1] - 6:14
**perjury** [4] - 6:16, 7:17, 7:19, 7:22
**permitted** [1] - 19:3
**personal** [12] - 5:19, 6:7, 6:17, 7:10, 7:15, 12:17, 12:18, 14:12, 15:15, 19:6, 23:2, 27:19
**personally** [4] - 11:18, 11:22, 13:19, 18:17
**pervasive** [1] - 8:12
**Petrie** [18] - 1:15, 3:9, 3:11, 3:20, 5:22, 10:10, 14:18, 15:25, 16:1, 17:11, 17:20, 18:8, 22:18, 27:13, 27:25, 28:6, 28:13, 30:16

**PETRIE** [18] - 3:12, 3:24, 5:24, 7:3, 7:14, 8:24, 9:17, 10:4, 16:3, 22:19, 28:8, 28:15, 29:8, 29:15, 29:17, 29:22, 30:18, 31:13
**phone** [1] - 3:10
**physical** [1] - 27:22
**physician** [2] - 27:19, 27:21
**pit** [1] - 4:16
**placed** [1] - 20:13
**plain** [1] - 6:13
**Plaintiff** [5] - 1:5, 1:14, 7:6, 18:6, 29:9
**Plaintiff's** [11] - 3:16, 10:12, 10:13, 13:9, 15:4, 17:13, 17:24, 19:19, 20:1, 20:2, 26:16
**Plaintiffs** [2] - 3:8, 19:9
**plan** [1] - 27:12
**pleading** [1] - 16:16
**pleadings** [1] - 16:22
**plethora** [1] - 12:1
**point** [8] - 6:9, 8:13, 9:12, 14:16, 15:16, 27:1, 28:7, 31:4
**policy** [3] - 11:7, 15:11, 20:23
**position** [19] - 4:4, 4:21, 6:7, 6:18, 6:23, 6:24, 6:25, 8:24, 9:21, 12:3, 13:2, 13:3, 14:14, 20:6, 20:10, 24:19
**positions** [4] - 4:16, 5:5, 24:4, 25:7
**possession** [2] - 12:7, 23:23
**prejudice** [2] - 19:9, 19:20
**preliminary** [1] - 29:5
**premises** [1] - 26:15
**prescribed** [1] - 27:21
**present** [1] - 3:7
**Present** [1] - 2:1
**presentation** [1] - 19:23
**presented** [2] - 16:10, 21:25
**PRESIDING** [1] - 1:11
**press** [1] - 5:17
**prevent** [1] - 22:12
**privilege** [12] - 4:7, 6:22, 8:16, 8:17, 8:25, 9:8, 9:14, 9:24, 18:11, 18:22, 27:3,

27:4
**privileged** [2] - 6:11, 12:2
**problem** [2] - 28:2, 29:22
**proceed** [1] - 5:14
**proceedings** [1] - 32:8
**Proceedings** [2] - 2:9, 3:3
**PROCEEDINGS** [1] - 1:9
**process** [1] - 20:17
**produced** [1] - 2:10
**production** [1] - 29:11
**Products** [1] - 12:13
**Professional** [2] - 17:1, 23:13
**pronounce** [1] - 29:13
**proper** [3] - 15:18, 24:6, 26:12
**protected** [2] - 9:14, 18:10
**protections** [2] - 14:23, 15:12
**protects** [2] - 14:24, 15:1
**protocols** [1] - 30:25
**provide** [2] - 4:1, 17:2
**provided** [2] - 4:1, 23:15
**providing** [2] - 5:13, 9:1
**public** [9] - 4:20, 11:7, 11:8, 15:1, 15:11, 20:23, 21:8, 25:2
**pull** [1] - 30:10
**purely** [1] - 7:24
**Puritas** [1] - 12:13
**purported** [1] - 5:2
**purposes** [1] - 3:14
**pursuant** [3] - 12:13, 14:24, 32:6
**put** [4] - 6:4, 15:11, 24:10, 27:22
**puts** [1] - 15:18
**putting** [1] - 24:11

