IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KETTERING ADVENTIST HEALTHCARE

d/b/a KETTERING HEALTH NETWORK,

                    Plaintiff,

        vs.                              CASE NO. 3:25-cv-273

SANDRA COLLIER and MARY T. SCOTT,

                    Defendants.

                    TRANSCRIPT OF PROCEEDINGS

        HEARING ON MOTION FOR TEMPORARY RESTRAINING ORDER

PRESIDING:  THE HONORABLE WALTER H. RICE

DATE:  Friday, August 15, 2025

APPEARANCES:

For the Plaintiff:

By:  James G. Petrie, Esq.
     Jill K. Bigler, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2420
     jpetrie@ebglaw.com
     jbigler@ebglaw.com

For the Defendant:

By:  Mary T. Scott, Esq.
     7710 Reading Road
     Suite 102
     Cincinnati, Ohio  45237
     (513) 953-2499
     mtfoster@trinitylawllc.com

Also Present:

      Bethany Russell, Courtroom Deputy Clerk
      Daniel Wiest, Law Clerk
      James Smerbeck, Law Clerk
      Arabella Loera, Extern
      Averee Richardson, Extern

Court Reporter:   Caryl L. Blevins, RPR, CRR
                  Walter H. Rice Federal Building
                  U.S. Courthouse
                  200 W. Second Street
                  Dayton, Ohio  45402
                  (937) 512-1511
                  caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript produced by computer.

Friday, August 15, 2025

1:40 p.m.

(Proceedings had via Zoom.)

THE COURT: Well, good afternoon, all. We have today --

MS. SCOTT: Good afternoon, Your Honor.

THE COURT: -- C3-25-273, Kettering Adventist Healthcare versus Sandra Collier and Mary Scott.

The appearances this afternoon, for the Plaintiff, James Petrie and Ms. Jill Bigler. For the Defendants, Sandra Collier, a named Defendant, represented by counsel, also representing herself on Count 6, Mary Scott.

I sent a letter this morning setting forth what I thought would be the best agenda to follow. Plaintiffs have suggested that I take up the issue of the disqualification of counsel first.

My preference, and it's something that I have always --

MS. SCOTT: I'm sorry, Your Honor. You're breaking up, sir.

THE COURT: All right. Who is this speaking?

MR. PETRIE: It appears to be Ms. Scott.

THE COURT: Ms. Scott, you're unable to hear me? Ms. Scott, can you hear me?

MS. BIGLER: I think she just dropped off, Your

Honor.

THE COURT: All right. We will take a very brief recess. We will get Ms. Scott back on the phone, and if you would, Beth, test the voice, so to speak, before you call me. We are in recess.

(Recess taken.)

(Proceedings resume via Zoom.)

THE COURT: Well, we will try again. The appearances are they were -- as they were a few moments ago.

The Plaintiffs have suggested another item be added to the agenda, and that is the request that Ms. Scott be disqualified or disqualify herself.

Ms. Scott has just filed a document styled opposition to Plaintiff's motion to disqualify counsel, cross-motion to disqualify Plaintiff's counsel. I will, in just a moment, set forth my procedure for handling motions to disqualify.

I would simply say at the beginning, I look forward to working with everyone presently on this call, but if this early in the litigation we're dealing with cross-motions to disqualify counsel, what I hope will be a pleasant experience for all may well not turn out that way, and I'm simply not going to tolerate things such as cross-motions to disqualify counsel.

Here's how I am going to resolve this issue: I'm

not going to make any ruling today, either on Plaintiff's motion or the motion of Defendants; rather, before the end of this call, I am going to set, at a time convenient with all concerned, a conference call or a Zoom call for sometime on Wednesday afternoon, and we will determine the disqualification motions by way of argument and a decision.

What I normally do, and I think I've done this in every motion to disqualify counsel that has been presented to me over the past 25 years, if not longer, is to give the attorney whom is sought to be disqualified a few days' time to evaluate his or her position, to consult perhaps with a neutral colleague for advice, and then to advise the Court when next we are together, in this case, Wednesday of next week, whether that attorney or group of attorneys wish to step down or whether they wish to contest the motion or motions to disqualify.

This procedure is not one that I have developed ad hoc directed against any particular attorney or group of attorneys but it is simply a policy that has, I believe, effectively resolved these issues in about 80 percent of the cases.

Moving on to the motion for temporary restraining order, I'd be happy to hear oral argument on that motion at this point, although again, I believe all parties would benefit by a mutually-agreed-upon standstill agreement.

That standstill agreement would hopefully not prejudice either side, it would simply maintain the status quo. It will be for a period longer than the length of a temporary restraining order, should -- should such an order be determined by the Court and filed, but it would be long enough to do any necessary discovery leading to a hearing, oral and evidentiary, on Plaintiff's motion for a preliminary injunction.

I would also mention for counsel's consideration pursuant to Civil Rule 65 whether this is the type of case where we might, if we can agree on a standstill order, combine the hearing on the preliminary injunction with a hearing on the merits of the litigation after ample time for discovery and the like.

I'm going to start with Plaintiff's counsel, then Ms. Scott, I'll be happy to turn to you for your thoughts.

Mr. Petrie, would you like me to talk directly to you or to Ms. Bigler?

MR. PETRIE: I think you could talk to -- to both of us. I'll -- I'll do some answering. I do have some questions, Your Honor, starting with, would this agreement be -- would you be able to enforce that agreement?

Is that a -- is that something that is filed under seal? How would that -- how would the enforcement mechanism work?

THE COURT: Well, as to whether it's filed under seal frankly depends upon the content of the document. I would happily hear arguments from both sides as to whether it's filed under seal.

My initial inclination is that it is the subject of being filed under seal but absolutely it would be a document agreed to by both parties, and the Court would, if necessary, have the authority to enforce it.

MR. PETRIE: Your Honor, thank you. I think that's -- that's our main concern about negotiating the agreement. So we would be amenable to -- to exploring that.

THE COURT: All right. Let -- Ms. Bigler, do you wish to be heard in answer to this subject or should I go directly to Ms. Scott?

MS. BIGLER: No, Your Honor, you can move to Ms. Scott.

THE COURT: All right. Ms. Scott, good afternoon to you. What are your thoughts?

MS. SCOTT: Good afternoon, Your Honor. We would be open to a mutual standstill as well.

THE COURT: All right. Thank you, Ms. Scott.

Mr. Petrie, Ms. Bigler, I am going to turn to you and ask you to set forth provisions that would give you comfort, then I'll turn to Ms. Scott for her response to your presentation and to see if she has any objections,

additions, or deletions.

Mr. Petrie?

MR. PETRIE: Your Honor, we would want Defendant Collier to be enjoined from retaining, using, disclosing, destroying, or possessing any of Kettering's or the sponsors' confidential information.

THE COURT: All right. Would there be any other provisions? Although that's fairly all-inclusive.

MR. PETRIE: We would like Defendant Collier to be required to provide and allow Kettering to examine, either through a third party, her device, communication, computer and electronic devices that she -- that she has to make sure that there are no other Kettering or sponsor documents or information.

THE COURT: Anything further?

MR. PETRIE: Require Ms. Collier to disclose to Kettering the identity of any person or entity with whom Ms. Collier has provided Kettering or sponsor documents and the specifics of the documents that were provided to each person.

THE COURT: All right. Anything further?

MR. PETRIE: That Defendant Collier would provide Kettering and its designated agents access and the right to inspect the personal computers and other electronic devices for Kettering and sponsor documents and information.

THE COURT: Anything beyond that?

MR. PETRIE: Require Ms. Collier to provide Kettering and Kettering's counsel with documents in acceptable form to Kettering and the relevant Internet service provider and email accounts, including but not limited to, her Gmail account.

We would like expedited discovery during the duration of the agreement. We suggest or would like up to two depositions taken within, say, 10 days' notice.

THE COURT: I'm going to interrupt you at this point, Mr. Petrie, and I apologize. We will certainly get to a discovery schedule whether we arrive at a standstill agreement or not, so I want you to hold your thought, if you would.

MR. PETRIE: Of course, Your Honor.

THE COURT: Ms. Scott -- let me back up.

Ms. Collier, is your name pronounced Collier or Collier?

THE DEFENDANT: Either is fine, Your Honor. It's Sandra Collier.

THE COURT: Collier it is. Thank you.

THE DEFENDANT: Thank you.

THE COURT: Ms. Scott, your thoughts on what Mr. Petrie has said? I am going to ask him to have transcribed for the benefit of all of us the four or five

different thoughts he expressed as to what he would like included in a standstill agreement, but your thoughts?

MS. SCOTT: At this point, Your Honor, what he is asking for is a roundabout to the TRO that he's already requested. That is not a standstill. Standstill would with allow us both to keep things status quo.

I have no problem with expediting discovery because, as your Court -- as Your Honor has been made aware of, we are countersuing, and that has -- and we're countersuing the law firm and specifically Mr. Petrie and Ms. Bigler specifically because of their accusing of me of illegal conduct that is completely unsupported by law, and because they have done this, they have done this in derogation -- derogation of their own rights -- their own obligation to their -- their client, which is Kettering.

