UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **Kettering Adventist Healthcare** <br> **d/b/a Kettering Health Network,** | : Case No. 3:25-cv-00273 |
| | : Judge Walter H. Rice |
| Plaintiff/ Counterclaim Defendant, | |
| | : Magistrate Judge Caroline H. Gentry |
| v. | : |
| **Sandra Collier; and Mary T. Scott, Esq.,** | : |
| Defendants/Third-Party Plaintiffs. | : |
| | : |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS UNDER RULE 12(b)(6)**

**I. INTRODUCTION & PROCEDURAL POSTURE**

On August 25, 2025, Defendants Sandra Collier ("Collier") and Mary T. Scott ("Scott") moved to dismiss Kettering Adventist Healthcare d/b/a Kettering Health Network's ("Kettering") Complaint under Rule 12(b)(6), or, in the alternative, for summary judgment. (Defs.' Mot., Doc. #13). Kettering filed an Opposition on September 15, 2025. (Pl.'s Opp., Doc. #44, PageID 1204). The Court has already denied conversion to summary judgment at this stage. (Order, Doc. #31, PageID 1096). This Reply addresses Kettering's arguments and shows, count-by-count, why the Complaint fails to state a claim as a matter of law.

As detailed below, Kettering's pleading defects cannot be cured by the Opposition's conclusory assertions. Kettering identifies no false statement in Defendants'

pre-suit demand; fails to allege ownership, particularity, and reasonable secrecy measures for any claimed trade secret; cannot satisfy the Computer Fraud and Abuse Act ("CFAA") elements; advances torts preempted by the Ohio Uniform Trade Secrets Act ("OUTSA"); and relies on communications protected by the litigation privilege and Evidence Rule 408.

Moreover, Kettering's September 2, 2025 admission letter acknowledges a HIPAA privacy breach known on June 26, 2025—the day of Collier's termination—confirming Defendants' claims had factual merit.

## II. LEGAL STANDARDS

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts disregard legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

## III. COUNT VI (CIVIL RECOVERY FOR EXTORTION UNDER R.C. § 2307.60) FAILS AS A MATTER OF LAW

Kettering concedes Ohio recognizes no standalone tort of civil extortion, so it repackages Count VI as a civil action under R.C. § 2307.60 based on an alleged predicate violation of the criminal extortion statute, R.C. § 2905.11. (Pl.'s Opp., Doc. #44, at 8–13, PageID 1211–15). Section 2307.60 does not create new torts; it allows recovery only if a criminal act is plausibly pled. Buddenberg v. Weisdack, 161 N.E.3d 603, 606 (Ohio 2020).

A predicate under R.C. § 2905.11(B)(4)–(5) requires a wrongful threat (e.g., knowingly false "calumny") made with purpose to obtain a valuable thing. See id.; cf. GS Holistic LLC v. Wireless & Smoke, LLC, 2024 WL 4109721, at *4 (S.D. Ohio Sept. 6, 2024), report and recommendation adopted, 2024 WL 4441736 (S.D. Ohio Oct. 8, 2024). Kettering's claim fails for multiple, independent reasons:

1. No Falsity Identified. Despite extensive briefing, Kettering has not identified a single false statement in Defendants' July 28, 2025 demand letter that forms the basis of the Complaint. (See generally Doc. #1 ¶¶ 30–34; Pl.'s Opp., Doc. #44). The Opposition argues "calumny," but points to no specific false factual assertion. Absent falsity, the extortion predicate collapses.

2. Privileged Settlement Communications. Statements made in or reasonably related to judicial proceedings are absolutely privileged. Hecht v. Levin, 66 Ohio St. 3d 458, 460–61, 613 N.E.2d 585 (1993); Surace v. Wuliger, 25 Ohio St. 3d 229, 232–33, 495 N.E.2d 939 (1986). Federal Rule of Evidence 408 likewise bars use of settlement communications to prove liability or amount. The demand letter is a pre-suit settlement communication advancing legally cognizable claims; it is privileged unless knowingly false—something Kettering has not pled.

3. Lawful Regulatory/Sponsor Notification. Advising that regulators or sponsors may be notified if corrective action is not taken is not an unlawful threat; it is lawful whistleblowing consistent with statutory duties. United States v. Jackson, 180 F.3d 55, 70

(2d Cir. 1999). Here, the letters sought examination and compliance—not coercion—and were grounded in documented concerns (see infra § VI).

