IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KETTERING ADVENTIST HEALTHCARE

d/b/a KETTERING HEALTH NETWORK,

                    Plaintiff,

        vs.                              CASE NO. 3:25-cv-273

SANDRA COLLIER and MARY T. SCOTT,

                    Defendants.

                    TRANSCRIPT OF PROCEEDINGS

                    TELEPHONE CONFERENCE

PRESIDING:  THE HONORABLE WALTER H. RICE

DATE:  Monday, September 29, 2025

APPEARANCES:

For the Plaintiff:

By:  James G. Petrie, Esq.
     Jill K. Bigler, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2420
     jpetrie@ebglaw.com
     jbigler@ebglaw.com

For the Pro Se Defendant Mary T. Scott:

By:  Mary T. Scott, Esq.
     7710 Reading Road
     Suite 102
     Cincinnati, Ohio  45237
     (513) 953-2499
     mtfoster@trinitylawllc.com

For the Defendant Sandra Collier:

By:  (No appearance.)

For the EBG Third-Party Defendants:

By:  Jonathan Brollier, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2412
     jbrollier@ebglaw.com

Also Present:

     Bethany Russell, Courtroom Deputy Clerk
     Daniel Wiest, Law Clerk
     James Smerbeck, Law Clerk

Court Reporter:  Caryl L. Blevins, RPR, CRR
                 Walter H. Rice Federal Building
                 U.S. Courthouse
                 200 W. Second Street
                 Dayton, Ohio  45402
                 (937) 512-1511
                 caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript

produced by computer.

Monday, September 29, 2025

                         3:36 p.m.

          (Proceedings had telephonically.)

          THE COURT:  Well, good afternoon, all.  This is C3-25-273, Kettering Adventist versus Collier and others. The appearances are, for the Plaintiff, James Petrie and Jill Bigler.  For Defendant Mary Scott, Mary Scott is representing herself.  For third-party Defendants, counsel Jon Brollier, and Ms. Collier is present as well.

          Ms. Collier, how is your search for counsel going?

          MS. COLLIER:  Hi, Judge.  It's actually very difficult.  I met with Attorney VanNoy this morning again, so I was waiting for a call back from him.  It's not the simplest certainly at this juncture within our case.

          THE COURT:  No, I understand that, and it's difficult sometimes to find counsel before he or she does due diligence.

          MS. COLLIER:  Yes.

          THE COURT:  All I ask you to do is keep reaching out.  Our Bar Association has a lawyer referral service where you can talk to a staff member, tell them a little bit about the case.

          They might be able to give you guidance as far as attorneys in the Dayton area that have some expertise in the area, and of course, Columbus and Cincinnati Bar

Associations have the same service.

MS. COLLIER: Okay. Thank you.

THE COURT: You're welcome. I think the best thing to do is to simply put a stay on discovery until Ms. Collier is represented, and I hope to get everyone on the phone every two or three days just to see how that search is going, but Mr. Petrie, Ms. Bigler, have you thought about a Rule 65 consolidation of the hearing on the preliminary with the hearing on the merits?

MR. PETRIE: Yes, Your Honor. We are interested in -- in that.

THE COURT: All right. Mr. Brollier, what are your thoughts?

MR. BROLLIER: Your Honor, my thoughts are that if the hearing would just be confined to the matters related to the preliminary injunction, that -- that makes plenty of sense. Otherwise, the third-party Defendants' answer date, when we'll move to dismiss, is -- that's not due until October 29th, if memory serves.

Seems like if -- if -- if the preliminary injunction hearing were to -- were to proceed, it's not going to happen on October 27th, I think it's probably fair to assume, since that's less than a month away and new counsel still has to be obtained.

So I guess that -- that's all to say that the

third-party Defendants, because they don't have claims in the preliminary injunction component and will be moving to dismiss the third-party claims against them, I guess I'm agnostic as to whether that could be consolidated, but it seems to make sense from the viewpoint of the Plaintiffs, so we would have no problem with that.

THE COURT: All right. I appreciate that, and the consolidation is consolidation of the PI matter, without calling it a PI hearing, going straight to the merits of the litigation, and obviously you have some motions that you're going to file on behalf of your clients that I'll have to resolve before any merits hearing.

MR. BROLLIER: Thank you, Your Honor. Yes. So understanding that we would need to have the motion to dismiss fully briefed and decided before proceeding, I think in theory, a consolidation makes sense.

THE COURT: All right. Thank you, Mr. Brollier.

Ms. Scott, good afternoon, and tell me what your thoughts are.

MS. SCOTT: Good afternoon, Your Honor. If we are looking at consolidating the preliminary injunction matter as well as the first portion, which is the complaint that was filed against myself and Ms. Collier, I would think that's fine to, you know, con -- to join those two preliminarily or whatever and move forward afterwards on

our -- which would be remaining our motions to dismiss, our motions to -- complaint -- I guess the complaint against the counsels as well as Kettering and our third-party complaint would need to go forward after that, because again, these things are -- have been limited, including discovery was supposed to be limited to the preliminary injunction matter.

So if we're bifurcating, for lack of better words, the first portion, which is their complaint and the preliminary injunction matter, we have no -- no issue with respect to that. We would be fine moving forward with that -- that matter.

That being said, also, Your Honor, there -- since our last meeting, there are some issues and matters of concern, and I understand that Your Honor may not have -- you don't have that information before you, available to you, but I will be -- actually, it's a joint motion between myself and Miss Collier, we've been working on it, based on some violations that have occurred since our last hearing with Your Honor that we feel is important and necessary to be addressed with the Court and giving proper notice to the parties involved.

And since the Court is willing to have comm -- communications with us every couple of days, I would think with, then, our next motion before the Court, Your Honor would be able to receive our motion and re -- you know,

allow us -- allow things to be addressed at that particular time because there are some egregious conduct that has been going on.

THE COURT:  Okay.  Well, let's go -- thank you, Ms. Scott.  Let's go back to the beginning.  The consolidation of the preliminary hearing with hearing on the merits means that there will be no preliminary injunction hearing.

I would insist, as quid pro quo, that the standstill agreement remain in effect, and we will go straight into the merits of the case.

Now, we can't do that on October 27th because both sides are entitled to a -- to discovery, and Plaintiffs are entitled to their motion to dismiss the counterclaim. You're entitled to your premerits motions as well.

So I talked the other day about perhaps being able to do that in November.  I think right after the first of the year is more realistic.

One of the things I see in the parties' discovery requests is that it may be difficult -- if we go with just the preliminary hearing, it may be difficult to separate the discovery needed for just the preliminary hearing from the discovery needed on the merits, and one of the reasons why I favor, in effect, forgoing the preliminary injunction hearing and going straight to the merits is that it will

avoid duplicative discovery.

