THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KETTERING ADVENTIST
HEALTHCARE, d/b/a KETTERING :
HEALTH NETWORK,

    Plaintiff/Counter-
    Defendant, :

    v.     Case No. 3:25-cv-273
     :
SANDRA COLLIER, *et al.*,     Judge Walter H. Rice
     :     Mag. Judge Caroline H. Gentry
    Defendants/Counter-
    Plaintiffs, :

    v. :

EPSTEIN BECKER & GREEN, PC,
*et al.*, :

    Third-Party Defendants.

---

ORDER SUSTAINING PLAINTIFF/COUNTER-DEFENDANT KETTERING ADVENTIST HEALTHCARE, d/b/a KETTERING HEALTH NETWORK's MOTION TO CLARIFY STANDSTILL AGREEMENT AMONG KETTERING AND DEFENDANT/COUNTER-PLAINTIFFS SANDRA COLLIER AND MARY T. SCOTT (DOC. #68), OVERRULING SCOTT'S MOTION TO DISQUALIFY EPSTEIN BECKER & GREEN, P.C. AS COUNSEL FOR KETTERING AND THIRD-PARTY KETTERING DEFENDANTS (DOC. #72) AND SUPPLEMENT AND CLARIFICATION TO PREVIOUSLY FILED MOTION TO DISQUALIFY (DOC. #78), AND OVERRULING AS MOOT SCOTT'S MOTION TO STRIKE OR HOLD IN ABEYANCE (DOC. #74); PARTIES SHALL SUBMIT SIMULTANEOUS BRIEFING WITHIN FOURTEEN (14) DAYS OF ENTRY AS TO WHETHER VANESSA LEFEBVRE, VMGL RESEARCH, INC. AND TOTAL WELLNESS RESEARCH, LLC ARE NECESSARY PARTIES TO AFFORD COMPLETE RELIEF; MEMORANDA *CONTRA* MAY BE FILED WITHIN FOURTEEN (14) DAYS AFTER

This matter is before the Court on Plaintiff/Counter-Defendant Kettering Adventist Healthcare, d/b/a Kettering Health Network's ("Kettering")tMotion to Clarify the Standstill Agreement among Kettering and Defendant/Counter-Plaintiffs Sandra Collier and Mary T. Scott (Motion to Clarify, Doc. #68), Scott's Motion to Disqualify Epstein Becker & Green, P.C. ("EBG"), as Counsel for Kettering and the individual Kettering employee Third-Party Defendants (collectively "Kettering Defendants") (Motion to Disqualify, Doc. #72), Scott's Motion to Strike or Hold in Abeyance Kettering's Motion to Dismiss (Motion to Strike, Doc. #74, citing Motion to Dismiss, Doc. #73), and Scott's Supplement and Clarification to Previously Filed Motion to Disqualify. (Motion to Clarify, Doc. #78). The Court considers the motions in turn.

## I. Motion to Clarify

A major component of Kettering's claims against Defendant/Counter-Plaintiff Sandra Collier is that Collier unlawfully forwarded Kettering's confidential information ("CI") to a Vanessa Lefebvre, whose company, VMGL Research, Inc. ("VMGL"), had entered into a business relationship with Collier's Company, Total Wellness Research, LLC ("TWR"). (Doc. #68, PAGEID 1422-25, citing Compl., Doc. #1, PAGEID 18-42, ¶ 37, Answers to ROGS, Doc. #45-1, PAGEID 1231-38). On August 18, 2025, the Court entered the Standstill Agreement in Lieu of Hearing on a Temporary Restraining Order (Standstill Agreement, Doc. #6), which memorialized the agreement between Kettering and Defendants Collier and Scott

2

(collectively, "Standstill Parties") reached on August 15, 2025. Under the Agreement, the Standstill Parties "agreed to maintain the status quo and take no further actions with respect to the subject matter of the TRO." (*Id.* at PAGEID 161). Collier was "**enjoined from using, disclosing, or destroying any confidential information or trade secret of Plaintiff or the clinical trial sponsors with which Plaintiff has contracted**." (*Id.* (emphasis in original)). The Agreement applied only to the Standstill Parties.

