IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KETTERING ADVENTIST HEALTHCARE

d/b/a KETTERING HEALTH NETWORK,

                    Plaintiff,

        vs.                                CASE NO. 3:25-cv-273

SANDRA COLLIER and MARY T. SCOTT,

                    Defendants.

                    TRANSCRIPT OF PROCEEDINGS

                       TELEPHONE CONFERENCE

PRESIDING:  THE HONORABLE WALTER H. RICE

DATE:  Friday, October 10, 2025

APPEARANCES:

For the Plaintiff:

By:  James G. Petrie, Esq.
     Jill K. Bigler, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2420
     jpetrie@ebglaw.com
     jbigler@ebglaw.com

For the Defendant Mary T. Scott:

By:  Mary T. Scott, Esq.
     7710 Reading Road
     Suite 102
     Cincinnati, Ohio  45237
     (513) 953-2499
     mtfoster@trinitylawllc.com

For the Defendant Sandra Collier:

By:  H. Leon Hewitt, Esq.
     Hewitt Foster Legal Group
     7659 Montgomery Road
     Suite 2
     Cincinnati, Ohio  45236
     (513) 382-6543
     hewittlegal9@gmail.com

For the EBG Third-Party Defendants:

By:  Jonathan Brollier, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2412
     jbrollier@ebglaw.com

Also Present:

     Bethany Russell, Courtroom Deputy Clerk
     Daniel Wiest, Law Clerk
     James Smerbeck, Law Clerk

Court Reporter:   Caryl L. Blevins, RPR, CRR
                  Walter H. Rice Federal Building
                  U.S. Courthouse
                  200 W. Second Street
                  Dayton, Ohio  45402
                  (937) 512-1511
                  caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript

produced by computer.

Friday, October 10, 2025

(Proceedings had telephonically.)

THE COURT:  Well, good afternoon, all.  This is C3-25-276, Kettering Adventist Healthcare versus Sandra Collier and others.

The appearances today are as follows:  For Plaintiff, James Petrie and Jill Bigler.  For Defendant Collier, H. Leon Hewitt.  For Defendant Scott and third-party Plaintiff, Mary Scott representing herself.  For third-party Defendants, Jonathan Brollier.

Two things before we go into the substance. Ms. Bigler, are you there?

MS. BIGLER:  I am.

THE COURT:  I want to thank you for how you handled the issue of Ms. Collier's medical records.  I commend you for it and I appreciate it.

MS. BIGLER:  Of course.  Thank you, Your Honor.

THE COURT:  You're welcome.

Mr. Hewitt, good afternoon and welcome.  Have you entered an appearance?

MR. HEWITT:  Your Honor, I did submit a document. I sent it to my client, Ms. Collier, and she's going to circulate it to everybody else, including your office.

I do intend to formally as soon as I'm able to figure what's going on with Pacer with this multifactorial

verification process, but I'm entering my appearance personally now.

THE COURT: All right. Very good. Have you had the opportunity, Mr. Hewitt, to review the pleadings and numerous motions?

MR. HEWITT: Yes, I have. I have had that opportunity, Your Honor.

THE COURT: All right. I've spoken of several things with those also on the phone. One is the possibility we avoided the need for a TRO by the parties entering a standstill agreement.

I suggested -- and we've also set a hearing date on the motion for preliminary injunction of October 27th. We are fast approaching that, so I have suggested to counsel that we combine -- pursuant to Rule 65, that we combine the hearing on the preliminary injunction and go straight to the merits of the litigation, looking at a possible trial date in January or early February.

I've also talked to them about mediation. I believe mediation is a good step in this case before all concerned drown themselves in pleadings and -- and motions, and if you haven't had time to consider those two issues, I certainly understand, being so new in the case, but do you have any initial thought about, in effect, foregoing the motion for preliminary injunction and going straight to the

merits?

MR. HEWITT:  You mean like what is my opinion from what I've read just in the pleadings?

THE COURT:  Yes, sir.

MR. HEWITT:  Well, what I was reading --

THE COURT:  Let me interject, if I might, and I apologize for the interruption.  I don't expect anything more than a very preliminary thought or two from you. You're new in the case.  This is going to be a very short conversation.

I'm going to set another get-together with all concerned, A, once the appearance is entered and, B, once you've had time to thoroughly familiarize yourself with the file.

MR. HEWITT:  Okay.

THE COURT:  So my question is, do you have any preliminary thoughts about the approach I've mentioned?

MR. HEWITT:  Oh, my thought is that why not, let's give mediation a try and just see, hey, where are we, what -- as far as our positions and what can we prove. Let's try -- let's try mediation.

THE COURT:  All right.  Do you have any preliminary thought on combining the hearing with the -- on the preliminary with trial on the merits?

MR. HEWITT:  Yeah.  Let's -- let's go for it.

THE COURT:  All right.

MR. HEWITT:  Let's combine.

THE COURT:  Very good.  Thank you, Mr. Hewitt.

Mr. Petrie, Ms. Bigler, I need to know whether you concur with Mr. Hewitt or whether you have a contrary position.

MR. PETRIE:  Thank you, Your Honor.  The -- we're not in a position to agree to consolidate, Your Honor, because there are three relevant actors that need to be joined as parties to this litigation so that we can secure everybody, you know, in this before we agree to consolidate.

We are interested in mediation, but for the same reasons, there are three -- three actors that are not subject to the standstill agreement or under your authority, Your Honor, and those are Vanessa LeFebvre, who we learned in discovery that she was the third party that Ms. Collier sent the Plaintiff's confidential information and trade secrets; Ms. LeFebvre's company, which is VMLG, that company, according to discovery records, entered into a business arrangement with Total Wellness Research, LLC, which is owned by Ms. Collier, to start a new consulting company; those -- and then, of course, Total Wellness Research.

So if we could -- if we could clarify the standstill order, which would allow us to reach out to them

to see if they will agree to be parties to this action or perhaps file declarations that could protect our client -- client's confidential information and trade secrets, then we would be in a position to explore mediation.

THE COURT:  All right, sir.  I appreciate your comments.  Have you -- do you have any idea as to whether -- really, we're talking about two parties, LeFebvre and the Total Wellness -- do you have any idea who might represent them?

MR. PETRIE:  No, Your Honor.  I will note that Total Wellness Research, LLC is -- is owned by Ms. Collier, but as it relates to Ms. LeFebvre and her company, we haven't been able to contact her other than we -- other than when we sent the cease and desist letter, and she has not responded to that, and so un -- unfortunately, we -- we offered in the cease and desist letter that there's a declaration, and if she follows that, then, you know, then this could resolve the -- the matter, but unfortunately, she hasn't -- she hasn't responded.

THE COURT:  Thank you.

MS. SCOTT:  Your -- Your Honor?

THE COURT:  And is this Ms. Scott or Ms. Collier?

MS. SCOTT:  Yes, Ms. Scott.  Good afternoon, Your Honor.  I did not mean to interrupt; however, I have a plethora of concerns regarding this matter, period.

THE COURT: All right.

MS. SCOTT: One --

THE COURT: Now, what matter are you talking about? The three people who should be joined and haven't?

MS. SCOTT: Actually, absolutely, yes, for two reasons with respect to this matter.

THE COURT: Go ahead briefly.

MS. SCOTT: Number one, Your -- yes, briefly, Your Honor, we have a problem with that because that -- they reached out in -- in opposition to what the standstill order was supposed to be. That's number one. We were supposed to do absolutely nothing.

Secondly, they utilized discovery, which they never complied with themselves, to get information from us to harass a third party. That is a problem.

And last but not least, Your Honor, I filed a motion to disqualify them based on a plethora of conflicts of interest that has yet to be addressed before this Court.

This started off as a whistle -- and it still is a whistleblower case wherein I was personally disqualified as a codefendant here, and I have briefed it before the Court, I have submitted a formal request for them to be disqualified in -- in-depth as to the multiplicity of conflict that exists, and I feel that it is important before we get to who else needs to be added, especially coming from

attorneys that currently, there -- there's a pending motion whether or not they should be disqualified, which according to Your Honor's own personal, you know, authority to do so and also, recognizing fairness and equity within the situation and understanding the plethora of conflicts that exist, that Your Honor would be upholding that position as well consistently throughout these proceedings.

THE COURT: Okay. Thank you, Ms. Scott.

Mr. Petrie, you have filed a motion to -- this is not the proper legal term, but to clarify and perhaps expand the standstill order.

Am I correct?

MR. PETRIE: You are correct, and it's fully briefed, Your Honor.

THE COURT: All right.

MS. SCOTT: And we have responded as well, Your Honor, to that motion.

THE COURT: Very good.

Mr. Brollier, there is a motion to disqualify your law firm. Your time for response has not yet arrived. I'm assuming you plan to oppose that?

MR. BROLLIER: Certainly we do plan to oppose it, Your Honor. The question is whether, to keep things on track, you'd be willing to entertain and overrule that today as you previously overruled the previous motions to

disqualify EBG.

