IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KETTERING ADVENTIST HEALTHCARE

d/b/a KETTERING HEALTH NETWORK,

                  Plaintiff,

     vs.                          CASE NO. 3:25-cv-273

SANDRA COLLIER and MARY T. SCOTT,

                  Defendants.

TRANSCRIPT OF PROCEEDINGS

TELEPHONE CONFERENCE

PRESIDING:  THE HONORABLE WALTER H. RICE

DATE:  Friday, October 17, 2025

APPEARANCES:

For the Plaintiff:

By:  James G. Petrie, Esq.
     Jill K. Bigler, Esq.
     Epstein, Becker & Green, PC
     250 West Street
     Suite 300
     Columbus, Ohio  43215
     (614) 872-2420
     jpetrie@ebglaw.com
     jbigler@ebglaw.com

For the Defendant Mary T. Scott:

By:  Mary T. Scott, Esq.
     7710 Reading Road
     Suite 102
     Cincinnati, Ohio  45237
     (513) 953-2499
     mtfoster@trinitylawllc.com

For the Defendant Sandra Collier:

By:   H. Leon Hewitt, Esq.
      Hewitt Foster Legal Group
      7659 Montgomery Road
      Suite 2
      Cincinnati, Ohio  45236
      (513) 382-6543
      hewittlegal9@gmail.com

For the EBG Third-Party Defendants:

By:   Jonathan Brollier, Esq.
      Epstein, Becker & Green, PC
      250 West Street
      Suite 300
      Columbus, Ohio  43215
      (614) 872-2412
      jbrollier@ebglaw.com

Also Present:

      Bethany Russell, Courtroom Deputy Clerk
      Daniel Wiest, Law Clerk
      James Smerbeck, Law Clerk

Court Reporter:   Caryl L. Blevins, RPR, CRR
                  Walter H. Rice Federal Building
                  U.S. Courthouse
                  200 W. Second Street
                  Dayton, Ohio  45402
                  (937) 512-1511
                  caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript produced by computer.

Friday, October 17, 2025

11:34 a.m.

(Proceedings had telephonically.)

THE COURT:  Well, good morning, all, and I apologize for the delay.  This is C3-25-273, Kettering Adventist Healthcare dba Kettering Health Network, Plaintiff and counterclaim Defendant, versus Sandra Collier and Mary Scott, versus Epstein, Becker & Green as third-party Defendants.  That's Epstein, Becker & Green, et al.

The appearances are, for the Plaintiff, James Petrie and Jill Bigler.  For Ms. Sandra Collins (sic), who is present on this call, counsel is Leon Hewitt.  Ms. Mary Scott represents herself as pro se, and third-party Defendants are represented by Jonathan Brollier.

As I recall, when we last spoke, we talked about a three-prong agenda for today.  One is, should Plaintiff's motion for protective order be sustained; secondly, a motion to disqualify filed by Ms. Scott against the law firm of Epstein, Becker & Green; and third, whether the standstill agreement should be qualified.

Yesterday, and I hope that you have both received and reviewed the decisions, I overruled the motion to disqualify the law firm and indicated in a separate portion of the filing that I felt the standstill agreement needed no modification or clarification.

That leaves the question of the protective order, and I note that it was initially Ms. Scott's motion on behalf of herself and counterclaim and third-party Plaintiff for a protective order.  Her memorandum was filed at docket 79 on October 16th, a motion -- and her motion opposed the entering of the protective order.

I note that after, you filed this morning at docket 83 a memorandum also opposing the entry of a protective order.

Mr. Petrie, assuming that you have both received and reviewed the filings of Ms. Scott and Mr. Hewitt, I would ask you to briefly argue in the nature or the form of an oral reply memorandum or a memoran -- yes, an oral reply memorandum.  Please proceed.

MR. PETRIE:  Thank you, Your Honor.  First of all, Mr. Hewitt and Ms. Scott's memorandum in opposition are not timely and should be stricken.  The Court ordered that the Defendants have seven calendar days from the filing of our motion for entry and protective order.  We filed it on September 18th.  That motion -- they had until October 3rd to oppose it, and neither parties did -- did so until yesterday or today.

Assuming that's not well taken, Your Honor, as to Ms. Scott's memorandum in opposition, she appears to be making legal arguments upon -- on behalf of her former

client, Ms. Collier.

She argues that this is a whistleblower case, but Ms. Scott makes no claims that she is a whistleblower or that she has confidential information to -- of Kettering or Kettering's sponsors, so her -- her opposition, I don't -- we argue that she doesn't have standing to oppose the motion on that basis.

If she does have confidential information of Kettering and trade secrets, we ask that she return them to Kettering since she's no longer allowed to possess them in light of her disqualification to be Ms. Collier's lawyer. Hopefully Ms. Scott during this hearing will clarify whether or not she has those documents and she will comply with that.

Generally, as to both of the memorandums in opposition, they -- they both conflate the sealing of judicial records with protective orders governing discovery.

As you know, Your Honor, protective orders are regularly granted to protect confidential information and trade secrets.  I'm sure you've had the experience of -- of having a great many of litigants come together for the protective order, and we have shown good cause for the -- for the granting of the protective order, both in our complaint and in the protective order and in our motion.

We have very particularized allegations which set

forth that there's a great many documents that Ms. Scott took that are indeed protected. They're trade secrets and confidential to her and in violation of her confidentiality agreement with us, and --

THE COURT: Mr. Petrie, forgive the interruption. You've talked in terms --

MR. PETRIE: Sure.

THE COURT: -- of documents that Ms. Scott took. Did you mean her or Ms. Collier?

MR. PETRIE: I'm sorry. I meant -- I meant Ms. Collier.

THE COURT: All right. Go ahead, sir.

MR. PETRIE: Thank you for allowing me to correct that, Your Honor. The other point we'd like to make, Your Honor, is that we have the standstill agreement in which Ms. Collier has already agreed that she will -- she's enjoined from using, disclosing, and destroying any confidential information or trade secrets of -- of Kettering or the client -- the clinical trial sponsors, which she has -- which she has.

So this is just a logical extension of the -- of the standstill agreement. This allows us to exchange discovery under protective orders. It has ways in which to make arguments to the Court if there is a dispute about whether something falls within the protective order, and it

shouldn't be lost on the Court, Your Honor, that in the discovery responses that Ms. Collier made when we were permitted to do our initial discovery, she refused to provide documents without an appropriate protective order.

So it appears to -- to us, Your Honor, that they want the protection of a protective order when it's convenient for them but they don't want it for us, and so we think that that's a -- an important, you know, consideration as well.

They spend a lot of their time in -- in their memorandum in opposition attempting to argue that -- that there are no trade secrets and, therefore, there's no need for the protective order, but addressing the merits of the claim is -- is premature.

What we have is we have -- we have shown good cause that we have trade secrets and confidential information that needs to be protected in this case, and their -- their attempts to argue it now are -- are premature.

There are a number of statements in -- in Ms. Collier's memorandum in opposition that -- that we would like to, if the Court does not grant the motion, the ability to file a reply to address all of them, but with the short time in which we had to take a look at it, we did not have the -- the ability to research it properly and provide a

most cogent response.

THE COURT: All right. Thank you, Mr. Petrie.

Ms. Scott, first you and then, Mr. Hewitt, no more than five minutes to respond and then I'll make a ruling.

Ms. Scott? Ms. Scott, are you there? Ms. Scott?

Beth, do we have all concerned still on the line or have we dropped someone?

COURTROOM DEPUTY CLERK: I cannot tell. I can try to reach out to Ms. Scott with the number that I have from the docket. She was on.

THE COURT: I'm certain --

MS. SCOTT: My apologies, Your Honor. I disconnected prematurely. This is Ms. Scott.

THE COURT: Very good. Good morning, Ms. Scott. I will give you a maximum of five minutes to respond to Mr. Petrie and then I will give Mr. Hewitt the same.

Please proceed. Ms. Scott?

MS. SCOTT: Good morning, Your Honor.

THE COURT: Good morning.

MS. SCOTT: Yes, sir.

THE COURT: Have you heard --

MS. SCOTT: Good morning. I had placed -- yes, sir. I had placed my phone on mute to eliminate background noises, so my apologies to the Court.

THE COURT: None necessary, but please proceed.

