**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK**<br><br>Plaintiff-Counterclaim Defendant,<br><br>v.<br><br>**SANDRA COLLIER, et al.**<br><br>Defendants-Counterclaim Plaintiffs, and Third-Party Plaintiffs,<br><br>v.<br><br>**EPSTEIN BECKER & GREEN, P.C., et al.**<br><br>Third-Party Defendants. | Case No.: 3:25-cv-00273<br><br>Judge Walter H. Rice<br><br>Magistrate Judge Caroline H. Gentry |

<u>**THIRD-PARTY DEFENDANTS EPSTEIN BECKER & GREEN, P.C., JAMES G. PETRIE, JILL K. BIGLER, AND CHRIS T. PAGE MCGINNIS'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT FILED BY SANDRA COLLIER AND MARY T. SCOTT**</u>

Under Fed. R. Civ. P. 12(b)(6), Third-Party Defendants Epstein Becker & Green, P.C. ("EBG"), James G. Petrie, Jill K. Bigler, and Chris T. Page McGinnis (collectively, the "EBG Third-Party Defendants") move the Court to dismiss all the claims Defendants/Third-Party Plaintiffs Sandra Lee Collier and Mary T. Scott, Esq. asserted against them in their First Amended Counterclaim and Third-Party Complaint (the "FAT-PC"), filed September 10, 2025 (Doc #28).

The EBG Third-Party Defendants are the lawyers and law firm who represent Plaintiff Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering") in this litigation. In addition to the counterclaims they brought against Kettering, Collier and Scott asserted several

causes of action against the EBG Third-Party Defendants in the FAT-PC, as well as third-party claims against fourteen current and former Kettering employees. This Motion seeks the dismissal of the EBG Third-Party Defendants.

Among many other fatal deficiencies, every one of Collier's and Scott's claims against the EBG Third-Party Defendants fails as a matter of law because each arises only from the EBG Third-Party Defendants' statements made in these judicial proceedings, and those statements are absolutely privileged under Ohio law. *Surace v. Wuliger*, 25 Ohio St.3d 229, 233–34 (1986); *Hecht v. Levin*, 66 Ohio St. 3d 458, 461–62 (1993); *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 505–07 (1994). Collier's and Scott's third-party claims against the EBG Third-Party Defendants also fail for all of the reasons that Kettering described in detail in its October 6, 2025, Motion to Dismiss (Doc. #73). The following Memorandum in Support sets forth further bases for this Motion.

Respectfully submitted,


/s/ *Jonathan T. Brollier*
Jonathan T. Brollier (0081172)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax:    614.633.1713
jbrollier@ebglaw.com

Christopher M. Farella (NY 3994449)
General Counsel
Jennifer O'Connor (NY 5297866)
Epstein Becker & Green, P.C.
875 Third Avenue
New York, New York 10022
Phone: 212.351.4500
Fax:    212.878.8600
cfarella@ebglaw.com
jeoconnor@ebglaw.com

*Counsel for Third-Party Defendants Epstein
Becker & Green, P.C., James G. Petrie, Jill
K. Bigler, and Chris Page McGinnis*

iii

**TABLE OF CONTENTS**

**Page**

I.     Introduction ................................................................................................................ 1

II.    Facts Collier and Scott Allege in the FAT-PC ................................................... 1

III.   Legal Standard ........................................................................................................ 6

IV.   Law and Argument: The Litigation Privilege Defeats Every One of the Third-Party Claims Against the EBG Third-Party Defendants, and They Fail for Numerous Other Reasons Too ............................................................................................................ 7

    A.  Count III: Retaliation for Protected Activity (Collier Only, Against EBG Only) (Doc #28, at PageID 1065–1067) ........................................................................... 10

    B.  Count V – Defamation and False Light (Doc #28, at PageID 1068–1070) (Scott Only, Against Kettering and EBG Third-Party Defendants) ...................................... 11

    C.  Count VI – Abuse of Process (Doc #28, at PageID 1070–1071) (Scott Only Against Kettering and EBG Third-Party Defendants) ..................................................... 12

    D.  Count VII – Malicious Prosecution (Doc. #28, at PageID 1070–1073) (Scott Only Against Kettering and EBG Third-Party Defendants) ........................................ 13

    E.  Count VIII – Intentional Infliction of Emotional Distress (Doc. #28, at PageID 1073–1074) (Collier and Scott Against Kettering, EBG, and Certain Kettering Third-Party Defendants) ....................................................................................... 15

    F.  Count IX – Civil Conspiracy (Doc. #28, at PageID 1074–1076) (Collier and Scott against Kettering and All Third-Party Defendants, including the EBG Third-Party Defendants) 16

    G.  Count X – Civil Racketeer Influenced and Corrupt Organizations ("RICO") (Collier and Scott, Against all Third-Party Defendants) (Doc. #28, at PageID 1076–1077). .............. 19

V.    Conclusion ............................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Alphatec Spine, Inc.*,
No. 1:13-cv-714, 2014 WL 2896838 (S.D. Ohio June 26, 2014)................................22, 24, 25

*Avery v. Rossford, Ohio Transp. Improvement Dist.*,
762 N.E.2d 388 (Ohio Ct. App. 2001)..............................................................................17, 18

*Barnes v. Beachwood*,
2006-Ohio-3948 (8th Dist.) ....................................................................................................14

*Begala v. PNC Bank, Ohio, Nat'l Ass'n*,
214 F.3d 776 (6th Cir.2000) ...................................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 545 (2007)...........................................................................................................7

*Bender v. Southland Corp.*,
749 F.2d 1205 (6th Cir. 1984) ................................................................................................23

*Bird v. Delacruz*,
No. 04-CV-661, 2005 WL 1625303 (S.D. Ohio July 6, 2005)................................................24

*Britt v. Fox*,
110 F. App'x. 627 (6th Cir. 2004) ..........................................................................................20

*City of Dayton v. A.R. Env't, Inc.*,
886 F.Supp.2d 775 (S.D. Ohio 2012) .....................................................................................12

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,
462 F. Supp. 3d 839 (S.D. Ohio 2020) ...................................................................................21

*Cranel Inc. v. Pro Image Consultants Group, LLC*,
57 F.Supp.3d 838 (S.D. Ohio 2014) ..................................................................................24, 25

*Daher v. Cuyahoga Community College Dist.*,
2021-Ohio-2103 (8th Dist.) ....................................................................................................14

*Deters v. Hammer*,
No. 1:20-cv-00362, 2021 WL 664011 (S.D. Ohio Feb. 19, 2021) ......................................8, 12

*Diaz v. Langcore*,
751 F. App'x 755 (6th Cir. 2018) ...........................................................................................11

v

*Doe v. BMG Sports, LLC*,
 584 F. Supp. 3d 497 (S.D. Ohio 2022) ........................................................................6

*Doe v. Roe*,
 958 F.2d 763 (7th Cir. 1992) ....................................................................................21

*Equity Res., Inc. v. Thoman*,
 682 F.Supp.3d 707 (S.D. Ohio 2023) ...................................................................16, 17

*FFP Holdings, LLC v. Moeller*,
 No. 3:14CV693V, 2014 WL 4322804 (N.D. Ohio Aug. 29, 2014)........................................24

*Frank v. D'Ambrosi*,
 4 F.3d 1378 (6th Cir. 1993) .......................................................................................21

*Garrett v. Morgan Cnty. Sheriff's Off.*,
 No. 1:23CV2011, -- F.Supp.3d--, 2025 WL 2097739
 (N.D. Ohio July 25, 2025) .....................................................................................17, 18

*Grow Michigan, LLC v. LT Lender, LLC*,
 50 F.4th 587 (6th Cir. 2022) .....................................................................................20

*Harsh v. Franklin*,
 2011-Ohio-2428 (2d Dist.)..........................................................................9, 12, 15, 17

*Hershey v. Edelman*,
 2010-Ohio-1992 (10th Dist.) .......................................................................................9

*In re ClassicStar Mare Lease Litig.*,
 727 F.3d 473 (6th Cir. 12013) ...................................................................................24

*Kelly v. First Data Corp.*,
 No. 1:19-cv-372, 2020 WL 419440 (S.D. Ohio Jan. 27, 2020)................................................11

*Kenty v. Transamerica Premium Ins. Co.*,
 650 N.E.2d 863 (1995)................................................................................................16

*Kerik v. Tacopina*,
 64 F.Supp.3d 542 (S.D.N.Y. 2014) ...............................................................................21

*Komorek v. Conflict Int'l, Inc.*,
 No. 2:24-cv-1227, 2025 WL 948973 (S.D. Ohio Mar. 29, 2025) ..............................20, 23, 25

*Kralovic v. JPMorgan Chase Bank, N.A.*,
 No. 1:15 CV 1468, 2016 WL 554838 (N.D. Ohio Feb. 10, 2016) ...........................................6

*Kramer v. Bachan Aerospace Corp.*,
 912 F.2d 151 (6th Cir. 1990) .....................................................................................26

*Lane v. U.S. Bank, N.A.*,
   Franklin C.P. No.22CV-3051, 2022 WL 22967446 (June 8, 2022) ..........................................8

*LaSalle Bank, N.A. v. Kelly*,
   2010-Ohio-2668 (9th Dist.) ...................................................................................................18

*Lawson v. FMR LLC*,
   554 F. Supp. 3d 186 (D. Mass. 2021) ....................................................................................21

*Lisboa v. Lisboa*,
   2011-Ohio-351 (10th Dist.) ..........................................................................................9, 15, 17

*Med. Marijuana, Inc. v. Horn*,
   604 U.S. 593 (2025)................................................................................................................21

*Melton v. Blankenship*,
   No. 07-1091-T-TMP, 2008 WL 11432163 (W.D. Tenn. Feb. 20, 2008), *aff'd,*
   2009 WL 87472 (6th Cir. 2009) ......................................................................................19, 20

