IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Kettering Adventist Healthcare.** **d/b/a Kettering Health Network,** | : | Case No. 3:25-cv-00273 |
| | : | Judge Walter H. Rice |
| Plaintiff/Counterclaim-Defendant, | : | |
| v. | : | |
| Sandra L. Collier, et al., | : | |
| Defendants/Third-Party Plaintiffs. | : | |
| v. | : | |
| Epstein Becker and Green, LPC, et al., | : | |
| Third-Party Defendants. | : | |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS SANDRA L. COLLIER AND MARY T. SCOTT'S MOTION IN OPPOSITION TO EBG THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Third-Party Plaintiffs Sandra L. Collier and Mary T. Scott respectfully submit this Memorandum in Opposition to the Motion to Dismiss filed by Epstein Becker & Green, P.C. ("EBG") and its attorneys. Accepting all well-pleaded allegations as true, the Amended Third-Party Complaint states plausible claims for relief under Fed. R. Civ. P. 12(b)(6). The pleading sets forth specific facts showing retaliatory discharge, disability discrimination, defamation per se, intentional infliction of emotional distress, tortious interference, abuse of process, and a continuing racketeering enterprise. EBG's motion relies on factual disputes and privilege theories that cannot be resolved on the pleadings. For these reasons, dismissal must be denied.

**II. STANDARD OF REVIEW**

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint need only allege sufficient facts to raise a right to relief above the speculative level. On a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and draw all reasonable

inferences in favor of the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Applying this standard, every claim pleaded here survives.

**III. FACTUAL BACKGROUND**

Ms. Collier served as System Director for Innovation, Research & Grants at Kettering Health Network. On June 19 2025, she was terminated after reporting HIPAA breaches, research-protocol violations, and discrimination within the research department. Ms. Scott was not involved in those events. She first met Ms. Collier on July 12 2025, weeks after termination, when retained solely to evaluate documents and prepare a pre-suit settlement demand. That letter—professionally written, accurate, and non-threatening—merely requested that Kettering address regulatory violations and compensate Ms. Collier for the harm caused. It was a lawful, protected communication under *State ex rel. Ellis v. Cleveland Mun. Sch. Dist.,* 2015-Ohio-760, and *Dart Indus. Co. v. Hurd*, 66 Ohio St.2d 280 (1981).

Despite this, EBG later accused Ms. Scott of "extortion," publicly naming her as a third-party defendant. The Amended Complaint alleges that doing so had no factual basis and served the collateral purpose of creating a conflict to deprive Ms. Collier of her chosen counsel.

**IV. ARGUMENT**

A. <u>Litigation Privilege Does Not Bar These Claims</u>

Defendants cannot invoke the litigation privilege to shield misconduct that occurred before and contemporaneously with the filing of their complaint and TRO. Ohio's absolute-privilege doctrine applies only to statements made during the course of a judicial proceeding and relevant to the issues being litigated. *Hecht v. Levin,* 66 Ohio St.3d 458, 460–62, 613 N.E.2d 585 (1993); *Surace v. Wuliger,* 25 Ohio St.3d 229, 233–34, 495 N.E.2d 946 (1986). It does not extend to extrajudicial or collateral actions undertaken to obtain strategic advantage, nor to bad-faith "pre-litigation" communications unconnected to a legitimate claim. *Hecht*, 66 Ohio St.3d at 461–62; *Erie Cty. Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210, 171 N.E. 97 (1930).

Here, the record shows that EBG's accusation of "extortion" and the decision to name Ms. Scott as a co-defendant were made in direct retaliation for her protected demand letter to Kettering and for her representation of whistleblower Ms. Collier. Those filings were not aimed at resolving a legitimate legal dispute but at creating a perceived conflict of interest to disqualify counsel and isolate the whistleblower from legal representation. Such conduct constitutes a collateral and coercive use of process, not a protected communication within the judicial function.

Even assuming arguendo that a qualified privilege applied, Plaintiffs have pled facts establishing actual malice and abuse of process, defeating any conditional immunity. *Hahn v. Kotten*, 43 Ohio St.2d 237, 244–46, 331 N.E.2d 713 (1975); *A & B-Abell Elevator Co. v. Columbus/Cent*. *Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 11–12, 651 N.E.2d 1283 (1995). Moreover, the litigation privilege does not extend to tortious misuse of judicial process undertaken for an ulterior or retaliatory objective. *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St.3d 294, 298–99, 626 N.E.2d 115 (1994); *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (1996).

Accordingly, the privilege defense fails. EBG's simultaneous filing of a TRO and complaint that falsely accused Plaintiffs of theft, extortion and targeted counsel for disqualification fall outside the absolute privilege and squarely within Ohio's recognized exceptions for malicious and abusive litigation tactics.

