**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

<table>
<tr><td>

**KETTERING ADVENTIST HEALTHCARE
D/B/A KETTERING HEALTH NETWORK**

Plaintiff-Counterclaim Defendant,

v.

**SANDRA COLLIER, et al.**

Defendants-Counterclaim and
Third-Party Plaintiffs,

v.

**EPSTEIN BECKER & GREEN, PC., et al.**

Third-Party Defendants.

</td><td>

Case No.: 3:25-cv-00273

Judge Walter H. Rice

Magistrate Judge Caroline H. Gentry

</td></tr>
</table>

### INDIVIDUAL KETTERING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED THIRD-PARTY COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), Third-Party Defendants Mike Gentry ("Gentry"), Daniel Wolcott ("Wolcott"), Dr. Brian Schwartz ("Schwartz"), Dr. Franklin Handel ("Handel"), Dr. Albert Bonnema ("Bonnema"), Mary Connolly ("Connolly"), Audrey Mondock ("Mondock"), Kenneth Chaij ("Chaij"), Tricia Tobe ("Tobe"), Rebekah Tyre ("Tyre"), Andrea Molina ("Molina"), Chris Seger ("Seger"), Leslie Flores ("Flores"), and Allison Dymacek ("Dymacek") (collectively, "Individual Kettering TPDs") move to dismiss the First Amended Third-Party Complaint ("TPC") by Defendants-Counterclaim and Third-Party Plaintiffs Sandra Collier ("Collier") and Mary T. Scott ("Scott") in its entirety for failure to state a claim. A memorandum in support follows.

1

2

Respectfully submitted,

/s/ James G. Petrie
James G. Petrie (0059446)
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
ctpage@ebglaw.com
*Counsel for the Individual Kettering*
*Third-Party Defendants*

**MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

Collier and her former counsel, Scott, have filed what can only be described as a wholly frivolous third-party complaint against 14 current and former employees of Plaintiff-Counterclaim Defendant Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering"), most of whom are not even identified or referred to in the body of the TPC.

Their TPC comes directly on the heels of the claims Kettering filed against Collier and Scott for their unlawful behavior, including for misappropriating trade secrets and civil extortion, respectively. Upset that Kettering would vigorously seek to enforce its legal rights, Collier and Scott responded by suing the Individual Kettering TPDs for claims that are not legally cognizable or have no basis in fact or law. The Individual Kettering TPDs now move to dismiss each of the third-party claims against them for failure to state a claim.

## II.  RELEVANT ALLEGED FACTS[1]

### A.  Collier's Employment with Kettering

Collier began working as Kettering's System Director of the IRG Department in April 2025. (Doc. #28, ¶ 6). Collier claims she identified "compliance failures" and "regulatory violations" within the IRG Department during her employment. (*Id*. at ¶¶ 7, 28). According to the TPC, Collier reported her concerns to Human Resources ("HR"), her "supervisors,"[2] Mondock, and "senior leadership," including Gentry, Bonnema, and Connolly. (*Id*. at ¶¶ 10-11, 29). Collier claims that "Kettering and its agents" ignored her concerns. (*Id*. at ¶ 31).

---

[1] To the extent required by Fed. R. Civ. P. 12(b)(6), the Individual Kettering TPDs accept the well-plead, non-conclusory factual allegations in the TPC as true for purposes of this motion only.
[2] The TPC does not identify Collier's supervisors.

**B.**     **Alleged Access and Disclosure of Collier's PHI**

According to the TPC, on March 12, 2025, prior to the start of her employment, Tyre and Molina disclosed "in front of other IRG staff" that Collier: (1) was a breast cancer patient; (2) had undergone a double mastectomy; (3) was mean to staff; and (4) attended oncology appointments in high heels, demanding narcotics. (*Id*. at ¶ 8). According to Collier, these statements "were repeated within the IRG Department," shared with Bonnema and Connolly, and "disseminated through the KH hospital system" by unidentified individuals. (*Id*. at ¶ 9). Collier contends she submitted formal complaints about this to HR and "senior leadership," including Gentry, Bonnema, and Connolly, on June 17 and 19, 2025. (*Id*. at ¶¶ 10-11).

The TPC alleges that on August 27, 2025, Kettering sent Collier a letter notifying her that on or about June 26, 2025, it had become aware that Collier's protected health information had been disclosed. (*Id*. at ¶¶ 2, 24, 32).

**C.**     **Collier's Suspension and Termination of Employment**

Kettering placed Collier on administrative leave on June 19, 2025, and terminated her employment, effective June 22, 2025. (*Id*. at ¶¶ 13, 15).