## Q

**questioned** [1] - 18:19
**questions** [2] - 3:17, 19:1
**quite** [1] - 26:19
**quote** [2] - 4:22, 6:10

## R

**raise** [3] - 27:4, 27:7, 27:17
**raised** [1] - 9:13

**raises** [2] - 26:9, 28:1
**rather** [2] - 19:16, 25:5
**re** [1] - 25:1
**read** [1] - 28:4
**readily** [1] - 16:4
**reading** [3] - 6:13, 28:23, 28:24
**Reading** [1] - 1:21
**real** [1] - 21:4
**reality** [1] - 13:11
**realize** [1] - 28:4
**really** [2] - 24:2, 24:23
**Realtime** [1] - 32:3
**REALTIME** [1] - 32:15
**reason** [2] - 17:22, 30:13
**reasons** [4] - 17:10, 19:11, 23:2, 31:11
**receive** [2] - 28:18, 29:24
**received** [4] - 30:2, 30:3, 30:5, 30:11
**reckless** [3] - 23:7, 23:25, 24:18
**record** [2] - 3:19, 31:11
**recorded** [1] - 2:9
**referencing** [1] - 28:9
**referring** [1] - 31:10
**regard** [2] - 10:12, 28:8
**regarding** [4] - 4:4, 6:8, 13:14, 21:2
**regards** [1] - 21:2
**regulations** [1] - 32:10
**regulatory** [5] - 5:16, 11:6, 12:24, 21:5, 21:15
**relationship** [2] - 27:20, 27:24
**releases** [1] - 5:17
**relevant** [4] - 10:3, 12:14, 13:13
**remaining** [1] - 22:25
**remarks** [1] - 13:8
**remediate** [1] - 5:9
**remedy** [2] - 25:19, 25:24
**remotely** [1] - 3:7
**remove** [2] - 20:3, 21:11
**removes** [1] - 18:12
**remunerate** [1] - 11:17
**renewal** [2] - 19:9, 19:20
**reply** [1] - 6:6
**report** [4] - 5:10, 14:25, 25:22
**reported** [1] - 32:8

**Reporter** [2] - 2:5, 32:4
**REPORTER** [2] - 32:1, 32:15
**reporting** [5] - 5:12, 11:5, 12:25, 15:2, 15:13
**represent** [1] - 4:2
**representation** [3] - 5:21, 15:19, 16:25
**representative** [1] - 13:10
**representatives** [1] - 15:2
**representing** [1] - 14:12
**represents** [1] - 7:16
**request** [1] - 26:7
**requests** [2] - 29:10, 29:11
**require** [1] - 11:5
**required** [2] - 11:7, 27:14
**reserve** [1] - 5:9
**respect** [1] - 13:5
**respected** [1] - 20:24
**respectfully** [1] - 26:2
**respond** [4] - 5:14, 7:13, 10:7, 22:18
**responding** [2] - 13:16, 18:17
**response** [4] - 13:23, 16:1, 24:12, 24:13
**responsibility** [2] - 17:6, 22:11
**responsible** [1] - 9:9
**rest** [1] - 8:16
**result** [1] - 11:25
**retaliate** [2] - 15:5
**retaliation** [3] - 10:16, 11:9, 15:2
**retaliations** [1] - 21:6
**retaliatory** [7] - 11:21, 12:4, 15:16, 15:19, 23:10, 24:1, 24:18
**reveal** [2] - 18:24, 28:3
**reveals** [3] - 6:14, 26:15
**Revised** [1] - 14:24
**RICE** [1] - 1:11
**Rice** [1] - 2:5
**Richardson** [1] - 2:4
**rights** [4] - 5:10, 12:23, 14:5, 26:18
**risk** [1] - 15:18
**risky** [1] - 17:18
**Road** [1] - 1:21
**role** [2] - 14:3, 16:12
**RPR** [2] - 2:5, 32:15

**Rule** [5] - 25:21, 26:2, 26:13, 30:21, 30:22
**rule** [5] - 12:11, 17:13, 18:1, 19:13, 27:15
**rules** [1] - 21:15
**Rules** [3] - 17:1, 23:12, 26:10
**ruling** [1] - 16:1
**rulings** [1] - 31:11
**run** [1] - 19:17
**Russell** [1] - 2:2