This is designed to continue to destroy Miss -- Miss Collier as well as myself and to shut us down for trying to work with them to correct errors in their client's issues in their business for their research and development that will impact the entire world, literally, with all of the research that they're conducting; that is, they're mul -- they're breaking multiple violations.

They're breaking the law, and we gave them an opportunity and they have charged me so I can get off this case and shut me down just like they have charged Miss --

they fired Miss Collier for trying and seeking to get redress on it, and we are sanctioned --

THE COURT: Ms. Scott --

MS. SCOTT: -- under whistleblower for this.

THE COURT: Ms. Scott, I don't want to interrupt. You're arguing some of the facts, which, of course, I do want to hear at some point, but some of the items requested by Mr. Petrie in the standstill agreement would be items that I believe he'd be entitled to in discovery.

Having made that comment, I'm going to go back to you and ask what you would like to see in a standstill agreement?

MS. SCOTT: Well, we would like mutual discovery because they are going to be named as counterclaim Defendants.

Specifically, I want access to their communications between each other because being a named Defendant, as they so-called tried to place me, will destroy and is not -- this is not retaliatory. What they did to me was retaliatory.

What I'm doing to them is lawfully bound under the laws of ethics and the Rules of Professional Conduct because they just tried to destroy my reputation, and it's unacceptable under any circumstances, and it was completely unfounded.

So that being said, I want access to all of their communication between each other concerning their -- concerning me, the basis for their false and fraudulent accusations saying I have extorted them when the record is clear.

I want to have access to all of their internal documents. I want to have -- I want their servers to be inspected, the same thing. It is going to be mutual.

THE COURT: All right.

MS. SCOTT: It's not going to be one-sided.

THE COURT: Again, I'm -- I have no interest in a one-sided procedure, so worry not about that.

MS. SCOTT: Thank you, Your Honor.

THE COURT: You're welcome. You're entitled to anything properly discoverable to allow you to prepare, if we have a standstill agreement, for the preliminary injunction hearing, and if there's a dispute as to what is properly discoverable, I will resolve that dispute.

As to the basis of the allegations in Count 6 against you, whether that's something that's properly discoverable at this time or not remains to be discussed between all of us.

Certainly, if you file at some point a motion to dismiss or, after discovery, a motion for summary judgment, you're entitled to know through discovery or otherwise the

basis of their claim against you.

Here's what I'd like to suggest, depending on everybody's schedule this afternoon:  I would like to reconvene this call in about 30 minutes' time.

In the interim, Mr. Petrie, Ms. Bigler, I would like you to set forth the four or five items that you would like in a standstill agreement, keeping in mind that some of the items you've mentioned are obtainable in expedited discovery by normal discovery requests.

A standstill agreement -- and hopefully our definitions of the term are in sync with each other -- a standstill agreement freezes matters to no one's prejudice.

Expedited discovery is another matter.  Expedited discovery is something that you're entitled to, as long as the discovery is pertinent to the procedural point where we find ourselves, but need not necessarily be in a standstill agreement.

And Ms. Scott, I would like you to do the same thing, put down what you're comfortable in a standstill agreement, doesn't have to be formalized, just have typed up some notes, exchange them with each other.  We'll get back on the phone in about 30 minutes and we will hash this out.

I don't necessarily need Ms. Collier's email address, Ms. Scott.  I'm assuming that you have it and you can send to her anything Plaintiff's counsel sends to you as

well as anything you generate.

Is that correct?

MS. SCOTT: That is correct, Your Honor.

THE COURT: All right. Mr. Petrie, any question as to what I'd like done between now and let's say 2:50?

MR. PETRIE: No, Your Honor. We understand.

THE COURT: All right. Ms. Scott?

MS. SCOTT: Nothing further at this time, Your Honor.

THE COURT: All right. Beth, what is the best thing to do, to renew the call at 2:50 or to put everyone on hold?

COURTROOM DEPUTY CLERK: I think -- I think I'll send out a new Zoom invitation for everyone in -- in -- to meet back at 2:50.

THE COURT: All right. We will send out another Zoom invitation. We'll talk to you in about 30 minutes, and there is no objection to counsel talking among themselves before we get back on the phone, if that would be helpful. We are in recess.

(Recess taken.)

(Proceedings resume via Zoom.)

THE COURT: Well, hello, again, all. Please be comfortable. It is five minutes of 3:00. I have two criminal matters to attend to at 3:30. They may take a

total of five to at most 10 minutes, and I may have to break for a few minutes at that time.

Let me mention a few things. First of all, a temporary restraining order is not an affirmative order. There are always exceptions, but routinely TROs do not order certain action to be taken, matters to be produced, and the like.

The purpose of a TRO, and frankly, a standstill order to freeze the parties where they are pending discovery, is to preserve the status quo.

I believe that the first of the items Mr. Petrie mentioned is probably all we need for a standstill agreement, and that is, and this is a quote, we would want Defendant Collier to be enjoined from re -- retaining, using, disclosing, destroying, or possessing any of Kettering's or the sponsor's confidential information. That freezes everyone where we are or they are and it allows for discovery on an expedited basis to proceed.

If we can agree on the standstill order, I will set a date where you can submit your discovery requests, those mentioned by the Plaintiff, which I don't think should be in a TRO or a standstill agreement, and any expedited discovery requests of the Defendant.

If either side objects to any one or more or all of the other side's discovery orders, I'll convene a -- a

discovery conference and I'll make rulings, but that's the way I believe we should handle things.

I don't think expedited discovery requests, even if they're later found to be proper discovery requests, have any place in a temporary restraining order or a standstill agreement.

Mr. Petrie, can you live with what I just quoted -- and Ms. Scott, I'll ask you the same question -- Defendant -- Defendant Collier is enjoined from retaining, using, disclosing, destroying, or possessing any of Kettering's or the sponsor's confidential information?

Mr. Petrie?

MR. PETRIE:  Yes, Your Honor, that -- that's acceptable to us.  We were hoping to also have an agreement that the -- the parties will jointly move to seal the agreement, to file it under seal, and to expressly agree to have you continue jurisdiction over the -- over the agreement.

THE COURT:  All right.  Thank you, Mr. Petrie.

Ms. Scott, can you live with that, which does not in any way prejudice your right to ask for discovery?

MR. PETRIE:  You're on mute, Ms. Scott.

THE COURT:  Ms. Scott, can you hear me?

MS. SCOTT:  To the extent -- yes, sir.  To the extent, Your Honor, that they're requiring us from not

retaining the information, we definitely agree to not destroying or using.

We have not disclosed that information to any third parties. The only individuals that were provided that information is -- was to opposing counsel. There is no confidential information.

My client is a whistleblower, Your Honor, so to say that she cannot retain the information that she is actively utilizing for this purpose, for the -- the purpose of help making sure that she is -- as a regulatory professional in research, she has an obligation to -- legal as well as ethical obligation to ensure the health and safety of the patients, the sponsors, as well as the general public at large.

So to have her not -- have to -- to not retain that information would be detrimental to her as a whistleblower, but we would agree to not destroying or utilizing that information until such time we would be prevented to do so.

THE COURT: All right. So you -- you have no problem with using, disclosing, destroying, or possessing. You're concerned about retaining; am I correct?

MS. SCOTT: Yes. We would like to retain the information that we have within our possession. It's germane to our complaint and her whistleblower status.

THE COURT:  I hear you, Ms. Scott.

Mr. Petrie, I'm inclined to leave retaining in the order rather than require her, in effect, not to retain because that begs the question of what is she going to do with it after she excises it from wherever it's kept.

She can't do anything with the information. Basically what Ms. Scott is arguing, it should be left where it is.

MR. PETRIE:  Yeah.  I have no issue, Your Honor, or we have no issue, Your Honor, with removing the retaining provision.

THE COURT:  All right.  I appreciate that.

Ms. Scott, is that satisfactory?

MS. SCOTT:  That's fine, making sure that the word possession is kind of similar to that, so I want to make sure that we're not required to -- to give over, except through the normal discovery processes, our documents and information that's within our possession.

THE COURT:  I think that's implied, and I think what the purpose of this language is, is to restrain your client from doing anything she has with what she has, if anything.

MS. SCOTT:  Absolutely.

THE COURT:  Okay.  All right.  I think, Ms. Scott, that this should be filed under seal, and I should use the

standard language for retaining jurisdiction.

Any objection to those two points?

MS. SCOTT:  Not at this time, Your Honor.

THE COURT:  All right.  Mr. Petrie?

MR. PETRIE:  We agree, Your Honor.

THE COURT:  All right.  Now, Ms. Scott, do you intend to amend or supplement or both your pleadings?

MS. SCOTT:  Absolutely, Your Honor.  We are going to formally answer and counterclaim for specific points, some of which have been highlighted to you already, but we are intending to do both.

THE COURT:  All right.  I interrupted you.  Go ahead.

MS. SCOTT:  No, you're fine, Your Honor.

THE COURT:  When can you have this done?

MS. SCOTT:  Within five days, Your Honor.

THE COURT:  All right.  Give me a moment.

(Brief pause.)