  4. September 2 Admission Confirms Merit. Kettering's September 2, 2025 letter to Defendants admits improper access/disclosure of Collier's PHI known on June 26, 2025. That admission corroborates that Defendants' demand letter rested on true, supportable allegations—defeating any suggestion of wrongful, baseless threats. Because Kettering cannot plausibly allege falsity or wrongdoing in Defendants' settlement communications, Count VI fails under R.C. § 2307.60 and should be dismissed with prejudice.

## IV. COUNTS I & II (DTSA/OUTSA) FAIL: NO OWNERSHIP, NO PARTICULARITY, NO REASONABLE MEASURES

  Kettering's Opposition concedes the clinical trial program operates through contracts with third-party sponsors and that confidentiality provisions recognize sponsor ownership. (Doc. #1 ¶¶ 9–19; Doc. #44, at 13–17, PageID 1215–19). The pleading deficiencies remain dispositive:

  A. Ownership. The Defend Trade Secrets Act affords a civil action to the "owner" of a trade secret. 18 U.S.C. § 1839(5). Kettering pleads no facts showing ownership or exclusive control of sponsor protocols, datasets, or monitoring correspondence; to the contrary, it alleges sponsor NDAs making "all information … the sole property of SPONSOR." (Doc. #44, at 18–19 (quoting sponsor terms); see Doc. #1 ¶ 17). Courts reject claims where the plaintiff lacks lawful ownership/control. Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., 511 F. App'x 398, 405 (6th Cir. 2013).

B. Particularity. The Complaint recites broad categories (e.g., "operations, business and strategic plans, financial information," "protocols," "trial processes and procedures") and appends file names and dates (Doc. #1, PageID 18–42), but does not identify specific trade secrets, their independent economic value, or why they are not readily ascertainable. Such generalized groupings do not satisfy particularity. Office Depot, Inc. v. Impact Office Prods., LLC, 821 F. Supp. 2d 912, 919–23 (N.D. Ohio 2011).

C. Reasonable Measures. Kettering cites badge access, locked cabinets, and passwords (Doc. #1 ¶¶ 12–19), yet simultaneously alleges hundreds of emails were forwarded externally without detection (id. ¶¶ 33–36). This contradiction undermines any claim of "reasonable measures" under DTSA/OUTSA. See, e.g., Pro-tech authorities (reasonable measures require more than generic policies).

D. Misappropriation. The pleading fails to allege facts establishing improper acquisition, disclosure, or use by Defendants. See 18 U.S.C. § 1839(5). Collier's access as System Director was authorized; and the Opposition relies on conclusory assertions that mirror ownership and secrecy defects.

E. OUTSA Preemption. To the extent Kettering's tort theories overlap with alleged misuse of information, they are displaced by R.C. § 1333.67(A). Stolle Mach. Co., LLC v. RAM Precision Indus., 605 F. App'x 473, 484–85 (6th Cir. 2015). Counts I and II should be dismissed.

## V. COUNT III (CFAA) FAILS: NO UNAUTHORIZED ACCESS, NO LOSS, AND VAN BUREN CONTROLS

The Supreme Court construes "exceeds authorized access" narrowly to cover obtaining information from areas to which a person lacks access privileges—not misuse of information otherwise accessible. Van Buren v. United States, 593 U.S. 374, 380–86 (2021); Royal Truck & Trailer Sales & Serv., Inc. v. Kraft, 974 F.3d 756, 758–61 (6th Cir. 2020).

Kettering alleges Collier forwarded emails before suspension while using credentials issued by Kettering (Doc. #1 ¶¶ 33–34), and that after suspension/termination it blocked her access (id. ¶ 39). Attempts that are blocked do not constitute "access." And for any civil CFAA claim, Kettering must plead a qualifying "loss" of at least $5,000 in a 1-year period, 18 U.S.C. § 1030(c)(4)(A)(i)(I), limited to costs of responding, restoring, or service interruption—not litigation or investigation expenses unrelated to technical harm. The Complaint pleads no such cognizable loss. Count III must be dismissed.