You know, it would be very easy for me to use a -- a pen and say you're entitled to this discovery for the preliminary injunction if we don't consolidate and then regardless of how that motion, if we have it, resolves, then having to depose similar or the same witnesses for the merits hearing.

So I am very much in favor of putting this matter, with the standstill agreement in effect beyond the preliminary injunction hearing, avoiding that hearing, and going straight to the merits, but until Ms. Collier has counsel, we can't make any definite decisions.

Anything more on what I've just said before I float one more thing by you?

MS. COLLIER:  I have -- I have a concern, Your Honor.  There's Sandra, Ms. Collier.

THE COURT:  Yes?

MS. COLLIER:  At the end of last week, a friend of mine got a cease and desist.  It was a violation of our standstill order.  Not only did Ms. Bigler and Mr. Petrie email her, and on several email addresses, they also sent it to her primary employer.  They laid out discussion of our case.  They -- it was very intimidating.  She called me sobbing.

So I'm concerned that they have taken information

that I provided in response to discovery and from my HR file with Kettering to then go after this young lady.

I was under the understanding that the standstill order meant don't do anything; respond, both sides, to the discovery, which they have not, and get back with you.

THE COURT: Thank you, Ms. Collier.

Mr. Petrie, do you warrant to address that?

MR. PETRIE: Thank you, Your Honor. Yes. We did send a cease and desist letter to Miss LeFaver because we finally learned where she was -- where she worked and -- and the email addresses.

The standstill agreement doesn't prevent us from seeking to stop Ms. LeFaver from using Kettering's confidential information. She's not under a confidentiality agreement directly with -- with Kettering, she's not entitled to that information, and she is not a party to the standstill agreement -- agreement.

So Your Honor, we're -- we fully intend to make sure that we are protecting our client from disclosure of confidential information, and if we can, we will look to add her to the lawsuit.

THE COURT: Well, I understand what you're saying, Mr. Petrie. The keywords you just used were if we can, and the standstill agreement was meant for the parties to stand still other than participating in some minimal discovery.

So if an amendment to the standstill agreement is necessary, you'll have it certainly no later than first thing tomorrow, but I do not want you to engage in that conduct in the future because what you're doing is, in my opinion -- certainly I'm not inferring that it's illegal, but it goes beyond my definition of a standstill agreement.

Now, I'm certain you don't agree with what I've said, but is there anything you'd like to say for the record, Mr. Petrie?

MR. PETRIE: Your Honor, it was never our intention to go beyond the standstill agreement, but as I explained, there's exigent circumstances to do that, and if the Court would permit, we can file a short motion to seek to amend the agreement.

THE COURT: I have no problem with your doing that, Mr. Petrie, and your ethics are not being questioned by me at all. I want you to know that.

Yes, if you want to file such a motion, in the interim between now and the time I rule on your motion, I do not want any more contact such as Ms. Collier has discussed.

Do we have an agreement on process?

MR. PETRIE: Yes, Your Honor.

THE COURT: All right. The only other thing I want to mention -- and Beth, are you on the phone?

COURTROOM DEPUTY CLERK: I am, sir.

THE COURT: Set something, if you would, if my schedule permits, for midafternoon on Wednesday, and I'll ask you to look for that date while I mention this: It appears to me that a prelim -- preliminary injunction on the 27th is not practicable.

I am not going to allow either Ms. Scott or Ms. Collier to be deposed prior to Ms. Collier's retaining an attorney. I think that puts her in an even worse position than she was in before I disqualified Ms. Scott as her counsel, at least potentially puts her in a worse spot.

I am going to ask you, Mr. Petrie, to once again bring up the issue of mediation. We will discuss it on Wednesday. I want you to bring that up with your client, and I reserve the right -- if your client still has an objection to mediation, I reserve the right to order the parties to mediate.

This case calls out for mediation based on what little I know of the facts, and frankly, I know nothing about the facts other than what the parties have claimed and said about the other parties' actions in the pleadings.

So I want you to talk with your client, Mr. Petrie, and tell them that I will respect their decision but I may well order mediation to take place.

This is a matter, the kind of case that needs to be mediated by someone who can fully hear from each party

the facts, and since I am the trier of fact, at least on the initial stages, as of now, there being no agreement by all concerned to go straight to the merits, there's a limit to what I believe I want to hear.

So I'm not guaranteeing that you'll be successful in convincing your client, or even if you think mediation is a good idea, Mr. Petrie, but it's -- mediation, which I reserve the right to order, is a way to save a lot of money and perhaps craft a result that both sides can live with.

I don't expect you to agree with me, Mr. Petrie but -- as long as I was clear on what I hope will happen. Thoughts, sir, Mr. Petrie?

MR. PETRIE: Yes, you were very clear, Your Honor. Thank you.

THE COURT: All right. So Beth in a moment will give us a time on Wednesday and we will discuss two things: First, a -- the issue of counsel for Ms. Collier; secondly, if you do file a request to, as you put it, expand the standstill order, I'm not conceding that there's a reason for it; and third, the issue of mediation.

Beth, what do you have on Wednesday? We're going to need a minimum of a half hour to 45 minutes.

COURTROOM DEPUTY CLERK: So there is a plea and a follow-up supervised release hearing beginning at 1:45, so I'm thinking we could do -- would this be just a phone

conference?

THE COURT: Yes.

COURTROOM DEPUTY CLERK: 4:00 on the 1st.

THE COURT: I don't think 4:00 on the first would work. How about the morning?

COURTROOM DEPUTY CLERK: 10:30?

THE COURT: I'm available. Let's see about counsel.

Mr. Petrie first and then Ms. Bigler?

MR. PETRIE: I'm available, Your Honor, at 10:00.

THE COURT: All right. And Ms. -- thank you.

Ms. Bigler?

MS. BIGLER: Yes, Your Honor.

THE COURT: And Mr. Brollier?

MR. BROLLIER: Your Honor, unfortunately, I'm scheduled to be in a meeting with a client outside of the office at 11:00 a.m., a physician who's been sued in a malpractice case, and he has arranged his surgery schedule to be available to meet with me. I could inquire about rescheduling, but I -- I don't have an answer on that right now.

THE COURT: Let me float a thought. You know, meeting with your client is -- is important. I'd like not to interfere with that. You had with you in your first appearance on these calls at least one or perhaps two

partners, colleagues.

Would either of them be available?

MR. BROLLIER: I'm going to speak with them right after this and then I could perhaps give Beth and all -- and everybody an email confirming that?

THE COURT: Okay. Keeping in mind our three-part agenda, easy for me to say, but you should be able to -- to brief them, and we'll try to keep your clients clear in the conference call of the need to make any dispositive decisions.

So if you would do that, I'd appreciate it.

MR. BROLLIER: Yes, Your Honor. One way or another, we will -- we will have someone for the EBG third-party Defendants ready.

THE COURT: Thank you.