On September 24, 2025, Kettering sent a Cease & Desist Letter to Lefebvre, demanding that Lefebvre return all CI to Kettering and certify that: (a) she had destroyed all copies of Kettering's CI that were within her possession, custody, or control; and (b) she had not disclosed any of the CI that she received from Collier to any outside parties. (Doc. #68-1, PAGEID 1448-49). Kettering argues that sending the Letter was necessary because:

> Lefebvre, VMGL, and Total Wellness are not bound by the Standstill Agreement and are free to further misappropriate Kettering's and its Sponsors' confidential information and trade secrets unless Kettering takes steps now to secure that information, which is precisely what it did by sending the C&D Letter to Lefebvre and asking her to immediately return the information that is unlawfully in her possession.

(Doc. #68, PAGEID 1429).

Scott characterizes the Motion to Clarify as "an attempt to justify conduct that already exceeded the boundaries of the Standstill Agreement." (Memo. in Opp, Doc. #70, PAGEID 1451). However, the Court cannot reasonably read the Standstill Agreement as prohibiting conduct vis-à-vis persons that are not subject

3

to the Agreement. Moreover, Scott does not rebut Kettering's argument that it has an affirmative obligation to protect its CI from unauthorized disclosure, and that nothing in the Agreement prevented Lefebvre or VMGL from disclosing Kettering's CI to whomever they wanted. Thus, Kettering sending the Letter to Lefebvre did not violate the Standstill Agreement, and Kettering's Motion to Clarify (Doc. #68) is SUSTAINED.

However, in light of Plaintiff's allegations that Lefebvre and VMGL may be in possession of Kettering's CI as part of a business relationship with Collier and TRW, along with Lefebvre being domiciled in Quebec (Doc. #68-1, PAGEID 1445), the Court ORDERS the parties to submit simultaneous briefing within fourteen (14) days of entry on the following issues:

1. Are Lefebvre and/or VMGL required to be joined for the Court to afford complete relief in the captioned case?

2. Are Lefebvre and VMGL subject to service of process, and can the Court exercise personal jurisdiction over them?

3. If they are required parties but not subject to the Court's jurisdiction, are they indispensable, such that the Court may not proceed in equity and good conscience with the case?

FED.R.CIV.P. 19. The parties may file memoranda *contra* within fourteen (14) days of the opening briefing. No further briefing will be permitted absent express leave of the Court.

## II. Motions to Disqualify, Strike, and Clarify

Scott argues that the same principles under which this Court disqualified her from representing Collier "apply with greater force to EBG, whose

4

simultaneous roles as party, counsel, and potential witness create an institutional conflict that no waiver can cure." (Doc. #72, PAGEID 1481). Specifically, she claims that EBG attorneys James Petrie, Jill Bigler, and Christopher Page McGinnis are material witnesses whose interests are materially adverse to their clients, Kettering and the Kettering Defendants. (*Id.* at PAGEID 1482, citing OHIO R.PROF.COND. 1.7(a), 3.7(a)). She also asserts that Petrie, Bigler, and Page McGinnis's conflicts, both as witnesses and individual Third-Party Defendants, are imputed to EBG, and that these conflicts are not waivable. (*Id.*, citing OHIO R.PROF.COND. 1.10(a)).

Scott later clarifies that the imputation of conflict applies to EBG attorneys Jennifer O'Connor and Christopher Farella, who were admitted *pro hac vice* to represent Petrie, Bigler, Page McGinnis, and EBG in their capacities as Third-Party Defendants. (Doc. #72, PAGEID 1483, citing *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). This clarification is fatal to Scott's argument. O'Connor and Farella (along with trial attorney Jonathan Brollier) are not representing Kettering and the Kettering Defendants; they only happen to represent the attorneys representing the Kettering Defendants. Scott cites no authority holding that Petrie, Bigler, and Page McGinnis's representation of the *Kettering* Defendants would be imputed to different attorneys representing the *EBG* Defendants, and the Court declines to find such an imputation here.