You know, the Court will remember that the reason that gave rise to the Court's decision to disqualify Ms. Scott was not just because she's representing a party in a litigation, which is where the EBG attorneys are, but rather, she interposed herself as a fact witness by submitting a declaration going to the facts underlying the claims against her client.

That placed her in a materially different position than the EBG attorneys are and, indeed, as I am to my clients, my law partners.  So we would --

MS. SCOTT:  I --

MR. BROLLIER:  The motion to disqualify seeks not only to disqualify us but to strike EBG's filings.  It includes allegations of malpractice against my partners.

So if the Court would -- would like us to respond to the motion to disqualify, we can do so, but while it's pending, it's also seeking to strike documents filed by the EBG attorneys concerning the motion to dismiss the counterclaim.

Meanwhile, we're working hard on the motion to dismiss the EBG third-party Defendants, all of the -- the third-party claims against them.  That's due on October 29th, and so unless -- unless we delay everything, holding the motion to dismiss or answer dates in abeyance

while we also brief a matter that the Court's already decided, it just strikes me that having already overruled an identical motion, it might be efficient for the Court to go ahead and do that again and let us focus on what -- what matters, which is whether these third-party claims against Kettering's lawyers withstand a motion to dismiss.

Obviously we don't think they will, but that's going to be a matter for the Court to rule on, and until -- until we know whether these claims against the EBG attorneys have survived dismissal, we're not going to be in a position to have anything to say about mediation and certainly not a trial on the merits, and that's also true because the -- the holders of Kettering's confidential information in Canada are not yet parties to the action, subject to a standstill agreement, or subject to the Court's jurisdiction.

So we -- we can spend a month fighting about whether our law firm should be disqualified, but I think that's a matter that's already been -- I think that that horse has been flogged pretty well.

THE COURT:  All right.  Thank you, Mr. Brollier.

MS. SCOTT:  Your Honor --

THE COURT:  I'm not going to be interrupted again. I apologize.

Here's how we're going to handle this:  We are going to set another telephone conference either for

Wednesday afternoon or Thursday, early Thursday. By that time, I will have ruled on the motion to clarify/expand the standstill order.

In just a moment, I'm going to ask Mr. Brollier whether he wishes to respond now to the motion to disqualify his law firm. If he does, I'll certainly want to hear him. I will give Ms. Scott the opportunity to orally argue a reply, and I will try to have a decision on that motion when we talk next week.

Mr. Brollier, are you prepared to argue against Ms. Scott's motion?

MR. BROLLIER: I -- I don't want to be cheeky, but I thought I just did. Do you mean to present a written filing to the Court before next Wednesday?

THE COURT: No. I meant -- and I don't consider you cheeky, certainly not at this point -- I know your theory, but I was looking to see if you wanted to add more detail, more meat to the bone, so to speak.

MR. BROLLIER: Yes, Your Honor, I'd be happy to.

THE COURT: Please, go ahead and then I'll hear from Ms. Scott.

MR. BROLLIER: Sure. The Court already overruled the Defendant's motion to disqualify the law firm in entry document 20 entered on September 2nd of 2025.

THE COURT: I'm aware of that.

MR. BROLLIER: That was -- that was several days after I had entered my appearance, along with the firm's general counsel, on behalf of the EBG third-party Defendants.

Since that time, I think we've -- we've been actively participating in the case for more than a month, and nothing that the law firm or I have done has changed that posture.

As I understand them, and we'll fully address this in our motion to dismiss, the -- the third-party claims against the law firm and its attorneys are all shrouded by the litigation privilege.

Our -- my clients, my law partners, have been brought into the case because they had -- because they had represented their client, Kettering, in initiating this litigation to protect Kettering's interests in the security of its documents and to guard against the violation of confidentiality agreements, and if lawyers can be kicked out of cases merely for the written arguments they present, then no one will ever be able to find a lawyer.

And the EBG third-party Defendant attorneys are in a materially different position than Ms. Scott has been. I understand that the Defendant's position is, well, what's good for the goose ought to be good for the gander, and if Ms. Scott was disqualified and now Ms. Collier has to get a

new lawyer, well, then the shoe ought to fit on the other foot. Unfortunately, these feet are -- are very different sizes.

What we have is the EBG attorneys simply representing their client in litigation. The EBG attorneys have not interposed themselves as fact witnesses. They've not submitted written declarations going to the material facts about stealing documents after termination or any of the other material facts in the case.

My colleagues, my clients, are the advocates for a party in the litigation, and that's just a materially different position than Ms. Scott put herself in by making herself a fact witness and then giving rise to the Fifth Amendment privilege and other issues that caused the Court such -- such genuine and well-founded concerns that it prompted the Court to -- to disqualify Ms. Scott.

I really think that we would be well served to proceed -- overrule the motion to disqualify, as the Court already did, let the EBG third-party Defendants present their motion to dismiss on October 29th when it's due, and then once that is fully briefed, the Court and the parties will have clarity on whether these -- these third-party claims are tenable at all. Until there's clarity on that point, mediation is going to be premature and -- and not fruitful.

And -- and meanwhile, this motion to disqualify also attempts to strike pleadings that have been filed, for instance, the motion to dismiss that Kettering filed as to the counterclaims against it, and I'm really up in the air as to whether I should continue full steam ahead writing the motion to dismiss the third-party claims against my client if I'm not going to be allowed to represent them.

I think the better course, the reasonable course, the consistent course with the Court's previous decisions, is to let Mr. Petrie, Ms. Bigler, Mr. Page McGinnis remain as counsel for Kettering, let me continue to represent the law firm.

I think that that is -- has worked well so far, has not yielded any improper results, and will let things move forward to be postured for a potential resolution in the near term, and so for those reasons, I think the Court ought to overrule the most recent motion to disqualify the Epstein, Becker & Green firm and its attorneys.

THE COURT: All right. Thank you, Mr. Brollier.

Ms. Scott, your reply?

MS. SCOTT: Yes, Your Honor. With all due respect, the first and foremost, Your Honor had originally not disqualified myself either, and although there's an intent to like to place me on different footing, they're quite the opposite, because just as I have been added as a

third-party Defendant -- not third-party, but as a Defendant in this situation and I, too, have a motion to dismiss the complaint against them, since the October the 2nd decision, we -- Ms. Collier as a whistleblower, I -- I was representing her, we have no actual conflict.

It was created by the mere fact that they added me, but nevertheless, when you're looking at a motion for disqualification, Your Honor, we look at the dual loyalty and self-interest conflict.

The EBG attorneys, including Petrie, Bigler, McGinnis, and -- are each advocates and potential witnesses against the very facts underlining their third-party complaint and the counterclaims against their client.

They're -- we received documentation which was attached as an exhibit to our motion which implicated prior knowledge of facts and information that the attorneys, as their counsel, would have known about or should have known about, which also supports the allegations of Miss Collier's at that time, who is a whistleblower, her issues, and the only thing that I have been accused of was writing a demand letter and accused of extortion based on a demand letter.

They are implicated in the actual misdeeds and covering up of material facts that are part and parcel to the third-party complaint. They are indeed both advocates and witnesses in this case.

They're codefendants with each other, and to permit their filings right now, I say hold them in abeyance until the Court makes a decision regarding whether or not they should be able to represent Kettering in this matter and each other.

Their participation places them in direct conflict with their client and with their own ethical duties of candor to the tribunal under the Ohio Rules of Professional Conduct, 1.7, 1.9, and 3.7.

There is -- regardless of whether or not they feel that the complaint is viable or not, I don't feel like the complaint against me was viable -- viable either. That's irrespective. The same party -- the same principle applies to them.

The self-interest in defending again their own third-party complaint as codefendants with Kettering and the pending disqualification are irreconcilable with their duty of loyalty to Kettering as a corporate entity.

The appearance of impropriety and the divided loyalty, they can't be codefendants as well as advocates and potential witnesses in the same matter because the exact conflicts are -- are -- are right there. They're implicated as fact witnesses, implicated in the very issues that the third-party complaint is alleging.

This is not the same issue that was before the

Court because there's new information that further clarified which caused us to amend our third-party complaint and which actually supported more so that they are conflicted out.

The -- with the firm itself, the firm is an entity. The firm has to have representation, and once attorneys are conflicted out, it goes to the whole firm, it's not just the independent one attorney. They're all -- the -- the EBG as a firm is a codefendant.

The individual attorneys are codefendants, and they're codefendants supposedly representing another corporate entity that is their codefendant, and there are 14 individual attorneys which are also codefendants.

They can't represent everybody in this case, and if we're going toward whether or not they want to add people or not, their motion -- everything that we have filed to -- before this Court, Your Honor, that I have filed, we have attached documents and proof of.

They have supported their facts and their allegations with absolutely nothing. They utilized discovery to try and get more information rather than to defend the matters that are before them.

They have never once indicated that the in -- that one matter that I placed before this Court was false or fraudulent. It was not. Our motion to dismiss their complaint has been pending for over a month. It -- it's

been pending.

They just filed their motion after I filed a motion to disqualify them, the day afterwards. I didn't say everything that they filed, Your Honor, was to be dismissed or to be stricken, only those things that was filed while this motion is pending before this Court, and the reality is, is that the Rules of Professional Conduct as well as overriding principles of fairness and what is appropriate -- Miss Collier was a whistleblower. She was denied her own counsel as well, and with less resources, with less opportunities than this firm has.

It cannot legally, lawfully -- and Your Honor, I know you know the law of -- concerning disqualification, so I will not sink to say anything derogatory about that. The facts are what they are.

THE COURT: All right.

MS. SCOTT: You -- you cannot permit them to continue to operate as counsel for everybody, and their -- they have divergent interests clearly.

Either, one, they knew the information and they were complicit with their client, which means they are codefendants legitimately, like we have stated.

Number two, either their clients didn't tell them the truth, which their clients placed them in a bad position and then they're still in opposition, or, three, they were

ignorant as to the information, didn't do their due diligence, and so then they still might have an allegation of malpractice against them if they didn't do their job in order to represent their client.

Regardless, there are conflicts on top of conflicts, triple layers of conflicts that exist here, Your Honor.

THE COURT: All right.

MS. SCOTT: That's fairness, that's fairness.

THE COURT: Let's let it go at that, Ms. Scott, because I understand --

MS. SCOTT: Yes, Your Honor.

THE COURT: -- where you're coming from.

I have two issues, questions really, that I'm going to have to answer. Number one, assuming -- number one, I question your ability to elicit the necessary information from these lawyers to support your position, but I'll certainly give that serious thought; and secondly, I don't know how anything that Mr. Petrie and Ms. Bigler and their associate, Mr. McGinnis, knew can promote -- not promote, but attach any liability to the firm's other partners and associates or, for that matter, for the law firm as a whole. I certainly will consider those arguments.

There is a protective order Plaintiff filed without -- which would allow the disclosure of certain

evidence.  Ms. Scott, I don't know that you filed a memorandum contra to that motion.

The motion seems to me to be well taken.  If the -- it complies --

MS. SCOTT:  My apologies.

THE COURT:  -- it complies with the format that is part of our local rules, and very briefly, I'd like you to tell me why I should not sign that protective order.

MS. SCOTT:  First, asking for clarification, Your Honor, which protective order are you referring to, sir?

THE COURT:  The one that Plaintiff asked me to -- to enter.

MS. SCOTT:  Which document was this drafted under, sir?  Are you aware?  Because I am --

THE COURT:  Give me a moment.

MS. SCOTT:  Yes, sir.

THE COURT:  It may be docket number 52.  Give me a moment.

MS. SCOTT:  Okay.

(Brief pause.)

THE COURT:  I believe it's document 52, Ms. Scott.

MS. SCOTT:  Is this the standstill expansion or -- this is something separate from the standstill expansion, correct, sir?

THE COURT:  It is, and let's handle it all in this

fashion: Beth, very briefly and very quickly, have you another date Wednesday afternoon or Thursday after 10:00 a.m. for me to talk to counsel again?

COURTROOM DEPUTY CLERK: Sir, you do not have Wednesday afternoon nor Thursday morning. You have a sentencing Thursday morning unless we can do it closer to noon, 11:45.

THE COURT: What is the -- just give me the Defendant's last name.

COURTROOM DEPUTY CLERK: Brown.

THE COURT: Do I have something in the afternoon Thursday?

COURTROOM DEPUTY CLERK: Bonner.

THE COURT: What time is Brown's sentencing?

COURTROOM DEPUTY CLERK: Starts at 9:00 a.m.

THE COURT: Okay. Without going into details or with whom, do I have the noon hour free?

COURTROOM DEPUTY CLERK: You do not.

THE COURT: What time is Bonner set?

COURTROOM DEPUTY CLERK: Bonner begins at 1:45.

THE COURT: Would you come in for a moment and tell me what my conflict is at noon?

COURTROOM DEPUTY CLERK: Yes, sir.

THE COURT: I'll be back with you in a moment, counsel.

(Brief pause.)

THE COURT: I am free at noon on Thursday, which is the 16th. There are three issues to discuss. One is the motion to clarify/expand the standstill order.

Secondly would be a decision on the motion to disqualify Plaintiff's counsel and Plaintiff's law firm, and the third, I want to hear from Mr. -- Ms. Scott as to why I should not enter the protective order unobjected to that was filed in conformity with our local rules.

Mr. Petrie, I hope that you and Ms. Bigler will be free at noon on the 16th.

MR. PETRIE: Yes, Your Honor.

THE COURT: All right. Mr. Hewitt?

MS. SCOTT: I am free, Your Honor.

THE COURT: All right, sir. And Mr. Brollier?

MR. BROLLIER: Yes, Your Honor.

THE COURT: Okay. Mr. Hewitt, I hate to be an over stickler, but I do want you to have entered an appearance by the time we talk on Thursday.

MR. HEWITT: Yes, Your Honor. I'll be making a very concerted effort to make that happen.

THE COURT: All right, sir. I want to move this matter forward, and I don't want to be in a position where I can't have your position and your guidance when we talk next week, so that's something that I very much want to have

accomplished.

MR. HEWITT: Okay. Were you speaking to me, sir?

THE COURT: Well, yes. It's a statement, but I'll put a question mark at the end of it.

MR. HEWITT: Oh, okay.

THE COURT: You followed what I said?

MR. HEWITT: Yes, Your Honor, I have.

THE COURT: Very good.

Mr. Brollier, are you free at noon on the 16th?

MR. BROLLIER: Yes, Your Honor, I am.

THE COURT: Okay. Now, I am not encouraging people to come up with more to discuss on the 16th, but I'm going to give you a chance to -- to do so.

Mr. Petrie, first from you, anything else that ought to form our agenda on the 16th?

MR. PETRIE: No, Your Honor.

THE COURT: Ms. Bigler?

MS. BIGLER: No, Your Honor. Thank you.

THE COURT: Mr. Hewitt?

MR. HEWITT: I have nothing, Your Honor. Thank you.

THE COURT: You're welcome.

Ms. Scott?

MS. SCOTT: Nothing further, Your Honor. I think that's fine if --

THE COURT: I didn't mean to cut you off. I'm sorry. If you --

MS. SCOTT: No, you're fine, Your Honor.

THE COURT: All right. And Mr. Brollier?

MR. BROLLIER: No additional matter, Your Honor, only just to ensure that the Court is comfortable with the scope of the argument as heard on the motion to disqualify.

I think we made our position clear, but I wanted to make sure that -- that the Court had heard what it needed to hear in order to reach a decision by when we reconvene next Thursday.

THE COURT: I think I understand your position, sir, as well as Ms. Scott's.

MR. BROLLIER: Thank you, Your Honor. Then nothing further.

THE COURT: Very good. Now, I am aware that either on August 15th or 25th, I orally overruled both motions to disqualify, that of the Plaintiff to disqualify Ms. Scott and Ms. Scott's motion to disqualify Plaintiff's counsel. I followed that up with a written entry.

As I recall, the motion to disqualify Ms. Scott was without prejudice to refiling should a further argument be offered or should discovery indicate that my ruling should be, once again, put on the floor and discussed.

My recollection is that the motion to disqualify

Plaintiff's attorney was with prejudice. I will, I think, in the interest of fairness, entertain the arguments I've heard today, and I'll have a ruling on that renewed motion when we speak on Thursday.

Mr. Petrie, last roll call. Anything further?

MR. PETRIE: No. Thank you, Your Honor.

THE COURT: You're welcome.

Ms. Bigler?

MS. BIGLER: Nothing further, Your Honor. Thank you.

THE COURT: You're welcome.

Ms. -- Mr. Hewitt?

MR. HEWITT: Yes. I just wanted to know, would this be by phone, in person? And also, how much time should we set aside?

THE COURT: It would be by phone, and it's difficult to tell, and this is not a criticism, but these discussions seem to legitimately -- I'm not critiquing or criticizing anyone -- seem to take on a life of their own, but I think 45 minutes should be enough.

MR. HEWITT: Okay. Just checking, Your Honor. That's all.

THE COURT: It's a good question.

Mr. Brollier, anything else?

MR. BROLLIER: Nothing further, Your Honor. Thank

you.

THE COURT: All right. You all have a good weekend and stay safe. Thank you.

MR. HEWITT: Thank you. Bye.

(Telephone conference concluded at 2:32 p.m.)

CERTIFICATE OF REPORTER

I, Caryl L. Blevins, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


s/Caryl L. Blevins_____
CARYL L. BLEVINS, RPR, CRR
FEDERAL OFFICIAL REALTIME COURT REPORTER

## 1

**1.7** [1] - 17:9
**1.9** [1] - 17:9
**10** [2] - 1:12, 3:1
**102** [1] - 1:22
**10:00** [1] - 22:2
**11:45** [1] - 22:7
**14** [1] - 18:11
**15th** [1] - 25:17
**16th** [5] - 23:3, 23:11, 24:9, 24:12, 24:15
**1:45** [1] - 22:20

## 2

**2** [1] - 2:3
**20** [1] - 12:24
**200** [1] - 2:15
**2025** [3] - 1:12, 3:1, 12:24
**250** [2] - 1:16, 2:8
**25th** [1] - 25:17
**27th** [1] - 4:13
**28** [1] - 28:6
**29th** [2] - 10:24, 14:20
**2:32** [1] - 27:5
**2nd** [2] - 12:24, 16:3

## 3

**3.7** [1] - 17:9
**300** [2] - 1:17, 2:8
**382-6543** [1] - 2:4
**3:25-cv-273** [1] - 1:6

## 4

**43215** [2] - 1:17, 2:9
**45** [1] - 26:20
**45236** [1] - 2:4
**45237** [1] - 1:22
**45402** [1] - 2:16

## 5

**512-1511** [1] - 2:16
**513** [2] - 1:23, 2:4
**52** [2] - 21:17, 21:21

## 6

**614** [2] - 1:18, 2:9
**65** [1] - 4:15

## 7

**753** [1] - 28:6
**7659** [1] - 2:3
**7710** [1] - 1:21

## 8

**872-2412** [1] - 2:9
**872-2420** [1] - 1:18

## 9

**937** [1] - 2:16
**953-2499** [1] - 1:23
**9:00** [1] - 22:15

## A

**a.m** [2] - 22:3, 22:15
**abeyance** [2] - 10:25, 17:2
**ability** [1] - 20:16
**able** [4] - 3:24, 7:13, 13:20, 17:4
**above-entitled** [1] - 28:9
**absolutely** [3] - 8:5, 8:12, 18:19
**accomplished** [1] - 24:1
**according** [2] - 6:19, 9:2
**accused** [2] - 16:20, 16:21
**action** [2] - 7:1, 11:14
**actively** [1] - 13:6
**actors** [2] - 6:9, 6:13
**actual** [2] - 16:5, 16:22
**add** [2] - 12:17, 18:14
**added** [3] - 8:25, 15:25, 16:6
**additional** [1] - 25:5
**address** [1] - 13:9
**addressed** [1] - 8:18
**Adventist** [1] - 3:4
**ADVENTIST** [1] - 1:3
**advocates** [4] - 14:10, 16:11, 16:24, 17:20
**afternoon** [7] - 3:3, 3:19, 7:23, 12:1, 22:2, 22:5, 22:11
**afterwards** [1] - 19:3
**agenda** [1] - 24:15
**agree** [3] - 6:8, 6:11, 7:1
**agreement** [3] - 4:11, 6:14, 11:15
**agreements** [1] - 13:18
**ahead** [4] - 8:7, 11:4, 12:20, 15:5
**air** [1] - 15:4
**allegation** [1] - 20:2
**allegations** [3] - 10:15, 16:18, 18:19

**alleging** [1] - 17:24
**allow** [2] - 6:25, 20:25
**allowed** [1] - 15:7
**amend** [1] - 18:2
**Amendment** [1] - 14:14
**answer** [2] - 10:25, 20:15
**apologies** [1] - 21:5
**apologize** [2] - 5:7, 11:23
**appearance** [6] - 3:20, 4:1, 5:12, 13:2, 17:19, 23:19
**APPEARANCES** [1] - 1:13
**appearances** [1] - 3:6
**applies** [1] - 17:13
**appreciate** [2] - 3:16, 7:5
**approach** [1] - 5:17
**approaching** [1] - 4:14
**appropriate** [1] - 19:8
**argue** [2] - 12:7, 12:10
**argument** [2] - 25:7, 25:22
**arguments** [3] - 13:19, 20:23, 26:2
**arrangement** [1] - 6:20
**arrived** [1] - 9:20
**aside** [1] - 26:15
**associate** [1] - 20:20
**associates** [1] - 20:22
**assuming** [2] - 9:21, 20:15
**attach** [1] - 20:21
**attached** [2] - 16:15, 18:17
**attempts** [1] - 15:2
**attorney** [2] - 18:7, 26:1
**attorneys** [15] - 9:1, 10:5, 10:10, 10:19, 11:9, 13:11, 13:21, 14:4, 14:5, 15:18, 16:10, 16:16, 18:6, 18:9, 18:12
**August** [1] - 25:17
**authority** [2] - 6:14, 9:3
**avoided** [1] - 4:10
**aware** [3] - 12:25, 21:14, 25:16

## B

**bad** [1] - 19:24
**based** [2] - 8:17, 16:21

**Becker** [3] - 1:16, 2:7, 15:18
**begins** [1] - 22:20
**behalf** [1] - 13:3
**Beth** [1] - 22:1
**Bethany** [1] - 2:12
**better** [1] - 15:8
**BIGLER** [4] - 3:13, 3:17, 24:18, 26:9
**Bigler** [10] - 1:15, 3:7, 3:12, 6:4, 15:10, 16:10, 20:19, 23:10, 24:17, 26:8
**Blevins** [3] - 2:14, 28:3, 28:14
**BLEVINS** [1] - 28:15
**bone** [1] - 12:18
**Bonner** [3] - 22:13, 22:19, 22:20
**brief** [1] - 11:1
**Brief** [2] - 21:20, 23:1
**briefed** [3] - 8:21, 9:14, 14:21
**briefly** [4] - 8:7, 8:8, 21:7, 22:1
**BROLLIER** [11] - 9:22, 10:13, 12:12, 12:19, 12:22, 13:1, 23:16, 24:10, 25:5, 25:14, 26:25
**Brollier** [11] - 2:7, 3:10, 9:19, 11:20, 12:4, 12:10, 15:19, 23:15, 24:9, 25:4, 26:24
**brought** [1] - 13:14
**Brown** [1] - 22:10
**Brown's** [1] - 22:14
**Building** [1] - 2:14
**business** [1] - 6:20
**bye** [1] - 27:4

## C

**C3-25-276** [1] - 3:4
**Canada** [1] - 11:13
**candor** [1] - 17:8
**cannot** [2] - 19:12, 19:17
**CARYL** [1] - 28:15
**Caryl** [2] - 2:14, 28:3
**caryl_blevins@ohsd .uscourts.gov** [1] - 2:17
**case** [9] - 4:20, 4:23, 5:9, 8:20, 13:6, 13:14, 14:9, 16:25, 18:13
**CASE** [1] - 1:6
**cases** [1] - 13:19

**caused** [2] - 14:14, 18:2
**cease** [2] - 7:14, 7:16
**certain** [1] - 20:25
**certainly** [7] - 4:23, 9:22, 11:11, 12:6, 12:16, 20:18, 20:23
**CERTIFICATE** [1] - 28:1
**certify** [1] - 28:5
**chance** [1] - 24:13
**changed** [1] - 13:7
**checking** [1] - 26:21
**cheeky** [2] - 12:12, 12:16
**Cincinnati** [2] - 1:22, 2:4
**circulate** [1] - 3:23
**claims** [7] - 10:8, 10:23, 11:5, 11:9, 13:10, 14:23, 15:6
**clarification** [1] - 21:9
**clarified** [1] - 18:1
**clarify** [2] - 6:24, 9:10
**clarify/expand** [2] - 12:2, 23:4
**clarity** [2] - 14:22, 14:23
**clear** [1] - 25:8
**clearly** [1] - 19:19
**CLERK** [7] - 22:4, 22:10, 22:13, 22:15, 22:18, 22:20, 22:23
**Clerk** [3] - 2:12, 2:12, 2:13
**client** [10] - 3:22, 7:2, 10:8, 13:15, 14:5, 15:6, 16:13, 17:7, 19:21, 20:4
**client's** [1] - 7:3
**clients** [5] - 10:11, 13:13, 14:10, 19:23, 19:24
**closer** [1] - 22:6
**Code** [1] - 28:6
**codefendant** [3] - 8:21, 18:8, 18:11
**codefendants** [7] - 17:1, 17:16, 17:20, 18:9, 18:10, 18:12, 19:22
**colleagues** [1] - 14:10
**COLLIER** [1] - 1:7
**Collier** [11] - 2:1, 3:5, 3:8, 3:22, 6:16, 6:21, 7:11, 7:22, 13:25, 16:4, 19:9
**Collier's** [2] - 3:15, 16:18
**Columbus** [2] - 1:17,

2:9

**combine** [3] - 4:15, 6:2

**combining** [1] - 5:23

**comfortable** [1] - 25:6

**coming** [2] - 8:25, 20:13

**commend** [1] - 3:16

**comments** [1] - 7:6

**company** [4] - 6:18, 6:19, 6:22, 7:12

**complaint** [9] - 16:3, 16:13, 16:24, 17:11, 17:12, 17:16, 17:24, 18:2, 18:25

**complicit** [1] - 19:21

**complied** [1] - 8:14

**complies** [2] - 21:4, 21:6

**computer** [1] - 2:19

**concerned** [2] - 4:21, 5:12

**concerning** [2] - 10:19, 19:13

**concerns** [2] - 7:25, 14:15

**concerted** [1] - 23:21

**concluded** [1] - 27:5

**concur** [1] - 6:5

**Conduct** [2] - 17:9, 19:7

**conference** [2] - 11:25, 27:5

**Conference** [1] - 28:11

**CONFERENCE** [1] - 1:10

**confidential** [3] - 6:17, 7:3, 11:13

**confidentiality** [1] - 13:18

**conflict** [5] - 8:24, 16:5, 16:9, 17:6, 22:22

**conflicted** [2] - 18:3, 18:6

**conflicts** [6] - 8:17, 9:5, 17:22, 20:5, 20:6

**conformance** [1] - 28:10

**conformity** [1] - 23:9

**consider** [3] - 4:22, 12:15, 20:23

**consistent** [1] - 15:9

**consistently** [1] - 9:7

**consolidate** [2] - 6:8, 6:11

**consulting** [1] - 6:21

**contact** [1] - 7:13

**continue** [3] - 15:5, 15:11, 19:18

**contra** [1] - 21:2

**contrary** [1] - 6:5

**conversation** [1] - 5:10

**corporate** [2] - 17:18, 18:11

**correct** [4] - 9:12, 9:13, 21:24, 28:7

**counsel** [10] - 4:14, 13:3, 15:11, 16:17, 19:10, 19:18, 22:3, 22:25, 23:6, 25:20

**counterclaim** [1] - 10:20

**counterclaims** [2] - 15:4, 16:13

**course** [5] - 3:17, 6:22, 15:8, 15:9

**Court** [23] - 2:14, 8:18, 8:21, 10:2, 10:16, 11:3, 11:8, 12:14, 12:22, 14:14, 14:16, 14:18, 14:21, 15:16, 17:3, 18:1, 18:16, 18:23, 19:6, 25:6, 25:9, 28:3, 28:4

**COURT** [66] - 1:1, 3:3, 3:14, 3:18, 4:3, 4:8, 5:4, 5:6, 5:16, 5:22, 6:1, 6:3, 7:5, 7:20, 7:22, 8:1, 8:3, 8:7, 9:8, 9:15, 9:18, 11:20, 11:22, 12:15, 12:20, 12:25, 15:19, 19:16, 20:8, 20:10, 20:13, 21:6, 21:11, 21:15, 21:17, 21:21, 21:25, 22:8, 22:11, 22:14, 22:16, 22:19, 22:21, 22:24, 23:2, 23:13, 23:15, 23:17, 23:22, 24:3, 24:6, 24:8, 24:11, 24:17, 24:19, 24:22, 25:1, 25:4, 25:12, 25:16, 26:7, 26:11, 26:16, 26:23, 27:2, 28:15

**Court's** [4] - 10:3, 11:1, 11:15, 15:9

**Courthouse** [1] - 2:15

**COURTROOM** [7] - 22:4, 22:10, 22:13, 22:15, 22:18, 22:20, 22:23

**Courtroom** [1] - 2:12

**covering** [1] - 16:23

**created** [1] - 16:6

**criticism** [1] - 26:17

**criticizing** [1] - 26:19

**critiquing** [1] - 26:18

**CRR** [2] - 2:14, 28:15

**cut** [1] - 25:1

## D

**d/b/a** [1] - 1:4

**Daniel** [1] - 2:12

**date** [3] - 4:12, 4:17, 22:2

**DATE** [1] - 1:12

**dates** [1] - 10:25

**days** [1] - 13:1

**Dayton** [1] - 2:16

**decided** [1] - 11:2

**decision** [6] - 10:3, 12:8, 16:3, 17:3, 23:5, 25:10

**decisions** [1] - 15:9

**declaration** [2] - 7:17, 10:7

**declarations** [2] - 7:2, 14:7

**defend** [1] - 18:21

**Defendant** [7] - 1:20, 2:1, 3:7, 3:8, 13:21, 16:1

**Defendant's** [3] - 12:23, 13:23, 22:9

**Defendants** [6] - 1:8, 2:6, 3:10, 10:22, 13:4, 14:19

**defending** [1] - 17:15

**delay** [1] - 10:24

**demand** [2] - 16:20, 16:21

**denied** [1] - 19:9

**depth** [1] - 8:23

**DEPUTY** [7] - 22:4, 22:10, 22:13, 22:15, 22:18, 22:20, 22:23

**Deputy** [1] - 2:12

**derogatory** [1] - 19:14

**desist** [2] - 7:14, 7:16

**detail** [1] - 12:18

**details** [1] - 22:16

**different** [5] - 10:9, 13:22, 14:2, 14:12, 15:24

**difficult** [1] - 26:17

**diligence** [1] - 20:2

**direct** [1] - 17:6

**disclosure** [1] - 20:25

**discovery** [5] - 6:16, 6:19, 8:13, 18:20, 25:23

**discuss** [2] - 23:3, 24:12

**discussed** [1] - 25:24

**discussions** [1] - 26:18

**dismiss** [10] - 10:19, 10:22, 10:25, 11:6, 13:10, 14:20, 15:3, 15:6, 16:2, 18:24

**dismissal** [1] - 11:10

**dismissed** [1] - 19:4

**disqualification** [3] - 16:8, 17:17, 19:13

**disqualified** [6] - 8:20, 8:23, 9:2, 11:17, 13:25, 15:23

**disqualify** [21] - 8:17, 9:19, 10:1, 10:3, 10:13, 10:14, 10:17, 12:5, 12:23, 14:16, 14:18, 15:1, 15:17, 19:3, 23:6, 25:7, 25:18, 25:19, 25:21, 25:25

**DISTRICT** [2] - 1:1, 1:1

**District** [2] - 28:4, 28:5

**divergent** [1] - 19:19

**divided** [1] - 17:19

**DIVISION** [1] - 1:2

**docket** [1] - 21:17

**document** [4] - 3:21, 12:24, 21:13, 21:21

**documentation** [1] - 16:14

**documents** [4] - 10:18, 13:17, 14:8, 18:17

**done** [1] - 13:7

**drafted** [1] - 21:13

**drown** [1] - 4:21

**dual** [1] - 16:8

**due** [4] - 10:23, 14:20, 15:21, 20:1

**duties** [1] - 17:7

**duty** [1] - 17:17

## E

**early** [2] - 4:18, 12:1

**EBG** [14] - 2:6, 10:1, 10:5, 10:10, 10:19, 10:22, 11:9, 13:3, 13:21, 14:4, 14:5, 14:19, 16:10, 18:8

**EBG's** [1] - 10:14

**effect** [1] - 4:24

**efficient** [1] - 11:3

**effort** [1] - 23:21

**either** [6] - 11:25, 15:23, 17:12, 19:20, 19:23, 25:17

**elicit** [1] - 20:16

**encouraging** [1] -

24:11

**end** [1] - 24:4

**ensure** [1] - 25:6

**enter** [2] - 21:12, 23:8

**entered** [6] - 3:20, 5:12, 6:19, 12:24, 13:2, 23:18

**entering** [2] - 4:1, 4:10

**entertain** [2] - 9:24, 26:2

**entitled** [1] - 28:9

**entity** [3] - 17:18, 18:5, 18:11

**entry** [2] - 12:23, 25:20

**Epstein** [3] - 1:16, 2:7, 15:18

**equity** [1] - 9:4

**especially** [1] - 8:25

**Esq** [5] - 1:15, 1:15, 1:21, 2:2, 2:7

**ethical** [1] - 17:7

**evidence** [1] - 21:1

**exact** [1] - 17:21

**exhibit** [1] - 16:15

**exist** [2] - 9:6, 20:6

**exists** [1] - 8:24

**expand** [1] - 9:10

**expansion** [2] - 21:22, 21:23

**expect** [1] - 5:7

**explore** [1] - 7:4

**extortion** [1] - 16:21

## F

**fact** [5] - 10:6, 14:6, 14:13, 16:6, 17:23

**facts** [8] - 10:7, 14:8, 14:9, 16:12, 16:16, 16:23, 18:18, 19:15

**fairness** [5] - 9:4, 19:8, 20:9, 26:2

**false** [1] - 18:23

**familiarize** [1] - 5:13

**far** [2] - 5:20, 15:13

**fashion** [1] - 22:1

**fast** [1] - 4:14

**February** [1] - 4:18

**Federal** [2] - 2:14, 28:3

**FEDERAL** [1] - 28:15

**feet** [1] - 14:2

**Fifth** [1] - 14:13

**fighting** [1] - 11:16

**figure** [1] - 3:25

**file** [2] - 5:14, 7:2

**filed** [14] - 8:16, 9:9, 10:18, 15:2, 15:3, 18:15, 18:16, 19:2,

19:4, 19:5, 20:24, 21:1, 23:9
**filing** [1] - 12:14
**filings** [2] - 10:14, 17:2
**fine** [2] - 24:25, 25:3
**firm** [16] - 9:20, 11:17, 12:6, 12:23, 13:7, 13:11, 15:12, 15:18, 18:4, 18:5, 18:6, 18:8, 19:11, 20:23, 23:6
**firm's** [2] - 13:2, 20:21
**first** [3] - 15:22, 21:9, 24:14
**fit** [1] - 14:1
**flogged** [1] - 11:19
**floor** [1] - 25:24
**focus** [1] - 11:4
**followed** [2] - 24:6, 25:20
**follows** [2] - 3:6, 7:17
**foot** [1] - 14:2
**footing** [1] - 15:24
**FOR** [1] - 1:1
**foregoing** [2] - 4:24, 28:7
**foremost** [1] - 15:22
**form** [1] - 24:15
**formal** [1] - 8:22
**formally** [1] - 3:24
**format** [2] - 21:6, 28:9
**forward** [2] - 15:15, 23:23
**Foster** [1] - 2:2
**founded** [1] - 14:15
**fraudulent** [1] - 18:24
**free** [5] - 22:17, 23:2, 23:11, 23:14, 24:9
**Friday** [2] - 1:12, 3:1
**fruitful** [1] - 14:25
**full** [1] - 15:5
**fully** [3] - 9:13, 13:9, 14:21

**G**

**gander** [1] - 13:24
**general** [1] - 13:3
**genuine** [1] - 14:15
**get-together** [1] - 5:11
**goose** [1] - 13:24
**Green** [3] - 1:16, 2:7, 15:18
**Group** [1] - 2:2
**guard** [1] - 13:17
**guidance** [1] - 23:24

**H**

**handle** [2] - 11:24, 21:25
**handled** [1] - 3:15
**happy** [1] - 12:19
**harass** [1] - 8:15
**hard** [1] - 10:21
**hate** [1] - 23:17
**HEALTH** [1] - 1:4
**Healthcare** [1] - 3:4
**HEALTHCARE** [1] - 1:3
**hear** [4] - 12:6, 12:20, 23:7, 25:10
**heard** [3] - 25:7, 25:9, 26:3
**hearing** [3] - 4:12, 4:16, 5:23
**held** [1] - 28:8
**hereby** [1] - 28:5
**herself** [4] - 3:9, 10:6, 14:12, 14:13
**Hewitt** [11] - 2:2, 2:2, 3:8, 3:19, 4:4, 6:3, 6:5, 23:13, 23:17, 24:19, 26:12
**HEWITT** [16] - 3:21, 4:6, 5:2, 5:5, 5:15, 5:18, 5:25, 6:2, 23:20, 24:2, 24:5, 24:7, 24:20, 26:13, 26:21, 27:4
**hewittlegal9@gmail.com** [1] - 2:5
**hold** [1] - 17:2
**holders** [1] - 11:13
**holding** [1] - 10:25
**Honor** [43] - 3:17, 3:21, 4:7, 6:7, 6:8, 6:15, 7:10, 7:21, 7:24, 8:9, 8:16, 9:6, 9:14, 9:17, 9:23, 11:21, 12:19, 15:21, 15:22, 16:8, 18:16, 19:4, 19:12, 20:7, 20:12, 21:10, 23:12, 23:14, 23:16, 23:20, 24:7, 24:10, 24:16, 24:18, 24:20, 24:24, 25:3, 25:5, 25:14, 26:6, 26:9, 26:21, 26:25
**Honor's** [1] - 9:3
**HONORABLE** [1] - 1:11
**hope** [1] - 23:10
**horse** [1] - 11:19
**hour** [1] - 22:17

**I**

**idea** [2] - 7:6, 7:8
**identical** [1] - 11:3
**ignorant** [1] - 20:1
**implicated** [4] - 16:15, 16:22, 17:22, 17:23
**important** [1] - 8:24
**improper** [1] - 15:14
**impropriety** [1] - 17:19
**IN** [1] - 1:1
**in-depth** [1] - 8:23
**includes** [1] - 10:15
**including** [2] - 3:23, 16:10
**indeed** [2] - 10:10, 16:24
**independent** [1] - 18:7
**indicate** [1] - 25:23
**indicated** [1] - 18:22
**individual** [2] - 18:9, 18:12
**information** [10] - 6:17, 7:3, 8:14, 11:13, 16:16, 18:1, 18:20, 19:20, 20:1, 20:17
**initial** [1] - 4:24
**initiating** [1] - 13:15
**injunction** [3] - 4:13, 4:16, 4:25
**instance** [1] - 15:3
**intend** [1] - 3:24
**intent** [1] - 15:24
**interest** [4] - 8:18, 16:9, 17:15, 26:2
**interested** [1] - 6:12
**interests** [2] - 13:16, 19:19
**interject** [1] - 5:6
**interposed** [2] - 10:6, 14:6
**interrupt** [1] - 7:24
**interrupted** [1] - 11:22
**interruption** [1] - 5:7
**irreconcilable** [1] - 17:17
**irrespective** [1] - 17:13
**issue** [2] - 3:15, 17:25
**issues** [6] - 4:22, 14:14, 16:19, 17:23, 20:14, 23:3
**itself** [1] - 18:4

**J**

**James** [3] - 1:15, 2:13, 3:7

**January** [1] - 4:18
**jbigler@ebglaw.com** [1] - 1:19
**jbrollier@ebglaw.com** [1] - 2:10
**Jill** [2] - 1:15, 3:7
**job** [1] - 20:3
**joined** [2] - 6:10, 8:4
**Jonathan** [2] - 2:7, 3:10
**jpetrie@ebglaw.com** [1] - 1:18
**Judicial** [1] - 28:10
**jurisdiction** [1] - 11:15

**K**

**keep** [1] - 9:23
**Kettering** [7] - 3:4, 13:15, 15:3, 15:11, 17:4, 17:16, 17:18
**KETTERING** [2] - 1:3, 1:4
**Kettering's** [3] - 11:6, 11:13, 13:16
**kicked** [1] - 13:18
**knowledge** [1] - 16:16
**known** [2] - 16:17

**L**

**last** [3] - 8:16, 22:9, 26:5
**law** [12] - 9:20, 10:11, 11:17, 12:6, 12:23, 13:7, 13:11, 13:13, 15:12, 19:13, 20:22, 23:6
**Law** [2] - 2:12, 2:13
**lawfully** [1] - 19:12
**lawyer** [2] - 13:20, 14:1
**lawyers** [3] - 11:6, 13:18, 20:17
**layers** [1] - 20:6
**learned** [1] - 6:15
**least** [1] - 8:16
**LeFebvre** [3] - 6:15, 7:7, 7:12
**LeFebvre's** [1] - 6:18
**Legal** [1] - 2:2
**legal** [1] - 9:10
**legally** [1] - 19:12
**legitimately** [2] - 19:22, 26:18
**Leon** [2] - 2:2, 3:8
**less** [2] - 19:10
**letter** [4] - 7:14, 7:16, 16:21
**liability** [1] - 20:21

**life** [1] - 26:19
**litigation** [7] - 4:17, 6:10, 10:5, 13:12, 13:16, 14:5, 14:11
**LLC** [2] - 6:20, 7:11
**local** [2] - 21:7, 23:9
**look** [1] - 16:8
**looking** [3] - 4:17, 12:17, 16:7
**loyalty** [3] - 16:8, 17:18, 17:20

**M**

**malpractice** [2] - 10:15, 20:3
**mark** [1] - 24:4
**Mary** [3] - 1:20, 1:21, 3:9
**MARY** [1] - 1:7
**material** [3] - 14:7, 14:9, 16:23
**materially** [3] - 10:9, 13:22, 14:11
**matter** [14] - 7:18, 7:25, 8:3, 8:6, 11:1, 11:8, 11:18, 17:4, 17:21, 18:23, 20:22, 23:23, 25:5, 28:9
**matters** [2] - 11:5, 18:21
**McGinnis** [3] - 15:10, 16:11, 20:20
**mean** [4] - 5:2, 7:24, 12:13, 25:1
**means** [1] - 19:21
**meant** [1] - 12:15
**meanwhile** [2] - 10:21, 15:1
**meat** [1] - 12:18
**mechanical** [1] - 2:18
**mediation** [8] - 4:19, 4:20, 5:19, 5:21, 6:12, 7:4, 11:11, 14:24
**medical** [1] - 3:15
**memorandum** [1] - 21:2
**mentioned** [1] - 5:17
**mere** [1] - 16:6
**merely** [1] - 13:19
**merits** [4] - 4:17, 5:1, 5:24, 11:12
**might** [4] - 5:6, 7:8, 11:3, 20:2
**minutes** [1] - 26:20
**misdeeds** [1] - 16:22
**Miss** [2] - 16:18, 19:9
**moment** [5] - 12:4, 21:15, 21:18, 22:21,

22:24
**Montgomery** [1] - 2:3
**month** [3] - 11:16, 13:6, 18:25
**morning** [2] - 22:5, 22:6
**most** [1] - 15:17
**motion** [43] - 4:13, 4:25, 8:17, 9:1, 9:9, 9:17, 9:19, 10:13, 10:17, 10:19, 10:21, 10:25, 11:3, 11:6, 12:2, 12:5, 12:8, 12:11, 12:23, 13:10, 14:18, 14:20, 15:1, 15:3, 15:6, 15:17, 16:2, 16:7, 16:15, 18:15, 18:24, 19:2, 19:3, 19:6, 21:2, 21:3, 23:4, 23:5, 25:7, 25:19, 25:21, 25:25, 26:3
**motions** [4] - 4:5, 4:21, 9:25, 25:18
**move** [2] - 15:15, 23:22
**MR** [33] - 3:21, 4:6, 5:2, 5:5, 5:15, 5:18, 5:25, 6:2, 6:7, 7:10, 9:13, 9:22, 10:13, 12:12, 12:19, 12:22, 13:1, 23:12, 23:16, 23:20, 24:2, 24:5, 24:7, 24:10, 24:16, 24:20, 25:5, 25:14, 26:6, 26:13, 26:21, 26:25, 27:4
**MS** [25] - 3:13, 3:17, 7:21, 7:23, 8:2, 8:5, 8:8, 9:16, 10:12, 11:21, 15:21, 19:17, 20:9, 20:12, 21:5, 21:9, 21:13, 21:16, 21:19, 21:22, 23:14, 24:18, 24:24, 25:3, 26:9
**mtfoster@ trinitylawllc.com** [1] - 1:23
**multifactorial** [1] - 3:25
**multiplicity** [1] - 8:23

## N

**name** [1] - 22:9
**near** [1] - 15:16
**necessary** [1] - 20:16
**need** [3] - 4:10, 6:4, 6:9

**needed** [1] - 25:9
**needs** [1] - 8:25
**NETWORK** [1] - 1:4
**never** [2] - 8:14, 18:22
**nevertheless** [1] - 16:7
**new** [5] - 4:23, 5:9, 6:21, 14:1, 18:1
**next** [4] - 12:9, 12:14, 23:24, 25:11
**NO** [1] - 1:6
**noon** [6] - 22:7, 22:17, 22:22, 23:2, 23:11, 24:9
**note** [1] - 7:10
**nothing** [8] - 8:12, 13:7, 18:19, 24:20, 24:24, 25:15, 26:9, 26:25
**number** [6] - 8:8, 8:11, 19:23, 20:15, 21:17
**numerous** [1] - 4:5

## O

**obviously** [1] - 11:7
**October** [6] - 1:12, 3:1, 4:13, 10:24, 14:20, 16:3
**OF** [3] - 1:1, 1:9, 28:1
**offered** [2] - 7:16, 25:23
**office** [1] - 3:23
**Official** [1] - 28:3
**OFFICIAL** [1] - 28:15
**OHIO** [1] - 1:1
**Ohio** [7] - 1:17, 1:22, 2:4, 2:9, 2:16, 17:8, 28:5
**once** [6] - 5:12, 14:21, 18:5, 18:22, 25:24
**one** [12] - 4:9, 8:2, 8:8, 8:11, 13:20, 18:7, 18:23, 19:20, 20:15, 20:16, 21:11, 23:3
**operate** [1] - 19:18
**opinion** [1] - 5:2
**opportunities** [1] - 19:11
**opportunity** [3] - 4:4, 4:7, 12:7
**oppose** [2] - 9:21, 9:22
**opposite** [1] - 15:25
**opposition** [2] - 8:10, 19:25
**orally** [2] - 12:7, 25:17
**order** [11] - 6:25, 8:10, 9:11, 12:3, 20:4, 20:24, 21:8, 21:10,

23:4, 23:8, 25:10
**originally** [1] - 15:22
**ought** [4] - 13:24, 14:1, 15:17, 24:15
**overriding** [1] - 19:8
**overrule** [3] - 9:24, 14:18, 15:17
**overruled** [4] - 9:25, 11:2, 12:22, 25:17
**own** [5] - 9:3, 17:7, 17:15, 19:9, 26:19
**owned** [2] - 6:21, 7:11

## P

**p.m** [1] - 27:5
**Pacer** [1] - 3:25
**Page** [1] - 15:10
**page** [1] - 28:9
**parcel** [1] - 16:23
**part** [2] - 16:23, 21:7
**participating** [1] - 13:6
**participation** [1] - 17:6
**parties** [6] - 4:10, 6:10, 7:1, 7:7, 11:14, 14:21
**partners** [4] - 10:11, 10:15, 13:13, 20:22
**Party** [1] - 2:6
**party** [23] - 3:9, 3:10, 6:16, 8:15, 10:4, 10:22, 10:23, 11:5, 13:3, 13:10, 13:21, 14:11, 14:19, 14:22, 15:6, 16:1, 16:12, 16:24, 17:13, 17:16, 17:24, 18:2
**pause** [2] - 21:20, 23:1
**PC** [2] - 1:16, 2:7
**pending** [6] - 9:1, 10:18, 17:17, 18:25, 19:1, 19:6
**people** [3] - 8:4, 18:14, 24:12
**perhaps** [2] - 7:2, 9:10
**period** [1] - 7:25
**permit** [2] - 17:2, 19:17
**person** [1] - 26:14
**personal** [1] - 9:3
**personally** [2] - 4:2, 8:20
**Petrie** [10] - 1:15, 3:7, 6:4, 9:9, 15:10, 16:10, 20:19, 23:10, 24:14, 26:5
**PETRIE** [6] - 6:7, 7:10, 9:13, 23:12, 24:16,

26:6
**phone** [3] - 4:9, 26:14, 26:16
**place** [1] - 15:24
**placed** [3] - 10:9, 18:23, 19:24
**places** [1] - 17:6
**Plaintiff** [7] - 1:5, 1:14, 3:7, 3:9, 20:24, 21:11, 25:18
**Plaintiff's** [5] - 6:17, 23:6, 25:19, 26:1
**plan** [2] - 9:21, 9:22
**pleadings** [4] - 4:4, 4:21, 5:3, 15:2
**plethora** [3] - 7:25, 8:17, 9:5
**point** [2] - 12:16, 14:24
**position** [15] - 6:6, 6:8, 7:4, 9:6, 10:9, 11:10, 13:22, 13:23, 14:12, 19:24, 20:17, 23:23, 23:24, 25:8, 25:12
**positions** [1] - 5:20
**possibility** [1] - 4:9
**possible** [1] - 4:17
**posture** [1] - 13:8
**postured** [1] - 15:15
**potential** [3] - 15:15, 16:11, 17:21
**prejudice** [2] - 25:22, 26:1
**preliminary** [7] - 4:13, 4:16, 4:25, 5:8, 5:17, 5:23, 5:24
**premature** [1] - 14:24
**prepared** [1] - 12:10
**Present** [1] - 2:11
**present** [3] - 12:13, 13:19, 14:19
**PRESIDING** [1] - 1:11
**pretty** [1] - 11:19
**previous** [2] - 9:25, 15:9
**previously** [1] - 9:25
**principle** [1] - 17:13
**principles** [1] - 19:8
**privilege** [2] - 13:12, 14:14
**problem** [2] - 8:9, 8:15
**proceed** [1] - 14:18
**Proceedings** [2] - 2:18, 3:2
**PROCEEDINGS** [1] - 1:9
**proceedings** [2] - 9:7, 28:8
**process** [1] - 4:1

**produced** [1] - 2:19
**Professional** [2] - 17:8, 19:7
**promote** [2] - 20:20, 20:21
**prompted** [1] - 14:16
**proof** [1] - 18:17
**proper** [1] - 9:10
**protect** [2] - 7:2, 13:16
**protective** [4] - 20:24, 21:8, 21:10, 23:8
**prove** [1] - 5:20
**pursuant** [2] - 4:15, 28:6
**put** [3] - 14:12, 24:4, 25:24

## Q

**questions** [1] - 20:14
**quickly** [1] - 22:1
**quite** [1] - 15:25

## R

**rather** [2] - 10:6, 18:20
**reach** [2] - 6:25, 25:10
**reached** [1] - 8:10
**read** [1] - 5:3
**Reading** [1] - 1:21
**reading** [1] - 5:5
**reality** [1] - 19:6
**really** [4] - 7:7, 14:17, 15:4, 20:14
**Realtime** [1] - 28:3
**REALTIME** [1] - 28:15
**reason** [1] - 10:2
**reasonable** [1] - 15:8
**reasons** [3] - 6:13, 8:6, 15:16
**received** [1] - 16:14
**recent** [1] - 15:17
**recognizing** [1] - 9:4
**recollection** [1] - 25:25
**reconvene** [1] - 25:10
**recorded** [1] - 2:18
**records** [2] - 3:15, 6:19
**referring** [1] - 21:10
**refiling** [1] - 25:22
**regarding** [2] - 7:25, 17:3
**regardless** [2] - 17:10, 20:5
**regulations** [1] - 28:10
**relates** [1] - 7:12
**relevant** [1] - 6:9
**remain** [1] - 15:10
**remember** [1] - 10:2

**renewed** [1] - 26:3
**reply** [2] - 12:8, 15:20
**reported** [1] - 28:8
**Reporter** [2] - 2:14, 28:4
**REPORTER** [2] - 28:1, 28:15
**represent** [6] - 7:8, 15:7, 15:11, 17:4, 18:13, 20:4
**representation** [1] - 18:5
**represented** [1] - 13:15
**representing** [5] - 3:9, 10:4, 14:5, 16:5, 18:10
**request** [1] - 8:22
**Research** [3] - 6:20, 6:23, 7:11
**resolution** [1] - 15:15
**resolve** [1] - 7:18
**resources** [1] - 19:10
**respect** [2] - 8:6, 15:22
**respond** [2] - 10:16, 12:5
**responded** [3] - 7:15, 7:19, 9:16
**response** [1] - 9:20
**results** [1] - 15:14
**review** [1] - 4:4
**Rice** [1] - 2:14
**RICE** [1] - 1:11
**rise** [2] - 10:3, 14:13
**Road** [2] - 1:21, 2:3
**roll** [1] - 26:5
**RPR** [2] - 2:14, 28:15
**rule** [1] - 11:8
**Rule** [1] - 4:15
**ruled** [1] - 12:2
**rules** [2] - 21:7, 23:9
**Rules** [2] - 17:8, 19:7
**ruling** [2] - 25:23, 26:3
**Russell** [1] - 2:12

**S**

**s/Caryl** [1] - 28:14
**safe** [1] - 27:3
**SANDRA** [1] - 1:7
**Sandra** [2] - 2:1, 3:4
**scope** [1] - 25:7
**SCOTT** [22] - 1:7, 7:21, 7:23, 8:2, 8:5, 8:8, 9:16, 10:12, 11:21, 15:21, 19:17, 20:9, 20:12, 21:5, 21:9, 21:13, 21:16, 21:19, 21:22, 23:14,

24:24, 25:3
**Scott** [22] - 1:20, 1:21, 3:8, 3:9, 7:22, 7:23, 9:8, 10:4, 12:7, 12:21, 13:22, 13:25, 14:12, 14:16, 15:20, 20:10, 21:1, 21:21, 23:7, 24:23, 25:19, 25:21
**Scott's** [3] - 12:11, 25:13, 25:19
**Second** [1] - 2:15
**secondly** [3] - 8:13, 20:18, 23:5
**secrets** [2] - 6:18, 7:3
**Section** [1] - 28:6
**secure** [1] - 6:10
**security** [1] - 13:16
**see** [3] - 5:19, 7:1, 12:17
**seeking** [1] - 10:18
**seeks** [1] - 10:13
**seem** [2] - 26:18, 26:19
**self** [2] - 16:9, 17:15
**self-interest** [2] - 16:9, 17:15
**sent** [3] - 3:22, 6:17, 7:14
**sentencing** [2] - 22:6, 22:14
**separate** [1] - 21:23
**September** [1] - 12:24
**serious** [1] - 20:18
**served** [1] - 14:17
**set** [5] - 4:12, 5:11, 11:25, 22:19, 26:15
**several** [2] - 4:8, 13:1
**shoe** [1] - 14:1
**short** [1] - 5:9
**shrouded** [1] - 13:11
**sign** [1] - 21:8
**simply** [1] - 14:4
**sink** [1] - 19:14
**situation** [2] - 9:5, 16:2
**sizes** [1] - 14:3
**Smerbeck** [1] - 2:13
**soon** [1] - 3:24
**sorry** [1] - 25:2
**SOUTHERN** [1] - 1:1
**Southern** [1] - 28:5
**speaking** [1] - 24:2
**spend** [1] - 11:16
**spoken** [1] - 4:8
**standstill** [10] - 4:11, 6:14, 6:25, 8:10, 9:11, 11:14, 12:3, 21:22, 21:23, 23:4
**start** [1] - 6:21

**started** [1] - 8:19
**starts** [1] - 22:15
**statement** [1] - 24:3
**States** [3] - 28:4, 28:6, 28:11
**STATES** [1] - 1:1
**stay** [1] - 27:3
**stealing** [1] - 14:8
**steam** [1] - 15:5
**stenographically** [1] - 28:8
**stenography** [1] - 2:18
**step** [1] - 4:20
**stickler** [1] - 23:18
**still** [3] - 8:19, 19:25, 20:2
**straight** [2] - 4:16, 4:25
**Street** [3] - 1:16, 2:8, 2:15
**stricken** [1] - 19:5
**strike** [3] - 10:14, 10:18, 15:2
**strikes** [1] - 11:2
**subject** [3] - 6:14, 11:14, 11:15
**submit** [1] - 3:21
**submitted** [2] - 8:22, 14:7
**submitting** [1] - 10:7
**substance** [1] - 3:11
**suggested** [2] - 4:12, 4:14
**Suite** [4] - 1:17, 1:22, 2:3, 2:8
**support** [1] - 20:17
**supported** [2] - 18:3, 18:18
**supports** [1] - 16:18
**supposed** [2] - 8:11
**supposedly** [1] - 18:10
**survived** [1] - 11:10

**T**

**TELEPHONE** [1] - 1:10
**Telephone** [1] - 27:5
**telephone** [1] - 11:25
**telephonically** [1] - 3:2
**tenable** [1] - 14:23
**term** [2] - 9:10, 15:16
**termination** [1] - 14:8
**THE** [67] - 1:1, 1:1, 1:11, 3:3, 3:14, 3:18, 4:3, 4:8, 5:4, 5:6, 5:16, 5:22, 6:1, 6:3, 7:5, 7:20, 7:22, 8:1,

8:3, 8:7, 9:8, 9:15, 9:18, 11:20, 11:22, 12:15, 12:20, 12:25, 15:19, 19:16, 20:8, 20:10, 20:13, 21:6, 21:11, 21:15, 21:17, 21:21, 21:25, 22:8, 22:11, 22:14, 22:16, 22:19, 22:21, 22:24, 23:2, 23:13, 23:15, 23:17, 23:22, 24:3, 24:6, 24:8, 24:11, 24:17, 24:19, 24:22, 25:1, 25:4, 25:12, 25:16, 26:7, 26:11, 26:16, 26:23, 27:2
**themselves** [3] - 4:21, 8:14, 14:6
**theory** [1] - 12:17
**they've** [1] - 14:6
**third** [21] - 3:9, 3:10, 6:16, 8:15, 10:22, 10:23, 11:5, 13:3, 13:10, 13:21, 14:19, 14:22, 15:6, 16:1, 16:12, 16:24, 17:16, 17:24, 18:2, 23:7
**Third** [1] - 2:6
**third-party** [18] - 3:9, 3:10, 10:22, 10:23, 11:5, 13:3, 13:10, 13:21, 14:19, 14:22, 15:6, 16:1, 16:12, 16:24, 17:16, 17:24, 18:2
**Third-Party** [1] - 2:6
**thoroughly** [1] - 5:13
**thoughts** [1] - 5:17
**three** [6] - 6:9, 6:13, 8:4, 19:25, 23:3
**throughout** [1] - 9:7
**Thursday** [10] - 12:1, 22:2, 22:5, 22:6, 22:12, 23:2, 23:19, 25:11, 26:4
**Title** [1] - 28:6
**today** [3] - 3:6, 9:24, 26:3
**together** [1] - 5:11
**top** [1] - 20:5
**Total** [4] - 6:20, 6:22, 7:8, 7:11
**toward** [1] - 18:14
**track** [1] - 9:24
**trade** [2] - 6:17, 7:3
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 2:18, 28:7, 28:9
**trial** [3] - 4:17, 5:24, 11:12

**tribunal** [1] - 17:8
**triple** [1] - 20:6
**TRO** [1] - 4:10
**true** [2] - 11:12, 28:7
**truth** [1] - 19:24
**try** [5] - 5:19, 5:21, 12:8, 18:20
**two** [7] - 3:11, 4:22, 5:8, 7:7, 8:5, 19:23, 20:14

**U**

**U.S** [1] - 2:15
**under** [3] - 6:14, 17:8, 21:13
**underlining** [1] - 16:12
**underlying** [1] - 10:7
**unfortunately** [3] - 7:15, 7:18, 14:2
**United** [3] - 28:4, 28:6, 28:11
**UNITED** [1] - 1:1
**unless** [3] - 10:24, 22:6
**unobjected** [1] - 23:8
**up** [4] - 15:4, 16:23, 24:12, 25:20
**upholding** [1] - 9:6
**utilized** [2] - 8:13, 18:19

**V**

**Vanessa** [1] - 6:15
**verification** [1] - 4:1
**versus** [1] - 3:4
**viable** [3] - 17:11, 17:12
**violation** [1] - 13:17
**VMLG** [1] - 6:18
**vs** [1] - 1:6

**W**

**Walter** [1] - 2:14
**WALTER** [1] - 1:11
**Wednesday** [4] - 12:1, 12:14, 22:2, 22:5
**week** [2] - 12:9, 23:25
**weekend** [1] - 27:3
**welcome** [5] - 3:18, 3:19, 24:22, 26:7, 26:11
**well-founded** [1] - 14:15
**Wellness** [4] - 6:20, 6:22, 7:8, 7:11
**West** [2] - 1:16, 2:8

WESTERN [1] - 1:2
wherein [1] - 8:20
whistle [1] - 8:19
whistleblower [4] -
  8:20, 16:4, 16:19,
  19:9
whole [2] - 18:6, 20:23
Wiest [1] - 2:12
willing [1] - 9:24
wishes [1] - 12:5
withstand [1] - 11:6
witness [2] - 10:6,
  14:13
witnesses [5] - 14:6,
  16:11, 16:25, 17:21,
  17:23
writing [2] - 15:5,
  16:20
written [4] - 12:13,
  13:19, 14:7, 25:20

## Y

yielded [1] - 15:14
yourself [1] - 5:13