MS. SCOTT:  Yes, sir.  The protective order was not addressed by us initially.  It was addressed by Ms. Bigler on behalf of Kettering.  That's first and foremost.

Secondly, when I addressed it, I addressed it to the emergency TRO, so my response to the protective order was timely, and it was actually before she filed it because she just had emailed it to me, but when I did my emergency order, I addressed several matters, and the Court unilaterally made the decision to disclose -- or foreclose that entire motion.  So my response was timely, sir.  I would like to make that correction.

Secondly, with respect to whether or not I have standing, my -- I have standing based upon the fact that my connection to Ms. Collier is what this Court decided caused my disqualification.

Because of that, I have every right to address the issues concerning whether or not that protective order should have been put in place.

One argument that I would like to bring to the forefront, Your Honor, is the fact that because this matter was filed publicly, the complaint against myself as well as Ms. Collier was done in a public forum, it was not sealed, there is a presumption that all matters should be equally -- I should be able to address that issue in an open forum

because it's a defense to the allegations that were lodged against me personally irrespective of the allegations against Ms. Collier.

So to the re -- to the idea that I don't have standing, I would disagree. Specifically since they made me a codefendant, that would make me have relevant standing to argue any matter that would con -- that would affect me in this matter.

With respect to discovery, Your Honor stated that with respect to discovery, nonresponsive boilerplate responses would not be tolerated at a prior hearing, yet in good faith myself, we have entered respective responses to discovery, unlike the Plaintiffs in this matter that have responded to absolutely, positively nothing. They have provided no documentation at all other than blanket allegations.

There was not one trade secret or confidential communication -- information that they are insisting upon that is -- has been violated, number one; number two, that has been disseminated to any outside party, as well the fact that any clinical trial is public knowledge on researchclinicaltrials.gov (sic).

It does not constitute trade secrets, so to continue to put forth that same argument regarding trade secrets that does not exist is a falsehood that has to be

addressed, whether it -- it lends to -- tends to the merits or not, because of the fact that it is central to the issues and our personal defenses regarding this matter, which makes it very relevant.

It's not meant to be confidential. It is meant to be public. That is why the regulatory considerations are in place, so that there is a spirit of transparency. That's irrespective of the fact that there has been no dissemination.

I was counsel of record, prior to my being disqualified, for Ms. Collier. Of course I would have information regarding the matter of this case.

I respect the Court's decision with regard to my disqualification, yet I still maintain a disagreement because there -- I have no pertinent information outside of that which was put on the record by the Plaintiffs themselves, that's it.

It was a pretrial only declaration, and a pretrial declaration does not make me a necessary witness for trial purposes. That's the status of the law, Your Honor, and my most recent clarification and supplemental motion that I filed on Monday gives the Court the law supporting that position.

So at this point, I will leave it there, sir.

THE COURT: Thank you, Ms. Scott.

Mr. Hewitt?

MR. HEWITT:  Thank you, Your Honor.  First and foremost, I just want to remind the Court that this is a whistleblower case.

In addition to that, when I have a chance -- had a chance to read the pleadings and what's been filed with the Court, we think the request for protective order is overly broad, and to seek out a blanket sealing of the record, if anything, it should be very specific as to what it is that they're trying to say that my client had taken and/or hid from them.

First of all, my client has over 25 years' experience in pharmaceutical, medical device, and clinical research regulatory compliance.  She was hired to run a department that was conducting clinical trials.

When I had talked to my client, she had also -- she had also indicated to me that when discovery was sent to the Plaintiffs, there -- it -- the results were nonresponsive.

So when they're trying to say they want to, you know, cut out or have my client not disclose anything, she -- first and foremost, she does not have any trade secrets to disclose.

Because of her position and knowledge, she had basically set up a system where she has to save data for --

for federal reasons, such as she is a certified industry professional, so she is aware that when it comes to proper archiving of any type of data and records, she is required to under federal law. So she is not trying to secretly steal anything at all.

And because she reported that the -- that the Plaintiff's client was not following the rules of proper documentation, archiving, basically following the law, they immediately sought to terminate her as a result of her pointing out these reasons.

So again, there is no trade secrets or confidential information that my client does have. Clinical trials data are federally mandated public information. Any type of clinical trial registration results are required under 42 USC Section 282(j) and 42 CFR part 11.

We believe that Plaintiff has not met the rule of a good cause standard. Just to leave a blanket secretly -- blanket -- blanket secrecy is foreclosed by the Sixth Circuit's presumption of openness, and then because this is regarding public health, transparency issues should be paramount.

So we just believe that -- that the -- the Plaintiff's request for a broad protection is just a little -- is over too much. There should be no automatic sealing.

This is, again, a whistleblower car -- car -- whistleblower case, and so we are asking the Court to deny the motion for a protective order, especially when it involves public safety, in a word.

THE COURT: All right. Thank you, Mr. Hewitt.

I've heard the arguments of counsel and -- both orally and in the Plaintiff's situation as well as Defendants', I've considered their arguments in writing.

I believe, respectfully, that Defendants have conflated the two-step process that has to be followed. The first step is the drafting of a protective order, which is not an automatic ceiling, C E I L I N G.

The protective order as drafted merely begins the discovery process and sets forth steps to follow should either party or any third party desire to utilize a discovery item in support of a motion or any other good and sufficient reason.

This is not an automatic sealing. This is not concluding that these documents should be ultimately deemed trade secret or confidential. Indeed, it would be impossible to make such a determination now, particularly given that I've heard these documents described but I certainly haven't done the scrutiny of each document that would be required should I ultimately determine that this document should or should not be made public, should or

should not be sealed.

So my only quarrel with Defendants' argument is that it is more directed to step two, which I will say should be titled what to do when the discovered item is sought to be made public by one party or the other.

This is a perfectly proper protective order. It complies, to the extent the judges of this district can do so, with the Sixth Circuit opinion in Shane versus Blue Cross, and indeed, I don't see how there can be any discovery exchanged in a case like this without such a protective order.

I see no prejudice to Defendants should this protective order issue because it allows Defendants, upon -- upon proper notice, which is required by the protective order, to mount any argument against the public disclosure or nonpublic disclosure of a given document or documents.

So this protective order will be signed by the Court and will be filed yet this afternoon. The Plaintiff's motion for protective order is sustained, and I would just add one thing if I've not done so already.

Whether something, for example, is or is not a trade secret, whether something should be sealed as confidential or not, these are issues that, pursuant to the Shane case, can be raised not at the discovery phase but when these documents are sought by one side or the other to

be made public or should not be made public.

Give me one moment.

(Brief pause.)

THE COURT: And I would add, what we all know is that items exchanged in discovery are not to be publicly set forth, described in detail on the docket, until that particular document or documents have gone through phase two, that being whether a given discovered document, pursuant to the protective order, should or should not be made public. That ends the discussion of whether the protective order should be filed.

I'm interested still in mediation, but I'm also interested in simplifying, in the good sense, this case to the extent possible. I realize that -- give me a moment to wade through some of this paper.

(Brief pause.)

THE COURT: I realize that Plaintiff/counterclaim Defendants have moved to dismiss certain aspects of the first amended counterclaims, one allegation being that liability is foreclosed against them because of the litigation privilege. That was filed at docket 73 on October 6th.

I'm also aware that the law firm intends to file such a motion on or before October 29th, and certainly Defendants have the right to file a memorandum contra to the

law firm's motion seeking I'm going to call it nonliability, for a better -- for want of a better term, on the litigation privilege, and they're certainly -- Defendants/counterclaim Plaintiffs are entitled to file a response to the law firm's motion on that subject due on October 29th.

These -- the litigation privilege is a matter of law, a question of law. I don't believe as I sit here now, and I could be proven wrong, but I don't believe as of now that we need to develop a factual record that would enable me to render a legal decision on the applicability of the litigation privilege.

Proceeding under that assumption, I am going to give Plaintiff the chance to supplement the portion of its motion to dismiss, that part of the counterclaims that raise the litigation privilege.

I want that done by October 29th, which is the same date, at the latest, that I will receive the law firm's motion on the litigation privilege, and of course, responses can be filed, pursuant to the rules of court.

MS. SCOTT: Your Honor --

THE COURT: I intend to speak with a -- our mediator, and I will ask him to set a mediation for approximately six weeks from now, when I have ruled on the litigation privilege of the motions to dismiss.

I realize our timetable is delayed. I regret

that. Too much time has been taken up dealing with the I'll say euphemistically, the pleadings as originally drafted.

Mr. Petrie, first you and then Ms. Bigler, then, of course, Ms. Scott, Mr. Hewitt, and then Mr. Brollier, comments on what I have said.

Mr. Petrie?

MR. PETRIE: Your Honor, we think that drafting the -- setting up the litigation privilege in the manner which -- which you would like it addressed works for us, Your Honor.

THE COURT: All right. Thank you, Mr. Petrie.

Ms. Bigler, anything further?

MS. BIGLER: Nothing further, Your Honor. Thank you.

THE COURT: You're welcome.

Ms. Scott?

MS. SCOTT: Actually, Your Honor, yes. I would ask the Court, because we've had a motion to dismiss the complaint against us for approximately a month that has not been addressed --

THE COURT: Ms. Scott --

MS. SCOTT: -- and that --

THE COURT: Ms. Scott --

MS. SCOTT: Yes, sir.

THE COURT: -- I don't know why, but your voice is

coming across somewhat altered. I don't know whether you're too close to the phone or too far away.

I did hear you say you had a motion that has been pending, has not -- that has not been addressed. Go from there, if you would.

MS. SCOTT: Yes, sir. Is that -- am I clearer? Can the Court hear me?

THE COURT: Yes. Yes.

MS. SCOTT: Okay. My apologies, sir.

THE COURT: None necessary, please.

MS. SCOTT: There is -- I filed a motion to dismiss the com -- the entire complaint against myself and Ms. Collier when I was representing her. That has been pending for a month. That is dispositive.

As to whether or not they can claim litigation privilege based upon the specific argument that is made in our motion to dismiss their complaint, without a ruling on our motion, it -- it seems as though their litigation privilege is going to be skewed because it's going -- it's not -- it's not addressing the issue at bar, especially with regards to my counterclaims against them for their, you know, accusations against myself; therefore, I would -- I understand why they want to claim litigation privilege, and under normal circumstances, that might be the appropriate protocol, but I'm not sure if that is based upon our --

my -- my pending motion to dismiss the claim that we have filed to their complaint against us.

THE COURT:  All right.  Ms. Scott, it sounds to me, and correct me, if you wish -- it sounds to me that your motion could be utilized as a memorandum contra their claim of litigation privilege.

My suggestion is that, Mr. Petrie and, if this involves your client, Mr. Brollier, that you respond to Ms. Scott's motion if, in fact, it's directed to the ability to claim litigation privilege, in your filings that are due October 29th.

That makes certain, Ms. Scott, that your position will be -- be well considered.

Do you wish to respond to that?

MS. SCOTT:  Thank you, Your Honor, for considering that.  I will take that under advisement from the Court and act accordingly.

THE COURT:  All right.  Thank you.

Mr. Petrie, any concern with what Ms. Scott and I have just discussed and what I suggested?

MR. PETRIE:  No, Your Honor.

THE COURT:  Ms. Bigler?

MS. BIGLER:  No, Your Honor.

THE COURT:  All right.  Mr. Hewitt?

MR. HEWITT:  Yes, Your Honor.  As far as

everything that you had -- you, yourself, have discussed, no -- no problem.

I will just say, from talking to my client, you did bring up mediation, and I think my client is interested in that when that moment should come up. Other than that, nothing else to add, sir.

THE COURT: All right. Thank you, Mr. Hewitt.

Mr. Brollier?

MR. BROLLIER: Good afternoon, Your Honor. Thank you. We certainly will address the litigation privilege and other arguments in our to-be-filed motion to dismiss on behalf of the EBG third-party Defendants which is due on or before October 29th, so that -- that will certainly be front and center in our brief, but we have other arguments as well.

I intend to file a motion for leave to exceed the ordinary 20-page limit for our memorandum in support. I've -- I've asked counsel for the Defendants whether they would agree not to oppose that request for leave. I haven't heard back yet, but we will follow up on that this afternoon by email.

One -- one other matter that I wanted to clarify with the Court, if you could indulge a question, Your Honor?

THE COURT: Please.

MR. BROLLIER: In the order that you put on

yesterday addressing several matters, including overruling the motion to disqualify me and my colleagues from representing the EBG third-party Defendants, in the portion addressing the -- Ms. LeFebvre in Canada, you ordered the parties to submit briefings on jurisdictional issues pertaining to that person in Canada.

I don't think that there's a -- I don't think the EBG third-party Defendants themselves have a dog in that fight, and I did not intend to file a brief within 14 days on that point unless the Court requires briefing from EBG on the Canadian jurisdiction issue.

THE COURT: I will rely on -- let me back off that statement for a moment.

I cannot -- let me put it this way: If you feel that no response is necessary, then I'm not going to force you to file something that you feel is not needed, and I think that's the extent to which I can address your question, sir.

MR. BROLLIER: That's very reasonable. Thank you, Your Honor.

THE COURT: All right. We will journalize what was discussed today. If at any time you need -- any one of you needs to talk, just give Beth a call and we'll see that it happens. Meanwhile, I --

MR. PETRIE: Your Honor, before --

THE COURT:  Give me one moment.  Meanwhile, I will await your briefing.

Who just spoke up?

MR. PETRIE:  Mr. Petrie, Your Honor.

THE COURT:  Yes, sir.  Go ahead.

MR. PETRIE:  Just one housekeeping matter I thought might speed things along.  We sent an email to Mr. Hewitt -- Hewitt a couple days ago about the waiver of service, whether he would accept it or not.  We have not heard back from him.

The Court has, you know, ordered us to have perfected service in early November, and I just want to try to take one more thing off the docket, Your Honor.

THE COURT:  All right.  Thank you, Mr. Petrie.

Mr. Hewitt, your thoughts?

MR. HEWITT:  I do have the -- the document.  I signed it, and I will sign -- I will send it back today.

THE COURT:  All right.  Thank you, Mr. Hewitt.

Mr. Petrie, does that answer your question?

MR. PETRIE:  It sure does.  Thank you, Your Honor.

THE COURT:  All right.  There is one item I did not discuss, and that is Plaintiff's timeliness argument on the response to the motion for protective order.

I am going to conclude one of two things, either that the responses were timely or that that's an issue that

I choose not to consider.

We have conferred many times on the telephone. We have been searching for means to get this case on the right track. Part of the delay was occasioned by the motions to disqualify. It took a while, and I'm not criticizing anyone, for Mr. Hewitt to enter the case.

My concern, should I find that the memorandum contra the protective order filed by Ms. Scott and Mr. Hewitt to be untimely and, therefore, should I take the next step and strike it, I would be without their thinking on the matter of the protective order, which I think would benefit no party to this action.

If there is nothing else, I just want to wish you a good weekend, and call if I can be -- if you need to reach me. Thank you all.

MR. HEWITT: Thank you, Your Honor.

MS. COLLIER: Thank you, Your Honor.

MR. PETRIE: Thank you, Your Honor.

THE COURT: Bye-bye.

(Telephone conference concluded at 12:21 p.m.)

CERTIFICATE OF REPORTER

I, Caryl L. Blevins, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

s/Caryl L. Blevins_____
**CARYL L. BLEVINS, RPR, CRR**
FEDERAL OFFICIAL REALTIME COURT REPORTER

## 1

**102** [1] - 1:22
**11** [1] - 13:15
**11:34** [1] - 3:2
**12:21** [1] - 24:20
**14** [1] - 22:9
**16th** [1] - 4:5
**17** [2] - 1:12, 3:1
**18th** [1] - 4:20

## 2

**2** [1] - 2:3
**20-page** [1] - 21:17
**200** [1] - 2:15
**2025** [2] - 1:12, 3:1
**25** [1] - 12:12
**250** [2] - 1:16, 2:8
**28** [1] - 25:6
**282(j** [1] - 13:15
**29th** [5] - 16:24, 17:5, 17:16, 20:11, 21:13

## 3

**300** [2] - 1:17, 2:8
**382-6543** [1] - 2:4
**3:25-cv-273** [1] - 1:6
**3rd** [1] - 4:20

## 4

**42** [2] - 13:15
**43215** [2] - 1:17, 2:9
**45236** [1] - 2:4
**45237** [1] - 1:22
**45402** [1] - 2:16

## 5

**512-1511** [1] - 2:16
**513** [2] - 1:23, 2:4

## 6

**614** [2] - 1:18, 2:9
**6th** [1] - 16:22

## 7

**73** [1] - 16:21
**753** [1] - 25:6
**7659** [1] - 2:3
**7710** [1] - 1:21
**79** [1] - 4:5

## 8

**83** [1] - 4:8

**872-2412** [1] - 2:9
**872-2420** [1] - 1:18

## 9

**937** [1] - 2:16
**953-2499** [1] - 1:23

## A

**a.m** [1] - 3:2
**ability** [3] - 7:22, 7:25, 20:9
**able** [1] - 9:25
**above-entitled** [1] - 25:9
**absolutely** [1] - 10:14
**accept** [1] - 23:9
**accordingly** [1] - 20:17
**accusations** [1] - 19:22
**act** [1] - 20:17
**action** [1] - 24:12
**add** [3] - 15:20, 16:4, 21:6
**addition** [1] - 12:5
**address** [5] - 7:23, 9:17, 9:25, 21:10, 22:17
**addressed** [9] - 9:2, 9:5, 9:9, 11:1, 18:9, 18:20, 19:4
**addressing** [4] - 7:13, 19:20, 22:1, 22:4
**ADVENTIST** [1] - 1:3
**Adventist** [1] - 3:6
**advisement** [1] - 20:16
**affect** [1] - 10:7
**afternoon** [3] - 15:18, 21:9, 21:20
**agenda** [1] - 3:16
**ago** [1] - 23:8
**agree** [1] - 21:19
**agreed** [1] - 6:16
**agreement** [5] - 3:20, 3:24, 6:4, 6:15, 6:22
**ahead** [2] - 6:12, 23:5
**al** [1] - 3:9
**allegation** [1] - 16:19
**allegations** [4] - 5:25, 10:1, 10:2, 10:16
**allowed** [1] - 5:10
**allowing** [1] - 6:13
**allows** [2] - 6:22, 15:13
**altered** [1] - 19:1
**amended** [1] - 16:19
**answer** [1] - 23:19

**apologies** [3] - 8:12, 8:24, 19:9
**apologize** [1] - 3:5
**APPEARANCES** [1] - 1:13
**appearances** [1] - 3:10
**applicability** [1] - 17:10
**appropriate** [2] - 7:4, 19:24
**archiving** [2] - 13:3, 13:8
**argue** [5] - 4:12, 5:6, 7:11, 7:18, 10:7
**argues** [1] - 5:2
**argument** [6] - 9:20, 10:24, 15:2, 15:15, 19:16, 23:22
**arguments** [6] - 4:25, 6:24, 14:6, 14:8, 21:11, 21:14
**aspects** [1] - 16:18
**assuming** [2] - 4:10, 4:23
**assumption** [1] - 17:12
**attempting** [1] - 7:11
**attempts** [1] - 7:18
**automatic** [3] - 13:24, 14:12, 14:18
**await** [1] - 23:2
**aware** [2] - 13:2, 16:23

## B

**background** [1] - 8:23
**bar** [1] - 19:20
**based** [3] - 9:14, 19:16, 19:25
**basis** [1] - 5:7
**Becker** [5] - 1:16, 2:7, 3:8, 3:9, 3:19
**begins** [1] - 14:13
**behalf** [4] - 4:3, 4:25, 9:3, 21:12
**benefit** [1] - 24:12
**Beth** [2] - 8:6, 22:23
**Bethany** [1] - 2:12
**better** [2] - 17:2
**BIGLER** [2] - 18:13, 20:23
**Bigler** [6] - 1:15, 3:11, 9:3, 18:3, 18:12, 20:22
**blanket** [5] - 10:15, 12:8, 13:17, 13:18
**Blevins** [3] - 2:14, 25:3, 25:14
**BLEVINS** [1] - 25:15

**Blue** [1] - 15:8
**boilerplate** [1] - 10:10
**brief** [2] - 21:14, 22:9
**Brief** [2] - 16:3, 16:16
**briefing** [2] - 22:10, 23:2
**briefings** [1] - 22:5
**briefly** [1] - 4:12
**bring** [2] - 9:20, 21:4
**broad** [2] - 12:8, 13:23
**BROLLIER** [3] - 21:9, 21:25, 22:19
**Brollier** [5] - 2:7, 3:14, 18:4, 20:8, 21:8
**Building** [1] - 2:14
**bye** [2] - 24:19
**bye-bye** [1] - 24:19

## C

**C3-25-273** [1] - 3:5
**calendar** [1] - 4:18
**Canada** [2] - 22:4, 22:6
**Canadian** [1] - 22:11
**cannot** [2] - 8:8, 22:14
**car** [2] - 14:1
**Caryl** [2] - 2:14, 25:3
**CARYL** [1] - 25:15
**caryl_blevins@ohsd.uscourts.gov** [1] - 2:17
**CASE** [1] - 1:6
**case** [10] - 5:2, 7:17, 11:12, 12:4, 14:2, 15:10, 15:24, 16:13, 24:3, 24:6
**caused** [1] - 9:15
**ceiling** [1] - 14:12
**center** [1] - 21:14
**central** [1] - 11:2
**certain** [3] - 8:11, 16:18, 20:12
**certainly** [5] - 14:23, 16:24, 17:3, 21:10, 21:13
**CERTIFICATE** [1] - 25:1
**certified** [1] - 13:1
**certify** [1] - 25:5
**CFR** [1] - 13:15
**chance** [3] - 12:5, 12:6, 17:13
**choose** [1] - 24:1
**Cincinnati** [2] - 1:22, 2:4
**Circuit** [1] - 15:8
**Circuit's** [1] - 13:19
**circumstances** [1] - 19:24

**claim** [6] - 7:14, 19:15, 19:23, 20:1, 20:5, 20:10
**claims** [1] - 5:3
**clarification** [2] - 3:25, 11:21
**clarify** [2] - 5:12, 21:22
**clearer** [1] - 19:6
**Clerk** [3] - 2:12, 2:12, 2:13
**CLERK** [1] - 8:8
**client** [11] - 5:1, 6:19, 12:10, 12:12, 12:16, 12:21, 13:7, 13:12, 20:8, 21:3, 21:4
**clinical** [6] - 6:19, 10:21, 12:13, 12:15, 13:12, 13:14
**close** [1] - 19:2
**Code** [1] - 25:6
**codefendant** [1] - 10:6
**cogent** [1] - 8:1
**colleagues** [1] - 22:2
**Collier** [12] - 2:1, 3:7, 5:1, 6:9, 6:11, 6:16, 7:2, 9:15, 9:23, 10:3, 11:11, 19:13
**COLLIER** [2] - 1:7, 24:17
**Collier's** [2] - 5:11, 7:21
**Collins** [1] - 3:11
**Columbus** [2] - 1:17, 2:9
**com** [1] - 19:12
**coming** [1] - 19:1
**comments** [1] - 18:5
**communication** [1] - 10:18
**complaint** [6] - 5:24, 9:22, 18:19, 19:12, 19:17, 20:2
**compliance** [1] - 12:14
**complies** [1] - 15:7
**comply** [1] - 5:13
**computer** [1] - 2:19
**con** [1] - 10:7
**concern** [2] - 20:19, 24:7
**concerned** [1] - 8:6
**concerning** [1] - 9:18
**conclude** [1] - 23:24
**concluded** [1] - 24:20
**concluding** [1] - 14:19
**conducting** [1] - 12:15
**Conference** [1] - 25:11
**conference** [1] - 24:20
**CONFERENCE** [1] -

1:10
**conferred** [1] - 24:2
**confidential** [11] - 5:4, 5:8, 5:19, 6:3, 6:18, 7:16, 10:17, 11:5, 13:12, 14:20, 15:23
**confidentiality** [1] - 6:3
**conflate** [1] - 5:16
**conflated** [1] - 14:10
**conformance** [1] - 25:10
**connection** [1] - 9:15
**consider** [1] - 24:1
**consideration** [1] - 7:8
**considerations** [1] - 11:6
**considered** [2] - 14:8, 20:13
**considering** [1] - 20:15
**constitute** [1] - 10:23
**continue** [1] - 10:24
**contra** [3] - 16:25, 20:5, 24:8
**convenient** [1] - 7:7
**correct** [3] - 6:13, 20:4, 25:7
**correction** [1] - 9:12
**counsel** [4] - 3:12, 11:10, 14:6, 21:18
**counterclaim** [2] - 3:7, 4:3
**counterclaims** [3] - 16:19, 17:14, 19:21
**couple** [1] - 23:8
**course** [3] - 11:11, 17:18, 18:4
**court** [1] - 17:19
**Court** [21] - 2:14, 4:17, 6:24, 7:1, 7:22, 8:24, 9:9, 9:15, 11:22, 12:3, 12:7, 14:2, 15:18, 18:18, 19:7, 20:16, 21:23, 22:10, 23:11, 25:3, 25:4
**COURT** [38] - 1:1, 3:4, 6:5, 6:8, 6:12, 8:2, 8:11, 8:14, 8:19, 8:21, 8:25, 11:25, 14:5, 16:4, 16:17, 17:21, 18:11, 18:15, 18:21, 18:23, 18:25, 19:8, 19:10, 20:3, 20:18, 20:22, 20:24, 21:7, 21:24, 22:12, 22:21, 23:1, 23:5, 23:14, 23:18, 23:21, 24:19, 25:15

**Court's** [1] - 11:13
**Courthouse** [1] - 2:15
**COURTROOM** [1] - 8:8
**Courtroom** [1] - 2:12
**criticizing** [1] - 24:5
**Cross** [1] - 15:9
**CRR** [2] - 2:14, 25:15
**cut** [1] - 12:21

**D**

**d/b/a** [1] - 1:4
**Daniel** [1] - 2:12
**data** [3] - 12:25, 13:3, 13:13
**date** [1] - 17:17
**DATE** [1] - 1:12
**days** [3] - 4:18, 22:9, 23:8
**Dayton** [1] - 2:16
**dba** [1] - 3:6
**dealing** [1] - 18:1
**decided** [1] - 9:15
**decision** [3] - 9:10, 11:13, 17:10
**decisions** [1] - 3:22
**declaration** [2] - 11:18, 11:19
**deemed** [1] - 14:19
**Defendant** [3] - 1:20, 2:1, 3:7
**Defendants** [14] - 1:8, 2:6, 3:9, 3:14, 4:18, 14:9, 15:12, 15:13, 16:18, 16:25, 21:12, 21:18, 22:3, 22:8
**Defendants'** [2] - 14:8, 15:2
**Defendants/ counterclaim** [1] - 17:3
**defense** [1] - 10:1
**defenses** [1] - 11:3
**delay** [2] - 3:5, 24:4
**delayed** [1] - 17:25
**deny** [1] - 14:2
**department** [1] - 12:15
**DEPUTY** [1] - 8:8
**Deputy** [1] - 2:12
**described** [2] - 14:22, 16:6
**desire** [1] - 14:15
**destroying** [1] - 6:17
**detail** [1] - 16:6
**determination** [1] - 14:21
**determine** [1] - 14:24
**develop** [1] - 17:9
**device** [1] - 12:13

**directed** [2] - 15:3, 20:9
**disagree** [1] - 10:5
**disagreement** [1] - 11:14
**disclose** [3] - 9:10, 12:21, 12:23
**disclosing** [1] - 6:17
**disclosure** [2] - 15:15, 15:16
**disconnected** [1] - 8:13
**discovered** [2] - 15:4, 16:8
**discovery** [13] - 5:17, 6:23, 7:2, 7:3, 10:9, 10:10, 10:13, 12:17, 14:14, 14:16, 15:10, 15:24, 16:5
**discuss** [1] - 23:22
**discussed** [3] - 20:20, 21:1, 22:22
**discussion** [1] - 16:10
**dismiss** [8] - 16:18, 17:14, 17:24, 18:18, 19:12, 19:17, 20:1, 21:11
**dispositive** [1] - 19:14
**dispute** [1] - 6:24
**disqualification** [3] - 5:11, 9:16, 11:14
**disqualified** [1] - 11:11
**disqualify** [4] - 3:18, 3:23, 22:2, 24:5
**disseminated** [1] - 10:20
**dissemination** [1] - 11:9
**district** [1] - 15:7
**District** [2] - 25:4, 25:5
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**docket** [6] - 4:4, 4:8, 8:10, 16:6, 16:21, 23:13
**document** [6] - 14:23, 14:25, 15:16, 16:7, 16:8, 23:16
**documentation** [2] - 10:15, 13:8
**documents** [9] - 5:13, 6:1, 6:8, 7:4, 14:19, 14:22, 15:16, 15:25, 16:7
**dog** [1] - 22:8
**done** [4] - 9:23, 14:23, 15:20, 17:16
**drafted** [2] - 14:13, 18:2

**drafting** [2] - 14:11, 18:7
**dropped** [1] - 8:7
**due** [3] - 17:5, 20:10, 21:12
**during** [1] - 5:12

**E**

**early** [1] - 23:12
**EBG** [5] - 2:6, 21:12, 22:3, 22:8, 22:10
**either** [2] - 14:15, 23:24
**eliminate** [1] - 8:23
**email** [2] - 21:21, 23:7
**emailed** [1] - 9:8
**emergency** [2] - 9:6, 9:8
**enable** [1] - 17:9
**ends** [1] - 16:10
**enjoined** [1] - 6:17
**enter** [1] - 24:6
**entered** [1] - 10:12
**entering** [1] - 4:6
**entire** [2] - 9:11, 19:12
**entitled** [2] - 17:4, 25:9
**entry** [2] - 4:8, 4:19
**Epstein** [5] - 1:16, 2:7, 3:8, 3:9, 3:19
**equally** [1] - 9:24
**especially** [2] - 14:3, 19:20
**Esq** [5] - 1:15, 1:15, 1:21, 2:2, 2:7
**et** [1] - 3:9
**euphemistically** [1] - 18:2
**example** [1] - 15:21
**exceed** [1] - 21:16
**exchange** [1] - 6:22
**exchanged** [2] - 15:10, 16:5
**exist** [1] - 10:25
**experience** [2] - 5:20, 12:13
**extension** [1] - 6:21
**extent** [3] - 15:7, 16:14, 22:17

**F**

**fact** [6] - 9:14, 9:21, 10:20, 11:2, 11:8, 20:9
**factual** [1] - 17:9
**faith** [1] - 10:12
**falls** [1] - 6:25
**falsehood** [1] - 10:25

**far** [2] - 19:2, 20:25
**Federal** [2] - 2:14, 25:3
**federal** [2] - 13:1, 13:4
**FEDERAL** [1] - 25:15
**federally** [1] - 13:13
**felt** [1] - 3:24
**fight** [1] - 22:9
**file** [7] - 7:23, 16:23, 16:25, 17:4, 21:16, 22:9, 22:16
**filed** [16] - 3:18, 4:4, 4:7, 4:19, 9:7, 9:22, 11:22, 12:6, 15:18, 16:11, 16:21, 17:19, 19:11, 20:2, 21:11, 24:8
**filing** [2] - 3:24, 4:18
**filings** [2] - 4:11, 20:10
**firm** [3] - 3:18, 3:23, 16:23
**firm's** [3] - 17:1, 17:4, 17:17
**first** [9] - 4:15, 8:3, 9:3, 12:2, 12:12, 12:22, 14:11, 16:19, 18:3
**five** [2] - 8:4, 8:15
**follow** [2] - 14:14, 21:20
**followed** [1] - 14:10
**following** [2] - 13:7, 13:8
**FOR** [1] - 1:1
**force** [1] - 22:15
**foreclose** [1] - 9:10
**foreclosed** [2] - 13:18, 16:20
**forefront** [1] - 9:21
**foregoing** [1] - 25:7
**foremost** [3] - 9:4, 12:3, 12:22
**forgive** [1] - 6:5
**form** [1] - 4:12
**format** [1] - 25:9
**former** [1] - 4:25
**forth** [4] - 6:1, 10:24, 14:14, 16:6
**forum** [2] - 9:23, 9:25
**Foster** [1] - 2:2
**Friday** [2] - 1:12, 3:1
**front** [1] - 21:13

**G**

**generally** [1] - 5:15
**given** [3] - 14:22, 15:16, 16:8
**governing** [1] - 5:17

grant [1] - 7:22
granted [1] - 5:19
granting [1] - 5:23
great [2] - 5:21, 6:1
Green [5] - 1:16, 2:7, 3:8, 3:9, 3:19
Group [1] - 2:2

## H

Health [1] - 3:6
HEALTH [1] - 1:4
health [1] - 13:20
Healthcare [1] - 3:6
HEALTHCARE [1] - 1:3
hear [2] - 19:3, 19:7
heard [5] - 8:21, 14:6, 14:22, 21:20, 23:10
hearing [2] - 5:12, 10:11
held [1] - 25:8
hereby [1] - 25:5
herself [2] - 3:13, 4:3
Hewitt [18] - 2:2, 2:2, 3:12, 4:11, 4:16, 8:3, 8:16, 12:1, 14:5, 18:4, 20:24, 21:7, 23:8, 23:15, 23:18, 24:6, 24:9
HEWITT [4] - 12:2, 20:25, 23:16, 24:16
hewittlegal9@gmail.com [1] - 2:5
hid [1] - 12:10
hired [1] - 12:14
Honor [32] - 4:15, 4:23, 5:18, 6:14, 6:15, 7:1, 7:5, 8:12, 8:18, 9:21, 10:9, 11:20, 12:2, 17:20, 18:7, 18:10, 18:13, 18:17, 20:15, 20:21, 20:23, 20:25, 21:9, 21:23, 22:20, 22:25, 23:4, 23:13, 23:20, 24:16, 24:17, 24:18
HONORABLE [1] - 1:11
hope [1] - 3:21
hopefully [1] - 5:12
housekeeping [1] - 23:6

## I

idea [1] - 10:4
immediately [1] - 13:9
important [1] - 7:8
impossible [1] - 14:21

IN [1] - 1:1
including [1] - 22:1
indeed [3] - 6:2, 14:20, 15:9
indicated [2] - 3:23, 12:17
indulge [1] - 21:23
industry [1] - 13:1
information [10] - 5:4, 5:8, 5:19, 6:18, 7:17, 10:18, 11:12, 11:15, 13:12, 13:13
initial [1] - 7:3
insisting [1] - 10:18
intend [3] - 17:21, 21:16, 22:9
intends [1] - 16:23
interested [3] - 16:12, 16:13, 21:4
interruption [1] - 6:5
involves [2] - 14:4, 20:8
irrespective [2] - 10:2, 11:8
issue [5] - 9:25, 15:13, 19:20, 22:11, 23:25
issues [5] - 9:18, 11:2, 13:20, 15:23, 22:5
item [3] - 14:16, 15:4, 23:21
items [1] - 16:5

## J

James [3] - 1:15, 2:13, 3:10
jbigler@ebglaw.com [1] - 1:19
jbrollier@ebglaw.com [1] - 2:10
Jill [2] - 1:15, 3:11
Jonathan [2] - 2:7, 3:14
journalize [1] - 22:21
jpetrie@ebglaw.com [1] - 1:18
judges [1] - 15:7
Judicial [1] - 25:10
judicial [1] - 5:17
jurisdiction [1] - 22:11
jurisdictional [1] - 22:5

## K

KETTERING [2] - 1:3, 1:4
Kettering [7] - 3:5, 3:6, 5:4, 5:9, 5:10, 6:18, 9:3

Kettering's [1] - 5:5
knowledge [2] - 10:21, 12:24

## L

last [1] - 3:15
latest [1] - 17:17
law [12] - 3:18, 3:23, 11:20, 11:22, 13:4, 13:8, 16:23, 17:1, 17:4, 17:7, 17:17
Law [2] - 2:12, 2:13
lawyer [1] - 5:11
leave [4] - 11:24, 13:17, 21:16, 21:19
leaves [1] - 4:1
LeFebvre [1] - 22:4
legal [2] - 4:25, 17:10
Legal [1] - 2:2
lends [1] - 11:1
Leon [2] - 2:2, 3:12
liability [1] - 16:20
light [1] - 5:11
limit [1] - 21:17
line [1] - 8:6
litigants [1] - 5:21
litigation [14] - 16:21, 17:2, 17:6, 17:11, 17:15, 17:18, 17:24, 18:8, 19:15, 19:18, 19:23, 20:6, 20:10, 21:10
lodged [1] - 10:1
logical [1] - 6:21
look [1] - 7:24
lost [1] - 7:1

## M

maintain [1] - 11:14
mandated [1] - 13:13
manner [1] - 18:8
Mary [4] - 1:20, 1:21, 3:7, 3:12
MARY [1] - 1:7
matter [11] - 9:21, 10:7, 10:8, 10:13, 11:3, 11:12, 17:6, 21:22, 23:6, 24:11, 25:9
matters [3] - 9:9, 9:24, 22:1
maximum [1] - 8:15
mean [1] - 6:9
means [1] - 24:3
meant [4] - 6:10, 11:5
meanwhile [2] - 22:24, 23:1
mechanical [1] - 2:18

mediation [3] - 16:12, 17:22, 21:4
mediator [1] - 17:22
medical [1] - 12:13
mem [1] - 4:13
memorandum [12] - 4:4, 4:8, 4:13, 4:14, 4:16, 4:24, 7:11, 7:21, 16:25, 20:5, 21:17, 24:7
memorandums [1] - 5:15
merely [1] - 14:13
merits [2] - 7:13, 11:1
met [1] - 13:16
might [2] - 19:24, 23:7
minutes [2] - 8:4, 8:15
modification [1] - 3:25
moment [5] - 16:2, 16:14, 21:5, 22:13, 23:1
Monday [1] - 11:22
Montgomery [1] - 2:3
month [2] - 18:19, 19:14
morning [6] - 3:4, 4:7, 8:14, 8:18, 8:19, 8:22
most [2] - 8:1, 11:21
motion [33] - 3:17, 3:22, 4:2, 4:5, 4:19, 4:20, 5:6, 5:24, 7:22, 9:11, 11:21, 14:3, 14:16, 15:19, 16:24, 17:1, 17:5, 17:14, 17:18, 18:18, 19:3, 19:11, 19:17, 19:18, 20:1, 20:5, 20:9, 21:11, 21:16, 22:2, 23:23
motions [2] - 17:24, 24:4
mount [1] - 15:15
moved [1] - 16:18
MR [18] - 4:15, 6:7, 6:10, 6:13, 12:2, 18:7, 20:21, 20:25, 21:9, 21:25, 22:19, 22:25, 23:4, 23:6, 23:16, 23:20, 24:16, 24:18
MS [16] - 8:12, 8:18, 8:20, 8:22, 9:1, 17:20, 18:13, 18:17, 18:22, 18:24, 19:6, 19:9, 19:11, 20:15, 20:23, 24:17
mtfoster@trinitylawllc.com [1] - 1:23

mute [1] - 8:23

## N

nature [1] - 4:12
necessary [4] - 8:25, 11:19, 19:10, 22:15
need [4] - 7:12, 17:9, 22:22, 24:14
needed [2] - 3:24, 22:16
needs [2] - 7:17, 22:23
Network [1] - 3:6
NETWORK [1] - 1:4
next [1] - 24:10
NO [1] - 1:6
noises [1] - 8:24
none [2] - 8:25, 19:10
nonliability [1] - 17:1
nonpublic [1] - 15:16
nonresponsive [2] - 10:10, 12:19
normal [1] - 19:24
note [2] - 4:2, 4:7
nothing [4] - 10:14, 18:13, 21:6, 24:13
notice [1] - 15:14
November [1] - 23:12
number [4] - 7:20, 8:9, 10:19

## O

occasioned [1] - 24:4
October [10] - 1:12, 3:1, 4:5, 4:20, 16:22, 16:24, 17:5, 17:16, 20:11, 21:13
OF [3] - 1:1, 1:9, 25:1
Official [1] - 25:3
OFFICIAL [1] - 25:15
OHIO [1] - 1:1
Ohio [6] - 1:17, 1:22, 2:4, 2:9, 2:16, 25:5
one [17] - 3:16, 9:20, 10:17, 10:19, 15:5, 15:20, 15:25, 16:2, 16:19, 21:22, 22:22, 23:1, 23:6, 23:13, 23:21, 23:24
open [1] - 9:25
openness [1] - 13:19
opinion [1] - 15:8
oppose [3] - 4:21, 5:6, 21:19
opposed [1] - 4:5
opposing [1] - 4:8
opposition [6] - 4:16, 4:24, 5:5, 5:16, 7:11, 7:21

**oral** [2] - 4:13
**orally** [1] - 14:7
**order** [33] - 3:17, 4:1, 4:4, 4:6, 4:9, 4:19, 5:22, 5:23, 5:24, 6:25, 7:4, 7:6, 7:13, 9:1, 9:6, 9:9, 9:18, 12:7, 14:3, 14:11, 14:13, 15:6, 15:11, 15:13, 15:15, 15:17, 15:19, 16:9, 16:11, 21:25, 23:23, 24:8, 24:11
**ordered** [3] - 4:17, 22:4, 23:11
**orders** [3] - 5:17, 5:18, 6:23
**ordinary** [1] - 21:17
**originally** [1] - 18:2
**outside** [2] - 10:20, 11:15
**overly** [1] - 12:7
**overruled** [1] - 3:22
**overruling** [1] - 22:1

## P

**p.m** [1] - 24:20
**page** [1] - 25:9
**paper** [1] - 16:15
**paramount** [1] - 13:21
**part** [3] - 13:15, 17:14, 24:4
**particular** [1] - 16:7
**particularized** [1] - 5:25
**particularly** [1] - 14:21
**parties** [2] - 4:21, 22:5
**party** [11] - 3:8, 3:13, 4:3, 10:20, 14:15, 15:5, 21:12, 22:3, 22:8, 24:12
**Party** [1] - 2:6
**pause** [2] - 16:3, 16:16
**PC** [2] - 1:16, 2:7
**pending** [3] - 19:4, 19:14, 20:1
**perfected** [1] - 23:12
**perfectly** [1] - 15:6
**permitted** [1] - 7:3
**person** [1] - 22:6
**personal** [1] - 11:3
**personally** [1] - 10:2
**pertaining** [1] - 22:6
**pertinent** [1] - 11:15
**PETRIE** [11] - 4:15, 6:7, 6:10, 6:13, 18:7, 20:21, 22:25, 23:4, 23:6, 23:20, 24:18
**Petrie** [13] - 1:15, 3:11,

4:10, 6:5, 8:2, 8:16, 18:3, 18:6, 20:7, 20:19, 23:4, 23:14, 23:19
**Petrie,** [1] - 18:11
**pharmaceutical** [1] - 12:13
**phase** [2] - 15:24, 16:7
**phone** [2] - 8:23, 19:2
**place** [2] - 9:19, 11:7
**placed** [2] - 8:22, 8:23
**Plaintiff** [7] - 1:5, 1:14, 3:6, 3:10, 4:3, 13:16, 17:13
**Plaintiff's** [6] - 3:16, 13:7, 13:23, 14:7, 15:18, 23:22
**Plaintiff/ counterclaim** [1] - 16:17
**Plaintiffs** [4] - 10:13, 11:16, 12:18, 17:4
**pleadings** [2] - 12:6, 18:2
**point** [3] - 6:14, 11:24, 22:10
**pointing** [1] - 13:10
**portion** [3] - 3:23, 17:13, 22:3
**position** [3] - 11:23, 12:24, 20:12
**positively** [1] - 10:14
**possess** [1] - 5:10
**possible** [1] - 16:14
**prejudice** [1] - 15:12
**premature** [2] - 7:14, 7:19
**prematurely** [1] - 8:13
**Present** [1] - 2:11
**present** [1] - 3:12
**PRESIDING** [1] - 1:11
**presumption** [2] - 9:24, 13:19
**pretrial** [2] - 11:18
**privilege** [14] - 16:21, 17:3, 17:6, 17:11, 17:15, 17:18, 17:24, 18:8, 19:16, 19:19, 19:23, 20:6, 20:10, 21:10
**pro** [1] - 3:13
**problem** [1] - 21:2
**proceed** [3] - 4:14, 8:17, 8:25
**proceeding** [1] - 17:12
**Proceedings** [2] - 2:18, 3:3
**proceedings** [1] - 25:8
**PROCEEDINGS** [1] - 1:9

**process** [2] - 14:10, 14:14
**produced** [1] - 2:19
**professional** [1] - 13:2
**prong** [1] - 3:16
**proper** [4] - 13:2, 13:7, 15:6, 15:14
**properly** [1] - 7:25
**protect** [1] - 5:19
**protected** [2] - 6:2, 7:17
**protection** [2] - 7:6, 13:23
**protective** [34] - 3:17, 4:1, 4:4, 4:6, 4:9, 4:19, 5:17, 5:18, 5:22, 5:23, 5:24, 6:23, 6:25, 7:4, 7:6, 7:13, 9:1, 9:6, 9:18, 12:7, 14:3, 14:11, 14:13, 15:6, 15:11, 15:13, 15:14, 15:17, 15:19, 16:9, 16:11, 23:23, 24:8, 24:11
**protocol** [1] - 19:25
**proven** [1] - 17:8
**provide** [2] - 7:4, 7:25
**provided** [1] - 10:15
**public** [12] - 9:23, 10:21, 11:6, 13:13, 13:20, 14:4, 14:25, 15:5, 15:15, 16:1, 16:10
**publicly** [2] - 9:22, 16:5
**purposes** [1] - 11:20
**pursuant** [4] - 15:23, 16:9, 17:19, 25:6
**put** [5] - 9:19, 10:24, 11:16, 21:25, 22:14

## Q

**qualified** [1] - 3:20
**quarrel** [1] - 15:2

## R

**raise** [1] - 17:14
**raised** [1] - 15:24
**re** [1] - 10:4
**reach** [2] - 8:9, 24:14
**read** [1] - 12:6
**Reading** [1] - 1:21
**realize** [3] - 16:14, 16:17, 17:25
**REALTIME** [1] - 25:15
**Realtime** [1] - 25:3
**reason** [1] - 14:17
**reasonable** [1] - 22:19

**reasons** [2] - 13:1, 13:10
**receive** [1] - 17:17
**received** [2] - 3:21, 4:10
**recent** [1] - 11:21
**record** [4] - 11:10, 11:16, 12:8, 17:9
**recorded** [1] - 2:18
**records** [2] - 5:17, 13:3
**refused** [1] - 7:3
**regard** [1] - 11:13
**regarding** [4] - 10:24, 11:3, 11:12, 13:20
**regards** [1] - 19:21
**registration** [1] - 13:14
**regret** [1] - 17:25
**regularly** [1] - 5:19
**regulations** [1] - 25:10
**regulatory** [2] - 11:6, 12:14
**relevant** [2] - 10:6, 11:4
**rely** [1] - 22:12
**remind** [1] - 12:3
**render** [1] - 17:10
**reply** [3] - 4:13, 7:23
**reported** [2] - 13:6, 25:8
**Reporter** [2] - 2:14, 25:4
**REPORTER** [2] - 25:1, 25:15
**represented** [1] - 3:14
**representing** [2] - 19:13, 22:3
**represents** [1] - 3:13
**request** [3] - 12:7, 13:23, 21:19
**required** [4] - 13:3, 13:14, 14:24, 15:14
**requires** [1] - 22:10
**research** [2] - 7:25, 12:14
**researchclinicaltrial s.gov** [1] - 10:22
**respect** [4] - 9:13, 10:9, 10:10, 11:13
**respectfully** [1] - 14:9
**respective** [1] - 10:12
**respond** [4] - 8:4, 8:15, 20:8, 20:14
**responded** [1] - 10:14
**response** [6] - 8:1, 9:6, 9:11, 17:4, 22:15, 23:23
**responses** [5] - 7:2, 10:11, 10:12, 17:18,

23:25
**result** [1] - 13:9
**results** [2] - 12:18, 13:14
**return** [1] - 5:9
**reviewed** [2] - 3:22, 4:11
**RICE** [1] - 1:11
**Rice** [1] - 2:14
**Road** [2] - 1:21, 2:3
**RPR** [2] - 2:14, 25:15
**rule** [1] - 13:16
**ruled** [1] - 17:23
**rules** [2] - 13:7, 17:19
**ruling** [2] - 8:4, 19:17
**run** [1] - 12:14
**Russell** [1] - 2:12

## S

**s/Caryl** [1] - 25:14
**safety** [1] - 14:4
**Sandra** [3] - 2:1, 3:7, 3:11
**SANDRA** [1] - 1:7
**save** [1] - 12:25
**SCOTT** [14] - 1:7, 8:12, 8:18, 8:20, 8:22, 9:1, 17:20, 18:17, 18:22, 18:24, 19:6, 19:9, 19:11, 20:15
**Scott** [27] - 1:20, 1:21, 3:8, 3:13, 3:18, 4:11, 5:3, 5:12, 6:1, 6:8, 8:3, 8:5, 8:9, 8:13, 8:14, 8:17, 11:25, 18:4, 18:16, 18:21, 18:23, 20:3, 20:12, 20:19, 24:8
**Scott's** [4] - 4:2, 4:16, 4:24, 20:9
**scrutiny** [1] - 14:23
**se** [1] - 3:13
**sealed** [3] - 9:23, 15:1, 15:22
**sealing** [4] - 5:16, 12:8, 13:25, 14:18
**searching** [1] - 24:3
**Second** [1] - 2:15
**secondly** [3] - 3:17, 9:5, 9:13
**secrecy** [1] - 13:18
**secret** [3] - 10:17, 14:20, 15:22
**secretly** [2] - 13:4, 13:17
**secrets** [10] - 5:9, 5:20, 6:2, 6:18, 7:12, 7:16, 10:23, 10:25,

12:23, 13:11
**Section** [2] - 13:15, 25:6
**see** [3] - 15:9, 15:12, 22:23
**seek** [1] - 12:8
**seeking** [1] - 17:1
**send** [1] - 23:17
**sense** [1] - 16:13
**sent** [2] - 12:17, 23:7
**separate** [1] - 3:23
**September** [1] - 4:20
**service** [2] - 23:9, 23:12
**set** [4] - 5:25, 12:25, 16:5, 17:22
**sets** [1] - 14:14
**setting** [1] - 18:8
**seven** [1] - 4:18
**several** [2] - 9:9, 22:1
**Shane** [2] - 15:8, 15:24
**short** [1] - 7:23
**shown** [2] - 5:22, 7:15
**sic** [1] - 3:11
**sic)** [1] - 10:22
**side** [1] - 15:25
**sign** [1] - 23:17
**signed** [2] - 15:17, 23:17
**simplifying** [1] - 16:13
**sit** [1] - 17:7
**situation** [1] - 14:7
**six** [1] - 17:23
**Sixth** [2] - 13:18, 15:8
**skewed** [1] - 19:19
**Smerbeck** [1] - 2:13
**someone** [1] - 8:7
**somewhat** [1] - 19:1
**sorry** [1] - 6:10
**sought** [3] - 13:9, 15:5, 15:25
**sounds** [2] - 20:3, 20:4
**SOUTHERN** [1] - 1:1
**Southern** [1] - 25:5
**specific** [2] - 12:9, 19:16
**specifically** [1] - 10:5
**speed** [1] - 23:7
**spend** [1] - 7:10
**spirit** [1] - 11:7
**sponsors** [2] - 5:5, 6:19
**standard** [1] - 13:17
**standing** [5] - 5:6, 9:14, 10:5, 10:6
**standstill** [4] - 3:19, 3:24, 6:15, 6:22

**statement** [1] - 22:13
**statements** [1] - 7:20
**States** [3] - 25:4, 25:6, 25:11
**STATES** [1] - 1:1
**status** [1] - 11:20
**steal** [1] - 13:5
**stenographically** [1] - 25:8
**stenography** [1] - 2:18
**step** [4] - 14:10, 14:11, 15:3, 24:10
**steps** [1] - 14:14
**still** [3] - 8:6, 11:14, 16:12
**Street** [3] - 1:16, 2:8, 2:15
**stricken** [1] - 4:17
**strike** [1] - 24:10
**subject** [1] - 17:5
**submit** [1] - 22:5
**sufficient** [1] - 14:17
**suggested** [1] - 20:20
**suggestion** [1] - 20:7
**Suite** [4] - 1:17, 1:22, 2:3, 2:8
**supplement** [1] - 17:13
**supplemental** [1] - 11:21
**support** [2] - 14:16, 21:17
**supporting** [1] - 11:22
**sustained** [2] - 3:17, 15:19
**system** [1] - 12:25

## T

**telephone** [1] - 24:2
**TELEPHONE** [1] - 1:10
**Telephone** [1] - 24:20
**telephonically** [1] - 3:3
**tends** [1] - 11:1
**term** [1] - 17:2
**terminate** [1] - 13:9
**terms** [1] - 6:6
**THE** [39] - 1:1, 1:1, 1:11, 3:4, 6:5, 6:8, 6:12, 8:2, 8:11, 8:14, 8:19, 8:21, 8:25, 11:25, 14:5, 16:4, 16:17, 17:21, 18:11, 18:15, 18:21, 18:23, 18:25, 19:8, 19:10, 20:3, 20:18, 20:22, 20:24, 21:7, 21:24, 22:12, 22:21, 23:1,

23:5, 23:14, 23:18, 23:21, 24:19
**themselves** [2] - 11:17, 22:8
**therefore** [3] - 7:12, 19:22, 24:9
**thinking** [1] - 24:10
**Third** [1] - 2:6
**third** [8] - 3:8, 3:13, 3:19, 4:3, 14:15, 21:12, 22:3, 22:8
**Third-Party** [1] - 2:6
**third-party** [6] - 3:8, 3:13, 4:3, 21:12, 22:3, 22:8
**thoughts** [1] - 23:15
**three** [1] - 3:16
**three-prong** [1] - 3:16
**timeliness** [1] - 23:22
**timely** [4] - 4:17, 9:7, 9:11, 23:25
**timetable** [1] - 17:25
**Title** [1] - 25:6
**titled** [1] - 15:4
**to-be-filed** [1] - 21:11
**today** [4] - 3:16, 4:22, 22:22, 23:17
**together** [1] - 5:21
**tolerated** [1] - 10:11
**took** [3] - 6:2, 6:8, 24:5
**track** [1] - 24:4
**trade** [13] - 5:9, 5:20, 6:2, 6:18, 7:12, 7:16, 10:17, 10:23, 10:24, 12:22, 13:11, 14:20, 15:22
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 2:18, 25:7, 25:9
**transparency** [2] - 11:7, 13:20
**trial** [4] - 6:19, 10:21, 11:19, 13:14
**trials** [2] - 12:15, 13:13
**TRO** [1] - 9:6
**true** [1] - 25:7
**try** [2] - 8:8, 23:12
**trying** [3] - 12:10, 12:20, 13:4
**two** [5] - 10:19, 14:10, 15:3, 16:8, 23:24
**two-step** [1] - 14:10
**type** [2] - 13:3, 13:14

## U

**U.S** [1] - 2:15
**ultimately** [2] - 14:19,

14:24
**under** [6] - 6:23, 13:4, 13:15, 17:12, 19:24, 20:16
**unilaterally** [1] - 9:10
**United** [3] - 25:4, 25:6, 25:11
**UNITED** [1] - 1:1
**unless** [1] - 22:10
**unlike** [1] - 10:13
**untimely** [1] - 24:9
**up** [7] - 12:25, 18:1, 18:8, 21:4, 21:5, 21:20, 23:3
**USC** [1] - 13:15
**utilize** [1] - 14:15
**utilized** [1] - 20:5

## V

**versus** [3] - 3:7, 3:8, 15:8
**violated** [1] - 10:19
**violation** [1] - 6:3
**voice** [1] - 18:25
**vs** [1] - 1:6

## W

**wade** [1] - 16:15
**waiver** [1] - 23:8
**Walter** [1] - 2:14
**WALTER** [1] - 1:11
**ways** [1] - 6:23
**weekend** [1] - 24:14
**weeks** [1] - 17:23
**welcome** [1] - 18:15
**West** [2] - 1:16, 2:8
**WESTERN** [1] - 1:2
**whistleblower** [5] - 5:2, 5:3, 12:4, 14:1, 14:2
**Wiest** [1] - 2:12
**wish** [3] - 20:4, 20:14, 24:13
**witness** [1] - 11:19
**word** [1] - 14:4
**works** [1] - 18:9
**writing** [1] - 14:8

## Y

**years'** [1] - 12:12
**yesterday** [3] - 3:21, 4:22, 22:1
**yourself** [1] - 21:1