*Meros v. Dimon*,
   No. 2:17-CV-103, 2017 WL 6508723 (S.D. Ohio Dec. 20, 2017)..........................................22

*Moon v. Harrison Piping Supply*,
   465 F.3d 719 (6th Cir. 2006) .................................................................................................24

*Moore v. Feldman*,
   No. 2:16-cv-00200, 2017 WL 1063466 (S.D. Ohio Mar. 20, 2017) .........................................7

*N. Canton Bd. of Educ. v. AT&T Inc.*,
   No. 5:16-cv-1420, 2017 WL 1133966 (N.D. Ohio Mar. 27, 2017)........................................18

*Nationstar Mortg., L.L.C. v. Ritter*,
   2015-Ohio-3900 (10th Dist.) .................................................................................................15

*Neitzke v. Williams,*
   490 U.S. 319 (1989).................................................................................................................6

*Newman v. Univ. of Dayton*,
   2021-Ohio-1609 (2d Dist.).................................................................................................9, 12

*Nugent v. Spectrum Juv. Just. Servs.*,
   72 F.4th 135 (6th Cir. 2023) ....................................................................................................7

*O'Malley v. New York City Transit Auth.*,
   896 F.2d 704 (2d Cir. 1990).....................................................................................................25

*Palmer v. Nationwide Mut. Ins. Co.*,
   945 F.2d 1371 (6th Cir. 1991) ................................................................................................20

*Parry v. Mohawk Motors of Mich., Inc.*,
    236 F.3d 299 (6th Cir. 2000) ....................................................................................5

*Reister v. Gardner*,
    164 Ohio St.3d 546 (2020)....................................................................................7, 8

*Rhoads v. Olde Worthington Bus. Ass'n*,
    2024-Ohio-2178 (10th Dist.) ................................................................................18

*Sal's Heating & Cooling*,
    2022-Ohio-1756 (8th Dist.) ..................................................................................18

*Schmidt v. Grossman Law Office*,
    2014-Ohio-4227 (10th Dist.)...............................................................................9, 13

*Scuba v. Wilkinson*,
    No. 1:06CV160, 2006 WL 2794939 (S.D. Ohio Sept. 27, 2006)..............................5

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)...............................................................................................21

*Seminatore v. Dukes*,
    2004-Ohio-6417 (8th Dist.) ...............................................................................9, 17

*Shaut v. Roberts*,
    2022-Ohio-817 (8th Dist.) ......................................................................................6

*Surace v. Wuliger*,
    25 Ohio St.3d 229 (1986)......................................................................................7, 8

*United States v. Jeter*,
    775 F.2d 670 (6th Cir. 1985) .................................................................................26

*United States v. Turkette*,
    452 U.S. 576 (1981)...............................................................................................21

*Warren v. Manufacturers Nat. Bank of Detroit*,
    759 F.2d 542 (6th Cir.1985) ..................................................................................21

*Wasserman v. Weir*,
    No. 2:24-cv-3935, 2025 WL 1347253 (S.D. Ohio May 8, 2025) (Morrison,
    C.J.) ....................................................................................................................8, 12

*Wells Fargo Bank, N.A. v. Johnson*,
    2016-Ohio-1114 (6th Dist.) ...................................................................................15

**Statutes**

18 U.S.C. § 1341...........................................................................................................23

18 U.S.C. § 1343 ..................................................................................................................23

18 U.S.C. § 1503 ........................................................................................................23, 25, 26

18 U.S.C. § 1961(1) .......................................................................................................21, 23

18 U.S.C. § 1961(4) ............................................................................................................22

18 U.S.C. § 1961(5) ............................................................................................................23

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e-3(a) ............................................10

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .............................................................3

Freedom of Information Act, 5 U.S.C. § 552 .....................................................................23

Health Insurance Portability and Accountability Act of 1996 ("HIPAA") ...........2, 15, 24, 25

Ohio's Fair Employment Practices Act § 4112.02 ............................................................10

Ohio Revised Code § 2307.60 .............................................................................................4

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 ........ *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 8(a) ......................................................................24

Federal Rules of Civil Procedure Rule. 9(b) ...............................................................23, 24

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................1, 15, 26

Ohio Rules of Professional Conduct Rules 3.7 and 1.7 .......................................................5

## SUMMARY OF ARGUMENTS AND AUTHORITIES

### The Court should dismiss every one of the third-party claims against the EBG Third-Party Defendants because they fail under Ohio's absolute litigation privilege. (Pages 7–10).

The Court should dispose of all of the FAT-PC's claims against the EBG Third-Party Defendants by applying Ohio's absolute litigation privilege, which protects attorneys and law firms from "lawsuits for statements made during and relevant to judicial proceedings." *Reister v. Gardner*, 164 Ohio St.3d 546, 548 (2020); *Surace v. Wuliger*, 25 Ohio St.3d 229, 233-34 (1986), syllabus; *Wasserman v. Weir*, No. 2:24-cv-3935, 2025 WL 1347253, at *4 (S.D. Ohio May 8, 2025) (Morrison, C.J.); *Lane v. U.S. Bank, N.A.*, Franklin C.P. No.22CV-3051, 2022 WL 22967446, at *3 (June 8, 2022) (dismissing *pro se* plaintiff's claims against his bank and mortgage servicer, which were based on an allegedly false statement against him that appeared in a legal brief).

No matter how Defendants style them, their third-party claims against the EBG Third-Party Defendants fail under the litigation privilege; the privilege's scope is not confined to claims of defamation, but has been applied to defeat many other claims brought against lawyers for statements made in their roles as advocates in litigation. *See Deters v. Hammer*, No. 1:20-cv-00362, 2021 WL 664011, at*4 (S.D. Ohio Feb. 19, 2021), *report and recommendation adopted*, 568 F. Supp. 3d 883 (S.D. Ohio 2021) (false light); *Harsh v. Franklin*, 2011-Ohio-2428, ¶ 21 (2d Dist.) (attorney statements made in pleadings absolutely privileged; such privileged statements made in pleadings not extreme and outrageous, and could not support *pro se* plaintiff's intentional infliction of emotional distress claim; tortious interference with plaintiff's civil filings not a cognizable claim; fraud claim based on attorneys' factual statements in pleadings failed as a matter of law; and conspiracy claim failed because all the attorneys did was file or respond to pleadings); *Seminatore v. Dukes*, 2004-Ohio-6417, ¶¶ 26, 39–40 (8th Dist.) (defamation and conspiracy to defame); *Schmidt v. Grossman Law Office*, 2014-Ohio-4227, ¶¶ 2, 17 (10th Dist.) (abuse of process); *Lisboa v. Lisboa*, 2011-Ohio-351, ¶¶ 24–28 (8th Dist.) (third-party malpractice, fraud, conspiracy, civil aiding and abetting, and intentional infliction of emotional distress); *Newman v. Univ. of Dayton*, 2021-Ohio-1609, ¶¶ 43–45 (2d Dist.) (aiding and abetting discrimination).

### The Court should dismiss Count III of the FAT-PC (Collier's claim for workplace retaliation for protected activity) because: (1) it fails in the face of the litigation privilege; (2) Collier was not an EBG employee; and (3) she failed to exhaust her administrative remedies. (Pages 10–11).

Besides running afoul of the litigation privilege, Collier's claim against EBG for purported workplace retaliation fails because she was an employee of Kettering, not EBG. *See Diaz v. Langcore*, 751 F. App'x 755, 759 (6th Cir. 2018) (employee's retaliation claim against her employer's attorneys failed); *Kelly v. First Data Corp.*, No. 1:19-cv-372, 2020 WL 419440, at *9 (S.D. Ohio Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 3528653 (S.D. Ohio June 30, 2020) (dismissing retaliation claims against law firms and attorneys representing employer). No matter who she asserts it against, Collier's workplace retaliation claim also fails because she failed to exhaust her administrative remedies; on this point, the EBG Third-Party Defendants incorporate the arguments Kettering presented in its Motion to Dismiss. (Doc. #73, Argument IV(B), at PageID 1515–1516).

**The Court should dismiss Count V of the FAT-PC (Scott's claim for defamation and false light) because it is barred by Ohio's litigation privilege—indeed, the privilege's most classic and fundamental application is to defeat defamation claims associated with parties' or lawyers' statements made in reasonable relation to lawsuits. (Pages 11–12).**

Scott's defamation claim is an archetypal example of a litigant's defective attempt to recover for statements that an adverse party's lawyers made in pleadings, motions, and courtroom statements.  Like all of Defendants' other claims against the EBG Third-Party Defendants, this one fails under Ohio's absolute litigation privilege. *Wasserman*, 2025 WL 1347253, at *4–5; *City of Dayton v. A.R. Env't, Inc.*, 886 F. Supp. 2d 775, 781 (S.D. Ohio 2012); *Deters*, 568 F. Supp. 3d at 889; *Harsh*, 2011-Ohio-2428, at ¶ 18 (2d Dist.).

**The Court should dismiss Count VI of the FAT-PC (Scott's claim for abuse of process) because the only facts that undergird this claim are the privileged statements and legal arguments that EBG and its client presented to the Court in connection with this case; the EBG Third-Party Defendants also incorporate the other arguments Kettering presented in its Motion to Dismiss. (Pages 12–13).**

Scott's abuse-of-process claim fails in the face of Ohio's robust litigation privilege because it is premised on the EBG Third-Party Defendants' filing of Kettering's TRO Motion and Motion to Disqualify. *Schmidt*, 2014-Ohio-4227, at ¶¶ 2, 17 (10th Dist.). The abuse-of-process claim also fails for all of the reasons that Kettering articulated in that section of its Motion to Dismiss. (Doc. #73, Argument IV(D), at PageID 1517–1521) (addressing Scott's lack of standing, pleading failures from allegation that Kettering instituted this case without proper form or probable cause, lack of "further act" or "threat," and merely conclusory nature of allegations).

**Count VII of the FAT-PC (Scott's malicious prosecution claim) fails as a matter of law because it is based on the EBG Third-Party Defendants' privileged written statements in support of the TRO that Kettering sought in this case; Count VII also fails because Scott lacked standing, and there was no prior proceeding that ended in favor of Collier or Scott, which would have been one of many absent prerequisites to a cognizable claim for malicious prosecution. (Pages 13–14).**

The sole basis for Scott's malicious prosecution claim is that the EBG Third-Party Defendants initiated the TRO proceedings as lawyers on behalf of their client, Kettering. (Doc. #28, at PageID 1071–1073). The litigation privilege easily defeats this claim. *Daher v. Cuyahoga Community College Dist.*, 2021-Ohio-2103, ¶¶ 15–16 (8th Dist.); *Barnes v. Beachwood*, 2006-Ohio-3948, ¶¶ 2, 4, 19–20 (8th Dist.). As Kettering explained in its Motion to Dismiss, the malicious prosecution claim also fails because Scott lacked standing to bring such a claim based on the allegations Kettering made against Collier, and because there has not been a prior proceeding that ended in Scott's and Collier's favor. The EBG Third-Party Defendants incorporate those arguments. (Doc. #73, Argument IV(E), at PageID 1522.

xi

**The Court should dismiss Count VIII of the FAT-PC (intentional infliction of emotion distress) because it arises only from statements that EBG and Kettering purportedly made in connection with this case, which were privileged; the claim also fails because many of its other elements are absent or otherwise deficient. (Pages 15–16).**

Defendants' claim for intentional infliction of emotional distress fails, like all other third-party claims against the EBG Third-Party Defendants, because it is premised on the statements that EBG and its attorneys made on behalf of Kettering to initiate and prosecute this case. *Harsh*, 2011-Ohio-2428, ¶¶ 18–21 (2d Dist.); *Nationstar Mortg., L.L.C. v. Ritter*, 2015-Ohio-3900, ¶ 15 (10th Dist.); *Wells Fargo Bank, N.A. v. Johnson*, 2016-Ohio-1114, ¶ 26 (6th Dist.).

Moreover, the EBG Third-Party Defendants' actions in bringing this case on behalf of their client hardly rise to the level of "extreme and outrageous conduct." Scott lacks standing to bring an intentional infliction of emotional distress claim based on actions that purportedly targeted Collier and an intentional infliction of emotional distress claim cannot arise from adverse employment actions. To the extent Collier did assert a cognizable emotional distress claim premised on her employment relationship with Kettering, she was not an EBG employee, and she cannot target EBG for the employment actions of EBG's client. The EBG Third-Party Defendants incorporate by reference the many non-litigation-privilege arguments that Kettering submitted in its Motion to Dismiss this claim. (Doc. #73, Argument IV(F), at PageID 1523–1528).

**The Court should dismiss Count IX of the FAT-PC (civil conspiracy) because the only allegation in the claim that relates to the EBG Third-Party Defendants criticizes them for coordinating to draft and file documents with the Court that Defendants claim contained misstatements; but even if the pleadings contained material errors (and they did not) the complained-of statements were subject to Ohio's absolute litigation privilege. Moreover, Defendants plead no separate tortious act apart from the purported conspiracy itself—the conspiracy claim is merely derivative of the defective defamation claim, and it cannot give rise to liability against Kettering's lawyers. (Pages 16–19).**

Once again, Defendants try to base a civil claim for recovery against the EBG Third-Party Defendants upon these attorneys' coordination with their client to prepare and file this lawsuit and its attendant pleadings, briefs, and arguments. Claims like these fail in the face of the litigation privilege. *Seminatore*, 2004-Ohio-6417, at ¶¶ 26, 39–40 (8th Dist.); *Lisboa*, 2011-Ohio-351, at ¶ 14 (8th Dist.) ("The lack of facts notwithstanding, all of appellant's claims are based upon alleged misconduct that took place during, or as a part of judicial proceedings, and are thus subject to a defense of absolute immunity."); *see Harsh*, 2011-Ohio-2428, at ¶ 21 (2d Dist.) (*pro se* plaintiff's claims against lawyers for statements made in pleadings failed for many reasons, including claim for civil conspiracy where plaintiff did not plead an unlawful underlying act).

Defendants do not allege an underlying tortious act; they merely recite an amalgamation of conclusory allegations, which are unsupported by material facts and cannot suffice to state a claim for recovery. *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 723 (S.D. Ohio 2023); *Eastside Lincoln Mercury, Inc. v. Ford Motor Co.*, No. C-1-01-567, 2004 WL 6033074, at *10 (S.D. Ohio July 15, 2004) (citing *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001); *Garrett v. Morgan Cnty. Sheriff's Off.*, No. 1:23CV2011, 2025

WL 2097739, at *28 (N.D. Ohio July 25, 2025); *Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 2022-Ohio-1756, ¶¶ 26, 31 (8th Dist.).

In short, the civil conspiracy claim against Kettering's lawyers is defeated by the litigation privilege. Even if it had survived, no underlying claim against the EBG Third-Party Defendants would survive to provide the cognizable tortious act necessary to support the claim, and even then, it would fail for want of specific pleadings. The EBG Third-Party Defendants incorporate all of Kettering's arguments to dismiss the civil conspiracy claim. (Doc. #73, Argument IV(G), at PageID 1528–1531).

**Count X of the FAT-PC, for purported RICO violations, fails as a matter of law because Defendants fail to establish an "enterprise" or any "racketeering activity," and the purported "predicate acts" do not involve the EBG Third-Party Defendants; moreover, the EBG Third-Party Defendants' role in preparing and prosecuting this case cannot give rise to civil liability, under RICO or otherwise. (Pages 19–26).**

The EBG Third-Party Defendants' preparation and filing of litigation documents on behalf of Kettering cannot form the basis for a cognizable RICO claim. *Melton v. Blankenship*, No. 07-1091-T-TMP, 2008 WL 11432163 at *2, *5 (W.D. Tenn. Feb. 20, 2008); *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1376 (6th Cir. 1991). Defendants neglect to allege any "predicate act" by the EBG Third-Party Defendants, and the balance of the claim rests only on conclusory assertions that are not sufficient to support a RICO claim. *Britt v. Fox*, 110 F. App'x 627, 628 (6th Cir. 2004).

To the extent Defendants claim reputational and other personal harm as a result of the purported RICO violations, those injuries are insufficient to support a civil RICO claim. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 594 (2025); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992), *abrogated on other grounds by*, *Horn*, 604 U.S. 593; *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014). Defendants' FAT-PC is "littered with bare assertions of legal conclusions," which as a matter of law are insufficient to support a civil RICO claim. *Meros v. Dimon,* No. 2:17-CV-103, 2017 WL 6508723, at *8 (S.D. Ohio Dec. 20, 2017); *see Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000).

Instead of particularized pleading of coordinated racketeering activities, Defendants only make conclusory allegations about mail fraud, wire fraud, obstruction of justice, retaliation, and concealment of systemic noncompliance—only the first three of these could even possibly form a hook as a racketeering activity, and Defendants never allege the time, place, and contents of the purported mail and wire communications that constituted racketeering activities. In short, among a litany of other defects, Defendants' RICO claim fails as a matter of law because they have not specifically described the "who, what, when, [and] where" of the specific false statements or representations that drive the purported racketeering scheme. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984); *Komorek, v. Conflict Int'l, Inc.*, No. 2:24-cv-1227, 2025 WL 948973, at *7 (S.D. Ohio Mar. 29, 2025); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *Bird v. Delacruz*, No. 04-CV-661, 2005 WL 1625303, at *6 (S.D. Ohio July 6, 2005); *FFP Holdings, LLC v. Moeller*, No. 3:14 CV 693V, 2014 WL 4322804, at *6 (N.D. Ohio Aug. 29, 2014).

xiii

**MEMORANDUM IN SUPPORT**

## I.      Introduction

This has become a needlessly complicated case, but the Court can simplify it by dismissing all of the third-party claims Collier and Scott asserted against the EBG Third-Party Defendants in the FAT-PC as every one of those claims against Kettering's lawyers is legally barred by the litigation privilege, which shields litigants and lawyers for the statements they make in, or in reasonable relation to, judicial proceedings.

Though styled as a scattershot series of separately-numbered Causes of Action, the core of what Collier and Scott complain about is that the EBG Third-Party Defendants filed a lawsuit on Kettering's behalf in retaliation for Defendants' plot to damage Kettering's reputation by threatening to go to the media and law enforcement unless paid a settlement of up to $100 million. Collier's and Scott's third-party claims against the EBG Third-Party Defendants fail as a matter of law because the EBG Third-Party Defendants were absolutely privileged to make the complained-of statements in judicial proceedings.

The third-party claims against the EBG Third-Party Defendants fail to state a claim for a panoply of other reasons too, and those are dealt with in due course below, but the litigation privilege alone delivers a fatal blow to every one of Collier's and Scott's claims, which amount to a quarrel about the statements that Kettering's lawyers made to the Court in their pleadings, motions, and arguments in this case.

## II.      Facts Collier and Scott Allege in the FAT-PC[1]

Earlier this year, Kettering employed Collier for a two-month stint as System Director of Innovation, Research, and Grants ("IRG"). (Doc. #28, at ¶¶ 6, 15, PageID 1054, 1057).  Collier

---

[1] To the extent required by Fed. R. Civ.P 12(b)(6), and for the purposes of this Motion only, the EBG Third-Party Defendants accept the non-conclusory allegations in the FAT-PC as true.

claims that, "[f]rom the outset, [she] discovered systemic compliance failures in Kettering's IRG department." (*Id.* at ¶ 7, PageID 1054). During this time, Collier also says that other Kettering employees spoke to each other about her health information, traded gossip about Collier being "mean to staff," and said that Collier attended medical appointments "in high heels, demanding narcotics." (*Id.* at ¶ 8, PageID 1055). Collier alleges that these and similar incidents "create[d] a hostile work environment and irreparably damage[ed her] reputation within Kettering Health." (*Id.* at ¶ 9, PageID 1055).

Collier further alleges that she submitted several written complaints of workplace bullying, HIPAA violations, "systemic noncompliance and fraud within IRG," and other wrongdoing to Kettering's Human Resources Department and to members of its senior leadership. (*Id*. at ¶¶ 10–12, PageID 1056). Shortly after Collier submitted these complaints, she says Kettering placed her on administrative leave and then terminated her, backdating the termination by four days. (*Id*. at ¶¶ 13–16, PageID 1056–1057).

Collier did not accept the severance agreement that Kettering offered; instead, on July 28, 2025, Collier and Scott delivered a letter under Scott's signature (the "Letter") to Kettering that recited factual allegations about "systemic clinical research noncompliance" and other wrongdoing at Kettering. (*Id.* at ¶ 19, PageID 1057–1058 (referring to the previously-filed Letter, Doc. #11-1). The Letter said that if Kettering did not "engage in meaningful settlement discussions," Collier and Scott would notify more than a dozen regulatory agencies, research sponsors, and clinical research organizations ("CROs") of Kettering's purportedly "egregious conduct." (Doc. #11-1, at PageID 231). "In addition," Collier and Scott promised that they would "immediately issue a Press Release to national and local media outlets," cautioning:

2

We have prepared and enclosed a Press Release to be disseminated to the following: NBC, ABC, CBS, CNN, The New York Times, The Washington Post, STAT News, Reuters, The Associated Press, and National Public Radio (NPR). (see attached Exhibit E).

We urge you to take this matter seriously. Ms. Collier has nothing further to lose. The hospital, however, does. We await your expedient response.

(Doc.#11-1, at PageID 231–232; *see also*, Draft Press Releases, enclosed with the Letter, at Doc. #13-1, at PageID 541–543).

The Letter offered Kettering a purported "out" from this threatened harmful media exposure; Scott and Collier wrote that if Kettering paid them enough money, they would not notify the regulators, research sponsors, and news media. (*See* Doc. #11-1, at PageID 231–232). The catch was that their "initial demand begins in the high eight-figure range, given the gravitas [sic] of this situation."[2] In the Letter, Scott and Collier threatened that the release of the information Collier possessed about Kettering's purported misdeeds would "expose[ ]" Kettering to "[r]eputational and stockholder liability," and warned that "Collier has nothing to lose. The hospital, however, does." (*Id.*, at PageID 230, 232).

Instead of yielding to Scott and Collier's extraordinary threats, Kettering retained the EBG Third-Party Defendants[3], who filed a Verified Complaint on Kettering's behalf against Collier for misappropriating trade secrets in violation of state and federal law, violating the Computer Fraud and Abuse Act, breaching her confidentiality agreement with Kettering, and tortiously interfering with Kettering's contracts with its research sponsors. (Doc. #28, at ¶¶ 20–21, PageID 1058; *see*

---

[2] This demand ranged between $50,000,000 and $99,999,999.

[3] Collier and Scott allege that Kettering retained the EBG Third-Party Defendants and notified them of that representation on July 30, 2025; Collier and Scott make no allegation that the EBG Third-Party Defendants had been involved in the underlying facts concerning Collier's employment or the complaints she claims to have made to Kettering. (Doc. #28, at ¶ 20, PageID, 1058) ("Rather than engage in good faith discussions [in response to the Letter], Kettering retained [EBG], notifying Plaintiffs of [this] representation on July 30, 2025.").

3

*generally* Complaint, Doc. #1). Kettering supported its Complaint with sworn testimony from four Kettering witnesses (Doc. #1-2, #1-3, #1-4, #1-8), a copy of the confidentiality agreement that Kettering says Collier signed and violated (Doc. #1-5), and a redacted copy of the Letter (Doc. #1-7).

Kettering alleged that, after it received the Letter, it discovered that Collier had been secretly stealing Kettering's and its Sponsors' confidential information beginning mere weeks after she was hired. (Doc. #1, at ¶¶ 33–34, PageID 11). Collier's scheme continued for several months, including after Kettering terminated Collier's employment. (*Id.* at ¶¶ 33–37, PageID 11–18). Though terminated, Collier continued to access her Kettering email, Teams account, and payroll for approximately three weeks to forward herself confidential information and trade secrets. (*Id.*; Doc. #4-2, at ¶ 2, PageID 146). During that time, Collier also began sending Kettering's confidential information and trade secrets to a third party – Vanessa Lefebvre ("Lefebvre") of VMGL Research Inc. (Doc. #1, at ¶ 37(a), PageID 18–19; Doc. #45, at PageID 1227–1228, Answer to Interrogatory No. 5; Doc. #45-1, at PageID 1231–1238).

In addition to its claims against Collier, Kettering also sued Scott under Ohio Revised Code § 2307.60, which permits a person who has been harmed by a crime to recover damages, punitive damages, and attorneys' fees – Kettering claimed that some of the statements that Scott threatened to publish in the Letter were extortionate and harmful. (Doc. # 28, at ¶¶ 20–21, PageID 1058; *see* Complaint, Doc. #1, at ¶¶ 92–103, PageID 52–54).

Kettering also filed a Motion for Temporary Restraining Order and Preliminary Injunction, which sought "a temporary restraining order ("TRO") and preliminary injunction enjoining [Collier], and anyone acting in concert with her, from using and disclosing the confidential and trade secret information of Kettering and its clinical trial sponsors and requiring the immediate

4

seizure and return of documents already misappropriated through her deliberate deceitful conduct." (Doc. #3; at PageID 103).

The next day, Collier and Scott filed an opposition to Kettering's Motion for TRO. (Doc. #4; Doc. #28, at ¶ 22, PageID 1058). With it were two declarations—one from Collier and one from Scott. (Doc. #4-1, Doc. #4–2). In her declaration, Scott provided sworn testimony based on her personal knowledge in an attempt to defend against Kettering's claims against her client, Collier. (Doc. #4-1, at ¶¶ 1, 3-4, PageID 144–145). She thereby made herself a material fact witness to her own client's case.

A day later, Kettering filed a Motion to Disqualify Scott for violations of Rules 3.7 and 1.7 of the Ohio Rules of Professional Conduct. (Doc. #5; Doc. #28, at ¶ 23, PageID 1058). Kettering maintained that Scott's declaration had demonstrated she was a necessary witness and had an unwaivable conflict of interest with her client. (Doc. #5). Having initially overruled Kettering's Motion to Disqualify (Doc. #20) without prejudice, the Court later reconsidered its decision and disqualified Scott *sua sponte* during a hearing on September 19, 2025. (Doc. #63, at PageID 1395, 1398).

After a flurry of other activity in the case, Collier and Scott filed their FAT-PC[4] on September 10, 2025. (Doc. #28). Collier and Scott counterclaimed against Kettering, asserted third-party claims against fourteen current and former Kettering employees, and brought the following third-party claims against some or all of the EBG Third-Party Defendants:

---

[4] Though Collier and Scott previously filed a Counterclaim and Third-Party Complaint (Doc. #11), their filing of the FAT-PC superseded the original Counterclaim and Third-Party Complaint and rendered it moot—the FAT-PC is the "legally operative [third-party] complaint" to which this Motion is directed. *See Scuba v. Wilkinson*, No. 1:06CV160, 2006 WL 2794939, at *2 (S.D. Ohio Sept. 27, 2006) (quoting *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

5

### Sandra Collier's Individual Causes of Action

- Count III – Retaliation for Protected Activity (Doc. #28, at PageID 1065–1067)

### Mary T. Scott's Individual Causes of Action

- Count V – Defamation and False Light (Doc. #28, at PageID 1068–1070)

- Count VI – Abuse of Process (*Id.* at 1070–1071)

- Count VII – Malicious Prosecution (*Id.* at 1070–1073)

### Joint Claims of Sandra Collier and Mary T. Scott

- Count VIII – Intentional Infliction of Emotional Distress (*Id.* at 1073–1074)

- Count IX – Civil Conspiracy (*Id.* at 1074–1076)

- Count X – Civil (Racketeer Influenced and Corrupt Organizations) (*Id.* at 1076–1077)

Kettering timely moved to dismiss Defendants' counterclaims on October 6, 2025 (Doc. #73), and the EBG Third-Party Defendants now move the Court to dismiss the third-party claims that Defendants asserted against them in the FAT-PC.

### III.    Legal Standard

"The purpose of a motion to dismiss is to allow the court to eliminate actions that are 'fatally flawed in their legal premises and destined to fail.'" *Kralovic v. JPMorgan Chase Bank, N.A.*, No. 1:15 CV 1468, 2016 WL 554838, at *2 (N.D. Ohio Feb. 10, 2016) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). To survive, a complaint in federal district court "must state a claim for relief that is plausible, when measured against the elements of a claim." *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 506 (S.D. Ohio 2022) (cleaned up). Stated simply, Collier and Scott "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.*; *see also Shaut v. Roberts*, 2022-

6

Ohio-817, ¶ 6 (8th Dist.) ("Under the heightened, federal standard, a plaintiff must demonstrate the plausibility of the allegations, well beyond the notice pleading standard under Ohio law[.]").

Thus, a district court "need not accept as true legal conclusions or unwarranted factual inferences." *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (citations omitted). "[F]or a pleading to be adequate, it must offer more than simple 'labels and conclusions, and a formulaic recitation of a cause of action's elements.'" *Moore v. Feldman*, No. 2:16-cv-00200, 2017 WL 1063466, at *2 (S.D. Ohio Mar. 20, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). "[A] complaint is insufficient if it only offers assertions without any 'further factual enhancements[s]' to support the claim." *Id*. (citing *Twombly*, 550 U.S. at 557).

## IV. Law and Argument: The Litigation Privilege Defeats Every One of the Third-Party Claims Against the EBG Third-Party Defendants, and They Fail for Numerous Other Reasons Too

Along with the many other deficiencies associated with Defendants' third-party claims, the claims against the EBG Third-Party Defendants fail as a matter of law because, even if everything the Defendants say is true (and it certainly is not), the EBG Third-Party Defendants enjoy an absolute privilege under Ohio law for the statements they made in this lawsuit. Ohio's absolute litigation privilege shields attorneys and law firms from "lawsuits for statements made during and relevant to judicial proceedings." *Reister v. Gardner*, 164 Ohio St.3d 546, 548 (2020). It applies to statements that "bear 'some reasonable relation to the judicial proceeding in which' they appear." *Id.* at 549 (quoting *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986) syllabus). Ohio law protects attorneys and law firms from liability for statements made during a lawsuit, even if those statements are allegedly defamatory. *Surace*, 25 Ohio St. 3d 229 at syllabus ("As a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the

7

allegedly defamatory statement bears some reasonable relation to the judicial proceedings in which it appears.").

As the Supreme Court of Ohio has explained, the litigation privilege "is designed to protect 'the integrity of the judicial process' by affording participants in litigation with immunity from future lawsuits over relevant *statements* made during judicial proceedings." *Reister*, 164 Ohio St. 3d at 549 (emphasis in original). For the privilege to apply, the statement "must be pertinent and material to the matter in hand, meaning that it must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result." *Wasserman v. Weir*, No. 2:24-cv-3935, 2025 WL 1347253, at *4 (S.D. Ohio May 8, 2025) (Morrison, C.J.) (quoting *Surace*, 25 Ohio St. 3d at 231 (cleaned up)).

Judge Frye of the Franklin County Court of Common Pleas has articulated why Ohio law provides for the litigation privilege which is particularly apt in this matter:

> The reasoning behind this privilege is well-illustrated here. Without it, there is an infinite potential for re-drawing and re-echoing claims based upon litigation arguments, with each new case straying further and further from the underlying substantive dispute. And, if every statement in a court proceeding could be pulled up and become the basis for a new lawsuit, disputes would never end for litigants and the court system would drown in meaningless work. So, the privilege for statements in judicial proceedings about an alleged piece of evidence [which may not have turned out to exist] is dispositive and requires plaintiff's case to be dismissed.

*Lane v. U.S. Bank, N.A.*, Franklin C.P. No.22CV-3051, 2022 WL 22967446, at *3 (June 8, 2022) (dismissing *pro se* plaintiff's claims against his bank and mortgage servicer, which were based on an allegedly false statement against him that appeared in a legal brief).

The litigation privilege's scope is not confined only to defeating claims for defamation; courts apply the litigation privilege to thwart a variety of claims brought against lawyers for their in-court statements and written filings. *See Deters v. Hammer*, No. 1:20-cv-00362, 2021 WL

8

664011, at*4 (S.D. Ohio Feb. 19, 2021), *report and recommendation adopted*, 568 F. Supp. 3d 883 (S.D. Ohio 2021) (barring a **false light** claim against an attorney under the doctrine of absolute immunity); *Harsh v. Franklin*, 2011-Ohio-2428, ¶¶ 21–26 (2d Dist.) (upholding dismissal of **intentional infliction of emotional distress**, **tortious interference**, **fraud**, and **conspiracy** claims against a law firm and its principals where the plaintiff's complaint did not "refer to any conduct by the defendants other than the filing of … pleadings."); *Seminatore v. Dukes,* 2004-Ohio-6417, ¶¶ 26, 39–40 (8th Dist.) (finding claims for **defamation and conspiracy** against attorneys were properly dismissed under absolute immunity); *Schmidt v. Grossman Law Office,* 2014-Ohio-4227, ¶¶ 2, 17 (10th Dist.) (affirming dismissal of **abuse-of-process** claims made against attorney "arising out of communications made to the domestic court during the course of domestic proceedings," where the offending communication had been attached to a pleading); *Lisboa v. Lisboa*, 2011-Ohio-351, ¶¶ 24–28 (10th Dist.) (dismissing claims against attorney for **third-party malpractice**, **fraud**, **conspiracy**, **civil aiding and abetting**, and **intentional infliction of emotional distress**, which the plaintiff brought based on statements and arguments the defendant-attorney made in an amicus brief); *Newman v. Univ. of Dayton,* 2021-Ohio-1609, ¶¶ 43–45 (2d Dist.) (applying litigation privilege and affirming dismissal of former professor's suit against university's outside counsel for **aiding and abetting** discrimination following a professor's termination); *see Hershey v. Edelman*, 2010-Ohio-1992, ¶ 32–33 (10th Dist.) (noting that litigation privilege applies to defeat **civil claims for falsification** against non-attorney defendants, and noting that "**perjury** cannot form the basis of a civil lawsuit.") (emphasis added).

In short, the litigation privilege provides a complete and unassailable defense to every one of the claims against the EBG Third-Party Defendants because all of Scott's and Collier's claims are predicated on protected communications that the EBG Third-Party Defendants made in

connection with this action. This fundamental flaw, compounded by multiple other independent fatal deficiencies, mandates the dismissal of the entire FAT-PC.

### A. Count III: Retaliation for Protected Activity (Collier Only, Against EBG Only) (Doc #28, at PageID 1065–1067)

Defendant Collier includes EBG among the Third-Party Defendants she sued under Count III: Retaliation for Protected Activity. Collier brought these retaliation-related claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) and O.R.C. 4112.02, which is Ohio's Fair Employment Practices Act. (Doc. #28, at PageID 1065–1067).

The only factual allegation within this Count that even arguably relates to EBG is Collier's claim that "Kettering . . . [f]iled an emergency TRO on August 13, 2025 falsely accusing her of stealing PHI." (Doc. #28, at ¶ 52, PageID 1066). The litigation privilege categorically applies to insulate EBG from liability for even purportedly false statements made in the law firm's written filings in this case, including, without limit, the Complaint and TRO Motion. *See supra*, 7–10. While EBG did file an emergency TRO on behalf of its client, Kettering, against Collier on August 13, 2025, and while EBG has every confidence in the truth of the allegations it made on its client's behalf, those claims' truth or falsity is immaterial – no civil liability under Ohio law may attach to EBG for the allegations it presented in court filings in this case on Kettering's behalf. Count III should fail for this reason alone. The retaliation claim against the EBG Third-Party Defendants also fails for many other reasons.

Among those other reasons, Collier does not allege that she was an EBG employee; instead, she was an employee of EBG's client, Kettering. It would be awfully hard indeed for employers to seek counsel in employment matters if their lawyer could be sued for their employer-clients' purported violations of state and federal anti-retaliation laws. Because Collier was not an employee of EBG, her employment-law claims against EBG, as the attorneys for her former

10

employer, fail as a matter of law. *See Diaz v. Langcore*, 751 F. App'x 755, 759 (6th Cir. 2018) (holding that an employee may not maintain a retaliation claim against an employer's attorneys); *Kelly v. First Data Corp.*, No. 1:19-cv-372, 2020 WL 419440, at *9 (S.D. Ohio Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 3528653 (S.D. Ohio June 30, 2020) (dismissing retaliation claims against law firms and attorneys representing employer).

Count III also fails because Collier failed to exhaust her administrative remedies.[5]

### B. Count V – Defamation and False Light (Doc #28, at PageID 1068–1070) (Scott Only, Against Kettering and EBG Third-Party Defendants)

In Count V of the FAT-PC, Scott claims that Kettering and the EBG Third-Party Defendants defamed her in their court filings in this case. (Doc. #28, at PageID 1068–1069). In particular, she points to three allegations that she says appear in Kettering's August 13, 2025, TRO filings, complaining that the EBG Third-Party Defendants and their client alleged that:

- Scott extorted Kettering via the Letter;

- Scott "stole" or directed the theft of PHI; and

- Scott violated trade secret and contractual obligations.

(Doc. #28, at PageID 1068–1069).[6]

Scott says Kettering and the EBG Third-Party Defendants "published these false statements to the Court and to opposing counsel, ensuring they became public record and permanently harming Scott's personal and professional reputation." (Doc. #28, at ¶ 63, PageID 1069). Scott

---

[5] On this point, the EBG Third-Party Defendants incorporate the argument and authorities that Kettering presented in its Motion to Dismiss the First Amended Counterclaims of Defendants-Counterclaim Plaintiffs. (Doc. #73, Argument IV(B), at PageID 1515–1516).

[6] While the first statement is true, the second and third examples that Scott identifies as being purportedly defamatory do not appear in Kettering's Complaint, Motion for TRO, or anywhere else; either way, for all of the reasons set forth already, the EBG Third-Party Defendants would have been absolutely privileged to have made them in written filings and oral statements to the Court as a part of this litigation. (*See* Doc. #1, #3).

11

claims that, by writing and filing the TRO papers, the EBG Third-Party Defendants attempted to discredit Scott as counsel to gain leverage; indeed, she complains that Kettering and the EBG Third-Party Defendants acted with actual malice by "[w]eaponizing litigation filings for purposes unrelated to legitimate judicial purposes." (Doc. #28, at ¶ 64, PageID 1069).

Without contesting the truth or falsity of Kettering's allegations, and taking as true the serious harm that Scott's personal and professional reputation suffered because of the claims and arguments the EBG Third-Party Defendants submitted to the Court in this action, the overarching legal conclusion about the third-party claims remains: the EBG Third-Party Defendants' written and spoken statements to the Court characterizing Scott's letter as extortionate – ***even if false*** (and they are true) – are protected by the litigation privilege, and, as a matter of law, cannot give rise to civil liability against the lawyers or the law firm, whether Defendants categorize them as claims for defamation, false light, or some other tort. *See Wasserman*, 2025 WL 1347253, at *4–5 (granting defendant law firm's and attorney's motion to dismiss under absolute litigation privilege as to four tort claims, all of which were based on the attorney's statements during and relevant judicial proceedings, and rejecting plaintiff's claim that litigation privilege's scope is confined only to defamation claims), citing and quoting *Newman*, 2021-Ohio-1609, at ¶¶ 43–44 (2d Dist.); *City of Dayton v. A.R. Env't, Inc.*, 886 F.Supp.2d 775, 781 (S.D. Ohio 2012) (dismissing defamation claim against attorney where allegations in complaint were absolutely privileged); *Deters*, 568 F. Supp. 3d at 889 (dismissing, under the litigation privilege, one attorney's defamation claim against another attorney, who had given statements to a state bar association's investigators that the plaintiff-attorney claimed were defamatory); *Harsh*, 2011-Ohio-2428, at ¶ 18 (2d Dist.) (dismissing defamation claim by applying litigation privilege).

    **C.**     **Count VI – Abuse of Process (Doc #28, at PageID 1070–1071) (Scott Only Against Kettering and EBG Third-Party Defendants)**

At Count VI, Scott attempts to bring a claim for abuse of process against Kettering and the EBG Third-Party Defendants because they: (1) filed a Motion for TRO; and (2) filed a Motion to Disqualify Scott, at the same time asking the Court to hear the disqualification motion when it held the TRO hearing later that day. (Doc. #28, at ¶¶ 67–68, PageID 1070–1071). At no time in this Count does Scott separate the factual allegations that pertain to Kettering (the client) from those that relate to the EBG Third-Party Defendants (the client's lawyers); that the entirety of this claim arises from the EBG Third-Party Defendants' and their client's statements in court filings in these proceedings only underscores the extent to the EBG Third-Party Defendants' pleadings, briefs, and arguments were ensconced in the protection that the absolute litigation privilege provides.

Like all of the other claims against the EBG Third-Party Defendants, this one fails as a matter of law under the litigation privilege, and for other reasons too. *See supra*, at 7–10*; Schmidt*, 2014-Ohio-4227, at ¶¶ 2, 17 (10th Dist.) (affirming dismissal of abuse-of-process claims made against attorney "arising out of communications made to the . . . court during the course of . . . [judicial] proceedings.").[7]

### D. Count VII – Malicious Prosecution (Doc. #28, at PageID 1070–1073) (Scott Only Against Kettering and EBG Third-Party Defendants)

At Count VII, Scott tries to bring a claim for malicious prosecution based on the EBG Third-Party Defendants' initiation—on behalf of their client—of this case's "TRO proceedings." (Doc. #28, at PageID 1071–1072). Scott generally claims that Kettering's and the EBG Third-Party Defendants' written statements in support of the TRO were "based on false accusations of

---

[7] For the sake of brevity, the EBG Third-Party Defendants incorporate and adopt the legal analysis Kettering presented in its Motion to Dismiss regarding the failings of Scott's abuse-of-process claim, including Kettering's arguments regarding Scott's lack of standing, the impropriety of the claim that Kettering instituted a legal proceeding without proper form and with probable cause, and the lack of a "further act" or "threat" beyond merely conclusory allegations. (Doc. #73, Argument IV(D), at PageID 1517–1521).

theft, extortion, and trade-secret violations," and "were premised on unverified assumptions." (*Id.* at ¶¶ 72–73, PageID 1072).

Revealingly, in support of her argument that Kettering's allegations that Collier stole its confidential documents were "false accusations," Scott almost lets the mask slip, conceding that when Collier emailed PHI to outside parties, she did so because "Kettering failed to disable Collier's IRG email account property." (*Id.* at ¶ 73, PageID 1072). This concession nearly gives away the game on the Defendants' charade that Kettering's claims—made through the EBG Third-Party Defendants' court filings—were false.

But even if the allegations in support of the TRO were false (and they were true, as Scott very nearly concedes), the litigation privilege shields the EBG Third-Party Defendants from civil liability for the written statements they made to the Court on Kettering's behalf in support of the TRO motion. [8]

Scott's malicious prosecution claim fails for other reasons too. [9]

Because the litigation privilege insulates them from the statements they made in the TRO papers, and because the elements of malicious prosecution cannot be met, the Court should dismiss Scott's claim against the EBG Third-Party Defendants in Count VII for malicious prosecution.

---

[8] *See supra*, at 7–10; *Daher v. Cuyahoga Community College Dist.*, 2021-Ohio-2103, ¶ 15–16 (8th Dist.) (applying litigation privilege to dismiss plaintiff's civil claims for malicious prosecution, which arose from allegedly false statements the defendants made to the prosecutor); *Barnes v. Beachwood*, 2006-Ohio-3948, ¶ 2, 4, 19–20 (8th Dist.) (dismissing, by application of the litigation privilege, claims for malicious prosecution against city and its attorney law director, who submitted statements about plaintiff's dispute with his municipal co-workers to the city prosecutor, who brought a criminal prosecution of which the plaintiff was acquitted).

[9] The EBG Third-Party Defendants incorporate and adopt the arguments Kettering presented in its Motion to Dismiss as to Scott's malicious prosecution claim, namely Scott's lack of standing and the lack of a prior proceeding terminating in either Collier or Scott's favor. (Doc. #73, Argument IV(E), at PageID 1522.

14

E.      **Count VIII – Intentional Infliction of Emotional Distress (Doc. #28, at PageID 1073–1074) (Collier and Scott Against Kettering, EBG, and Certain Kettering Third-Party Defendants)**

At Count VIII, Collier and Scott present a claim for intentional infliction of emotional distress ("IIED") against Kettering, EBG, and a few of the Kettering Third-Party Defendants. (Doc. #28, at PageID 1073–1074). Collier's and Scott's allegations against EBG in this claim emanate from the filings EBG made with the Court in this case, including filing of the Complaint, Motion for TRO, and Motion to Disqualify; it is uncertain whether Collier's and Scott's complaints about HIPAA violations and alleged evidence suppression are directed against EBG. This is yet another legally deficient third-party claim against a litigant's lawyers premised on purportedly aggressive or false statements made in these judicial proceedings. And just like all of Defendants' other third-party claims against the EBG Third-Party Defendants, Count VIII fails upon application of the litigation privilege – Collier and Scott cannot, as a matter of law, prevail in a civil action against Kettering's lawyers for the statements those lawyers made in their filings to the Court to assert and preserve Kettering's legal rights. *Harsh*, 2011-Ohio-2428, at ¶¶ 18–21 (2d Dist.) (affirming dismissal of numerous civil claims, including IIED, against lawyers and law firm under litigation privilege, and reiterating that "[a]ttorneys enjoy an absolute privilege for statements made in the course of representing a client in litigation."); *Lisboa*, 2011-Ohio-351, at ¶¶ 24–28 (8th Dist.) (dismissing claims, including IIED, against defendant-attorney, which the plaintiff brought based on statements and arguments the defendant-attorney made in an amicus brief); *see Nationstar Mortg., L.L.C. v. Ritter*, 2015-Ohio-3900, ¶ 15 (10th Dist.) ("To the extent that the counterclaims for fraud, slander, and [IIED] are based on [lender's] filing and refiling of its foreclosure complaints, these claims are clearly barred by the doctrine of absolute [litigation] privilege."); *Wells Fargo Bank, N.A. v. Johnson*, 2016-Ohio-1114, ¶ 26 (6th Dist.) (affirming

dismissal of IIED counterclaim pursuant to Rule 12(B)(6) because it alleged "nothing beyond the filing of the foreclosure complaints and necessary statements and furtherance of the claims set forth therein," as the counterclaim was "barred on [its] face by the doctrine of absolute privilege.").

Even if the litigation privilege did not shield EBG from the Defendants/Third-Party Plaintiffs' IIED claim, Count VIII would fail for additional reasons.[10]

The layers of this claim's deficiency are hard to summarize; suffice to say that, under the litigation privilege, EBG cannot be held liable to Collier and Scott for tort claims arising from EBG's court filings in this case.

**F.     Count IX – Civil Conspiracy (Doc. #28, at PageID 1074–1076) (Collier and Scott against Kettering and All Third-Party Defendants, including the EBG Third-Party Defendants)**

Next, Collier and Scott allege a claim for civil conspiracy.  Like all of their other claims, this one also fails as a matter of law.

"Civil conspiracy" is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co*., 650 N.E.2d 863, 866 (1995) (citation omitted). To be clear, "Civil Conspiracy is not an independent cause of action." *Equity Res., Inc. v. Thoman*, 682 F.Supp.3d 707, 723 (S.D. Ohio 2023) (citation omitted). "Instead, 'to prevail upon a civil conspiracy claim,

---

[10] The EBG Third-Party Defendants incorporate and adopt Kettering's further arguments for why the Defendants' IIED claim fails: Defendants do not demonstrate that the EBG Third-Party Defendants engaged in "extreme and outrageous conduct" or the type of emotional harm that would be necessary to support such a claim; Scott's lack of standing; that an IIED claim cannot arise from an adverse employment action; to the extent the IIED claim rests upon improper workplace conduct that Collier claims to have experienced at Kettering, she had no such employment relationship with EBG. (Doc. #73, Argument IV(F), at PageID 1523–1528). Further, there is no cognizable claim that could impute liability to EBG for Kettering's purported failure to remediate compliance and research failures. Moreover, Collier and Scott's claim that Kettering has "publicly and erroneously vilif[ied]" them is targeted directly toward the court filings EBG and its attorneys made on Kettering's behalf, which, as noted above, are absolutely privileged and cannot serve as a basis for an IIED claim. (*Id.* at PageID 1526–1527).

16

a plaintiff must demonstrate the existence of an underlying unlawful act.'" *Id*. (citation omitted). Importantly, "[t]he underlying unlawful act must be a tort." *Eastside Lincoln Mercury, Inc.*, 2004 WL 6033074, at *10 (citing *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001). Additionally, a "conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Avery*, 762 N.E.2d at 395; *see also Garrett v. Morgan Cnty. Sheriff's Off.*, No. 1:23CV2011, -- F.Supp.3d--, 2025 WL 2097739, at *28 (N.D. Ohio July 25, 2025).

The evidence for the "malicious combination" among the collective Third-Party Defendants that Collier and Scott say is enough to state a cognizable claim for civil conspiracy is:

- Coordination between EBG and Kettering to draft filings that knowingly misstated facts contradicted by Exhibit X;

- Deliberate delay in issuing HIPAA breach notifications to Ms. Collier in violation of 45 C.F.R. § 164.404;

- Efforts to silence whistleblowing through intimidation, retaliation, and misrepresentation.

(Doc. #28, at PageID 1075).

The first bullet demonstrates why the litigation privilege defeats this Count, just like it defeats all of Collier's and Scott's other claims against the EBG Third-Party Defendants. *Harsh*, 2011-Ohio-2428, at ¶¶ 21, 27 (2d Dist.) (dismissing civil claims against attorneys, all of which were premised on attorney's involvement with filing pleadings on behalf of their clients, and finding that "[m]erely responding to pleadings in a lawsuit, without more, does not constitute civil conspiracy"); *Seminatore*, 2004-Ohio-6417, at ¶¶ 26, 39–40 (8th Dist.) (affirming dismissal of claims for defamation and conspiracy against lawyers, which the plaintiff-priest premised upon statements the lawyers had made in court filings against the priest's diocese); *Lisboa*, 2011-Ohio-

17

351, at ¶¶ 24–28 (8th Dist.) (affirming dismissal of numerous civil claims, including conspiracy, that a plaintiff brought against his ex-wife's lawyer for statements the lawyer had made in judicial proceedings).

Moreover, courts routinely dismiss civil conspiracy claims—like the ones Collier and Scott brought against the EBG Third-Party Defendants—where a plaintiff "fail[s] to plead an unlawful [tortious] act, that is separate and apart from the conspiracy itself[.]" *Sal's Heating & Cooling*, 2022-Ohio-1756, ¶¶ 26, 31 (8th Dist.) (dismissing civil conspiracy claim premised on a statute, not a tort); *see also Garrett*, 2025 WL 2097739, at *28 (dismissing civil conspiracy claim where "[p]laintiff has failed to sufficiently allege an underlying lawful [sic] act (i.e., Obstruction of Justice)"); *N. Canton Bd. of Educ. v. AT&T Inc.*, No. 5:16-cv-1420, 2017 WL 1133966, at *9 (N.D. Ohio Mar. 27, 2017) (dismissing civil conspiracy claim where underlying tort claim was also dismissed); *Rhoads v. Olde Worthington Bus. Ass'n*, 2024-Ohio-2178, ¶ 59 (10th Dist.) ("[A]ppellants' civil conspiracy claim is based on tortious interference with contract. Having concluded the amended complaint fails to assert such a claim, there can be no civil conspiracy."); *LaSalle Bank, N.A. v. Kelly*, 2010-Ohio-2668, ¶ 34 (9th Dist.) ("As we have disposed of all of the potential tort claims that could have supported the conspiracy claim, the Kellys cannot show an unlawful act independent from the conspiracy itself. Accordingly, this claim was properly dismissed."); *Avery*, 762 N.E.2d at 395 (upholding dismissal of civil conspiracy claim where "appellants failed to allege any underlying tort; their claims are constitutional in nature rather than tortious").

Collier's and Scott's civil conspiracy claim is derivative and cannot survive if the claims about the underlying allegedly unlawful acts upon which it is premised do not survive. As stated

18

throughout this brief, Scott and Collier have not pled a cognizable tort against the EBG Third-Party Defendants. That, in and of itself, is fatal to such a claim.

The second and third bullets of Collier's and Scott's conspiracy claim are not apparently directed against the EBG Third-Party Defendants, and even if they were, the entirety of the civil conspiracy claim fails to state a claim for which relief may be granted.

In short, Collier and Scott have failed to state a claim for civil conspiracy against the EBG Third-Party Defendants, and the Court should dismiss Count IX of the FAT-PC.[11]

G.   **Count X – Civil Racketeer Influenced and Corrupt Organizations ("RICO") (Collier and Scott, Against all Third-Party Defendants) (Doc. #28, at PageID 1076–1077).**

Collier and Scott's attempt to conjure up a violation of RICO is equally unavailing. Not only do Collier and Scott fail to establish an "enterprise" or any form of "racketeering activity," the alleged "predicate acts" (even if accepted as true for purposes of this Motion only) did not involve the EBG Third-Party Defendants in any capacity.

To the extent Collier and Scott attempt to argue that the filing of this litigation is somehow relevant to the claim,[12] "[m]any courts have rejected the mere filing of litigation documents as the basis of a RICO claim." *Melton v. Blankenship*, No. 07-1091-T-TMP, 2008 WL 11432163 at *2 (W.D. Tenn. Feb. 20, 2008), *aff'd,* 2009 WL 87472 (6th Cir. 2009) (collecting cases). The Court in *Melton* explained that, "[c]learly, under certain circumstances, an attorney or law firm can be liable under RICO for actions taken while representing a client. However, there is a difference between zealous client representation and attorney control or management of an alleged RICO

---

[11] The EBG Third-Party Defendants incorporate and adopt the further arguments made by Kettering in its Motion to Dismiss Count IX of the FAT-PC. (Doc. #73, Argument IV(G), at PageID 1528–1531).

[12] To be clear, Collier and Scott do not specifically allege that filing the litigation is a "predicate act." However, they do allege "litigation expenses defending against baseless claims" among their purported injuries associated with the claim. (Doc. #28, at ¶ 88, PageID 1077).

19

enterprise." *Id.*, at \*5 (dismissing RICO claim against attorneys where allegations did not "go beyond the legal counsel that [d]efendants provided to [their client]" and noting that allowing such a claim to proceed would have a chilling effect on attorneys' representation of clients in pending litigation); *see also Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1376 (6th Cir. 1991) (upholding dismissal of RICO claim against insurance company's attorneys and finding "[a]ctions of the attorneys, as counsel [for the insurance company] and its agents-employees, were in defense of litigation instituted by plaintiffs, or to set out their client's position with respect to handling and processing claims submitted…No RICO claim is alleged under the circumstances of this controversy against the defendant attorneys"). The EBG Third-Party Defendants' representation of Kettering and their corresponding involvement in this litigation are equally insufficient to maintain a RICO claim.

"[T]o state a civil RICO claim, a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). "Each of these elements must be alleged as to each defendant." *Komorek v. Conflict Int'l, Inc.*, No. 2:24-cv-1227, 2025 WL 948973, at \*5 (S.D. Ohio Mar. 29, 2025) (citing *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 858 (S.D. Ohio 2020) (Cole, J.)). Collier and Scott not only fail to sufficiently allege the elements of a RICO claim overall, they also fail to allege **any** predicate acts on the part of any of the EBG Third-Party Defendants. Moreover, conclusory allegations, such as those set forth by Collier and Scott, are insufficient to sustain a RICO claim. *Britt v. Fox*, 110 F. App'x. 627, 628 (6th Cir. 2004) (upholding dismissal of RICO claim against lawyers, law firm,

20

and insurance agency and noting "conclusory assertions did not satisfy the basic requirements of the statute.").

Collier and Scott have failed to state a claim for the following reasons.

First, Collier and Scott "only [have] standing if, and can only recover to the extent that, [they have] been injured in [their] business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Here, Collier alleges that she has suffered "retaliatory termination, reputational harm, physical and emotional distress, and financial losses." (Doc #28, at PageID 1077). Scott similarly alleges she has suffered "reputational harm, emotional distress, and litigation-related damages" and that both have suffered "substantial litigation expenses." (*Id.*). But these alleged harms are personal in nature, and RICO "excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 594 (2025); *see also Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) (holding that emotional distress, loss of earnings, and litigation expenses were personal and, thus, not compensable under RICO) (abrogated on other grounds); *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 197, n.9 (D. Mass. 2021) ("[H]arm to reputation is not cognizable injury under RICO."); *Kerik v. Tacopina*, 64 F.Supp.3d 542, 561 (S.D.N.Y. 2014) ("[R]eputational injuries are insufficient to support a civil RICO claim."). Moreover, even if Scott and Collier did sufficiently plead harm to their "business or property," they have failed to allege any facts to plausibly infer that these alleged harms were directly caused by the alleged racketeering activities of mail fraud, wire fraud, and obstruction of justice.[13] *See Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542, 545 (6th Cir.1985) (holding that harm must be directly caused by the asserted RICO violations); *Compound Prop. Mgmt. LLC*, 343 F.R.D. at 406 ("Plaintiffs must show the asserted predicate act was both a but-for

---

[13] As set forth below, retaliation and concealment are not racketeering activities as defined by 18 U.S.C. § 1961(1).

and a proximate cause of their injury with some direct relation between the injury asserted and the injurious conduct alleged.") (internal quotation omitted).

Second, Collier and Scott fail to set forth sufficient factual allegations to show that the Third-Party Defendants coordinated in such a way as to constitute a RICO "enterprise." An enterprise for RICO analysis is either "(1) legal entities such as corporations and partnerships; [or] (2) informal associations-in-fact." *Arnold v. Alphatec Spine, Inc.*, No. 1:13-cv-714, 2014 WL 2896838, at *9 (S.D. Ohio June 26, 2014) (citing *United States v. Turkette*, 452 U.S. 576, 581–82 (1981)). Instead, the FAT-PC states in conclusory fashion without factual enhancement that "Kettering Health, its IRG leadership,[14] and outside counsel EBG constitute an 'enterprise' under 18 U.S.C. § 1961(4) because they functioned as a continuing unit to further unlawful objectives." (Doc. #28, at ¶ 85, PageID 1076). The FAT-PC then goes on to state in similar conclusory fashion that "Defendants engaged in repeated predicate acts." (*Id.* at ¶ 86, PageID 1076). This is clearly improper. "[A] properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir.2000) (finding pleadings deficient where "the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages.") (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)). Specifically, "the complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'" *Begala*, 214 F.3d at 781–782 (emphasis supplied); *see also Meros v. Dimon,* No. 2:17-CV-103, 2017 WL 6508723, at *8 (S.D. Ohio Dec. 20, 2017) (finding

---

[14] The FAT-PC does not identify "IRG leadership."

22

that complaint "littered with bare assertions of legal conclusions" that defendants committed predicate acts and functioned as an ongoing unit insufficient to state a RICO claim).[15]

Third, Collier and Scott did not plead two or more racketeering offenses. A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). "To qualify as a predicate racketeering offense, the offense must be listed as 'racketeering activity' under 18 U.S.C. § 1961(1)." *Komorek*, 2025 WL 948973, at *5. Here, Collier and Scott have alleged five predicate racketeering offenses: (1) mail fraud (18 U.S.C. § 1341); (2) wire fraud (18 U.S.C. § 1343); (3) obstruction of justice (18 U.S.C. § 1503); (4) retaliation; and (5) concealment of systemic noncompliance.

Only the first three of Collier and Scott's claimed "offenses" are listed as racketeering activities under 18 U.S.C. § 1961(1) and, thus, the Court must disregard the last two. *See Komorek*, 2025 WL 948973, at *5 (disregarding alleged predicate acts of violation of the Privacy Act of 1974 and Freedom of Information Act, false statements, and perjury on grounds that such acts were not listed as racketeering activity under 18 U.S.C. § 1961(1)). Importantly, Collier and Scott's mail and wire fraud predicate acts must be "pleaded with particularity" as required by Fed. R. Civ. P. 9(b). *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984); *Komorek*, 2025 WL 948973, at *7 ("As with mail fraud, allegations of wire fraud are subject to the heightened pleading requirements of Rule 9(b)."). Collier and Scott "must at minimum allege the time, place and contents of the misrepresentation(s) upon which [they] relied." *Bender*, 749 F.2d at 1216; *see also*

---

[15] Aside from the insufficient particularity of the allegations including no mention of mail or wires, among other deficiencies, Collier and Scott also concede that the EBG Third-Party Defendants were not retained by Kettering until after their extortionary demand letter was sent in June 2025. (Doc #28, at ¶ 20, PageID 1058). Their admission in this regard defeats any notion that the EBG Third-Party Defendants were coordinated with the other Third-Party Defendants when the alleged fraudulent acts occurred, and eliminates any chance that the EBG Third-Party Defendants had joined any sort of "enterprise" with the other Third-Party Defendants.

23

*Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *Bird v. Delacruz*, No. 04-CV-661, 2005 WL 1625303, *6 (S.D. Ohio July 6, 2005) (holding that to state a valid mail or wire fraud claim as a predicate act under RICO, "the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications.") (internal quotations omitted); *FFP Holdings, LLC v. Moeller*, No. 3:14CV693V, 2014 WL 4322804, at *6 (N.D. Ohio Aug. 29, 2014) (explaining that sufficiently pled predicate acts include the "who, what, when, [and] where" of the specific false statements or misrepresentations that drove the scheme).

Collier and Scott have plainly failed to meet this burden. The FAT-PC does *not*: (a) specify the statements that Collier and Scott contend were fraudulent, (b) identify the speaker, (c) state where and when the statements were made, or (d) explain why the statements were fraudulent. Nor are there any factual allegations giving rise to an inference that the Third-Party Defendants acted with scienter or intent to defraud. In fact, there are no allegations even suggesting that the EBG Third-Party Defendants "acted" at all. Instead, Collier and Scott vaguely allege:

> Defendants[16] engaged in repeated predicate acts, including: Mail and wire fraud . . . by: shared credentials used to commit fraud, misrepresented clinical research data, continued use of a 28-year outdated, and improper signatory platform, misrepresentation to regulatory and compliance agencies, and Plaintiffs[.]

(Doc. #28, at ¶ 86, PageID 1076–1077). These allegations are woefully insufficient to meet even the customary pleading standard under Fed. R. Civ. P. 8(a), much less the heightened pleading standard under Fed. R. Civ. P. 9(b). *See Cranel Inc. v. Pro Image Consultants Group, LLC*, 57 F.Supp.3d 838, 849 (S.D. Ohio 2014) (dismissing RICO claim premised on wire fraud where

---

[16] A "reference to 'Defendants' collectively is insufficient to "identify the speaker" of the false statements." *Arnold*, 2014 WL 2896838, at *12 (dismissing RICO claim where, among other things, plaintiffs failed to sufficiently identify the speaker who committed mail and wire fraud).

24

alleged fraud was not pled with specificity); *Komorek*, 2025 WL 948973, at \*6–7 (same); *Arnold*, 2014 WL 2896838, at \*9-12 (same).

Nor do Collier and Scott identify any money or property that the EBG Third-Party Defendants "attempted to obtain by means of false or fraudulent pretenses, representations, or promises." *Cranel Inc*., 57 F. Supp. 3d at 849 ("A scheme to defraud is any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises") (citing *In re ClassicStar Mare Lease Litig*., 727 F.3d 473, 484 (6th Cir. 2013) (internal citations omitted)).

Collier and Scott's allegation that "Defendants" committed obstruction of justice in violation of 18 U.S.C. § 1503 "by withholding internal HIPAA findings . . . while simultaneously alleging the Plaintiffs fabricated the HIPAA violations" (Doc. #28, at ¶ 86, PageID 1077) is similarly flawed. "To constitute an offense under [18 U.S.C. § 1503], the act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Transit Auth*., 896 F.2d 704, 707 (2d Cir. 1990) (citation omitted). Here, Kettering's alleged withholding of HIPAA findings from Collier does not relate to a proceeding in federal court. Rather, it relates to a private matter between Kettering and Collier, which did not in any way involve the EBG Third-Party Defendants. As alleged in the FAT-PC, Collier received a letter from Kettering, dated August 27, 2025, which informed Collier that Kettering had become aware on or about June 26, 2025, that Collier's PHI had been improperly accessed and disclosed. (Doc. #28, at ¶¶ 2, 24, PageID 1053, 1059). Collier contends that this letter was sent two days late and, thus, violated HIPAA. (*Id.* at PageID 1054, 1059). But HIPAA does not authorize a private right of action and whether Kettering

25

withheld HIPAA findings from Collier has no bearing on this proceeding and, thus, cannot constitute obstruction.[17]

Even if Kettering's alleged withholding of HIPAA findings did relate to a federal court proceeding, "[a] violation of 18 U.S.C. § 1503 requires proof that an individual has 'corruptly endeavor[ed] to interfere with the due administration of justice . . . with the general intent of knowledge *as well as the specific intent or purpose to obstruct*.'" *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 155–56 (6th Cir. 1990) (quoting *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) (emphasis in original)).

Here, neither Collier nor Scott have alleged any facts that would plausibly suggest that Kettering acted with a specific intent or purpose to interfere with the administration of justice in this case by sending the HIPAA letter to Collier a mere two days late, let alone that they did so in coordination with the EBG Third-Party Defendants. The HIPAA breach letter is wholly irrelevant to any of the claims or defenses in this matter; in particular, the fact that the EBG Third-Party Defendants' client sent it to Collier is irrelevant to the legally deficient RICO claims Collier and Scott try to assert against the EBG Third-Party Defendants.

## V.    Conclusion

When they prepared and filed the Verified Complaint and TRO papers, and when they made arguments in support of those filings in this case, the EBG Third-Party Defendants acted within the scope of Ohio's absolute litigation privilege, and they were insulated from civil liability for the statements that they made, all of which bore a close relationship to this litigation. The litigation privilege strikes down every one of the claims against the EBG Third-Party Defendants,

---

[17] Defendants/Third-Party Plaintiffs concede that Collier has no private right of action under HIPAA—they said as much in their Motion to Dismiss Kettering's Verified Complaint. Motion to Dismiss, at 2 (Doc. #13, at PageID 506) ("HIPAA provides no private right of action . . .").

26

and the Court should grant this Motion and dismiss every one of the third-party claims against the

EBG Third-Party Defendants under F.R.C.P. 12(b)(6).

Respectfully submitted,

/s/ *Jonathan T. Brollier*
Jonathan T. Brollier (0081172)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax:    614.633.1713
jbrollier@ebglaw.com

Christopher  M.  Farella  (NY  3994449)
General Counsel
Jennifer O'Connor (NY 5297866)
Epstein Becker & Green, P.C.
875 Third Avenue
New York, New York 10022
Phone: 212.351.4500
Fax:    212.878.8600
cfarella@ebglaw.com
jeoconnor@ebglaw.com
*Counsel for Third-Party Defendants Epstein*
*Becker & Green, P.C., James G. Petrie, Jill*
*K. Bigler, and Chris Page McGinnis*

27

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, the foregoing *Motion to Dismiss of Third-Party Defendants Epstein Becker & Green, P.C., James G. Petrie, Jill K. Bigler, and Chris Page McGinnis* was electronically filed using the Court's CM/ECF system and was automatically served to all counsel of record.

*/s/ Jonathan T. Brollier*
Jonathan T. Brollier (0081172)