B. Collateral Purpose and Bad Faith

Ohio courts have long held that the privilege accorded to judicial filings does not extend to legal process or communications employed for a collateral purpose or in bad faith. The absolute privilege protects participants acting within the scope of legitimate advocacy, but it does not shield those who weaponize the judicial process to accomplish an objective outside the proceeding's proper function. *Surace v. Wuliger*, 25 Ohio St.3d 229, 233–34, 495 N.E.2d 946 (1986); *Hecht v. Levin*, 66 Ohio St.3d 458, 460–62, 613 N.E.2d 585 (1993).

As the Ohio Supreme Court clarified in *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St.3d 294, 298–99, 626 N.E.2d 115 (1994), a party may commit abuse of process even when the underlying lawsuit was properly filed, if the process is "perverted to accomplish an ulterior purpose for which it

was not designed." The privilege ends where the process is used not to adjudicate rights, but to harass, intimidate, or coerce. Similarly, in *Robb v. Chagrin Lagoons Yacht Club, Inc*., 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (1996), the Court reiterated that litigation becomes abusive when it is "used to gain a collateral advantage, not properly involved in the proceeding itself."

Here, the pleadings plausibly allege that EBG's actions were undertaken not to advance a legitimate claim, but to intimidate, isolate, and silence both Plaintiffs. By naming Ms. Scott—a whistleblower's counsel—as a co-defendant in direct response to her pre-suit demand letter, EBG's purpose was not legal redress but disruption and suppression of protected activity. The simultaneous filing of a TRO and theft-based complaint amplified that coercive intent, serving to (1) chill whistleblowing disclosures, (2) deprive Ms. Collier of chosen counsel, and (3) stigmatize both women through false criminal insinuations.

This type of strategic misuse of process fits squarely within the conduct condemned in *Yaklevich* and *Robb*. Courts have consistently held that retaliatory or bad-faith litigation tactics—those aimed at intimidation, reputational destruction, or attorney disqualification—fall outside any privilege and support causes of action for abuse of process, defamation, and retaliatory interference. See also *Crawford v. Euclid Nat'l Bank*, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168 (1985) (recognizing liability for using legal proceedings as a means of coercion).

Accordingly, EBG's conduct—filing retaliatory pleadings to engineer disqualification and undermine whistleblower protection—reflects bad faith and a collateral objective that strip it of any privilege defense. The resulting injuries, including loss of counsel, reputational harm, and economic deprivation, are actionable consequences of that misconduct.

C. "Extortion" Allegation Constitutes Defamation Per Se

Calling a licensed attorney an "extortionist" constitutes defamation per se, as it falsely imputes the commission of a crime and professional misconduct, thereby injuring the attorney in her trade and profession.

Under Ohio law, statements that impute criminal conduct or tend to injure a person in their profession are defamatory per se. See *Becker v. Toulmin*, 165 Ohio St. 549, 553–54 (1956); *McCartney*

*v. Oblates of St. Francis deSales,* 80 Ohio App.3d 345, 353 (6th Dist. 1992); *Moore v. P.W. Publishing Co.,* 3 Ohio St.2d 183, 188 (1965).

Since damages are presumed in defamation per se, EBG's public filings accusing Ms. Scott of "extortion" foreseeably caused reputational harm within the legal and professional community, satisfying the foreseeability standard articulated in *Hecht v. Levin,* 66 Ohio St.3d 458, 460–61 (1993), and reaffirmed in *Surace v. Wuliger*, 25 Ohio St.3d 229, 233–34 (1986).

D.  Intentional Infliction of Emotional Distress

Both Plaintiffs allege extreme and outrageous conduct: the retaliatory termination and implications of theft directed at Ms. Collier, and the false criminal accusation and resulting professional humiliation directed at Ms. Scott. Such conduct, if proven, exceeds all possible bounds of decency and is utterly intolerable in a civilized community, and it was reasonably foreseeable to cause severe emotional distress. *Yeager v. Local Union* 20, 6 Ohio St.3d 369, 374–75, 453 N.E.2d 666 (1983).

The pleadings further allege psychological injury, therapy, sleeplessness, anxiety, and financial loss, all of which fall within the range of actionable severe emotional distress recognized by Ohio courts. *Paugh v. Hanks,* 6 Ohio St.3d 72, 78–79, 451 N.E.2d 759 (1983).

E.  Tortious Interference with Business Relations

EBG's conduct intentionally and improperly interfered with each Plaintiff's professional livelihood. For Ms. Collier, post-termination interference impeded her ability to obtain future employment in clinical research administration. For Ms. Scott, the public and false "extortion" accusation directly injured her law practice, resulting in lost billable hours, reputational damage, and deterrence of new clients.

These allegations sufficiently state a claim for tortious interference with business relations under *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14–15, 651 N.E.2d 1283 (1995), which recognizes liability where a defendant intentionally and without privilege interferes with another's business relationships and causes resulting harm.

F.  ADA Discrimination and Retaliation ( Collier )

Ms. Collier's double mastectomy and ongoing cancer treatment constitute a disability within the meaning of the Americans with Disabilities Act (ADA), which defines disability as "a physical or

mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(g)(1).

Cancer, and the substantial limitations associated with recovery and ongoing medical treatment, are explicitly recognized as qualifying impairments. See *Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004) (recognizing breast cancer as an ADA-covered impairment); *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (finding breast-cancer diagnosis and recovery constitute disability under ADAAA).

Ms. Collier engaged in protected activity when she reported serious HIPAA and patient-safety violations, actions that fall squarely within the ADA's anti-retaliation and opposition-clause protections. See 42 U.S.C. § 12203(a) (prohibiting retaliation against individuals who oppose acts made unlawful by the ADA). Immediately thereafter, Kettering terminated her employment—an act that, viewed in context, supports an inference of retaliatory motive.

Under Sixth Circuit precedent, close temporal proximity between the protected activity and the adverse employment action can establish a prima facie causal connection for pleading purposes. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505–06 (6th Cir. 2014) (holding that a three-day gap between protected activity and termination supported a causal inference). Moreover, allegations that the employer's stated reasons were pretextual—including inconsistent explanations and disparate treatment—further satisfy Sixth Circuit plausibility standards for ADA discrimination and retaliation claims. See *Rorrer v. City of Stow,* 743 F.3d 1025, 1046–47 (6th Cir. 2014); *Hamilton v. General Electric Co.*, 556 F.3d 428, 435–36 (6th Cir. 2009).

Taken together, these facts plausibly allege that Kettering discriminated and retaliated against Ms. Collier because of her disability and protected whistleblower activity, in violation of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12203(a).

G.  Abuse of Process

The abuse-of-process claim does not challenge this Court's later disqualification ruling; rather, it challenges EBG's improper purpose in naming Ms. Scott as a third-party defendant. The Amended Complaint alleges that EBG's third-party filing was not intended to resolve a legitimate controversy,

but instead was a tactical maneuver designed to manufacture a perceived conflict of interest and thereby deprive a whistleblower (Ms. Collier) of her chosen counsel and weaken her legal position.

Under Ohio law, even when legal process is properly issued, its misuse to achieve an ulterior or collateral purpose constitutes actionable abuse of process.  *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298–99, 626 N.E.2d 115 (1994).  The tort requires three elements:

1. A legal proceeding properly initiated and supported by probable cause;
2. Perverted use of the process to accomplish an ulterior purpose for which it was not designed; and
3. Direct damage resulting from the wrongful use of process. Id. at 298.

The Amended Complaint satisfies each element.  EBG initiated third-party process through formal filings (element one); used that process to achieve a collateral objective—the disqualification and strategic isolation of Ms. Collier's counsel (element two); and caused foreseeable harm, including reputational injury, lost income, and impairment of both plaintiffs' ability to litigate effectively (element three).  Under *Yaklevich* and its progeny, such misuse of process for a tactical or coercive purpose falls squarely within the definition of abuse of process, even where the process itself was facially proper.

H.  RICO Enterprise and Predicate Acts

The Amended Complaint alleges an association-in-fact enterprise under 18 U.S.C. § 1961(4) consisting of Kettering Health's leadership, research administration, chief compliance officer, the principal investigators (PI), IRG staff and EBG counsel, all functioning as a continuing unit with a common unlawful purpose—namely, to protect sponsor-funded clinical-research revenue by concealing regulatory violations and silencing whistleblowers.

The enterprise's pattern of racketeering activity includes multiple predicate acts enumerated under 18 U.S.C. § 1961(1), specifically:

- 18 U.S.C. § 1513(e) – Retaliation against a whistleblower for providing truthful information regarding possible federal offenses;
- 18 U.S.C. § 1512(b) – Witness tampering, by intimidating or corruptly persuading another person, including efforts to separate the whistleblower from counsel; and

- 18 U.S.C. § 1343 – Wire fraud, through electronic misrepresentations and omissions to clinical-trial sponsors and oversight agencies intended to preserve ongoing funding and compliance certifications.

Communications with the Kettering leadership, research administration, chief compliance officer, the principal investigators (PI), triggered potential sponsor scrutiny, providing the motive for coordinated concealment and retaliation. The continuity requirement is satisfied because the retaliatory acts—beginning during employment and extending through post-termination litigation tactics carried out by EBG attorneys —reflect an ongoing pattern rather than isolated events.

Under *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985), a civil RICO claim requires (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, and (5) resulting injury to the plaintiff's business or property. The Amended Complaint meets these elements. Likewise, the Sixth Circuit in *Heinrich v. Waiting Angels Adoption Services, Inc.,* 668 F.3d 393, 404–05 (6th Cir. 2012) reaffirmed that a plaintiff states a viable RICO claim by alleging a continuing enterprise with a common purpose whose members coordinate to commit related predicate acts posing a threat of continued criminal activity.

Here, Plaintiffs allege direct injuries—including loss of employment, reputational harm, and economic deprivation—that flow from the enterprise's racketeering conduct, thus establishing proximate cause and standing to recover under 18 U.S.C. § 1964(c).

## V. CONCLUSION

The Amended Third-Party Complaint more than satisfies Rule 8(a). Each claim is supported by detailed factual allegations that, if proven, entitle Plaintiffs to relief. Because EBG's arguments rely on disputed facts and premature privilege assertions, its Motion to Dismiss must be denied. Plaintiffs respectfully request an order overruling the motion and granting such further relief as justice requires.

Respectfully submitted,

/s/ Mary T. Scott
Mary T. Scott, Esq. (Ohio Bar No. 0081729)
Trinity Law, LLC
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
Phone: (513) 953-2499

Email: mtfoster@trinitylawllc.com
*Pro Se Defendant/Counterclaimant/*
*Third-Party Plaintiff*

/s/ H. Leon Hewitt
_____
H. Leon Hewitt, Esq. (0072693)
*Attorney for Defendant/Counterclaimant/*
*Third-Party Plaintiff  Sandra Lee Collier*
H. Leon Hewitt Attorney at Law, LLC
7659 Montgomery Road, Suite #2
Cincinnati, Ohio 45236
Tel: (513) 731-4247
Email: HewittLegal9@gmail.com

## CERTIFICATE OF SERVICE

      I certify that a true copy of the foregoing Memorandum in Opposition was filed via the Court's CM/ECF system on October 30, 2025, which automatically serves notice on all counsel of record.

/s/ Mary T. Scott
_____
Mary T. Scott, Esq.

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 11–15, 651 N.E.2d 1283 (1995)

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*Becker v. Toulmin*, 165 Ohio St. 549, 553–54, 138 N.E.2d 391 (1956)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004)

*Crawford v. Euclid Nat'l Bank*, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168 (1985)

*Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020)

*Dart Indus. Co. v. Hurd,* 66 Ohio St.2d 280, 421 N.E.2d 530 (1981)

*Erie Cty. Farmers' Ins. Co. v. Crecelius,* 122 Ohio St. 210, 171 N.E. 97 (1930)

*Hahn v. Kotten*, 43 Ohio St.2d 237, 244–46, 331 N.E.2d 713 (1975)

*Hamilton v. General Electric Co.*, 556 F.3d 428, 435–36 (6th Cir. 2009)

*Hecht v. Levin,* 66 Ohio St.3d 458, 460–62, 613 N.E.2d 585 (1993)

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404–05 (6th Cir. 2012)

*McCartney v. Oblates of St. Francis de Sales,* 80 Ohio App.3d 345, 353, 609 N.E.2d 216 (6th Dist. 1992)

*Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 505–06 (6th Cir. 2014)

*Moore v. P.W. Publishing Co.*, 3 Ohio St.2d 183, 188, 209 N.E.2d 412 (1965)

*Paugh v. Hanks,* 6 Ohio St.3d 72, 78–79, 451 N.E.2d 759 (1983)

*Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (1996)

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046–47 (6th Cir. 2014)

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985)

*State ex rel. Ellis v. Cleveland Mun. Sch. Dist.,* 2015-Ohio-760 (8th Dist.)

*Surace v. Wuliger,* 25 Ohio St.3d 229, 233–34, 495 N.E.2d 946 (1986)

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294, 298–99, 626 N.E.2d 115 (1994)

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374–75, 453 N.E.2d 666 (1983)

**Statutes**

Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(1)(A)

ADA Retaliation Provision, 42 U.S.C. § 12203(a)

Civil RICO – Enterprise Definition, 18 U.S.C. § 1961(4)

Civil RICO – Predicate Acts, 18 U.S.C. § 1961(1)

Civil RICO – Private Right of Action, 18 U.S.C. § 1964(c)

Wire Fraud, 18 U.S.C. § 1343

Witness Tampering, 18 U.S.C. § 1512(b)

Retaliation Against a Whistleblower, 18 U.S.C. § 1513(e)

**Regulations**

EEOC Regulation Defining Disability, 29 C.F.R. § 1630.2(g)(1)