**D.**     **Collier and Scott's TPC**

On September 10, 2025, Collier and Scott filed their TPC, which contains the following claims against one or more of the Individual Kettering TPDs:

Count I: Violation of HIPAA – *as to Connolly, Bonnema, Tyre, Molina, and Mondock*

Count II: Disability discrimination under the Americans With Disabilities Act ("ADA") and O.R.C. 4112.02 – *as to Connolly, Bonnema, and Mondock*

Count III: Retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and O.R.C. 4112.02 – *as to Connolly, Bonnema, Mondock, and Gentry*

Count IV: Hostile work environment under Title VII and O.R.C. 4112.02 – *as to Tyre, Molina, and Connolly*

4

Count VIII: Intentional infliction of emotional distress – as to *Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina*

Count IX: Civil conspiracy – *as to all Individual Kettering TPDs*

Count X: Racketeer Influenced and Corrupt Organizations Act ("RICO") – *as to all Individual Kettering TPDs*

(Doc. #28). The Individual Kettering TPDs now move to dismiss each of the third-party claims against them for failure to state a claim. In short:

Count I: There is no private right of action under HIPAA.

Counts II, III, and IV: The Individual Kettering TPDs were not Collier's employer and, thus cannot be held liable under Title VII or the ADA. Ohio similarly bars individual liability for discrimination claims, and the TPC does not allege that Collier engaged in activity protected by Ohio law, nor that the Individual Kettering TPDs took any adverse employment action against her. Regardless, Collier has failed to exhaust her administrative remedies as to these claims.

Count VIII: The Individual Kettering TPDs did not file the Complaint, Motion for TRO, or Motion to Disqualify. Thus, those actions cannot form the basis for an IIED claim against them. Collier has failed to state a claim for retaliation, but even if she had, adverse employment actions are insufficient to state a claim for IIED. Finally, the remaining alleged conduct does not meet the extraordinarily high standard for establishing extreme and outrageous conduct.

Count IX: The TPC does not plead cognizable underlying tortious acts that are separate and apart from the alleged civil conspiracy. Moreover, the TPC does not attribute any of the actions that allegedly evidence malice to the Individual TPDs.

Count X: Collier and Scott lack standing to bring a RICO claim. Further, they have failed to allege sufficient facts showing the existence of an enterprise, racketeering offenses, or a pattern of racketeering activity.

5

III.    **LEGAL STANDARD**

To survive a motion to dismiss, a complaint in federal district court "must state a claim for relief that is plausible, when measured against the elements of a claim." *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 506 (S.D. Ohio 2022) (cleaned up). Put simply, Collier and Scott "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.*; *see also Shaut v. Roberts*, 2022-Ohio-817, ¶ 6, 186 N.E.3d 302, 305 (Ohio Ct. App.) ("Under the heightened, federal standard, a plaintiff must demonstrate the plausibility of the allegations, well beyond [Ohio's] notice pleading standard[.]").

Thus, a district court "need not accept as true legal conclusions or unwarranted factual inferences." *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (citations omitted). "[F]or a pleading to be adequate, it must offer more than simple 'labels and conclusions, and a formulaic recitation of a cause of action's elements.'" *Moore v. Feldman*, No. 2:16-CV-00200, 2017 WL 1063466, at *2 (S.D. Ohio Mar. 20, 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). "[A] complaint is insufficient if it only offers assertions without any 'further factual enhancements[s]' to support the claim." *Id.* (citing *Twombly*, 550 U.S. at 557).

IV.    **ARGUMENT**

A.    **The TPC contains no factual allegations against eight of the Individual Kettering TPDs. All claims against them should be dismissed.**

Collier and Scott have sued 14 current and former Kettering employees. Although named in the caption of the TPC, the following eight Individual Kettering TPDs are neither named nor identified in the body of the TPC: (1) Wolcott, (2) Schwartz, (3) Handel, (4) Chaij, (5) Seger, (6) Flores, (7) Dymacek, and (8) Tobe. In other words, the TPC contains *zero* factual allegations against this subset of the Individual Kettering Third-Party Defendants. But, in accordance with Fed. R. Civ. P. 8(a), "[e]ach defendant is entitled to fair notice of the claim(s) brought against

6

them." *Siegler v. Ohio State Univ.*, No. 2:11-CV-170, 2011 WL 1990570, at *4-5 (S.D. Ohio May 23, 2011) (dismissing claims against multiple defendants where complaint contained no factual allegations against them). No such notice has been provided here.

Instead, Collier and Scott make vague, conclusory references to "Defendants" throughout the TPC. But this is insufficient to put any of the defendants on notice of the specific allegations against them, particularly when Collier and Scott have sued 19 different "Defendants" and 8 of them are never even referenced in the TPC. Indeed, "a complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Courser v. Mich. House of Representatives*, 404 F.Supp.3d 1125, 1140 (W.D. Mich. 2019); *see also Norman v. RK Holdings, LLP*, No. 2:22-CV-3704, 2024 WL 1347448, at *4 (S.D. Ohio Mar. 29, 2024), rev'd in part on reconsideration on other grounds, No. 2:22-CV-03704, 2025 WL 934223 (S.D. Ohio Mar. 27, 2025) (dismissing claims against individual defendant and finding that "the absence of any mention of Mr. Amrine in those Counts fail to meet Rule 8's notice pleading standard as to Mr. Amrine. Accordingly, Mr. Amrine cannot be said to have been on notice to the claims in Count I, or indeed, in Count II."); *Curry v. City of Mansfield*, No. 1:21 CV 1455, 2021 WL 5359184, at *3 (N.D. Ohio Nov. 16, 2021) (dismissing individual defendants where "[t]here [were] no factual allegations in the Complaint" against such defendants).

Similarly here, the TPC does not contain any factual allegations against Wolcott, Schwartz, Handel, Chaij, Seger, Flores, Dymacek, and Tobe. This fails to comply with Fed. R. Civ. P. 8(a) and, thus, fails to state a claim. Counts IX and X must be dismissed as to this subset of individuals.

7

B. **Collier fails to state a claim for Violation of HIPAA and Breach Notification Rule. Count I must be dismissed.**

At Count I, Collier purports to bring a claim against Connolly, Bonnema, Tyre, Molina, and Mondock[3] "under the Health Insurance Portability and Accountability Act of 1996 ('HIPAA'), 42 U.S.C. § 1320d, and its implementing regulations, including the Breach Notification Rule, 45 C.F.R. §§ 164.400-414" for an alleged "HIPAA breach violation." (Doc. #28, PageID 1063).

But no such claim exists. (*See* Doc. #73, PageID 1513-1515).[4] Additionally, the TPC contains no factual allegations that Connolly, Bonnema, or Mondock had anything to do with such alleged violation. (Doc. #28, PageID 1063-1064). As set forth above, this type of pleading is insufficient state a claim against them. *See Garrett v. Morgan Cnty. Sheriff's Off.*, No. 1:23CV2011, 2025 WL 2097739, at *29 (N.D. Ohio July 25, 2025) (dismissing claim against individual defendants where complaint failed to plead any specific allegations of misconduct against them). Count I must be dismissed.

C. **Individuals cannot be held liable under the ADA, Title VII, or for discrimination under R.C. 4112.02. Additionally, Collier has failed to state a claim for retaliation or exhaust her administrative remedies. Counts II, III, and IV must be dismissed.**

Collier next purports to bring claims against Connolly, Bonnema, Mondock, Gentry, Tyre, and/or Molina for disability discrimination under the ADA and O.R.C. 4112.02 (Count II), retaliation under Title VII and O.R.C. 4112.02 (Count III), and hostile work environment under Title VII and O.R.C. 4112.02 (Count IV). (Doc. #28, PageID 1064-1068). She has failed to state a claim.

---

[3] Each of the claims addressed in this Motion to Dismiss have also been brought against Kettering and are separately addressed in Kettering's Motion to Dismiss Collier and Scott's First Amended Counterclaim. (Doc. #73).

[4] For the sake of brevity and efficiency, the Individual Kettering Third-Party Defendants hereby incorporate the law and argument set forth in Kettering's Motion to Dismiss Collier and Scott's First Amended Counterclaim (Doc. #73) where applicable.

1.     <u>Co-workers and supervisors sued in their individual capacities cannot be held liable under the ADA, Title VII, or for discrimination under R.C. 4112.02.</u>

Case law is clear that "[i]ndividual supervisors…who do not independently qualify as employers cannot be held personally liable under the ADA." *Little v. Holzapfel*, No. 2:24-CV-3196, 2025 WL 1474657, at *2 (S.D. Ohio May 22, 2025) (citing *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997)). As observed by the Sixth Circuit, "the liability scheme under the ADA is similar to Title VII and that an employer is defined in essentially the same way under both statutes." *Little*, 2025 WL 1474657, at *2 (citing *Wathen*, 115 F.3d at 404 n.6); *see also* 42 U.S.C. § 2000e(b) (defining employer under Title VII similarly as the ADA).

Therefore, "[a]s a matter of law, neither Title VII nor the ADA allow for liability against an individual." *Robinson v. Rueggeberg*, No. 1:15-cv-82, 2015 WL 4698432, at *2, 2015 U.S. Dist. LEXIS 103287, at *3 (S.D. Ohio Aug. 6, 2015), *adopted by* 2015 WL 5117949, at *1 (S.D. Ohio Sep. 1, 2015) (dismissing with prejudice plaintiff's claims against individuals under Title VII and the ADA); *see also Grace v. City of Lancaster DOT*, No. 2:17-cv-522, 2018 WL 1851330, at *3, 2018 U.S. Dist. LEXIS 65248, at *5 (S.D. Ohio Apr. 18, 2018) (dismissing a plaintiff's individual claims under Title VII and the ADA).

Here, the TPC plainly alleges that Kettering employed Collier—*not* Connolly, Bonnema, Mondock, Gentry, Tyre, or Molina. (Doc. #28, Page 1054, ¶ 6). Like Collier, each of these individuals is also a current or former *employee* of Kettering, not an employer. Indeed, the TPC refers to Connolly as Kettering's "acting Director IRG" (Doc. #28, PageID 1055, ¶ 9), Bonnema as Kettering's Chief Medical Information Officer (*Id*.), Mondock as Kettering's Corporate Compliance Officer (*Id*. at PageID 1060, ¶ 29), Gentry as "senior leadership" (*Id*. at PageID 1056, ¶ 10), and Tyre and Molina as "Kettering employees" (*Id*. at PageID 1055, ¶ 8). These individuals

9

are not within the statutory definition of "employer," and thus, Collier's ADA and Title VII claims must be dismissed against them.

Ohio, too, has eliminated individual liability for claims of discrimination. R.C. § 4112.08(A) ("[N]o person has a cause of action or claim based on an unlawful discriminatory practice relating to employment…against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer."); *see also Penny v. Cottingham Ret. Cmty.*, No. 1:21-CV-562, 2024 WL 3925667, at *7 (S.D. Ohio Aug. 22, 2024) (finding that plaintiff's supervisor "cannot be held individually liable for employment discrimination under Title VII, the ADEA, the ADA, § 4112 of the Ohio Revised Code"). Accordingly, Collier cannot state a claim for discrimination under Ohio law against these individuals either.

> 2.    Collier has failed to state a claim of retaliation under R.C. § 4112.02(I).

The only claim that could possibly survive the law's prohibition on individual liability is Collier's claim for retaliation under R.C. § 4112.02(I) against Connolly, Bonnema, Mondock, and Gentry. However, Collier has failed to state such a claim.

R.C. § 4112.02(I) prohibits retaliation "against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Here, the TPC does not contain any allegations that Collier engaged in activity protected by R.C. § 4112.02(I). Indeed, Collier alleges that she (a) reported "HIPAA violations and regulatory misconduct," (b) requested "EPIC access logs and PHI records," (c) escalated "clinical research violations," and (d) sent a post-employment demand letter to Kettering. (Doc. #28, PageID 1066, ¶ 51). But none of these actions oppose a discriminatory practice defined in R.C. § 4112.02, nor do they relate to any investigation,

10

proceeding, or hearing conducted by the Ohio Civil Rights Commission. Simply put, they are not protected activities under the law.

Further, the TPC does not allege that Connolly, Bonnema, Mondock, or Gentry took any adverse employment action against Collier. (*See* Doc. #28, generally). Instead, Collier alleges that "*Kettering*…[p]laced [her] on administrative leave[,]" "*Kettering*…[t]erminated her employment[,]" and "*Kettering*…filed an emergency TRO." (Doc. #28, PageID 1066, ¶ 52) (emphasis added). With no adverse action attributed to these individuals, Collier has failed to state a claim. *See Siegler*, *Curry*, *Garrett*, *supra*.

        3.      Collier has failed to exhaust her administrative remedies.

Even if Collier could state a claim against these individuals (she cannot), each of these claims fail due to Collier's failure to exhaust her administrative remedies. (*See* Doc. #73, PageID 1515-1516). Collier does not allege that she filed a charge with the EEOC or the OCRC, nor does she allege that she has received a right-to-sue letter from either agency. Because both actions are prerequisites for bringing suit under the ADA, Title VII, and O.R.C. 4112.02, Counts II, III, and IV must also be dismissed for failure to exhaust administrative remedies.

    **D.**    **Collier and Scott fail to state a claim for IIED. Count VIII must be dismissed.**

At Count VIII, Collier and Scott attempt to state a claim for IIED against Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina. (Doc. #28, PageID 1073-1074). This claim is premised on "Defendants": (1) filing the Complaint, Motion for TRO, and Motion to Disqualify against Collier and Scott; (2) allegedly failing to "remediate…compliance and regulatory failures" and "HIPAA violations while retaliating against…Collier;" and (3) allegedly suppressing "evidence of their own misconduct…while publicly and erroneously vilifying Collier and Scott." (*Id.*). Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina will address each category in turn.

### 1. IIED Elements

A claim for IIED will lie only where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St. 3d 369, 374, 453 N.E.2d 666, 671 (1983) (abrogated on other grounds) (citing Restatement (Second) of Torts § 46(1) (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 375; *see also* Doc. #73, PageID 1523-1524. Applying this standard, the TPC contains no factual allegations that, even if taken as true, would state a claim for IIED.

### 2. Kettering's Complaint, Motion for TRO, and Motion to Disqualify

First, it was Kettering who filed the Complaint, Motion for TRO, and Motion to Disqualify—not Connolly, Bonnema, Mondock, Gentry, Tyre, Molina, or any other current or former employee of Kettering. (Doc. #1). Accordingly, the IIED claim against Connolly, Bonnema, Mondock, Gentry, Tyre, Molina cannot be premised on these filings.[5]

### 3. Alleged failure to remediate compliance/regulatory failures and HIPAA violations while retaliating against Collier.

First, Scott does not have standing to assert an IIED claim for alleged actions that relate to Collier. *See Zilba v. City of Port Clinton, Ohio*, 924 F. Supp.2d 867, 873 (N.D. Ohio 2013).

Second, Collier has not plausibly alleged any facts demonstrating (a) that she engaged in protected activity, or (b) that Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina took any adverse employment actions against her. (*See* Section IV(C), *supra*). But even if she had, "adverse

---

[5] Even if Collier and Scott somehow could allege an IIED claim against Connolly, Bonnema, Mondock, Gentry, Tyre, Molina based on Kettering's actions, the litigation privilege bars their claim. *See* Doc. #73, PageID 1524.

employment actions are insufficient to state a claim of infliction of emotional distress." *Black v. Columbus Pub. Sch.*, 79 F. App'x 735, 738 (6th Cir. 2003) (citation omitted); *see also* Doc. #73, PageID 1525.

Thus, the only possible basis for Collier's IIED claim in this category is her allegation that "Defendants" made the decision not to remediate *their own* alleged compliance failures and HIPAA violations. But the TPC contains no facts that Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina failed to do anything. Instead, the TPC vaguely alleges that "Kettering and *its agents*…[i]gnored Ms. Collier's documented reports[,]" (Doc. #28, PageID 1061) (emphasis added), and that "*Defendants*[] fail[ed] to…remediate…these compliance failures[.]" (*Id.* at PageID 1062) (emphasis added). These general allegations are insufficient to attribute any actions or inactions specifically to Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina, and, consequently are insufficient to state a claim. *See Siegler*, *Curry*, *Garrett*, *supra*. Regardless, an allegation that these individuals failed to remediate certain internal issues at Kettering does not rise to the level of outrageous or extreme conduct. (*See* Doc. #73, PageID 1525-1526).

> 4.  Alleged suppression of evidence while publicly and erroneously vilifying Collier and Scott.

To start, the TPC fails to identify what evidence Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina allegedly suppressed or how they allegedly suppressed this unknown evidence, much less offer any facts to support these assertions. (Doc. #28, PageID 1074). That alone warrants dismissal for failure to state a claim.

To the extent Collier and Scott contend Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina have "[s]upress[ed] evidence of systemic regulatory, compliance and clinical research misconduct," as alleged in their civil conspiracy claim against all "Defendants" (Doc. #28, PageID 1074-1075), that, too, is insufficient as it is simply a restatement of Collier and Scott's claim that

"Defendants" failed to remediate internal compliance and research failures, which, as set forth above, is factually and legally baseless. Moreover, Collier and Scott's claim that "Defendants" have "publicly and erroneously vilif[ied]" them is targeted directly toward Kettering's filings in this case, which, as noted above, cannot serve as a basis for an IIED claim against Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina.

        5.        <u>Collier and Scott have not plausibly pled "serious" emotional distress</u>

Finally, even if Collier and Scott have plead sufficient facts showing that Connolly, Bonnema, Mondock, Gentry, Tyre, and Molina engaged in "extreme and outrageous conduct" (they have not), the TPC contains no facts to support "serious" emotional distress as required under the law. (*see* Doc. #73, PageID 1527-1528). Accordingly, Count VIII must be dismissed.

**E.      <u>Collier and Scott fail to state a claim for civil conspiracy. Count IX must be dismissed.</u>**

At Count IX, Collier and Scott purport to bring a claim for civil conspiracy against the 19 "Defendants" collectively. (Doc. #28, PageID 1074-76). They cannot state a claim.

"Civil conspiracy" is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (1995). To state a claim for civil conspiracy, Collier and Scott must plead with specificity the existence of an underlying tortious act. *Eastside Lincoln Mercury, Inc. v. Ford Motor Co.*, No. C-1-01-567, 2004 WL 6033074, at *10 (S.D. Ohio July 15, 2004); *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 145 Ohio App. 3d 155, 165, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001)). They cannot do so.

Here, Collier and Scott's conspiracy claim is premised on the following alleged unlawful acts: (1) suppression of "regulatory, compliance and research misconduct;" (2) retaliation against

14

Collier; (3) defamation based on legal filings; (4) filing the Motion for TRO and Motion to Disqualify; and (5) withholding of information from "sponsors, regulators, and patients." (Doc. #28, ¶ 81). But these are not cognizable unlawful acts—either because they are not torts or because Collier and Scott have failed to state a claim against the Individual Kettering TPDs.

First, Collier and Scott have failed to plausibly allege any facts that any of the Individual Kettering TPDs have suppressed misconduct, much less identify any unlawful tortious activity attributed to such actions (Act #1). Second, Collier's retaliation claim is not a tort (*see* 42 U.S.C. § 12203(a); R.C. § 4112.02(I)); even so, as set forth above, Collier has failed to state a claim for retaliation against the Individual Kettering TPDs (Act #2). Third, Collier and Scott have not alleged a defamation claim against the Individual Kettering TPDs (Act #3), and the Individual Kettering TPDs did not file the Motion for TRO or Motion to Disqualify (Act #4). Finally, Collier and Scott's conclusory statement that "Defendants" have withheld information from third parties similarly lacks any factual enhancement or allegation of unlawful tortious activity and, thus, is insufficient as a matter of law (Act #5).

Because the TPC "fail[s] to plead an unlawful [tortious] act, that is separate and apart from the conspiracy itself," Count IX must be dismissed. *Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 2022-Ohio-1756, ¶¶ 26, 31, 192 N.E.3d 537, 544-45 (Ohio Ct. App.); *see also* Doc. #73, PageID 1530.

However, even if Collier and Scott plausibly pled an underlying unlawful act (they have not), the TPC's allegations of malice are similarly insufficient. The TPC contends that malice is demonstrated by: (1) "[c]oordination between EBG and Kettering to draft [legal] filings[;]" (2) "[d]eliberate delay in issuing HIPAA breach notifications to Ms. Collier[;]" and (3) "[e]fforts to silence whistleblowing through intimidation, retaliation, and misrepresentation." (Doc. #28,

15

PageID 1075). But the TPC does not contain any facts plausibly alleging that any of the 14 Individual Kettering TPDs engaged in any of the above behavior. In fact, the TPC specifically alleges that Kettering and EBG drafted legal filings, and that Kettering issued the HIPAA letter to Collier. These types of conclusory allegations that lack factual enhancement are insufficient to withstand a motion to dismiss. (*see* Doc. #73, PageID 1530-1531).

In short, Collier and Scott have failed to state a claim for civil conspiracy against the Individual Kettering TPDs. Count IX must be dismissed.

**F.      Collier and Scott fail to state a claim under RICO. Count X must be dismissed.**

At Count X, Collier and Scott purport to state a RICO claim against all "Defendants" under 18 U.S.C. § 1962(c). "[T]o state a civil RICO claim, a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022). "Each of these elements must be alleged as to each defendant." *Komorek v. Conflict Int'l, Inc.*, No. 2:24-CV-1227, 2025 WL 948973, at *5 (S.D. Ohio Mar. 29, 2025) (citing *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 858 (S.D. Ohio 2020) (Cole, J.)).

Collier and Scott have failed to state a claim.

1.      Collier and Scott do not have standing to bring a RICO claim.

Collier and Scott "only [have] standing if, and can only recover to the extent that, [they] have] been injured in [their] business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Here, Collier alleges that she has suffered "retaliatory termination, reputational harm, physical and emotional distress, and financial losses." (Doc #28, PageID 1077). Scott similarly alleges she has suffered "reputational harm,

16

emotional distress, and litigation-related damages" and that both have suffered "substantial litigation expenses." (*Id*.).

But these alleged harms are personal in nature, and RICO "excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 594(2025); *see also* Doc. #73, PageID 1532. Moreover, even if Scott and Collier did sufficiently plead harm to their "business or property," they have failed to allege any facts to plausibly infer that these alleged harms were directly caused by the Individual Kettering TPDs' alleged racketeering activities. (*See* Doc. #73, PageID 1532-1533).

> 2.       Collier and Scott have failed to adequately allege an enterprise.

The TPC further fails to adequately allege the existence of an enterprise. There are "two categories of RICO enterprises: (1) legal entities such as corporations and partnerships; and (2) informal associations-in-fact." *Arnold v. Alphatec Spine, Inc*., No. 1:13-CV-714, 2014 WL 2896838, at *9 (S.D. Ohio June 26, 2014) (citing *United States v. Turkette*, 452 U.S. 576, 581–82 (1981)). "An association-in-fact enterprise must have a structure including 'at least three features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Id*. (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

"A properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir.2000) (finding pleadings deficient where "the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages.") (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)).

17

Here, the TPC failed to set forth sufficient factual allegations to show that all Defendants coordinated in such a way as to constitute a RICO "enterprise." Instead, the TPC states in a conclusory fashion that "Kettering Health, its IRG leadership,[6] and outside counsel EBG constitute an 'enterprise' under 18 U.S.C. § 1961(4) because they functioned as a continuing unit to further unlawful objectives." (Doc. #28, ¶ 85, PageID 1076). The TPC then goes on to state in similar conclusory fashion that "Defendants engaged in repeated predicate acts." (*Id*. at ¶ 86, PageID 1076). These assertions are devoid of any specificity regarding the longevity of the alleged scheme, or how the Defendants coordinated as a continuing unit and are insufficient to state a claim. (*see* Doc. #73, PageID 1534).

3.      <u>The TPC fails to adequately allege two or more racketeering offenses</u>.

"To qualify as a predicate racketeering offense, the offense must be listed as 'racketeering activity' under 18 U.S.C. § 1961(1)." *Komorek*, 2025 WL 948973, at *5. Here, Collier and Scott have alleged five predicate racketeering offenses: (1) mail fraud (18 U.S.C. § 1341); (2) wire fraud (18 U.S.C. § 1343); (3) obstruction of justice (18 U.S.C. § 1503); (4) retaliation; and (5) concealment of systemic noncompliance. Only the first three offenses are listed as a racketeering activities under 18 U.S.C. § 1961(1) and, thus, the Court must disregard the last two. *See Komorek*, 2025 WL 948973, at *5.

a.      *Mail and Wire Fraud*

Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id*. at 402. "The

---

[6] The TPC does not identify "IRG leadership."

elements of wire fraud mirror those of mail fraud, with the added requirement that one must use wires in furtherance of the scheme to defraud." *Komorek*, 2025 WL 948973, at \*7 (citing *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012)). "A plaintiff must also demonstrate scienter to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Heinrich*, 668 F.3d at 404 (citing to *United States v. DeSantis*, 134 F.3d 770, 764 (6th Cir. 1998).

Importantly, mail and wire fraud predicate acts must be "pleaded with particularity" as required by Fed. R. Civ. P. 9(b). (*See* Doc. #73, PageID 1536). Collier and Scott have plainly failed to meet this burden. The TPC does *not*: (a) specify the statements that Collier and Scott contend were fraudulent, (b) identify the speaker, (c) state where and when the statements were made, or (d) explain why the statements were fraudulent. Nor are there any factual allegations giving rise to an inference that the Individual Kettering TPDs acted with scienter or intent to defraud. Instead, Collier and Scott vaguely allege:

> Defendants[7] engaged in repeated predicate acts, including: Mail and wire fraud…by: shared credentials used to commit fraud, misrepresented clinical research data, continued use of a 28-year outdated, and improper signatory platform, misrepresentation to regulatory and compliance agencies, and Plaintiffs[.]

(Doc. #28, PageID 1076-1077). These allegations are woefully insufficient to meet even the notice pleading standard under Fed. R. Civ. P. 8(a), much less the heightened pleading standard under Fed. R. Civ. P. 9(b). (*See* Doc. #73, PageID 1537).

Further, the TPC does not identify any money or property that the Individual Kettering TPDs "attempted to obtain by means of false or fraudulent pretenses, representations, or

---

[7] A "reference to 'Defendants' collectively is insufficient to "identify the speaker" of the false statements." *Arnold*, 2014 WL 2896838, at \*12 (dismissing RICO claim where, among other things, plaintiffs failed to sufficiently identify the speaker who committed mail and wire fraud).

19

promises." *Cranel Inc.*, 57 F. Supp. 3d at 849. In short, Collier and Scott have failed to state a claim for mail or wire fraud and, thus, cannot rely on either act to support their RICO claim.

b.        *Obstruction of Justice*

Collier and Scott next allege that "Defendants" committed obstruction of justice in violation of 18 U.S.C. § 1503 "by withholding internal HIPAA findings…while simultaneously alleging the Plaintiffs fabricated the HIPAA violations." (Doc. #28, PageID 1077). They have failed to state a claim.

First, the TPC contains no factual allegations that any of the Individual Kettering TPDs withheld HIPAA findings. Rather, the TPC alleges multiple times that *Kettering* sent the August 27, 2025 HIPAA letter. (Doc. #28, PageID 1053, 1059, 1061, and 1064).

Second, "[t]o constitute an offense under [18 U.S.C. § 1503], the act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990); *see also* Doc. #73, PageID 1538. Here, the alleged withholding of HIPAA findings from Collier does not relate to a proceeding in federal court. Rather, it relates to a private matter between Kettering and Collier. As alleged in the TPC, Collier received a letter from Kettering, dated August 27, 2025, which informed Collier that Kettering had become aware on or about June 26, 2025 that Collier's PHI had been disclosed. (Doc. #28, PageID 1053, 1059). Collier contends this letter was sent two days late and, thus, violated HIPAA. (*Id*. at PageID 1054, 1059). But, as set forth above, HIPAA does not authorize a private right of action. Thus, whether or not "Defendants" withheld HIPAA findings from Collier has no bearing on this proceeding and, thus, cannot constitute obstruction.

Third, even if the alleged withholding of HIPAA findings did relate to a federal court proceeding, Collier and Scott have failed to plead facts sufficient to state a claim. "[A] violation of 18 U.S.C. § 1503 requires proof that an individual has 'corruptly endeavor[ed] to interfere with

20

the due administration of justice . . . with the general intent of knowledge *as well as the specific intent or purpose to obstruct*.'" *Kramer v. Bachan Aerospace Corp*., 912 F.2d 151, 155-56 (6th Cir. 1990), quoting *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) (emphasis in original), *cert. denied*, 475 U.S. 1142, (1986).

Here, the TPC contains no facts that would plausibly suggest that any of the Individual Kettering TPDs withheld anything from Collier. (Doc. #28). Even if they had, there are no factual allegations in the TPC that any of the Individual Kettering TPDs acted with a specific intent or purpose to interfere with the administration of justice in this case by sending the HIPAA letter to Collier a mere two days late. As set forth above, Collier cannot bring a claim based on the letter and a review of the TPC confirms that the letter is wholly irrelevant to any of the claims or defenses in this matter.

4. The TPC fails to adequately allege a pattern of racketeering activity.

Collier and Scott have also failed to plead sufficient facts to establish a pattern of racketeering activity, which requires, at a minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). "Not only must . . . predicate acts be related but, because 'Congress was concerned in RICO with longterm criminal conduct,' the plaintiff must demonstrate continuity of racketeering activity." *Pethtel v. Washington Cnty. Sheriff's Off*., No. 2:06-CV-799, 2007 WL 2359765, at *13 (S.D. Ohio Aug. 16, 2007), quoting *H.J. Inc. v. Northwestern Bell Telephone Co*., 429 U.S. 229, 239-40, 242 (1989). Such continuity may be demonstrated either through "a series of related predicates extending over a substantial period of time" or through "past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241-42. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" are insufficient to demonstrate the requisite continuity. *Id*. at 242; *see also* Doc. #73, PageID 1539-1540).

Here, the TPC alleges that "Defendants" committed three predicate acts of racketeering activity between mid-April 2025 and August 2025. "Clearly, this three or four month period is insufficient to demonstrate the requisite continuity." *Pethtel v. Washington Cnty. Sheriff's Off.*, No. 2:06-CV-799, 2007 WL 2359765, at *13 (S.D. Ohio Aug. 16, 2007) (dismissing RICO claim for failure to adequately allege a pattern of racketeering activity). Additionally, the TPC fails to plausibly allege that there is a threat of continuing criminal activity.

Because Collier and Scott failed to adequately allege a pattern of racketeering activity, Count X must be dismissed.

## V.      CONCLUSION

For the foregoing reasons, the Individual Kettering Third-Party Defendants respectfully request that the Court dismiss with prejudice the Amended TPC in its entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ James G. Petrie*
James G. Petrie (0059446)
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
ctpage@ebglaw.com
*Counsel for the Individual Kettering Third-Party Defendants*

22

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, the foregoing *INDIVIDUAL KETTERING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED THIRD-PARTY COMPLAINT* was electronically filed using the Court's CM/ECF system and was automatically served to all counsel of record.

*/s/ James G. Petrie*
James G. Petrie (0059446)