## S

**s/Caryl** [1] - 32:14
**safe** [1] - 31:12
**safety** [1] - 20:23
**sanctions** [2] - 25:22, 26:14
**Sandra** [1] - 3:5
**SANDRA** [1] - 1:7
**Sarbanes** [1] - 15:1
**Sarbanes-Oxley** [1] - 15:1
**scandalous** [1] - 25:20
**scheduling** [1] - 27:9
**scope** [1] - 13:6
**Scott** [44] - 1:21, 3:6, 3:8, 3:16, 3:21, 3:25, 4:2, 4:6, 4:10, 4:16, 4:18, 4:20, 5:4, 6:1, 6:6, 7:5, 8:11, 9:25, 10:11, 13:1, 14:14, 15:21, 16:2, 16:3, 17:11, 17:13, 17:21, 17:25, 18:6, 18:8, 18:21, 19:8, 19:15, 19:25, 22:17, 23:4, 23:15, 23:18, 25:11, 27:25, 28:21, 29:24, 30:19, 31:2
**SCOTT** [19] - 1:7, 10:15, 13:11, 14:1, 14:19, 14:22, 15:22, 20:10, 23:19, 28:17, 28:22, 29:1, 29:6, 30:1, 30:9, 30:15, 30:20, 30:24, 31:14
**Scott's** [3] - 5:1, 5:6, 5:19
**seal** [1] - 25:3
**sealed** [1] - 25:1
**Second** [1] - 2:6
**second** [1] - 14:19
**Section** [1] - 32:6
**see** [10] - 7:7, 7:11, 7:25, 8:2, 8:5, 17:23, 19:24, 26:4, 30:13
**seeing** [1] - 11:25

**seek** [1] - 23:22
**seeking** [3] - 17:24, 24:25, 25:22
**seem** [1] - 3:18
**send** [1] - 6:2
**sending** [1] - 11:10
**sense** [2] - 25:21, 29:19
**sent** [3] - 4:19, 5:11, 10:24
**separate** [5] - 16:5, 16:14, 16:21, 17:17, 24:13
**September** [2] - 27:8, 27:11
**serve** [2] - 29:9, 30:22
**service** [1] - 17:9
**set** [3] - 27:9, 29:3, 31:11
**settlement** [1] - 11:14
**several** [4] - 11:19, 24:3, 24:4, 25:17
**shall** [1] - 29:9
**shape** [2] - 17:19, 25:18
**show** [1] - 16:13
**shown** [2] - 16:18, 16:21
**sic)** [1] - 4:9
**side** [3] - 24:23, 28:10, 29:15
**sides** [1] - 26:25
**silence** [1] - 15:20
**similarly** [1] - 4:18
**simply** [12] - 5:3, 11:11, 13:8, 13:16, 19:13, 19:17, 20:3, 23:14, 24:1, 26:17, 27:15, 31:10
**situation** [4] - 6:5, 20:25, 22:15, 26:7
**Smerbeck** [1] - 2:3
**social** [1] - 27:24
**someone** [1] - 18:18
**sort** [2] - 22:24, 23:15
**sought** [1] - 16:12
**Southern** [1] - 32:5
**SOUTHERN** [1] - 1:1
**speaking** [1] - 28:20
**specifically** [2] - 13:21, 16:9
**sponsors** [3] - 5:16, 11:6, 22:10
**stage** [2] - 19:3, 19:10
**stages** [1] - 16:4
**stand** [2] - 7:7, 10:23
**statement** [6] - 8:3, 8:14, 9:25, 10:9, 18:19, 19:22
**statements** [7] - 5:13,

7:23, 8:1, 8:20, 19:5, 19:6, 19:21
**STATES** [1] - 1:1
**States** [3] - 32:4, 32:6, 32:11
**status** [1] - 20:14
**stenographically** [1] - 32:8
**stenography** [1] - 2:9
**steps** [2] - 25:17, 29:4
**sticks** [1] - 8:9
**still** [2] - 10:23, 30:7
**stop** [1] - 14:15
**Street** [2] - 1:16, 2:6
**strictly** [3] - 13:17, 14:4, 24:16
**stuff** [1] - 24:25
**subject** [2] - 25:24, 26:20
**submitting** [1] - 13:21
**subpoena** [2] - 28:10, 29:12
**sufficient** [2] - 3:23, 17:25
**Suite** [2] - 1:17, 1:22
**supplement** [1] - 19:14
**support** [2] - 23:16, 25:6
**supported** [3] - 23:11, 23:12
**swearing** [1] - 6:16
**swears** [1] - 5:7
**swore** [1] - 4:18
**system** [2] - 4:5, 4:11

## T

**table** [1] - 21:4
**tactics** [2] - 12:5, 21:18
**Teams** [1] - 4:15
**term** [2] - 8:1, 30:7
**termination** [2] - 4:6, 4:15
**test** [1] - 29:13
**testificandum** [3] - 28:10, 29:13, 29:14
**testify** [4] - 6:1, 7:6, 9:18, 21:1
**testifying** [1] - 6:17
**testimony** [6] - 5:2, 6:3, 9:2, 12:12, 13:12, 21:22
**testing** [1] - 25:17
**tests** [1] - 27:22
**that..** [1] - 29:17
**THE** [38] - 1:1, 1:1, 1:11, 3:4, 3:13, 5:22, 7:1, 7:4, 7:21, 9:12,

9:23, 10:9, 13:1, 13:25, 14:14, 14:21, 15:21, 15:23, 17:11, 22:17, 22:20, 23:17, 25:11, 28:13, 28:20, 28:24, 29:2, 29:14, 29:16, 29:18, 29:24, 30:6, 30:12, 30:16, 30:19, 30:23, 31:2, 31:6
**themselves** [1] - 11:6
**therefore** [3] - 8:20, 10:3, 17:12
**they've** [1] - 25:8
**third** [6] - 4:23, 4:25, 20:12, 22:22, 27:18, 28:5
**third-party** [4] - 20:12, 22:22, 27:18, 28:5
**threat** [1] - 11:12
**threaten** [1] - 12:22
**threatened** [1] - 5:8
**threatening** [1] - 14:25
**threats** [1] - 5:12
**three** [2] - 28:9, 29:19
**timetables** [1] - 29:4
**Title** [1] - 32:6
**TO** [1] - 1:10
**today** [1] - 10:24
**together** [1] - 13:6
**took** [2] - 17:5, 24:4
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 2:9, 32:7, 32:9
**transmit** [1] - 4:22
**transmitted** [1] - 4:25
**transpired** [1] - 12:19
**tried** [2] - 11:3, 12:2
**TRO** [3] - 12:8, 16:11, 23:22
**true** [2] - 24:2, 32:7
**truth** [2] - 10:2
**try** [4] - 12:5, 12:6, 27:1, 30:25
**trying** [3] - 3:19, 22:11, 23:22
**turn** [2] - 3:15, 12:2
**two** [8] - 3:25, 4:16, 7:23, 8:6, 9:4, 16:14, 26:25, 27:7
**type** [2] - 11:14, 25:25

## U

**U.S** [1] - 2:6
**ultimately** [1] - 10:17
**unable** [1] - 16:5
**unavailable** [1] - 12:12

**under** [5] - 3:21, 6:16, 15:1, 20:21, 26:10
**undercuts** [1] - 5:1
**underlying** [1] - 24:17
**undermining** [1] - 6:25
**unduly** [4] - 4:22, 8:11, 8:12, 8:19
**unfound** [1] - 21:18
**United** [3] - 32:4, 32:6, 32:11
**UNITED** [1] - 1:1
**unlawful** [3] - 11:12, 16:25, 24:6
**unsupported** [2] - 14:7, 15:16
**up** [4] - 16:15, 19:17, 21:3, 30:10
**urge** [1] - 19:11

## V

**various** [2] - 7:5, 29:4
**version** [2] - 25:16
**versus** [4] - 3:5, 8:19, 18:15, 18:16
**via** [1] - 3:3
**viable** [1] - 21:10
**victim** [1] - 26:1
**vindicate** [1] - 26:18
**violated** [1] - 21:14
**violating** [1] - 11:20
**violation** [2] - 12:24, 17:1
**violations** [4] - 11:4, 11:5, 11:20, 14:25
**volition** [1] - 7:7
**volunteer** [1] - 18:23
**vs** [1] - 1:6

## W

**waiting** [1] - 28:19
**waivable** [1] - 22:4
**waive** [1] - 16:18
**waived** [9] - 6:22, 8:17, 8:25, 9:7, 9:15, 9:24, 18:11, 27:2, 27:3
**waiver** [2] - 3:22, 5:3
**waivers** [1] - 5:3
**waiving** [1] - 4:7
**WALTER** [1] - 1:11
**Walter** [1] - 2:5
**weaponized** [1] - 20:16
**welcome** [1] - 27:1
**West** [1] - 1:16
**WESTERN** [1] - 1:2
**whistleblower** [10] -

10:17, 10:20, 11:2, 12:7, 14:5, 14:23, 14:25, 15:6, 15:12, 20:15
**whole** [1] - 25:17
**Wiest** [1] - 2:2
**wire** [1] - 11:21
**wish** [3] - 18:25, 26:17, 29:20
**withdraw** [2] - 15:24, 27:10
**withdrawn** [1] - 25:1
**witness** [5] - 7:7, 9:11, 15:8, 16:17, 19:4
**witnesses** [3] - 23:1, 25:10, 29:20
**word** [4] - 14:18, 23:18, 25:20, 25:21
**worse** [1] - 25:22
**writes** [1] - 26:20
**writing** [1] - 9:6
**wrongdoing** [1] - 24:10
**wrongful** [1] - 12:22

## Y

**years** [1] - 27:20

## Z

**Zoom** [2] - 3:3, 3:11