THE COURT:  How about close of business Thursday -- thinking out loud -- the 21st, Ms. Scott?

MS. SCOTT:  That is fine, Your Honor.

THE COURT:  All right.  Any amendment to Plaintiff's pleadings other than those that couldn't be anticipated until you see what Defendants file, Mr. Petrie, I'd like yours filed by close of business the 21st as well.

MR. PETRIE:  Certainly, Your Honor.

THE COURT:  All right.  Give me a moment.

(Brief pause.)

THE COURT:  How about the close of business Tuesday, August 26th, to serve discovery requests on each other?

MR. PETRIE:  That works for us, Your Honor.

MS. SCOTT:  That's fine, Your Honor.

THE COURT:  All right.  How about to the close of business Friday, the 29th of August, for any objections to discovery?  Mr. Petrie?

MR. PETRIE:  That's fine with us, Your Honor.

THE COURT:  And Ms. Scott?

MS. SCOTT:  That is fine with us as well.

THE COURT:  All right.  And we will put this in a little order.  How about a discovery conference -- give me a moment -- at 5:00 -- 4:00 Monday, September 8th, at which time we will either bless or deny anybody's discovery requests or suggest a modification?

Mr. Petrie?

MR. PETRIE:  I'm available at that time and date, Your Honor.

THE COURT:  All right.  Ms. Bigler?

MS. BIGLER:  I am as well, Your Honor.

THE COURT:  Ms. Scott?

MS. SCOTT: I am available as well.

THE COURT: And your client is -- is always welcome.

MS. SCOTT: Thank you, Your Honor.

THE COURT: Give me one minute. Now, there are two things that I've not dealt with, one I touched on initially, and that is the disqualification motions. The other is a hearing date for the preliminary injunction.

And by the way, in the standstill order, I am going to make it applicable until such time as the preliminary injunction hearing has been held and a decision rendered.

Ms. Scott and Mr. Petrie, again, I'm going to repeat myself. The way I handle these motions to -- to disqualify counsel are not directed to anybody, only those -- they're not directed to only those in this lawsuit, this is the custom I follow, and that is to review your positions with your clients, with any colleagues that have expertise in this area, and at a conference call that I would like to set maybe Friday, August -- make it Monday, August 25th, at 4:30 to resolve the disqualification issues.

Mr. Petrie, is that satisfactory?

MR. PETRIE: Yes, Your Honor.

THE COURT: And Ms. Scott?

MS. SCOTT: That is fine, Your Honor.

THE COURT: All right. Let's set a date -- and by the way, you're swimming in dates that I've set. We'll put this in an order.

Mr. Petrie, assuming a best-case scenario, and I'll frame the question in the same way with Ms. Scott, insofar as getting most, if not all, of your discovery requests approved, how much time -- and that includes interrogatories, depositions, 30(b)(6) -- how much time do you feel you'll need for discovery?

MR. PETRIE: Your Honor, we would suggest it would likely take six weeks.

THE COURT: Okay. Ms. Scott, same question?

MS. SCOTT: I would think six weeks would be sufficient enough time as well. I -- I have no objection to the six-week time frame.

THE COURT: All right. Let me grab a calendar, and let's start the six weeks running from August 26th, which is the date I approve, disapprove, or modify your discovery requests. Six.

Weeks from August 26th is October -- I have October 7th. Mr. Petrie, do you agree?

MR. PETRIE: Yes. Yes, Your Honor.

THE COURT: Jim, I have some Government-issue cough drops, if that would help.

MR. SMERBECK: (Indicating.)

THE COURT: You've got some? Okay.

Let's set an oral and evidentiary hearing -- Beth, check the schedule to make sure I'm not -- I would suggest Monday, October 20th, at 9:30.

MR. PETRIE: That works for Plaintiff's counsel, Your Honor.

THE COURT: All right. Ms. Scott?

MS. SCOTT: I am available as well, Your Honor.

THE COURT: All right. Is Columbus -- well, no longer Columbus Day -- is Indigenous People's Day the 13th, Beth?

COURTROOM DEPUTY CLERK: It is.

THE DEFENDANT: Yes, that is correct.

THE COURT: Thank you, Ms. Collier.

How about a final hearing conference on October 14th, which is a Tuesday, at 4:30?

MR. PETRIE: That works for Plaintiff's counsel, Your Honor.

THE COURT: All right. Ms. Scott?

MS. SCOTT: That works as well for us.

THE COURT: Okay. The two items I've not covered, and you're going to need to think about this, I don't need an answer today, but Rule 65 does provide for combining the hearing on the preliminary injunction with a hearing on the merits.

If you would agree to that, that would cause a postponement of the October 20th hearing. We probably would be talking January or February of next year, and maybe we can discuss this when we talk on the -- when we have our next conference call.

Any questions on that, Mr. Petrie?

MR. PETRIE: No, Your Honor.

THE COURT: Ms. Scott?

MS. SCOTT: Not at this time, Your Honor.

THE COURT: All right. And the other issue is --

THE DEFENDANT: Your Honor, I apologize. If I may?

THE COURT: Please.

THE DEFENDANT: I am having the -- I am an oncology patient with Kettering.

THE COURT: Yes, ma'am.

THE DEFENDANT: I have a reconstruction following my bilateral mastectomy on October 9th. I expect to be in the hospital until -- for at least 48 hours post that, so I'm concerned about the date of the 14th and then the 20th.

THE COURT: All right. What I could suggest, because I will want you here, Ms. Collier, if -- health permitting -- I'm willing to move the final pretrial conference till the 21st of October at 4:30. That will be by Zoom, and I'll move the hearing -- and Beth, please check

the date for me -- to -- the date for the hearing to October 27th.

Mr. Petrie, can you and Ms. Bigler leave with that -- live with that?

MR. PETRIE: Yes, Your Honor.

THE COURT: And Ms. Scott?

MS. SCOTT: You said the 27th, Your Honor?

THE COURT: Yes.

MS. SCOTT: That should be fine.

THE COURT: All right. Now my scheduler is sending up all sorts of red flags. Give me a moment.

COURTROOM DEPUTY CLERK: Just the Reentry Collaborative Stakeholder Forum that morning.

THE COURT: I'll work around that.

COURTROOM DEPUTY CLERK: Okay.

THE COURT: Okay. The only other thing I would ask you is if you feel that mediation might be helpful. There really are two options for mediation. One is a private mediator that counsel can retain. The only problem with a private mediator is that he or she will expect to be paid. I don't know what the present rates are.

The other option is utilizing one of our magistrate judges, who have been both well-trained and -- and are successful in about 75 percent of their cases.

Why don't you think about that, why don't you talk

among yourselves, and if I do not hear from you, I will assume that you're not interested in mediation, at least at this -- this juncture.

If you are, just let me know. I'll get everybody back on the phone and decide the identity of the mediator and when.

Mr. Petrie, is there anything further at this point?

MR. PETRIE: No, Your Honor.

THE COURT: Ms. Bigler?

MS. BIGLER: No, Your Honor. Thank you.

THE COURT: You're welcome.

Ms. Scott?

MS. SCOTT: Nothing, Your Honor, except we will state for the record that we are not opposed to mediation through the court for this matter.

THE COURT: Okay. Thank you, Ms. Scott.

Mr. Petrie, if you can answer this, that's fine. If you want to think about it, that's fine as well. Do you have a response for Ms. Scott at this time about mediation?

MR. PETRIE: No, Your Honor. We -- excuse me. We are -- we'll need to talk with our client about these --

THE COURT: All right. Do me a favor. I interrupted again, sir. I'm sorry.

MR. PETRIE: Oh, no. I was just saying we'll --

before we can have a decision for you, we would need to consult with our client.

THE COURT:  All right.  What I'm going to ask you to do is, if your client is interested, let Ms. Scott know, and one of you call my office and let me know this.  I'll get both sides on the phone and we'll talk about the logistics.

Okay.  Mr. Petrie, anything else?

MR. PETRIE:  No, Your Honor.  Thank you.

THE COURT:  You're welcome.

Ms. Bigler?

MS. BIGLER:  No, Your Honor.  Thank you.

THE COURT:  You're very welcome.

Ms. Scott?

MS. SCOTT:  Nothing else at this time, Your Honor.

THE COURT:  All right.  Ms. Collier, any questions that you want to ask me or ask your attorney?  Your attorney can answer any procedural or merits questions, but I'm happy if you have something you need to ask me about procedures.

THE DEFENDANT:  No, Your Honor.  Thank you so much for taking into consideration my procedure.

THE COURT:  No problem with that at all.  I -- I hope for the best for you.

I want to wish everyone a happy -- happy weekend. I almost said Happy New Year, so must be time for my

afternoon nap.  Have a great weekend, stay safe, and we'll talk according to the schedule we'll get out.  Thank you very much.

MS. SCOTT:  Thank you, Your Honor.

MR. PETRIE:  Thank you, Your Honor.

MS. BIGLER:  Thank you, Your Honor.

THE COURT:  Bye-bye.

(Hearing concluded at 3:21 p.m.)

CERTIFICATE OF REPORTER

I, Caryl L. Blevins, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

s/Caryl L. Blevins_____
CARYL L. BLEVINS, RPR, CRR
FEDERAL OFFICIAL REALTIME COURT REPORTER

## 1

**10** [2] - 9:9, 15:1
**102** [1] - 1:22
**13th** [1] - 23:10
**14th** [2] - 23:16, 24:20
**15** [2] - 1:12, 3:1
**1:40** [1] - 3:2

## 2

**200** [1] - 2:6
**2025** [2] - 1:12, 3:1
**20th** [3] - 23:4, 24:2, 24:20
**21st** [3] - 19:20, 19:25, 24:24
**25** [1] - 5:9
**250** [1] - 1:16
**25th** [1] - 21:21
**26th** [3] - 20:5, 22:17, 22:20
**27th** [2] - 25:2, 25:7
**28** [1] - 29:6
**29th** [1] - 20:10
**2:50** [3] - 14:5, 14:11, 14:15

## 3

**30** [3] - 13:4, 13:22, 14:17
**30(b)(6** [1] - 22:8
**300** [1] - 1:17
**3:00** [1] - 14:24
**3:21** [1] - 28:8
**3:25-cv-273** [1] - 1:6
**3:30** [1] - 14:25

## 4

**43215** [1] - 1:17
**45237** [1] - 1:22
**45402** [1] - 2:7
**48** [1] - 24:19
**4:00** [1] - 20:17
**4:30** [3] - 21:21, 23:16, 24:24

## 5

**512-1511** [1] - 2:7
**513** [1] - 1:23
**5:00** [1] - 20:17

## 6

**6** [2] - 3:12, 12:19
**614** [1] - 1:18
**65** [2] - 6:10, 23:23

## 7

**75** [1] - 25:24
**753** [1] - 29:6
**7710** [1] - 1:21
**7th** [1] - 22:21

## 8

**80** [1] - 5:20
**872-2420** [1] - 1:18
**8th** [1] - 20:17

## 9

**937** [1] - 2:7
**953-2499** [1] - 1:23
**9:30** [1] - 23:4
**9th** [1] - 24:18

## A

**able** [1] - 6:22
**above-entitled** [1] - 29:9
**absolutely** [3] - 7:6, 18:23, 19:8
**acceptable** [2] - 9:4, 16:14
**access** [4] - 8:23, 11:16, 12:1, 12:6
**according** [1] - 28:2
**account** [1] - 9:6
**accounts** [1] - 9:5
**accusations** [1] - 12:4
**accusing** [1] - 10:11
**action** [1] - 15:6
**actively** [1] - 17:9
**ad** [1] - 5:18
**added** [1] - 4:11
**additions** [1] - 8:1
**address** [1] - 13:24
**ADVENTIST** [1] - 1:3
**Adventist** [1] - 3:7
**advice** [1] - 5:12
**advise** [1] - 5:12
**afternoon** [8] - 3:4, 3:6, 3:9, 5:5, 7:17, 7:19, 13:3, 28:1
**agenda** [2] - 3:14, 4:11
**agents** [1] - 8:23
**ago** [1] - 4:9
**agree** [8] - 6:11, 15:19, 16:16, 17:1, 17:17, 19:5, 22:21, 24:1
**agreed** [2] - 5:25, 7:7
**agreement** [22] - 5:25, 6:1, 6:21, 6:22, 7:11, 9:8, 9:13, 10:2, 11:8, 11:12, 12:16, 13:7, 13:10, 13:12, 13:17, 13:20, 15:13, 15:22, 16:6, 16:14, 16:16, 16:18
**ahead** [1] - 19:13
**all-inclusive** [1] - 8:8
**allegations** [1] - 12:19
**allow** [3] - 8:10, 10:6, 12:15
**allows** [1] - 15:17
**almost** [1] - 27:25
**amenable** [1] - 7:11
**amend** [1] - 19:7
**amendment** [1] - 19:22
**ample** [1] - 6:13
**answer** [5] - 7:13, 19:9, 23:23, 26:18, 27:18
**answering** [1] - 6:20
**anticipated** [1] - 19:24
**apologize** [2] - 9:11, 24:11
**appearances** [2] - 3:9, 4:9
**APPEARANCES** [1] - 1:13
**applicable** [1] - 21:10
**appreciate** [1] - 18:12
**approve** [1] - 22:18
**approved** [1] - 22:7
**Arabella** [1] - 2:3
**area** [1] - 21:19
**arguing** [2] - 11:6, 18:7
**argument** [2] - 5:6, 5:23
**arguments** [1] - 7:3
**arrive** [1] - 9:12
**assume** [1] - 26:2
**assuming** [2] - 13:24, 22:4
**attend** [1] - 14:25
**attorney** [5] - 5:10, 5:14, 5:18, 27:17
**attorneys** [2] - 5:14, 5:19
**August** [8] - 1:12, 3:1, 20:5, 20:10, 21:20, 21:21, 22:17, 22:20
**authority** [1] - 7:8
**available** [3] - 20:21, 21:1, 23:8
**Averee** [1] - 2:4
**aware** [1] - 10:8

## B

**basis** [4] - 12:3, 12:19, 13:1, 15:18
**Becker** [1] - 1:16
**beginning** [1] - 4:18
**begs** [1] - 18:4
**benefit** [2] - 5:25, 9:25
**best** [4] - 3:14, 14:10, 22:4, 27:23
**best-case** [1] - 22:4
**Beth** [5] - 4:4, 14:10, 23:2, 23:11, 24:25
**Bethany** [1] - 2:2
**between** [4] - 11:17, 12:2, 12:22, 14:5
**beyond** [1] - 9:1
**Bigler** [11] - 1:15, 3:10, 6:18, 7:12, 7:22, 10:11, 13:5, 20:23, 25:3, 26:10, 27:11
**BIGLER** [6] - 3:25, 7:15, 20:24, 26:11, 27:12, 28:6
**bilateral** [1] - 24:18
**bless** [1] - 20:18
**Blevins** [3] - 2:5, 29:3, 29:14
**BLEVINS** [1] - 29:15
**bound** [1] - 11:21
**break** [1] - 15:1
**breaking** [3] - 3:20, 10:22, 10:23
**Brief** [2] - 19:18, 20:3
**brief** [1] - 4:2
**Building** [1] - 2:5
**business** [5] - 10:19, 19:19, 19:25, 20:4, 20:10
**bye** [2] - 28:7
**bye-bye** [1] - 28:7

## C

**C3-25-273** [1] - 3:7
**calendar** [1] - 22:16
**cannot** [1] - 17:8
**CARYL** [1] - 29:15
**Caryl** [2] - 2:5, 29:3
**caryl_blevins@ohsd.uscourts.gov** [1] - 2:8
**case** [4] - 5:13, 6:10, 10:25, 22:4
**CASE** [1] - 1:6
**cases** [2] - 5:21, 25:24
**certain** [1] - 15:6
**certainly** [3] - 9:11, 12:23, 20:1

**CERTIFICATE** [1] - 29:1
**certify** [1] - 29:5
**charged** [2] - 10:24, 10:25
**check** [2] - 23:3, 24:25
**Cincinnati** [1] - 1:22
**circumstances** [1] - 11:24
**Civil** [1] - 6:10
**claim** [1] - 13:1
**clear** [1] - 12:5
**Clerk** [3] - 2:2, 2:2, 2:3
**CLERK** [4] - 14:13, 23:12, 25:12, 25:15
**client** [7] - 10:15, 17:7, 18:21, 21:2, 26:22, 27:2, 27:4
**client's** [1] - 10:18
**clients** [1] - 21:18
**close** [4] - 19:19, 19:25, 20:4, 20:9
**Code** [1] - 29:6
**Collaborative** [1] - 25:13
**colleague** [1] - 5:12
**colleagues** [1] - 21:18
**Collier** [20] - 3:8, 3:11, 8:4, 8:9, 8:16, 8:18, 8:22, 9:2, 9:17, 9:18, 9:20, 9:21, 10:17, 11:1, 15:14, 16:9, 23:14, 24:22, 27:16
**COLLIER** [1] - 1:7
**Collier's** [1] - 13:23
**Columbus** [3] - 1:17, 23:9, 23:10
**combine** [1] - 6:12
**combining** [1] - 23:23
**comfort** [1] - 7:24
**comfortable** [2] - 13:19, 14:24
**comment** [1] - 11:10
**communication** [2] - 8:11, 12:2
**communications** [1] - 11:17
**complaint** [1] - 17:25
**completely** [2] - 10:12, 11:24
**computer** [2] - 2:10, 8:11
**computers** [1] - 8:24
**concern** [1] - 7:10
**concerned** [3] - 5:4, 17:22, 24:20
**concerning** [2] - 12:2, 12:3
**concluded** [1] - 28:8
**conduct** [1] - 10:12

**Conduct** [1] - 11:22
**conducting** [1] - 10:21
**Conference** [1] - 29:11
**conference** [7] - 5:4, 16:1, 20:16, 21:19, 23:15, 24:5, 24:24
**confidential** [4] - 8:6, 15:16, 16:11, 17:6
**conformance** [1] - 29:10
**consideration** [2] - 6:9, 27:21
**consult** [2] - 5:11, 27:2
**content** [1] - 7:2
**contest** [1] - 5:15
**continue** [2] - 10:16, 16:17
**convene** [1] - 15:25
**convenient** [1] - 5:3
**correct** [6] - 10:18, 14:2, 14:3, 17:22, 23:13, 29:7
**cough** [1] - 22:24
**counsel** [16] - 3:11, 3:16, 4:14, 4:15, 4:21, 4:24, 5:8, 6:15, 9:3, 13:25, 14:18, 17:5, 21:15, 23:5, 23:17, 25:19
**counsel's** [1] - 6:9
**Count** [2] - 3:12, 12:19
**counterclaim** [2] - 11:14, 19:9
**countersuing** [2] - 10:9, 10:10
**course** [2] - 9:15, 11:6
**Court** [7] - 2:5, 5:12, 6:5, 7:7, 10:8, 29:3, 29:4
**court** [1] - 26:16
**COURT** [84] - 1:1, 3:4, 3:7, 3:21, 3:23, 4:2, 4:8, 7:1, 7:12, 7:17, 7:21, 8:7, 8:15, 8:21, 9:1, 9:10, 9:16, 9:21, 9:23, 11:3, 11:5, 12:9, 12:11, 12:14, 14:4, 14:7, 14:10, 14:16, 14:23, 16:19, 16:23, 17:20, 18:1, 18:12, 18:19, 18:24, 19:4, 19:6, 19:12, 19:15, 19:17, 19:19, 19:22, 20:2, 20:4, 20:9, 20:13, 20:15, 20:23, 20:25, 21:2, 21:5, 21:24, 22:1, 22:12, 22:16, 22:23,

23:1, 23:7, 23:9, 23:14, 23:19, 23:21, 24:8, 24:10, 24:13, 24:16, 24:21, 25:6, 25:8, 25:10, 25:14, 25:16, 26:10, 26:12, 26:17, 26:23, 27:3, 27:10, 27:13, 27:16, 27:22, 28:7, 29:15
**Courthouse** [1] - 2:6
**COURTROOM** [4] - 14:13, 23:12, 25:12, 25:15
**Courtroom** [1] - 2:2
**covered** [1] - 23:21
**criminal** [1] - 14:25
**cross** [3] - 4:15, 4:21, 4:24
**cross-motion** [1] - 4:15
**cross-motions** [2] - 4:21, 4:24
**CRR** [2] - 2:5, 29:15
**custom** [1] - 21:17

**D**

**d/b/a** [1] - 1:4
**Daniel** [1] - 2:2
**DATE** [1] - 1:12
**date** [8] - 15:20, 20:21, 21:8, 22:1, 22:18, 24:20, 25:1
**dates** [1] - 22:2
**days** [1] - 19:16
**days'** [2] - 5:10, 9:9
**Dayton** [1] - 2:7
**dealing** [1] - 4:20
**dealt** [1] - 21:6
**decide** [1] - 26:5
**decision** [3] - 5:6, 21:11, 27:1
**DEFENDANT** [7] - 9:19, 9:22, 23:13, 24:11, 24:14, 24:17, 27:20
**Defendant** [10] - 1:20, 3:11, 8:3, 8:9, 8:22, 11:18, 15:14, 15:23, 16:9
**Defendants** [5] - 1:8, 3:10, 5:2, 11:15, 19:24
**definitely** [1] - 17:1
**definitions** [1] - 13:11
**deletions** [1] - 8:1
**deny** [1] - 20:18
**depositions** [2] - 9:9, 22:8
**DEPUTY** [4] - 14:13,

23:12, 25:12, 25:15
**Deputy** [1] - 2:2
**derogation** [2] - 10:14
**designated** [1] - 8:23
**designed** [1] - 10:16
**destroy** [3] - 10:16, 11:18, 11:23
**destroying** [6] - 8:5, 15:15, 16:10, 17:2, 17:17, 17:21
**determine** [1] - 5:5
**determined** [1] - 6:5
**detrimental** [1] - 17:16
**developed** [1] - 5:17
**development** [1] - 10:19
**device** [1] - 8:11
**devices** [2] - 8:12, 8:24
**different** [1] - 10:1
**directed** [3] - 5:18, 21:15, 21:16
**directly** [2] - 6:17, 7:14
**disapprove** [1] - 22:18
**disclose** [1] - 8:16
**disclosed** [1] - 17:3
**disclosing** [4] - 8:4, 15:15, 16:10, 17:21
**discoverable** [3] - 12:15, 12:18, 12:21
**discovery** [31] - 6:6, 6:14, 9:7, 9:12, 10:7, 11:9, 11:13, 12:24, 12:25, 13:9, 13:13, 13:14, 13:15, 15:10, 15:18, 15:20, 15:23, 15:25, 16:1, 16:3, 16:4, 16:21, 18:17, 20:5, 20:11, 20:16, 20:18, 22:6, 22:9, 22:19
**discuss** [1] - 24:4
**discussed** [1] - 12:21
**dismiss** [1] - 12:24
**dispute** [2] - 12:17, 12:18
**disqualification** [4] - 3:15, 5:6, 21:7, 21:21
**disqualified** [2] - 4:12, 5:10
**disqualify** [9] - 4:12, 4:14, 4:15, 4:17, 4:21, 4:24, 5:8, 5:16, 21:15
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 29:4, 29:5
**DIVISION** [1] - 1:2
**document** [3] - 4:13,

23:12, 25:12, 25:15
**documents** [7] - 8:13, 8:18, 8:19, 8:25, 9:3, 12:7, 18:17
**done** [5] - 5:7, 10:13, 14:5, 19:15
**down** [4] - 5:15, 10:17, 10:25, 13:19
**dropped** [1] - 3:25
**drops** [1] - 22:24
**duration** [1] - 9:8
**during** [1] - 9:7

**E**

**early** [1] - 4:20
**effect** [1] - 18:3
**effectively** [1] - 5:20
**either** [6] - 5:1, 6:2, 8:10, 9:19, 15:24, 20:18
**electronic** [2] - 8:12, 8:24
**email** [2] - 9:5, 13:23
**end** [1] - 5:2
**enforce** [2] - 6:22, 7:8
**enforcement** [1] - 6:24
**enjoined** [3] - 8:4, 15:14, 16:9
**ensure** [1] - 17:12
**entire** [1] - 10:20
**entitled** [5] - 11:9, 12:14, 12:25, 13:14, 29:9
**entity** [1] - 8:17
**Epstein** [1] - 1:16
**errors** [1] - 10:18
**Esq** [3] - 1:15, 1:15, 1:21
**ethical** [1] - 17:12
**ethics** [1] - 11:22
**evaluate** [1] - 5:11
**evidentiary** [2] - 6:7, 23:2
**examine** [1] - 8:10
**except** [2] - 18:16, 26:14
**exceptions** [1] - 15:5
**exchange** [1] - 13:21
**excises** [1] - 18:5
**excuse** [1] - 26:21
**expect** [2] - 24:18, 25:20
**expedited** [7] - 9:7, 13:8, 13:13, 15:18, 15:22, 16:3
**expediting** [1] - 10:7
**experience** [1] - 4:22
**expertise** [1] - 21:19
**exploring** [1] - 7:11

7:2, 7:7
**expressed** [1] - 10:1
**expressly** [1] - 16:16
**extent** [2] - 16:24, 16:25
**Extern** [2] - 2:3, 2:4
**extorted** [1] - 12:4

**F**

**facts** [1] - 11:6
**fairly** [1] - 8:8
**false** [1] - 12:3
**favor** [1] - 26:23
**February** [1] - 24:3
**FEDERAL** [1] - 29:15
**Federal** [2] - 2:5, 29:3
**few** [4] - 4:9, 5:10, 15:2, 15:3
**file** [3] - 12:23, 16:16, 19:24
**filed** [8] - 4:13, 6:5, 6:23, 7:1, 7:4, 7:6, 18:25, 19:25
**final** [2] - 23:15, 24:23
**fine** [11] - 9:19, 18:14, 19:14, 19:21, 20:8, 20:12, 20:14, 21:25, 25:9, 26:18, 26:19
**fired** [1] - 11:1
**firm** [1] - 10:10
**first** [3] - 3:16, 15:3, 15:11
**five** [5] - 9:25, 13:6, 14:24, 15:1, 19:16
**flags** [1] - 25:11
**follow** [2] - 3:14, 21:17
**following** [1] - 24:17
**FOR** [2] - 1:1, 1:10
**foregoing** [1] - 29:7
**form** [1] - 9:4
**formalized** [1] - 13:20
**formally** [1] - 19:9
**format** [1] - 29:9
**forth** [4] - 3:13, 4:16, 7:23, 13:6
**Forum** [1] - 25:13
**forward** [1] - 4:19
**four** [2] - 9:25, 13:6
**frame** [2] - 22:5, 22:15
**frankly** [2] - 7:2, 15:8
**fraudulent** [1] - 12:3
**freeze** [1] - 15:9
**freezes** [2] - 13:12, 15:17
**Friday** [4] - 1:12, 3:1, 20:10, 21:20

**G**

**general** [1] - 17:13

**generate** [1] - 14:1
**germane** [1] - 17:25
**Gmail** [1] - 9:6
**Government** [1] - 22:23
**Government-issue** [1] - 22:23
**grab** [1] - 22:16
**great** [1] - 28:1
**Green** [1] - 1:16
**group** [2] - 5:14, 5:18

## H

**handle** [2] - 16:2, 21:14
**handling** [1] - 4:16
**happily** [1] - 7:3
**happy** [5] - 5:23, 6:16, 27:18, 27:24
**Happy** [1] - 27:25
**hash** [1] - 13:22
**health** [2] - 17:12, 24:22
**HEALTH** [1] - 1:4
**Healthcare** [1] - 3:8
**HEALTHCARE** [1] - 1:3
**hear** [8] - 3:23, 3:24, 5:23, 7:3, 11:7, 16:23, 18:1, 26:1
**heard** [1] - 7:13
**hearing** [13] - 6:6, 6:12, 6:13, 12:17, 21:8, 21:11, 23:2, 23:15, 23:24, 24:2, 24:25, 25:1
**Hearing** [1] - 28:8
**HEARING** [1] - 1:10
**held** [2] - 21:11, 29:8
**hello** [1] - 14:23
**help** [2] - 17:10, 22:24
**helpful** [2] - 14:19, 25:17
**hereby** [1] - 29:5
**herself** [2] - 3:12, 4:12
**highlighted** [1] - 19:10
**hoc** [1] - 5:18
**hold** [2] - 9:13, 14:12
**Honor** [57] - 3:6, 3:19, 4:1, 6:21, 7:9, 7:15, 7:19, 8:3, 9:15, 9:19, 10:3, 10:8, 12:13, 14:3, 14:6, 14:9, 16:13, 16:25, 17:7, 18:9, 18:10, 19:3, 19:5, 19:8, 19:14, 19:16, 19:21, 20:1, 20:7, 20:8, 20:12, 20:22, 20:24, 21:4,

21:23, 21:25, 22:10, 22:22, 23:6, 23:8, 23:18, 24:7, 24:9, 24:11, 25:5, 25:7, 26:9, 26:11, 26:14, 26:21, 27:9, 27:12, 27:15, 27:20, 28:4, 28:5, 28:6
**HONORABLE** [1] - 1:11
**hope** [2] - 4:21, 27:23
**hopefully** [2] - 6:1, 13:10
**hoping** [1] - 16:14
**hospital** [1] - 24:19
**hours** [1] - 24:19

## I

**identity** [2] - 8:17, 26:5
**illegal** [1] - 10:12
**impact** [1] - 10:20
**implied** [1] - 18:19
**IN** [1] - 1:1
**inclination** [1] - 7:5
**inclined** [1] - 18:2
**included** [1] - 10:2
**includes** [1] - 22:7
**including** [1] - 9:5
**inclusive** [1] - 8:8
**indicating** [1] - 22:25
**Indigenous** [1] - 23:10
**individuals** [1] - 17:4
**information** [15] - 8:6, 8:14, 8:25, 15:16, 16:11, 17:1, 17:3, 17:5, 17:6, 17:8, 17:16, 17:18, 17:24, 18:6, 18:18
**initial** [1] - 7:5
**injunction** [6] - 6:8, 6:12, 12:17, 21:8, 21:11, 23:24
**insofar** [1] - 22:6
**inspect** [1] - 8:24
**inspected** [1] - 12:8
**intend** [1] - 19:7
**intending** [1] - 19:11
**interest** [1] - 12:11
**interested** [2] - 26:2, 27:4
**interim** [1] - 13:5
**internal** [1] - 12:6
**Internet** [1] - 9:4
**interrogatories** [1] - 22:8
**interrupt** [2] - 9:10, 11:5
**interrupted** [2] -

19:12, 26:24
**invitation** [2] - 14:14, 14:17
**issue** [6] - 3:15, 4:25, 18:9, 18:10, 22:23, 24:10
**issues** [3] - 5:20, 10:19, 21:21
**item** [1] - 4:10
**items** [6] - 11:7, 11:8, 13:6, 13:8, 15:11, 23:21

## J

**James** [3] - 1:15, 2:3, 3:10
**January** [1] - 24:3
**jbigler@ebglaw.com** [1] - 1:19
**Jill** [2] - 1:15, 3:10
**Jim** [1] - 22:23
**jointly** [1] - 16:15
**jpetrie@ebglaw.com** [1] - 1:18
**judges** [1] - 25:23
**judgment** [1] - 12:24
**Judicial** [1] - 29:10
**juncture** [1] - 26:3
**jurisdiction** [2] - 16:17, 19:1

## K

**keep** [1] - 10:6
**keeping** [1] - 13:7
**kept** [1] - 18:5
**KETTERING** [2] - 1:3, 1:4
**Kettering** [11] - 3:7, 8:10, 8:13, 8:17, 8:18, 8:23, 8:25, 9:3, 9:4, 10:15, 24:15
**Kettering's** [4] - 8:5, 9:3, 15:16, 16:11
**kind** [1] - 18:15

## L

**language** [2] - 18:20, 19:1
**large** [1] - 17:14
**Law** [2] - 2:2, 2:3
**law** [3] - 10:10, 10:12, 10:23
**lawfully** [1] - 11:21
**laws** [1] - 11:22
**lawsuit** [1] - 21:16
**leading** [1] - 6:6
**least** [2] - 24:19, 26:2

**leave** [2] - 18:2, 25:3
**left** [1] - 18:7
**legal** [1] - 17:11
**length** [1] - 6:3
**letter** [1] - 3:13
**likely** [1] - 22:11
**limited** [1] - 9:6
**literally** [1] - 10:20
**litigation** [2] - 4:20, 6:13
**live** [3] - 16:7, 16:20, 25:4
**Loera** [1] - 2:3
**logistics** [1] - 27:7
**look** [1] - 4:18
**loud** [1] - 19:20

## M

**ma'am** [1] - 24:16
**magistrate** [1] - 25:23
**main** [1] - 7:10
**maintain** [1] - 6:2
**MARY** [1] - 1:7
**Mary** [3] - 1:21, 3:8, 3:12
**mastectomy** [1] - 24:18
**matter** [3] - 13:13, 26:16, 29:9
**matters** [3] - 13:12, 14:25, 15:6
**mechanical** [1] - 2:9
**mechanism** [1] - 6:24
**mediation** [5] - 25:17, 25:18, 26:2, 26:15, 26:20
**mediator** [3] - 25:19, 25:20, 26:5
**meet** [1] - 14:15
**mention** [2] - 6:9, 15:3
**mentioned** [3] - 13:8, 15:12, 15:21
**merits** [3] - 6:13, 23:25, 27:18
**might** [2] - 6:11, 25:17
**mind** [1] - 13:7
**minute** [1] - 21:5
**minutes** [5] - 13:22, 14:17, 14:24, 15:1, 15:2
**minutes'** [1] - 13:4
**Miss** [4] - 10:16, 10:17, 10:25, 11:1
**modification** [1] - 20:19
**modify** [1] - 22:18
**moment** [5] - 4:16, 19:17, 20:2, 20:17, 25:11

**moments** [1] - 4:9
**Monday** [3] - 20:17, 21:20, 23:4
**morning** [2] - 3:13, 25:13
**most** [2] - 15:1, 22:6
**motion** [11] - 4:14, 4:15, 5:2, 5:8, 5:15, 5:22, 5:23, 6:7, 12:23, 12:24
**MOTION** [1] - 1:10
**motions** [7] - 4:16, 4:21, 4:24, 5:6, 5:16, 21:7, 21:14
**move** [4] - 7:15, 16:15, 24:23, 24:25
**moving** [1] - 5:22
**MR** [31] - 3:22, 6:19, 7:9, 8:3, 8:9, 8:16, 8:22, 9:2, 9:15, 14:6, 16:13, 16:22, 18:9, 19:5, 20:1, 20:7, 20:12, 20:21, 21:23, 22:10, 22:22, 22:25, 23:5, 23:17, 24:7, 25:5, 26:9, 26:21, 26:25, 27:9, 28:5
**MS** [39] - 3:6, 3:19, 3:25, 7:15, 7:19, 10:3, 11:4, 11:13, 12:10, 12:13, 14:3, 14:8, 16:24, 17:23, 18:14, 18:23, 19:3, 19:8, 19:14, 19:16, 19:21, 20:8, 20:14, 20:24, 21:1, 21:4, 21:25, 22:13, 23:8, 23:20, 24:9, 25:7, 25:9, 26:11, 26:14, 27:12, 27:15, 28:4, 28:6
**mtfoster@ trinitylawllc.com** [1] - 1:23
**mul** [1] - 10:22
**multiple** [1] - 10:22
**must** [1] - 27:25
**mute** [1] - 16:22
**mutual** [3] - 7:20, 11:13, 12:8
**mutually** [1] - 5:25
**mutually-agreed-upon** [1] - 5:25

## N

**name** [1] - 9:17
**named** [3] - 3:11, 11:14, 11:17
**nap** [1] - 28:1

**necessarily** [2] - 13:16, 13:23
**necessary** [2] - 6:6, 7:8
**need** [9] - 13:16, 13:23, 15:12, 22:9, 23:22, 26:22, 27:1, 27:19
**negotiating** [1] - 7:10
**NETWORK** [1] - 1:4
**neutral** [1] - 5:12
**New** [1] - 27:25
**new** [1] - 14:14
**next** [4] - 5:13, 24:3, 24:5
**NO** [1] - 1:6
**normal** [2] - 13:9, 18:17
**normally** [1] - 5:7
**notes** [1] - 13:21
**nothing** [3] - 14:8, 26:14, 27:15
**notice** [1] - 9:9

## O

**objection** [3] - 14:18, 19:2, 22:14
**objections** [2] - 7:25, 20:10
**objects** [1] - 15:24
**obligation** [3] - 10:15, 17:11, 17:12
**obtainable** [1] - 13:8
**October** [8] - 22:20, 22:21, 23:4, 23:16, 24:2, 24:18, 24:24, 25:2
**OF** [3] - 1:1, 1:9, 29:1
**office** [1] - 27:5
**OFFICIAL** [1] - 29:15
**Official** [1] - 29:3
**OHIO** [1] - 1:1
**Ohio** [4] - 1:17, 1:22, 2:7, 29:5
**ON** [1] - 1:10
**oncology** [1] - 24:15
**one** [9] - 5:17, 12:10, 12:12, 15:24, 21:5, 21:6, 25:18, 25:22, 27:5
**one's** [1] - 13:12
**one-sided** [2] - 12:10, 12:12
**open** [1] - 7:20
**opportunity** [1] - 10:24
**opposed** [1] - 26:15
**opposing** [1] - 17:5
**opposition** [1] - 4:14

**option** [1] - 25:22
**options** [1] - 25:18
**oral** [3] - 5:23, 6:7, 23:2
**ORDER** [1] - 1:10
**order** [14] - 5:23, 6:4, 6:11, 15:4, 15:5, 15:9, 15:19, 16:5, 18:3, 20:16, 21:9, 22:3
**orders** [1] - 15:25
**otherwise** [1] - 12:25
**ourselves** [1] - 13:16
**own** [2] - 10:14

## P

**p.m** [2] - 3:2, 28:8
**page** [1] - 29:9
**paid** [1] - 25:21
**particular** [1] - 5:18
**parties** [5] - 5:24, 7:7, 15:9, 16:15, 17:4
**party** [1] - 8:11
**past** [1] - 5:9
**patient** [1] - 24:15
**patients** [1] - 17:13
**pause** [2] - 19:18, 20:3
**PC** [1] - 1:16
**pending** [1] - 15:9
**People's** [1] - 23:10
**percent** [2] - 5:20, 25:24
**perhaps** [1] - 5:11
**period** [1] - 6:3
**permitting** [1] - 24:23
**person** [2] - 8:17, 8:20
**personal** [1] - 8:24
**pertinent** [1] - 13:15
**PETRIE** [30] - 3:22, 6:19, 7:9, 8:3, 8:9, 8:16, 8:22, 9:2, 9:15, 14:6, 16:13, 16:22, 18:9, 19:5, 20:1, 20:7, 20:12, 20:21, 21:23, 22:10, 22:22, 23:5, 23:17, 24:7, 25:5, 26:9, 26:21, 26:25, 27:9, 28:5
**Petrie** [29] - 1:15, 3:10, 6:17, 7:22, 8:2, 9:11, 9:24, 10:10, 11:8, 13:5, 14:4, 15:11, 16:7, 16:12, 16:19, 18:2, 19:4, 19:24, 20:11, 20:20, 21:13, 21:22, 22:4, 22:21, 24:6, 25:3, 26:7, 26:18, 27:8
**phone** [5] - 4:3, 13:22,

14:19, 26:5, 27:6
**place** [2] - 11:18, 16:5
**Plaintiff** [4] - 1:5, 1:14, 3:9, 15:21
**Plaintiff's** [9] - 4:14, 4:15, 5:1, 6:7, 6:15, 13:25, 19:23, 23:5, 23:17
**plaintiffs** [1] - 3:14
**Plaintiffs** [1] - 4:10
**pleadings** [2] - 19:7, 19:23
**pleasant** [1] - 4:22
**point** [7] - 5:24, 9:11, 10:3, 11:7, 12:23, 13:15, 26:8
**points** [2] - 19:2, 19:9
**policy** [1] - 5:19
**position** [1] - 5:11
**positions** [1] - 21:18
**possessing** [4] - 8:5, 15:15, 16:10, 17:21
**possession** [3] - 17:24, 18:15, 18:18
**post** [1] - 24:19
**postponement** [1] - 24:2
**preference** [1] - 3:17
**prejudice** [3] - 6:2, 13:12, 16:21
**preliminary** [6] - 6:8, 6:12, 12:16, 21:8, 21:11, 23:24
**prepare** [1] - 12:15
**present** [1] - 25:21
**Present** [1] - 2:1
**presentation** [1] - 7:25
**presented** [1] - 5:8
**presently** [1] - 4:19
**preserve** [1] - 15:10
**PRESIDING** [1] - 1:11
**pretrial** [1] - 24:23
**prevented** [1] - 17:19
**private** [2] - 25:19, 25:20
**problem** [4] - 10:7, 17:21, 25:19, 27:22
**procedural** [2] - 13:15, 27:18
**procedure** [4] - 4:16, 5:17, 12:12, 27:21
**procedures** [1] - 27:19
**proceed** [1] - 15:18
**PROCEEDINGS** [1] - 1:9
**proceedings** [1] - 29:8
**Proceedings** [4] - 2:9, 3:3, 4:7, 14:22
**processes** [1] - 18:17

**produced** [2] - 2:10, 15:6
**Professional** [1] - 11:22
**professional** [1] - 17:11
**pronounced** [1] - 9:17
**proper** [1] - 16:4
**properly** [3] - 12:15, 12:18, 12:20
**provide** [4] - 8:10, 8:22, 9:2, 23:23
**provided** [3] - 8:18, 8:19, 17:4
**provider** [1] - 9:5
**provision** [1] - 18:11
**provisions** [2] - 7:23, 8:8
**public** [1] - 17:14
**purpose** [4] - 15:8, 17:9, 18:20
**pursuant** [2] - 6:10, 29:6
**put** [4] - 13:19, 14:11, 20:15, 22:2

## Q

**questions** [4] - 6:21, 24:6, 27:16, 27:18
**quo** [3] - 6:3, 10:6, 15:10
**quote** [1] - 15:13
**quoted** [1] - 16:8

## R

**rates** [1] - 25:21
**rather** [2] - 5:2, 18:3
**re** [1] - 15:14
**Reading** [1] - 1:21
**really** [1] - 25:18
**REALTIME** [1] - 29:15
**Realtime** [1] - 29:3
**recess** [3] - 4:3, 4:5, 14:20
**Recess** [2] - 4:6, 14:21
**reconstruction** [1] - 24:17
**reconvene** [1] - 13:4
**record** [2] - 12:4, 26:15
**recorded** [1] - 2:9
**red** [1] - 25:11
**redress** [1] - 11:2
**Reentry** [1] - 25:12
**regulations** [1] - 29:10
**regulatory** [1] - 17:10
**relevant** [1] - 9:4
**remains** [1] - 12:21

**removing** [1] - 18:10
**rendered** [1] - 21:12
**renew** [1] - 14:11
**repeat** [1] - 21:14
**reported** [1] - 29:8
**Reporter** [2] - 2:5, 29:4
**REPORTER** [2] - 29:1, 29:15
**represented** [1] - 3:11
**representing** [1] - 3:12
**reputation** [1] - 11:23
**request** [1] - 4:11
**requested** [2] - 10:5, 11:7
**requests** [9] - 13:9, 15:20, 15:23, 16:3, 16:4, 20:5, 20:19, 22:7, 22:19
**require** [3] - 8:16, 9:2, 18:3
**required** [2] - 8:10, 18:16
**requiring** [1] - 16:25
**research** [3] - 10:19, 10:21, 17:11
**resolve** [3] - 4:25, 12:18, 21:21
**resolved** [1] - 5:20
**response** [2] - 7:24, 26:20
**restrain** [1] - 18:20
**restraining** [4] - 5:22, 6:4, 15:4, 16:5
**RESTRAINING** [1] - 1:10
**resume** [2] - 4:7, 14:22
**retain** [5] - 17:8, 17:15, 17:23, 18:3, 25:19
**retaining** [8] - 8:4, 15:14, 16:9, 17:1, 17:22, 18:2, 18:10, 19:1
**retaliatory** [2] - 11:19, 11:20
**review** [1] - 21:17
**RICE** [1] - 1:11
**Rice** [1] - 2:5
**Richardson** [1] - 2:4
**rights** [1] - 10:14
**Road** [1] - 1:21
**roundabout** [1] - 10:4
**routinely** [1] - 15:5
**RPR** [2] - 2:5, 29:15
**Rule** [2] - 6:10, 23:23
**Rules** [1] - 11:22
**ruling** [1] - 5:1

**rulings** [1] - 16:1
**running** [1] - 22:17
**Russell** [1] - 2:2

### S

**s/Caryl** [1] - 29:14
**safe** [1] - 28:1
**safety** [1] - 17:13
**sanctioned** [1] - 11:2
**SANDRA** [1] - 1:7
**Sandra** [3] - 3:8, 3:11, 9:20
**satisfactory** [2] - 18:13, 21:22
**scenario** [1] - 22:4
**schedule** [4] - 9:12, 13:3, 23:3, 28:2
**scheduler** [1] - 25:10
**Scott** [47] - 1:21, 3:8, 3:12, 3:22, 3:23, 3:24, 4:3, 4:11, 4:13, 6:16, 7:14, 7:16, 7:17, 7:21, 7:24, 9:16, 9:23, 11:3, 11:5, 13:18, 13:24, 14:7, 16:8, 16:20, 16:22, 16:23, 18:1, 18:7, 18:13, 18:24, 19:6, 19:20, 20:13, 20:25, 21:13, 21:24, 22:5, 22:12, 23:7, 23:19, 24:8, 25:6, 26:13, 26:17, 26:20, 27:4, 27:14
**SCOTT** [34] - 1:7, 3:6, 3:19, 7:19, 10:3, 11:4, 11:13, 12:10, 12:13, 14:3, 14:8, 16:24, 17:23, 18:14, 18:23, 19:3, 19:8, 19:14, 19:16, 19:21, 20:8, 20:14, 21:1, 21:4, 21:25, 22:13, 23:8, 23:20, 24:9, 25:7, 25:9, 26:14, 27:15, 28:4
**seal** [7] - 6:24, 7:2, 7:4, 7:6, 16:15, 16:16, 18:25
**Second** [1] - 2:6
**Section** [1] - 29:6
**see** [3] - 7:25, 11:11, 19:24
**seeking** [1] - 11:1
**send** [3] - 13:25, 14:14, 14:16
**sending** [1] - 25:11
**sends** [1] - 13:25
**sent** [1] - 3:13

**September** [1] - 20:17
**serve** [1] - 20:5
**servers** [1] - 12:7
**service** [1] - 9:5
**set** [9] - 4:16, 5:3, 7:23, 13:6, 15:20, 21:20, 22:1, 22:2, 23:2
**setting** [1] - 3:13
**shut** [2] - 10:17, 10:25
**side** [2] - 6:2, 15:24
**side's** [1] - 15:25
**sided** [2] - 12:10, 12:12
**sides** [2] - 7:3, 27:6
**similar** [1] - 18:15
**simply** [4] - 4:18, 4:23, 5:19, 6:2
**six** [5] - 22:11, 22:13, 22:15, 22:17, 22:19
**six-week** [1] - 22:15
**Smerbeck** [1] - 2:3
**SMERBECK** [1] - 22:25
**so-called** [1] - 11:18
**sometime** [1] - 5:4
**sorry** [2] - 3:19, 26:24
**sorts** [1] - 25:11
**sought** [1] - 5:10
**SOUTHERN** [1] - 1:1
**Southern** [1] - 29:5
**speaking** [1] - 3:21
**specific** [1] - 19:9
**specifically** [3] - 10:10, 10:11, 11:16
**specifics** [1] - 8:19
**sponsor** [3] - 8:13, 8:18, 8:25
**sponsor's** [2] - 15:16, 16:11
**sponsors** [1] - 17:13
**sponsors'** [1] - 8:6
**Stakeholder** [1] - 25:13
**standard** [1] - 19:1
**standstill** [22] - 5:25, 6:1, 6:11, 7:20, 9:12, 10:2, 10:5, 11:8, 11:11, 12:16, 13:7, 13:10, 13:12, 13:16, 13:19, 15:8, 15:12, 15:19, 15:22, 16:5, 21:9
**start** [2] - 6:15, 22:17
**starting** [1] - 6:21
**state** [1] - 26:15
**STATES** [1] - 1:1
**States** [3] - 29:4, 29:6, 29:11

**status** [4] - 6:2, 10:6, 15:10, 17:25
**stay** [1] - 28:1
**stenographically** [1] - 29:8
**stenography** [1] - 2:9
**step** [1] - 5:15
**Street** [2] - 1:16, 2:6
**styled** [1] - 4:13
**subject** [2] - 7:5, 7:13
**submit** [1] - 15:20
**successful** [1] - 25:24
**sufficient** [1] - 22:14
**suggest** [6] - 9:8, 13:2, 20:19, 22:10, 23:3, 24:21
**suggested** [2] - 3:15, 4:10
**Suite** [2] - 1:17, 1:22
**summary** [1] - 12:24
**supplement** [1] - 19:7
**swimming** [1] - 22:2
**sync** [1] - 13:11

### T

**TEMPORARY** [1] - 1:10
**temporary** [4] - 5:22, 6:4, 15:4, 16:5
**term** [1] - 13:11
**test** [1] - 4:4
**THE** [92] - 1:1, 1:1, 1:11, 3:4, 3:7, 3:21, 3:23, 4:2, 4:8, 7:1, 7:12, 7:17, 7:21, 8:7, 8:15, 8:21, 9:1, 9:10, 9:16, 9:19, 9:21, 9:22, 9:23, 11:3, 11:5, 12:9, 12:11, 12:14, 14:4, 14:7, 14:10, 14:16, 14:23, 16:19, 16:23, 17:20, 18:1, 18:12, 18:19, 18:24, 19:4, 19:6, 19:12, 19:15, 19:17, 19:19, 19:22, 20:2, 20:4, 20:9, 20:13, 20:15, 20:23, 20:25, 21:2, 21:5, 21:24, 22:1, 22:12, 22:16, 22:23, 23:1, 23:7, 23:9, 23:13, 23:14, 23:19, 23:21, 24:8, 24:10, 24:11, 24:13, 24:14, 24:16, 24:17, 24:21, 25:6, 25:8, 25:10, 25:14, 25:16, 26:10, 26:12, 26:17, 26:23, 27:3, 27:10,

27:13, 27:16, 27:20, 27:22, 28:7
**themselves** [1] - 14:18
**thinking** [1] - 19:20
**third** [2] - 8:11, 17:4
**thoughts** [5] - 6:16, 7:18, 9:23, 10:1, 10:2
**Thursday** [1] - 19:20
**Title** [1] - 29:6
**today** [3] - 3:5, 5:1, 23:23
**together** [1] - 5:13
**tolerate** [1] - 4:23
**total** [1] - 15:1
**touched** [1] - 21:6
**trained** [1] - 25:23
**transcribed** [1] - 9:25
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 2:9, 29:7, 29:9
**tried** [2] - 11:18, 11:23
**TRO** [3] - 10:4, 15:8, 15:22
**TROs** [1] - 15:5
**true** [1] - 29:7
**try** [1] - 4:8
**trying** [2] - 10:18, 11:1
**Tuesday** [2] - 20:5, 23:16
**turn** [4] - 4:22, 6:16, 7:22, 7:24
**two** [6] - 9:9, 14:24, 19:2, 21:6, 23:21, 25:18
**type** [1] - 6:10
**typed** [1] - 13:20

### U

**U.S** [1] - 2:6
**unable** [1] - 3:23
**unacceptable** [1] - 11:24
**under** [9] - 6:23, 7:1, 7:4, 7:6, 11:4, 11:21, 11:24, 16:16, 18:25
**unfounded** [1] - 11:25
**United** [3] - 29:4, 29:6, 29:11
**UNITED** [1] - 1:1
**unsupported** [1] - 10:12
**up** [6] - 3:15, 3:20, 9:8, 9:16, 13:20, 25:11
**utilizing** [3] - 17:9, 17:18, 25:22

### V

**versus** [1] - 3:8
**via** [3] - 3:3, 4:7, 14:22
**violations** [1] - 10:22
**voice** [1] - 4:4
**vs** [1] - 1:6

### W

**Walter** [1] - 2:5
**WALTER** [1] - 1:11
**Wednesday** [2] - 5:5, 5:13
**week** [2] - 5:14, 22:15
**weekend** [2] - 27:24, 28:1
**weeks** [4] - 22:11, 22:13, 22:17, 22:20
**welcome** [5] - 12:14, 21:3, 26:12, 27:10, 27:13
**well-trained** [1] - 25:23
**West** [1] - 1:16
**WESTERN** [1] - 1:2
**whistleblower** [4] - 11:4, 17:7, 17:17, 17:25
**Wiest** [1] - 2:2
**willing** [1] - 24:23
**wish** [4] - 5:14, 5:15, 7:13, 27:24
**word** [1] - 18:14
**works** [4] - 20:7, 23:5, 23:17, 23:20
**world** [1] - 10:20
**worry** [1] - 12:12

### Y

**year** [1] - 24:3
**Year** [1] - 27:25
**years** [1] - 5:9
**yourselves** [1] - 26:1

### Z

**Zoom** [7] - 3:3, 4:7, 5:4, 14:14, 14:17, 14:22, 24:25