## VI. HIPAA/PRIVACY ALLEGATIONS DO NOT SAVE ANY CLAIM

Kettering seeks to characterize Collier's retention of research records as misappropriation or conversion. (Doc. #1 ¶¶ 30–40). This framing fails because it disregards Collier's professional obligations as System Director to preserve records for compliance purposes, not for her personal gain.

A. Archiving Duties Are Mandated by Law and Standard Practice

Federal and industry standards required Collier to ensure preservation of study files:

- FDA regulations: Sponsors and investigators must retain records for two years after drug approval or two years after discontinuation of a study. 21 C.F.R. §§ 312.57(c), 312.62(c).

- Device studies: Records must be kept two years after study termination or completion. 21 C.F.R. § 812.140(d).

- Good Clinical Practice: ICH-GCP E6(R2) §§ 4.9.5, 8.1–8.4 require records to be available for sponsor audits, regulatory inspections, and litigation.

- Standard institutional practice: Research entities routinely adopt 20-year archival policies to cover FDA review cycles and post-market surveillance, which may extend years beyond initial approval.

B. No Personal Gain, No Improper Purpose

Kettering has not alleged, nor could it allege, that Collier personally benefitted from retaining records. Instead, the evidence shows her actions aligned with her professional obligation to safeguard study archives for sponsors and the FDA. This negates the "valuable thing" element of extortion and defeats any claim of improper purpose.

C. Archiving Undermines Kettering's Misappropriation Theory

Because Collier's duties required retention, her compliance cannot simultaneously constitute wrongful acquisition. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475 (1974) (trade secret rights are contingent on lawful control). Kettering's attempt to convert regulatory compliance into a tort theory underscores the implausibility of its claims under Twombly/Iqbal.

### VII. DEFENDANTS' HANDLING OF RECORDS WAS CONSISTENT WITH ARCHIVING DUTIES, NOT MISAPPROPRIATION

HIPAA provides no private right of action. <u>Wilson v. Collins</u>, 517 F.3d 421, 429 (6th Cir. 2008). To the extent Kettering's theories rest on PHI, the pleading concedes study materials were coded and stored behind internal controls (Doc. #1 ¶ 18), and Defendants maintain that any materials were de-identified per 45 C.F.R. § 164.514(b)(2). In any event, HIPAA cannot be repurposed to sustain tort or statutory claims.

### VIII. Count V (Tortious Interference) Is Preempted and Insufficiently Pled

Kettering argues Count V rests on interference independent of trade secrets. (Doc. #44, at 18–20, PageID 1219–21). But the Complaint grounds interference in the same nucleus of facts as the trade-secret counts—Defendants' alleged use/disclosure of confidential information. Such claims are displaced. <u>Hanneman Fam. Funeral Home & Crematorium v. Orians</u>, 235 N.E.3d 361, 366–67 (Ohio 2023); <u>Stole Mach.</u>, 605 F. App'x at 484–85. Further, Kettering pleads no specific disrupted contract, knowledge, or proximate damages with the particularity required by <u>Twombly/Iqbal</u>. Count V should be dismissed.

### IX. COUNT IV (BREACH OF CONFIDENTIALITY AGREEMENT) FAILS AS A MATTER OF LAW

Kettering insists that Count IV survives because Defendants supposedly "did not move to dismiss it" (Doc. #44 at 1 n.1). That is incorrect. Rule 12(b)(6) allows dismissal

of any claim that fails as a matter of law, whether or not expressly targeted. See Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999).

    A. No Actionable Breach Alleged

The Confidentiality Agreement (Doc. #1-5) requires protection of confidential information, but the Complaint does not identify a single provision Collier allegedly violated. Instead, it repeats generalized assertions that she "forwarded emails." In reality, Collier forwarded materials to her professional email account associated with the company responsible for archiving her research—not to outsiders, competitors, or for personal use. This conduct aligns with her regulatory duty to preserve research records, not breach.

    B. Forwarding Was Archiving, Not Misappropriation

As System Director, Collier was responsible for ensuring study records were archived for regulatory compliance. FDA regulations (21 C.F.R. §§ 312.57(c), 312.62(c); § 812.140(d)) and ICH-GCP require retention and availability of records for years after completion. Standard practice is to archive records for up to 20 years. Her forwarding to her professional archive account was part of that compliance, not conversion.

    . No Cognizable Damages

Even if the Agreement could be stretched to cover Collier's archiving conduct, Kettering pleads no actual damages. Under Ohio law, damages are an essential element of breach. Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 151 (1996). Kettering identifies no lost sponsor, withdrawn funding, or financial loss.

### D. Inconsistent With Sponsor Ownership

The Confidentiality Agreement cannot override sponsor contracts that designate sponsor ownership of study materials. (Doc. #1 ¶ 17). Kettering admits these agreements. A party cannot recover for "breach" of obligations it does not own. Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., 511 F. App'x 398, 405 (6th Cir. 2013).

### E. Preemption Bars Repurposing Contract Into Trade-Secret Claim

OUTSA preserves legitimate contractual remedies but bars duplication of trade-secret theories under other labels. R.C. § 1333.67(B). Count IV rests on the same alleged "misappropriation" as Counts I–II, and is therefore displaced. Hanneman v. Orians, 235 N.E.3d 361, 366–67 (Ohio 2023).

### F. Dismissal With Prejudice Is Required

Collier's forwarding of research files to her archiving account was consistent with her duties, not breach. The absence of breach, damages, and ownership, combined with OUTSA preemption, leaves no room for Count IV to survive. It must be dismissed with prejudice.

## X. SEPTEMBER 2 LETTER: KETTERING CANNOT "PROTECT" SPONSORS WHILE CONCEALING IRREGULARITIES

Kettering's Opposition leans on sponsor confidentiality to claim trade-secret rights, yet simultaneously decries Defendants' effort to notify sponsors and regulators of research irregularities. (Doc. #44, at 13–20). A party cannot claim to enforce sponsor rights while concealing noncompliance from those very sponsors. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475 (1974). The September 2, 2025 letter confirms that

sponsor/regulatory notification was appropriate and that Defendants' concerns were meritorious. One cannot "protect" sponsors by suppressing disclosure mandated by 21 C.F.R. §§ 312.32, 812.150; 21 C.F.R. § 56.108(b)(2); and ICH E6(R2).

## XI. SEPTEMBER 2 ADMISSION LETTER CONFIRMS DEFENDANTS' ALLEGATIONS WERE TRUE AND PRIVILEGED

Kettering's September 2, 2025 letter admits improper access/disclosure of Collier's PHI and knowledge as of June 26, 2025. That admission: (a) corroborates the factual basis for Defendants' pre-suit demand; (b) defeats any characterization of the demand as wrongful or baseless; and (c) places the communication squarely within the litigation privilege. See Hecht, 66 Ohio St. 3d at 460–61; Surace, 25 Ohio St. 3d at 232–33. Importantly, Defendants do not concede or waive any claims arising from Kettering's false accusations in this case; rather, the admission letter supports that Defendants' assertions had merit.

Critically, despite accusing Defendants of "extortion," Kettering has not identified a single false allegation in the demand letter or demonstrated any concrete interference with sponsor contracts traceable to Defendants' lawful communications. (See Doc. #44; Doc. #1 ¶¶ 30–40). That failure is dispositive at the pleading stage.

## XII. CONCLUSION

Kettering's Complaint is legally deficient. Count VI fails because Kettering cannot plead a criminal predicate or overcome litigation privilege. Counts I–II fail for lack of ownership, particularity, and reasonable measures and are coupled with preempted tort

theories. Count III fails under <u>Van Buren</u> and for lack of a cognizable CFAA loss. Count V is preempted and insufficiently pled. Count IV fails for lack of cognizable breach or damages. The September 2 admission letter further confirms Defendants' allegations were factual and privileged. The Court should dismiss the Complaint in its entirety with prejudice, or alternatively, limit any surviving claim to contract remedies and enter judgment as a matter of law on the remaining counts.

Respectfully submitted,

/s/ Mary T. Scott (0081729)
TRINITY LAW, LLC
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
Tel: (513) 953-2499 | Fax: (513) 873-8173
Email: mtfoster@trinitylawllc.com
Pro Se Defendant:Third -Party Plaintiff

/s/Sandra Collier
c/o Office of TRINITY LAW, LLC
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
Tel: (513) 953-2499 | Fax: (513) 873-8173
Email: ms.sandra.collier@gmail.com
                                            Pro Se Defendant:Third -Party Plaintiff

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was served via CM/ECF for all parties and counsel of record.
                                            /s/ Mary T. Scott, Esq.
                                            Mary T. Scott (0081729) Pro se