Ms. Scott, are you available?

MS. SCOTT: I am, Your Honor.

THE COURT: And Ms. Collier?

MS. COLLIER: Yes, Your Honor. I'll make sure I'm available. Thank you.

THE COURT: And I appreciate that. You're welcome.

MS. COLLIER: Thank you.

THE COURT: Mr. Petrie, anything else that we should discuss today?

MR. PETRIE:  Your Honor, we have been trying to serve a summons upon Ms. Collier, and she has declined to accept it repeatedly from the process server.

Is there --

MS. COLLIER:  Your Honor --

THE COURT:  One moment, Ms. Collier.  Let him finish.

MS. COLLIER:  Okay.  Thank you.

THE COURT:  Go ahead, sir.

MR. PETRIE:  We've -- thank you.  We previously asked for waiver of service and summons, and they ignored it, and so we're at a -- at a point now where we might have -- we might have to get a marshal to -- to make the service, so I was hoping to -- to get your thoughts on that.

THE COURT:  All right.  Ms. Collier, you were going to say something?

MS. COLLIER:  Yes, Your Honor.  This is -- this is the part of this entire case that has me the most frustrated is the dishonesty.  We agreed to do waiver of service in both directions.  Ms. Scott and I completed seventeen of them and sent them over.  They sent -- Jill sent us an email with some blank documents.

Miss Scott sent it back and said please complete these and return them to us.  She did not.  Instead, I had some random guy on my porch at 7:00 a.m. and I told them get

off my porch.

It's the dishonesty, Your Honor, saying that someone repeatedly refused. I'm not afraid of the sheriff. I'm not afraid of the police, Your Honor, because I'm not a criminal.

I am frustrated with -- though, with the -- the blatant dishonesty in innumerous things that they have provided and sent to you, and I'm sure you can hear the frustration in my voice.

Send the waiver of service to Ms. Scott and I by email like we agreed to do. Stop with the shenanigans. That's how I feel, Your Honor, and I apologize if -- if I'm not being court -- you know what I'm trying to say.

THE COURT: I do indeed.

MS. COLLIER: But if --

MS. SCOTT: And if I might interject, Your Honor, I personally nev -- we never refused service, and I think this is, again -- kind of to go along with what Ms. Collier has indicated, this is just another tactic.

Literally I said that we needed to see how -- because we were looking at other counsel, if they wanted to waive for her purposes or whatever, but we never said we would not.

We did not get 48 hours before someone -- they sent someone personally to my home, not my office or

anything else, with a pack of papers that was not sealed, that they were flipping through because -- and -- and serving me at my home.

That's an intimidation tactic. It was not necessary, it is embarrassing, and they did the same thing to Ms. Collier, and again, Your Honor --

THE COURT: All right. That's enough. Thank you, Ms. Scott.

MS. SCOTT: Again, Your Honor. Yes, sir.

THE COURT: Ms. Collier, I'll not hear the word dishonesty or shenanigans again. That's --

MS. COLLIER: Thank you, Your Honor. I apologize. I didn't know how --

THE COURT: I accept your apology, but I don't want to hear those words again from either of the parties -- from any of the parties to this litigation.

Mr. Petrie, send -- if you've not already done it, send a fully executed request for waiver of service by email. You don't need a process server to do that. Both Ms. Scott and Ms. Collier, although I'll add something with Ms. Collier in a moment -- Ms. Scott has agreed to waive service.

My preference would be that Ms. Collier have counsel before she waives service, but really, on reflection, she's promised to waive service. Send her the

same document, and I don't want to hear about this again because I don't like ad hominem attacks on lawyers or parties to the litigation.

Mr. Petrie, will you do that?

MS. BIGLER: Your Honor, this is Attorney Bigler, and I would like to respond, since I was the one who sent the waiver of service to Ms. Scott.

I -- I sent them completed on September 22nd at 11:56 a.m. The -- the previous email that I had sent, our scrubbing program in our email -- our email scrubbing program had inadvertently cleaned out the PDF. Once Ms. Scott informed me of that, I re-sent those waivers to Ms. Scott for both Ms. Collier and Ms. Scott. I'm happy to re-send them, though.

THE COURT: Thank you, Ms. -- thank you, Ms. Bigler.

Ms. Scott, this is not the time to do it. Ms. Collier, if you have any questions about the -- if, in fact, you receive the completed forms, if you have any questions about them, call Ms. Bigler. She's not going to mislead you.

MS. COLLIER: Thank you, Your Honor.

THE COURT: You're welcome.

Ms. Bigler, that appears to be all I can do, and I know if Ms. Scott calls with a question, you'll give her a

direct answer that will be correct on what she needs to do.

MS. BIGLER: Absolutely, Your Honor.

THE COURT: Mr. Petrie -- thank you.

Anything else, Mr. Petrie?

MR. PETRIE: One last thing, Your Honor. The -- there's an outstanding motion for sanctions that was filed by Ms. Scott.

THE COURT: I am not going to rule -- Mr. Petrie, I apologize, I interrupted you, and it is I who is frustrated, not at counsel, but over the fact that I allowed only about 20 minutes for this call.

There will be no ruling on sanctions until this litigation is either resolved or much, much, much farther down the line. That's a sanction that -- not a sanction -- that's a process that I have followed for more than a half century. I do not expect to deviate from that.

Mr. Petrie, anything further?

MR. PETRIE: No. Thank you, Your Honor.

THE COURT: Ms. Bigler?

MS. BIGLER: No, Your Honor. Thank you.

THE COURT: Mr. Brollier?

MR. BROLLIER: Your Honor, only to say that I've confirmed I'm available and have made arrangements to participate on Wednesday at the appointed time, so we don't -- that's not uncertain. I am available.

THE COURT:  I thank you, sir.  I'm sorry that you've had to inconvenience your client.

MR. BROLLIER:  No problem.  Thank you.

THE COURT:  You're welcome.

Ms. Scott, anything further?

MS. SCOTT:  Nothing further, Your Honor.  Thank you so much.

THE COURT:  You're welcome.

Ms. Collier?

MS. COLLIER:  No.  Thank you for your grace, Your Honor.

THE COURT:  I don't think I was very gracious, but I appreciate what you say.  Thank you, Ms. Collier.

MS. COLLIER:  Thank you.

THE COURT:  10:00 on Wednesday.  All of you take care and stay safe.  Bye-bye.

MS. SCOTT:  You do the same, Your Honor.  Bye.

MR. PETRIE:  Thank you.

MR. BROLLIER:  Thank you.

MS. BIGLER:  Thank you, Your Honor.

(Telephone conference concluded at 4:09 p.m.)

CERTIFICATE OF REPORTER

I, Caryl L. Blevins, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

s/Caryl L. Blevins_____
**CARYL L. BLEVINS**, **RPR**, **CRR**
FEDERAL OFFICIAL REALTIME COURT REPORTER

**1**

**102** [1] - 1:22
**10:00** [2] - 13:10, 20:15
**10:30** [1] - 13:6
**11:00** [1] - 13:17
**11:56** [1] - 18:9
**1:45** [1] - 12:24
**1st** [1] - 13:3

**2**

**20** [1] - 19:11
**200** [1] - 2:12
**2025** [2] - 1:12, 3:1
**22nd** [1] - 18:8
**250** [2] - 1:16, 2:5
**27th** [3] - 4:22, 7:12, 11:5
**28** [1] - 21:6
**29** [2] - 1:12, 3:1
**29th** [1] - 4:19

**3**

**300** [2] - 1:17, 2:5
**3:25-cv-273** [1] - 1:6
**3:36** [1] - 3:2

**4**

**43215** [2] - 1:17, 2:6
**45** [1] - 12:22
**45237** [1] - 1:22
**45402** [1] - 2:13
**48** [1] - 16:24
**4:00** [2] - 13:3, 13:4
**4:09** [1] - 20:21

**5**

**512-1511** [1] - 2:13
**513** [1] - 1:23

**6**

**614** [2] - 1:18, 2:6
**65** [1] - 4:8

**7**

**753** [1] - 21:6
**7710** [1] - 1:21
**7:00** [1] - 15:25

**8**

**872-2412** [1] - 2:6
**872-2420** [1] - 1:18

**9**

**937** [1] - 2:13
**953-2499** [1] - 1:23

**A**

**a.m** [3] - 13:17, 15:25, 18:9
**able** [4] - 3:23, 6:25, 7:16, 14:7
**above-entitled** [1] - 21:9
**absolutely** [1] - 19:2
**accept** [2] - 15:3, 17:14
**actions** [1] - 11:20
**ad** [1] - 18:2
**add** [2] - 9:20, 17:20
**address** [1] - 9:7
**addressed** [2] - 6:20, 7:1
**addresses** [2] - 8:21, 9:11
**Adventist** [1] - 3:5
**ADVENTIST** [1] - 1:3
**afraid** [2] - 16:3, 16:4
**afternoon** [3] - 3:4, 5:18, 5:20
**afterwards** [1] - 5:25
**agenda** [1] - 14:7
**agnostic** [1] - 5:4
**agree** [2] - 10:7, 12:10
**agreed** [3] - 15:19, 16:11, 17:21
**agreement** [13] - 7:10, 8:9, 9:12, 9:15, 9:17, 9:24, 10:1, 10:6, 10:11, 10:14, 10:21, 12:2
**ahead** [1] - 15:9
**allow** [3] - 7:1, 11:6
**allowed** [1] - 19:10
**amend** [1] - 10:14
**amendment** [1] - 10:1
**answer** [3] - 4:17, 13:20, 19:1
**apologize** [3] - 16:12, 17:12, 19:9
**apology** [1] - 17:14
**appearance** [2] - 2:2, 13:25
**APPEARANCES** [1] - 1:13
**appearances** [1] - 3:6
**appointed** [1] - 19:24
**appreciate** [4] - 5:7, 14:11, 14:21, 20:13
**area** [2] - 3:24, 3:25
**arranged** [1] - 13:18

**arrangements** [1] - 19:23
**Association** [1] - 3:20
**Associations** [1] - 4:1
**assume** [1] - 4:23
**attacks** [1] - 18:2
**Attorney** [2] - 3:12, 18:5
**attorney** [1] - 11:8
**attorneys** [1] - 3:24
**available** [9] - 6:15, 13:7, 13:10, 13:19, 14:2, 14:16, 14:20, 19:23, 19:25
**avoid** [1] - 8:1
**avoiding** [1] - 8:10

**B**

**Bar** [2] - 3:20, 3:25
**based** [2] - 6:17, 11:17
**Becker** [2] - 1:16, 2:4
**beginning** [2] - 7:5, 12:24
**behalf** [1] - 5:11
**best** [1] - 4:3
**Beth** [4] - 10:24, 12:15, 12:21, 14:4
**Bethany** [1] - 2:9
**better** [1] - 6:7
**between** [2] - 6:16, 10:19
**beyond** [3] - 8:9, 10:6, 10:11
**bifurcating** [1] - 6:7
**BIGLER** [5] - 13:13, 18:5, 19:2, 19:20, 20:20
**Bigler** [11] - 1:15, 3:7, 4:7, 8:20, 13:9, 13:12, 18:5, 18:16, 18:20, 18:24, 19:19
**bit** [1] - 3:21
**blank** [1] - 15:22
**blatant** [1] - 16:7
**Blevins** [3] - 2:11, 21:3, 21:14
**BLEVINS** [1] - 21:15
**brief** [1] - 14:8
**briefed** [1] - 5:15
**bring** [2] - 11:12, 11:13
**Brollier** [6] - 2:4, 3:9, 4:12, 5:17, 13:14, 19:21
**BROLLIER** [8] - 4:14, 5:13, 13:15, 14:3, 14:12, 19:22, 20:3, 20:19
**Building** [1] - 2:11

**bye** [3] - 20:16, 20:17
**bye-bye** [1] - 20:16

**C**

**C3-25-273** [1] - 3:5
**care** [1] - 20:16
**Caryl** [2] - 2:11, 21:3
**CARYL** [1] - 21:15
**caryl_blevins@ohsd.uscourts.gov** [1] - 2:14
**CASE** [1] - 1:6
**case** [8] - 3:14, 3:22, 7:11, 8:23, 11:17, 11:24, 13:18, 15:18
**cease** [2] - 8:19, 9:9
**century** [1] - 19:16
**certain** [1] - 10:7
**certainly** [3] - 3:14, 10:2, 10:5
**CERTIFICATE** [1] - 21:1
**certify** [1] - 21:5
**Cincinnati** [2] - 1:22, 3:25
**circumstances** [1] - 10:12
**claimed** [1] - 11:19
**claims** [2] - 5:1, 5:3
**cleaned** [1] - 18:11
**clear** [3] - 12:11, 12:13, 14:8
**Clerk** [3] - 2:9, 2:9, 2:10
**CLERK** [4] - 10:25, 12:23, 13:3, 13:6
**client** [8] - 9:19, 11:13, 11:14, 11:21, 12:6, 13:16, 13:23, 20:2
**clients** [2] - 5:11, 14:8
**Code** [1] - 21:6
**colleagues** [1] - 14:1
**Collier** [27] - 2:1, 3:5, 3:9, 3:10, 4:5, 5:23, 6:17, 8:11, 8:16, 9:6, 10:20, 11:7, 12:17, 14:18, 15:2, 15:6, 15:15, 16:18, 17:6, 17:10, 17:20, 17:21, 17:23, 18:13, 18:18, 20:9, 20:13
**COLLIER** [16] - 1:7, 3:11, 3:18, 4:2, 8:15, 8:18, 14:19, 14:23, 15:5, 15:8, 15:17, 16:15, 17:12, 18:22, 20:10, 20:14
**Collier's** [1] - 11:7
**Columbus** [3] - 1:17,

2:6, 3:25
**comm** [1] - 6:22
**communications** [1] - 6:23
**complainant** [1] - 6:8
**complaint** [4] - 5:22, 6:2, 6:3
**complete** [1] - 15:23
**completed** [3] - 15:20, 18:8, 18:19
**component** [1] - 5:2
**computer** [1] - 2:16
**con** [1] - 5:24
**conceding** [1] - 12:19
**concern** [2] - 6:14, 8:15
**concerned** [2] - 8:25, 12:3
**concluded** [1] - 20:21
**conduct** [2] - 7:2, 10:4
**conference** [3] - 13:1, 14:9, 20:21
**Conference** [1] - 21:11
**CONFERENCE** [1] - 1:10
**confidential** [2] - 9:14, 9:20
**confidentiality** [1] - 9:14
**confined** [1] - 4:15
**confirmed** [1] - 19:23
**confirming** [1] - 14:5
**conformance** [1] - 21:10
**consolidate** [1] - 8:4
**consolidated** [1] - 5:4
**consolidating** [1] - 5:21
**consolidation** [5] - 4:8, 5:8, 5:16, 7:6
**contact** [1] - 10:20
**convincing** [1] - 12:6
**correct** [2] - 19:1, 21:7
**counsel** [11] - 3:8, 3:10, 3:16, 4:24, 8:12, 11:10, 12:17, 13:8, 16:21, 17:24, 19:10
**counsels** [1] - 6:3
**counterclaim** [1] - 7:14
**couple** [1] - 6:23
**course** [1] - 3:25
**Court** [7] - 2:11, 6:20, 6:22, 6:24, 10:13, 21:3, 21:4
**court** [1] - 16:13
**COURT** [46] - 1:1, 3:4, 3:15, 3:19, 4:3, 4:12,

5:7, 5:17, 7:4, 8:17, 9:6, 9:22, 10:15, 10:23, 11:1, 12:15, 13:2, 13:4, 13:7, 13:11, 13:14, 13:22, 14:6, 14:15, 14:18, 14:21, 14:24, 15:6, 15:9, 15:15, 16:14, 17:7, 17:10, 17:14, 18:15, 18:23, 19:3, 19:8, 19:19, 19:21, 20:1, 20:4, 20:8, 20:12, 20:15, 21:15
**Courthouse** [1] - 2:12
**COURTROOM** [4] - 10:25, 12:23, 13:3, 13:6
**Courtroom** [1] - 2:9
**craft** [1] - 12:9
**criminal** [1] - 16:5
**CRR** [2] - 2:11, 21:15

## D

**d/b/a** [1] - 1:4
**Daniel** [1] - 2:9
**DATE** [1] - 1:12
**date** [2] - 4:17, 11:3
**days** [2] - 4:6, 6:23
**Dayton** [2] - 2:13, 3:24
**decided** [1] - 5:15
**decision** [1] - 11:22
**decisions** [2] - 8:12, 14:10
**declined** [1] - 15:2
**Defendant** [3] - 1:20, 2:1, 3:7
**Defendants** [5] - 1:8, 2:3, 3:8, 5:1, 14:14
**Defendants'** [1] - 4:17
**definite** [1] - 8:12
**definition** [1] - 10:6
**depose** [1] - 8:6
**deposed** [1] - 11:7
**Deputy** [1] - 2:9
**DEPUTY** [4] - 10:25, 12:23, 13:3, 13:6
**desist** [2] - 8:19, 9:9
**deviate** [1] - 19:16
**difficult** [4] - 3:12, 3:16, 7:20, 7:21
**diligence** [1] - 3:17
**direct** [1] - 19:1
**directions** [1] - 15:20
**directly** [1] - 9:15
**disclosure** [1] - 9:19
**discovery** [11] - 4:4, 6:5, 7:13, 7:19, 7:22, 7:23, 8:1, 8:3, 9:1, 9:5, 9:25

**discuss** [3] - 11:12, 12:16, 14:25
**discussed** [1] - 10:20
**discussion** [1] - 8:22
**dishonesty** [4] - 15:19, 16:2, 16:7, 17:11
**dismiss** [5] - 4:18, 5:3, 5:15, 6:1, 7:14
**dispositive** [1] - 14:9
**disqualified** [1] - 11:9
**District** [2] - 21:4, 21:5
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**document** [1] - 18:1
**documents** [1] - 15:22
**done** [1] - 17:17
**down** [1] - 19:14
**due** [2] - 3:17, 4:18
**duplicative** [1] - 8:1

## E

**easy** [2] - 8:2, 14:7
**EBG** [2] - 2:3, 14:13
**effect** [3] - 7:10, 7:24, 8:9
**egregious** [1] - 7:2
**either** [4] - 11:6, 14:2, 17:15, 19:13
**email** [10] - 8:21, 9:11, 14:5, 15:21, 16:11, 17:19, 18:9, 18:10
**embarrassing** [1] - 17:5
**employer** [1] - 8:22
**end** [1] - 8:18
**engage** [1] - 10:3
**entire** [1] - 15:18
**entitled** [6] - 7:13, 7:14, 7:15, 8:3, 9:16, 21:9
**Epstein** [2] - 1:16, 2:4
**Esq** [4] - 1:15, 1:15, 1:21, 2:4
**ethics** [1] - 10:16
**executed** [1] - 17:18
**exigent** [1] - 10:12
**expand** [1] - 12:18
**expect** [2] - 12:10, 19:16
**expertise** [1] - 3:24
**explained** [1] - 10:12

## F

**fact** [3] - 12:1, 18:19, 19:10
**facts** [3] - 11:18, 11:19, 12:1

**fair** [1] - 4:22
**far** [1] - 3:23
**favor** [2] - 7:24, 8:8
**Federal** [2] - 2:11, 21:3
**FEDERAL** [1] - 21:15
**file** [5] - 5:11, 9:1, 10:13, 10:18, 12:18
**filed** [2] - 5:23, 19:6
**finally** [1] - 9:10
**fine** [2] - 5:24, 6:10
**finish** [1] - 15:7
**first** [8] - 5:22, 6:8, 7:17, 10:2, 12:17, 13:4, 13:9, 13:24
**flipping** [1] - 17:2
**float** [2] - 8:14, 13:22
**follow** [1] - 12:24
**follow-up** [1] - 12:24
**followed** [1] - 19:15
**FOR** [1] - 1:1
**foregoing** [1] - 21:7
**forgoing** [1] - 7:24
**format** [1] - 21:9
**forms** [1] - 18:19
**forward** [3] - 5:25, 6:4, 6:10
**frankly** [1] - 11:18
**friend** [1] - 8:18
**frustrated** [3] - 15:18, 16:6, 19:10
**frustration** [1] - 16:9
**fully** [4] - 5:15, 9:18, 11:25, 17:18
**future** [1] - 10:4

## G

**grace** [1] - 20:10
**gracious** [1] - 20:12
**Green** [2] - 1:16, 2:4
**guaranteeing** [1] - 12:5
**guess** [3] - 4:25, 5:3, 6:2
**guidance** [1] - 3:23
**guy** [1] - 15:25

## H

**half** [2] - 12:22, 19:15
**happy** [1] - 18:13
**HEALTH** [1] - 1:4
**HEALTHCARE** [1] - 1:3
**hear** [6] - 11:25, 12:4, 16:8, 17:10, 17:15, 18:1
**hearing** [17] - 4:8, 4:9, 4:15, 4:21, 5:9, 5:12,

6:18, 7:6, 7:8, 7:21, 7:22, 7:25, 8:7, 8:10, 12:24
**held** [1] - 21:8
**hereby** [1] - 21:5
**herself** [1] - 3:8
**Hi** [1] - 3:11
**home** [2] - 16:25, 17:3
**hominem** [1] - 18:2
**Honor** [41] - 4:10, 4:14, 5:13, 5:20, 6:12, 6:14, 6:19, 6:24, 8:16, 9:8, 9:18, 10:10, 10:22, 12:13, 13:10, 13:13, 13:15, 14:12, 14:17, 14:19, 15:1, 15:5, 15:17, 16:2, 16:4, 16:12, 16:16, 17:6, 17:9, 17:12, 18:5, 18:22, 19:2, 19:5, 19:18, 19:20, 19:22, 20:6, 20:11, 20:17, 20:20
**HONORABLE** [1] - 1:11
**hope** [2] - 4:5, 12:11
**hoping** [1] - 15:14
**hour** [1] - 12:22
**hours** [1] - 16:24
**HR** [1] - 9:1

## I

**idea** [1] - 12:7
**ignored** [1] - 15:11
**illegal** [1] - 10:5
**important** [2] - 6:19, 13:23
**IN** [1] - 1:1
**inadvertently** [1] - 18:11
**including** [1] - 6:5
**inconvenience** [1] - 20:2
**indeed** [1] - 16:14
**indicated** [1] - 16:19
**inferring** [1] - 10:5
**information** [5] - 6:15, 8:25, 9:14, 9:16, 9:20
**informed** [1] - 18:12
**initial** [1] - 12:2
**injunction** [11] - 4:16, 4:21, 5:2, 5:21, 6:6, 6:9, 7:7, 7:24, 8:4, 8:10, 11:4
**innumerous** [1] - 16:7
**inquire** [1] - 13:19
**insist** [1] - 7:9
**instead** [1] - 15:24

**intend** [1] - 9:18
**intention** [1] - 10:11
**interested** [1] - 4:10
**interfere** [1] - 13:24
**interim** [1] - 10:19
**interject** [1] - 16:16
**interrupted** [1] - 19:9
**intimidating** [1] - 8:23
**intimidation** [1] - 17:4
**involved** [1] - 6:21
**issue** [4] - 6:9, 11:12, 12:17, 12:20
**issues** [1] - 6:13

## J

**James** [3] - 1:15, 2:10, 3:6
**jbigler@ebglaw.com** [1] - 1:19
**jbrollier@ebglaw. com** [1] - 2:7
**Jill** [3] - 1:15, 3:7, 15:21
**join** [1] - 5:24
**joint** [1] - 6:16
**Jon** [1] - 3:9
**Jonathan** [1] - 2:4
**jpetrie@ebglaw.com** [1] - 1:18
**Judge** [1] - 3:11
**Judicial** [1] - 21:10
**juncture** [1] - 3:14

## K

**keep** [2] - 3:19, 14:8
**keeping** [1] - 14:6
**KETTERING** [2] - 1:3, 1:4
**Kettering** [4] - 3:5, 6:3, 9:2, 9:15
**Kettering's** [1] - 9:13
**keywords** [1] - 9:23
**kind** [2] - 11:24, 16:18

## L

**lack** [1] - 6:7
**lady** [1] - 9:2
**laid** [1] - 8:22
**last** [4] - 6:13, 6:18, 8:18, 19:5
**Law** [2] - 2:9, 2:10
**lawsuit** [1] - 9:21
**lawyer** [1] - 3:20
**lawyers** [1] - 18:2
**learned** [1] - 9:10
**least** [3] - 11:10, 12:1, 13:25

LeFaver [2] - 9:9, 9:13
less [1] - 4:23
letter [1] - 9:9
limit [1] - 12:3
limited [2] - 6:5, 6:6
line [1] - 19:14
literally [1] - 16:20
litigation [4] - 5:10, 17:16, 18:3, 19:13
live [1] - 12:9
look [2] - 9:20, 11:3
looking [2] - 5:21, 16:21

## M

malpractice [1] - 13:18
marshal [1] - 15:13
Mary [4] - 1:20, 1:21, 3:7
MARY [1] - 1:7
matter [8] - 5:8, 5:21, 6:6, 6:9, 6:11, 8:8, 11:24, 21:9
matters [2] - 4:15, 6:13
means [1] - 7:7
meant [2] - 9:4, 9:24
mechanical [1] - 2:15
mediate [1] - 11:16
mediated [1] - 11:25
mediation [7] - 11:12, 11:15, 11:17, 11:23, 12:6, 12:7, 12:20
meet [1] - 13:19
meeting [3] - 6:13, 13:16, 13:23
member [1] - 3:21
memory [1] - 4:19
mention [2] - 10:24, 11:3
merits [10] - 4:9, 5:9, 5:12, 7:7, 7:11, 7:23, 7:25, 8:7, 8:11, 12:3
met [1] - 3:12
midafternoon [1] - 11:2
might [4] - 3:23, 15:12, 15:13, 16:16
mind [1] - 14:6
mine [1] - 8:19
minimal [1] - 9:25
minimum [1] - 12:22
minutes [2] - 12:22, 19:11
mislead [1] - 18:21
Miss [3] - 6:17, 9:9, 15:23
moment [3] - 12:15,

15:6, 17:21
Monday [2] - 1:12, 3:1
money [1] - 12:8
month [1] - 4:23
morning [2] - 3:12, 13:5
most [1] - 15:18
motion [10] - 5:14, 6:16, 6:24, 6:25, 7:14, 8:5, 10:13, 10:18, 10:19, 19:6
motions [4] - 5:10, 6:1, 6:2, 7:15
move [2] - 4:18, 5:25
moving [2] - 5:2, 6:10
MR [16] - 4:10, 4:14, 5:13, 10:10, 10:22, 13:15, 14:3, 14:12, 15:1, 15:10, 19:5, 19:18, 19:22, 20:3, 20:18, 20:19
MS [29] - 3:11, 3:18, 4:2, 5:20, 8:15, 8:18, 9:8, 12:13, 13:10, 13:13, 14:17, 14:19, 14:23, 15:5, 15:8, 15:17, 16:15, 16:16, 17:9, 17:12, 18:5, 18:22, 19:2, 19:20, 20:6, 20:10, 20:14, 20:17, 20:20
mtfoster@ trinitylawllc.com [1] - 1:23

## N

necessary [3] - 6:19, 10:2, 17:5
need [5] - 5:14, 6:4, 12:22, 14:9, 17:19
needed [3] - 7:22, 7:23, 16:20
needs [2] - 11:24, 19:1
NETWORK [1] - 1:4
nev [1] - 16:17
never [3] - 10:10, 16:17, 16:22
new [1] - 4:23
next [1] - 6:24
NO [1] - 1:6
nothing [2] - 11:18, 20:6
notice [1] - 6:20
November [1] - 7:17

## O

objection [1] - 11:15
obtained [1] - 4:24

obviously [1] - 5:10
occurred [1] - 6:18
October [3] - 4:19, 4:22, 7:12
OF [3] - 1:1, 1:9, 21:1
office [2] - 13:17, 16:25
Official [1] - 21:3
OFFICIAL [1] - 21:15
OHIO [1] - 1:1
Ohio [5] - 1:17, 1:22, 2:6, 2:13, 21:5
once [2] - 11:11, 18:11
one [8] - 7:19, 7:23, 8:14, 13:25, 14:12, 15:6, 18:6, 19:5
opinion [1] - 10:5
order [6] - 8:20, 9:4, 11:15, 11:23, 12:8, 12:19
otherwise [1] - 4:17
outside [1] - 13:16
outstanding [1] - 19:6

## P

p.m [2] - 3:2, 20:21
pack [1] - 17:1
page [1] - 21:9
papers [1] - 17:1
part [2] - 14:6, 15:18
participate [1] - 19:24
participating [1] - 9:25
particular [1] - 7:1
parties [7] - 6:21, 9:24, 11:16, 11:19, 17:15, 17:16, 18:3
parties' [2] - 7:19, 11:20
partners [1] - 14:1
Party [1] - 2:3
party [8] - 3:8, 4:17, 5:1, 5:3, 6:3, 9:16, 11:25, 14:14
PC [2] - 1:16, 2:4
PDF [1] - 18:11
pen [1] - 8:3
perhaps [4] - 7:16, 12:9, 13:25, 14:4
permit [1] - 10:13
permits [1] - 11:2
personally [2] - 16:17, 16:25
Petrie [21] - 1:15, 3:6, 4:7, 8:20, 9:7, 9:23, 10:9, 10:16, 11:11, 11:22, 12:7, 12:10, 12:12, 13:9, 14:24, 17:17, 18:4, 19:3,

19:4, 19:8, 19:17
PETRIE [8] - 4:10, 10:10, 10:22, 15:1, 15:10, 19:5, 19:18, 20:18
phone [3] - 4:6, 10:24, 12:25
physician [1] - 13:17
PI [2] - 5:8, 5:9
place [1] - 11:23
Plaintiff [3] - 1:5, 1:14, 3:6
Plaintiffs [2] - 5:5, 7:13
plea [1] - 12:23
pleadings [1] - 11:20
plenty [1] - 4:16
point [1] - 15:12
police [1] - 16:4
porch [2] - 15:25, 16:1
portion [2] - 5:22, 6:8
position [1] - 11:9
potentially [1] - 11:10
practicable [1] - 11:5
preference [1] - 17:23
prelim [1] - 11:4
preliminarily [1] - 5:25
preliminary [15] - 4:9, 4:16, 4:20, 5:2, 5:21, 6:6, 6:9, 7:6, 7:7, 7:21, 7:22, 7:24, 8:4, 8:10, 11:4
premerits [1] - 7:15
present [1] - 3:9
Present [1] - 2:8
PRESIDING [1] - 1:11
prevent [1] - 9:12
previous [1] - 18:9
previously [1] - 15:10
primary [1] - 8:22
Pro [1] - 1:20
pro [1] - 7:9
problem [3] - 5:6, 10:15, 20:3
proceed [1] - 4:21
proceeding [1] - 5:15
proceedings [1] - 21:8
Proceedings [2] - 2:15, 3:3
PROCEEDINGS [1] - 1:9
process [4] - 10:21, 15:3, 17:19, 19:15
produced [1] - 2:16
program [2] - 18:10, 18:11
promised [1] - 17:25
proper [1] - 6:20
protecting [1] - 9:19

provided [2] - 9:1, 16:8
purposes [1] - 16:22
pursuant [1] - 21:6
put [2] - 4:4, 12:18
puts [2] - 11:8, 11:10
putting [1] - 8:8

## Q

questioned [1] - 10:16
questions [2] - 18:18, 18:20
quid [1] - 7:9
quo [1] - 7:9

## R

random [1] - 15:25
re [3] - 6:25, 18:12, 18:14
re-send [1] - 18:14
re-sent [1] - 18:12
reaching [1] - 3:19
Reading [1] - 1:21
ready [1] - 14:14
realistic [1] - 7:18
really [1] - 17:24
Realtime [1] - 21:3
REALTIME [1] - 21:15
reason [1] - 12:19
reasons [1] - 7:23
receive [2] - 6:25, 18:19
record [1] - 10:9
recorded [1] - 2:15
referral [1] - 3:20
reflection [1] - 17:25
refused [2] - 16:3, 16:17
regardless [1] - 8:5
regulations [1] - 21:10
related [1] - 4:15
release [1] - 12:24
remain [1] - 7:10
remaining [1] - 6:1
repeatedly [2] - 15:3, 16:3
reported [1] - 21:8
Reporter [2] - 2:11, 21:4
REPORTER [2] - 21:1, 21:15
represented [1] - 4:5
representing [1] - 3:8
request [2] - 12:18, 17:18
requests [1] - 7:20
rescheduling [1] - 13:20

**reserve** [3] - 11:14, 11:15, 12:8
**resolve** [1] - 5:12
**resolved** [1] - 19:13
**resolves** [1] - 8:5
**respect** [2] - 6:10, 11:22
**respond** [2] - 9:4, 18:6
**response** [1] - 9:1
**result** [1] - 12:9
**retaining** [1] - 11:7
**return** [1] - 15:24
**RICE** [1] - 1:11
**Rice** [1] - 2:11
**Road** [1] - 1:21
**RPR** [2] - 2:11, 21:15
**rule** [2] - 10:19, 19:8
**Rule** [1] - 4:8
**ruling** [1] - 19:12
**Russell** [1] - 2:9

## S

**s/Caryl** [1] - 21:14
**safe** [1] - 20:16
**sanction** [2] - 19:14
**sanctions** [2] - 19:6, 19:12
**Sandra** [2] - 2:1, 8:16
**SANDRA** [1] - 1:7
**save** [1] - 12:8
**schedule** [2] - 11:2, 13:18
**scheduled** [1] - 13:16
**SCOTT** [10] - 1:7, 5:20, 9:8, 12:13, 13:10, 14:17, 16:16, 17:9, 20:6, 20:17
**Scott** [23] - 1:20, 1:21, 3:7, 5:18, 7:5, 11:6, 11:9, 14:16, 15:20, 15:23, 16:10, 17:8, 17:20, 17:21, 18:7, 18:12, 18:13, 18:17, 18:25, 19:7, 20:5
**scrubbing** [2] - 18:10
**Se** [1] - 1:20
**sealed** [1] - 17:1
**search** [2] - 3:10, 4:7
**Second** [1] - 2:12
**secondly** [1] - 12:17
**Section** [1] - 21:6
**see** [4] - 4:6, 7:19, 13:7, 16:20
**seek** [1] - 10:13
**seeking** [1] - 9:13
**send** [6] - 9:9, 16:10, 17:17, 17:18, 17:25, 18:14
**sense** [3] - 4:17, 5:5, 5:16
**sent** [11] - 8:21, 15:21, 15:23, 16:8, 16:25, 18:6, 18:8, 18:9, 18:12
**separate** [1] - 7:21
**September** [3] - 1:12, 3:1, 18:8
**serve** [1] - 15:2
**server** [2] - 15:3, 17:19
**serves** [1] - 4:19
**service** [12] - 3:20, 4:1, 15:11, 15:14, 15:19, 16:10, 16:17, 17:18, 17:22, 17:24, 17:25, 18:7
**serving** [1] - 17:3
**set** [1] - 11:1
**seventeen** [1] - 15:20
**several** [1] - 8:21
**shenanigans** [2] - 16:11, 17:11
**sheriff** [1] - 16:3
**short** [1] - 10:13
**sides** [3] - 7:13, 9:4, 12:9
**similar** [1] - 8:6
**simplest** [1] - 3:14
**simply** [1] - 4:4
**Smerbeck** [1] - 2:10
**sobbing** [1] - 8:24
**someone** [5] - 11:25, 14:13, 16:3, 16:24, 16:25
**sometimes** [1] - 3:16
**sorry** [1] - 20:1
**SOUTHERN** [1] - 1:1
**Southern** [1] - 21:5
**spot** [1] - 11:10
**staff** [1] - 3:21
**stages** [1] - 12:2
**stand** [1] - 9:24
**standstill** [11] - 7:10, 8:9, 8:20, 9:3, 9:12, 9:17, 9:24, 10:1, 10:6, 10:11, 12:19
**STATES** [1] - 1:1
**States** [3] - 21:4, 21:6, 21:11
**stay** [2] - 4:4, 20:16
**stenographically** [1] - 21:8
**stenography** [1] - 2:15
**still** [3] - 4:24, 9:25, 11:14
**stop** [2] - 9:13, 16:11
**straight** [5] - 5:9, 7:11, 7:25, 8:11, 12:3
**Street** [3] - 1:16, 2:5, 2:12

**successful** [1] - 12:5
**sued** [1] - 13:17
**Suite** [3] - 1:17, 1:22, 2:5
**summons** [2] - 15:2, 15:11
**supervised** [1] - 12:24
**supposed** [1] - 6:6
**surgery** [1] - 13:18

## T

**tactic** [2] - 16:19, 17:4
**Telephone** [1] - 20:21
**TELEPHONE** [1] - 1:10
**telephonically** [1] - 3:3
**THE** [47] - 1:1, 1:1, 1:11, 3:4, 3:15, 3:19, 4:3, 4:12, 5:7, 5:17, 7:4, 8:17, 9:6, 9:22, 10:15, 10:23, 11:1, 12:15, 13:2, 13:4, 13:7, 13:11, 13:14, 13:22, 14:6, 14:15, 14:18, 14:21, 14:24, 15:6, 15:9, 15:15, 16:14, 17:7, 17:10, 17:14, 18:15, 18:23, 19:3, 19:8, 19:19, 19:21, 20:1, 20:4, 20:8, 20:12, 20:15
**theory** [1] - 5:16
**thinking** [1] - 12:25
**third** [7] - 3:8, 4:17, 5:1, 5:3, 6:3, 12:20, 14:14
**Third** [1] - 2:3
**third-party** [6] - 3:8, 4:17, 5:1, 5:3, 6:3, 14:14
**Third-Party** [1] - 2:3
**thoughts** [5] - 4:13, 4:14, 5:19, 12:12, 15:14
**three** [2] - 4:6, 14:6
**three-part** [1] - 14:6
**Title** [1] - 21:6
**today** [1] - 14:25
**tomorrow** [1] - 10:3
**transcript** [3] - 2:15, 21:7, 21:9
**TRANSCRIPT** [1] - 1:9
**trier** [1] - 12:1
**true** [1] - 21:7
**try** [1] - 14:8
**trying** [2] - 15:1, 16:13
**two** [4] - 4:6, 5:24,

12:16, 13:25

## U

**U.S** [1] - 2:12
**uncertain** [1] - 19:25
**under** [2] - 9:3, 9:14
**unfortunately** [1] - 13:15
**UNITED** [1] - 1:1
**United** [3] - 21:4, 21:6, 21:11
**up** [3] - 11:12, 11:13, 12:24

## V

**VanNoy** [1] - 3:12
**versus** [1] - 3:5
**viewpoint** [1] - 5:5
**violation** [1] - 8:19
**violations** [1] - 6:18
**voice** [1] - 16:9
**vs** [1] - 1:6

## W

**waiting** [1] - 3:13
**waive** [3] - 16:22, 17:21, 17:25
**waiver** [5] - 15:11, 15:19, 16:10, 17:18, 18:7
**waivers** [1] - 18:12
**waives** [1] - 17:24
**WALTER** [1] - 1:11
**Walter** [1] - 2:11
**warrant** [1] - 9:7
**Wednesday** [6] - 11:2, 11:13, 12:16, 12:21, 19:24, 20:15
**week** [1] - 8:18
**welcome** [5] - 4:3, 14:22, 18:23, 20:4, 20:8
**West** [2] - 1:16, 2:5
**WESTERN** [1] - 1:2
**Wiest** [1] - 2:9
**willing** [1] - 6:22
**witnesses** [1] - 8:6
**word** [1] - 17:10
**words** [2] - 6:7, 17:15
**worse** [2] - 11:8, 11:10

## Y

**year** [1] - 7:18
**young** [1] - 9:2