Scott also argues that Kettering's disclosure of Collier's protected health information renders Petrie, Bigler, and Page McGinnis "potential co-

5

conspirator[s]" (if they knew about the disclosure but failed to inform Scott and Collier), potentially liable for malpractice to Kettering ("[i]f warning signs existed and EBG failed to investigate"), or "[i]f Kettering hid the violation from EBG, the client placed the firm in a position adverse to itself – also a direct adversity conflict." (Doc. #72, PAGEID 1484). While this disclosure is the subject of a claim in the Amended Third-Party Complaint (Doc. #18), any disclosure by Kettering has nothing to do with the gravamen of Kettering's lawsuit and seeking a preliminary injunction, which arose from alleged misappropriation of CI by Collier. Whether Kettering and EBG are adverse to each other in the PHI disclosure has no bearing on whether they are adverse to each other at this juncture, and Scott has presented no caselaw to the contrary.

Finally, as to the alleged collusion and retaliation by Kettering and the EBG Defendants (Doc. #72, PAGEID 1484), the Court notes that, even taking the allegations in the Amended Third-Party Complaint as true, the situation with the Kettering Defendants and Petrie, Bigler, and Page McGinnis is not analogous to the situation that prompted the Court to disqualify Scott. Scott inserted herself as a fact witness by submitting a declaration based on her personal actions that go to the factual heart of Kettering's lawsuit. (M. Scott Decl., Doc. #4-1). On the other hand, during oral argument on the Motion to Disqualify, Brollier asserted that "the third-party claims against [EBG] and its attorneys are *all* shrouded by the litigation privilege." (Oct. 10, 2025, Tr. at 11 (emphasis added)). Whether the EBG Defendants are immune from suit based on the litigation privilege is a question of

6

law. *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 674 (N.D. Ohio 2015) (applying Ohio law) ("Whether the absolute [litigation] privilege applies in a given case is a question of law for the Court.)"; *see also Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 666 (S.D. Ohio 2004) (Beckwith, C.J.), quoting *Surace v. Wuliger*, 25 Ohio St. 3d 229, 235 (1986) (explaining Ohio's litigation privilege)).

In sum, there is nothing in the record that leads the Court to conclude that the concerns that motivated the disqualification of Scott—Scott and Collier potentially making statements adverse to each other, OHIO R.PROF.COND. 1.7(a)(2), and Scott having proffered a sworn statement on a contested issue, OHIO R.PROF.COND. 3.7(a)(1)—are implicated with respect to Petrie, Bigler, and Page McGinnis's representation of the Kettering Defendants. Accordingly, the Motion to Disqualify (Doc. #72) is OVERRULED, and the Motion to Strike (Doc. #74) is OVERRULED AS MOOT, since the only proffered grounds to strike or hold in abeyance was the pendency of the Motion to Disqualify. (*Id.* at PAGEID 1543). The Kettering Defendants' Motion to Dismiss (Doc. #73) remains pending before the Court, and Collier and Scott must respond to that motion within the timeframe set forth in S.D. OHIO CIV.R. 7.2(a)(2).

Finally, Scott filed what purports to be a Motion to Clarify the Motion to Disqualify. (Doc. #78). However, as this filing directly relates to the Motion to Disqualify, the Court properly treats this document as a reply memorandum, which is not permitted when, as here, the EBG Defendants did not file a

7

memorandum *contra*. S.D. OHIO CIV.R. 7.2(a)(2). Accordingly, to the extent that the Motion to Clarify is a separate motion, it is overruled.

### III. Conclusion

For the foregoing reasons, Kettering's Motion to Clarify the Standstill Agreement (Doc. #68) is SUSTAINED, Scott's Motion to Disqualify (Doc. #72) and Motion to Clarify the Motion to Disqualify (Doc. #78) are OVERRULED, and her Motion to Strike (Doc. #74) is OVERRULED AS MOOT. The parties are to submit briefing within fourteen (14) days of entry as to whether Lefebvre and VMGL: (a) are necessary parties; (b) if so, are subject to service of process; and (c) if not, are indispensable parties. Responsive memoranda may be filed no later than fourteen (14) days thereafter.

IT IS SO ORDERED.

October 16, 2025

*Walter N. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT