**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK**<br><br>Plaintiff-Counterclaim Defendant,<br><br>v.<br><br>**SANDRA COLLIER, et al.**<br><br>Defendants-Counterclaim and Third-Party Plaintiffs,<br><br>v.<br><br>**EPSTEIN BECKER & GREEN, PC., et al.**<br><br>Third-Party Defendants. | Case No.: 3:25-cv-00273<br><br>Judge Walter H. Rice<br><br>Magistrate Judge Caroline H. Gentry |

**KETTERING ADVENTIST HEALTHCARE'S NOTICE REGARDING**
**MARY T. SCOTT'S SUPPLEMENTAL STATEMENT OF LEGALLY COGNIZABLE**
**CLAIMS AND DEFENSES IN SUPPORT OF SCOTT'S MOTION**
**FOR ORDER TO SHOW CAUSE**

## I.      Introduction

Plaintiff-Counterclaim Defendant Kettering Adventist Healthcare d/b/a Kettering Health Network ("Kettering") submits this Notice Regarding Defendant-Counterclaim and Third-Party Plaintiff Mary T. Scott's ("Scott") Supplemental Statement of Legally Cognizable Claims and Defenses in Support of Scott's Motion for Order to Show Cause ("Supplemental Statement") (Doc. #118) for the limited purpose of notifying the Court of false statements of fact and misrepresentations of law contained in the Supplemental Statement, as well as Scott's apparent continued representation of Defendant-Counterclaim and Third-Party Plaintiff Sandra Collier ("Collier") despite this Court's order disqualifying her from doing so.

1

II.     **Relevant Procedural History**

On January 2, 2026, this Court issued a Decision and Order that, among other things, ordered Scott and H. Leon Hewitt ("Hewitt"), counsel for Collier, "TO SHOW CAUSE why they should not be found to have violated Federal Rule of Civil Procedure 11(b) and held in contempt of this Court, and why this Court should not impose sanctions[.]" (Doc. #113, PageID 2004). The basis for the Court's order was its "conclusion that Collier's counsel and Scott acted in sanctionable bad faith" for making "false representations to the Court," including by "fabricat[ing]" cases and case propositions. (*Id*. at PageID 2004-2005, 2011, 2016, 2021-2026). This Court observed that "despite having served continuously as a trial judge since 1969, the undersigned cannot recall a comparable instance of such brazen and repeated dishonesty." (*Id*. at PageID 2028).

On January 15, 2026, Scott submitted her Response to the Court's Order to Show Cause.[1] (Doc. #114). In it, she stated that she had implemented corrective safeguards to prevent further misrepresentations to the Court, including "[m]andatory independent verification of all cited authority through authoritative primary sources prior to filing" and "[d]iscontinuation of AI tools for legal research identification." (*Id*. at PageID 2040).

On February 10, 2026, Scott filed her Supplemental Statement purportedly "to assist the Court in evaluating the legal sufficiency and cognizable claims and defenses asserted by Mary T. Scott, Esq. and Sandra Collier (as prior counsel) independent of previously identified citation deficiencies." (Doc. #118, PageID 2049). The Supplemental Statement states that it "is limited to identifying controlling authority supporting the legal propositions already pleaded and does not assert new claims, defenses, theories, factual allegations, or evidence[.]" (*Id*.).

---

[1] Hewitt submitted his response on January 16, 2026. (Doc. #115 and #117).

Kettering now submits this Notice to bring to this Court's attention false statements of fact and misrepresentations of law contained in the Supplemental Statement, as well as Scott's apparent continued representation of Collier.

### III.  The Supplemental Statement

#### A.  False Representations of Fact

In her Supplemental Statement, Scott represents to the Court that she has asserted claims of tortious interference and punitive damages against Kettering. (Doc. #118, PageID 2050-2051). That representation is false. There are no claims for tortious interference or punitive damages in Scott and Collier's First Amended Counterclaim and Third-Party Complaint ("Amended Counterclaim"), which is the operative pleading. (*See* Doc. #28, generally).

Scott next represents to the Court that Collier, who is no longer her client, has asserted claims for whistleblower retaliation, defamation, abuse of process, or punitive damages against Kettering. (Doc. #118, PageID 2052-2053). That representation is also false. The defamation and abuse of process claims in the Amended Complaint were asserted by Scott only, and there are no claims for whistleblower retaliation or punitive damages in the Amended Complaint. (*See* Doc. #28, generally).

Scott next represents that Kettering has asserted claims against Collier for civil extortion, conversion, breach of loyalty, and conspiracy. (Doc. #118, PageID 2053-2054). Again, that representation is false. No such claims exist in Kettering's Complaint. (*See* Doc. #1, generally).

#### B.  Misrepresented Propositions of Law

Although the Supplemental Statement does not contain fabricated case law, it does contain misrepresented propositions of law.

### i. *Yeager v. Local Union 20* and *Reamsnyder v. Jaskolski*

Scott cites *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983) and *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153 (1984) for the proposition that "[k]nowingly false accusations and retaliatory litigation conduct may constitute extreme and outrageous conduct." (Doc. #118, PageID 2050; *see also id*. at PageID 2052). Neither case stands for this proposition. *Yeager* simply recognized that the tort of intentional infliction of emotional distress exists in Ohio and remanded the case to the trial court for further proceedings on that claim. *Yeager*, 6 Ohio St.3d at 373-376. And the alleged extreme and outrageous conduct in *Reamsnyder* involved an insurance representative pressuring the plaintiff to settle a claim and a rental car employee physically threatening the plaintiff. *Reamsnyder*, 10 Ohio St.3d at 150-152.

### ii. *Jacobson v. Kaforey*

Scott cites *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434 for the proposition that civil liability for extortion "arises only through R.C. 2307.60 *upon proof* of an underlying criminal offense." (Doc. #118, PageID 2051) (emphasis added). But the Court in *Jacobsen* expressly disclaimed any ruling beyond answering the certified-conflict question of whether "the current version of R.C. 2307.60 independently authorize a civil action for damages caused by criminal acts, unless otherwise prohibited by law[.]" *Jacobsen*, 149 Ohio St. at 398, 401. The Court stated that "[a]ny ensuing issues regarding how the statute operates or what a plaintiff must do *to prove* a claim under R.C. 2307.60(A)(1) are beyond the scope of this appeal." *Id*. at 401 (emphasis added).

### iii. *Hecht v. Levin*

Scott cites *Hecht v. Levin*, 66 Ohio St.3d 458, 461 (1993) for the proposition that the "[l]itigation privilege does not shield knowing false accusations or malicious conduct." (Doc.

4

#118, PageID 2051). But the words "false accusations" and "malicious conduct" do not appear anywhere in the Court's opinion.

### iv. *Williams v. Aetna Fin. Co*.

Scott cites *Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 475 (1998) for the proposition that "[c]oordinated retaliation supported by underlying tortious conduct supports a civil conspiracy claim." (Doc. #118, PageID 2053). She also cites *Williams* for the proposition that "[l]awful whistleblower activity and legal advocacy cannot constitute conspiracy." But *Williams* did not involve allegations of retaliation, whistleblower activity, or legal advocacy. *Williams*, 83 Ohio St.3d at 464-466. Rather, it involved an alleged conspiracy between a home equity lender and a "pitchman" who sold home repair services to defraud a homeowner. *Id*.

### C. Scott's Continued Representation of Collier

On September 19, 2025, this Court disqualified Scott from representing Collier. (Doc. #63). On October 16, 2025, Hewitt entered an appearance as counsel for Collier. (Doc. #80). Despite this purported change in representation, Scott's Supplemental Statement asserts law and argument on behalf of Collier. Additionally, counsel for Kettering recently discovered that on December 19, 2025, Collier represented to the EEOC that Scott was her attorney,[2] all of which suggests that Scott is continuing to represent Collier despite this Court's disqualification order. (Doc. #118, PageID 2052-2054).

---

[2] *See* 12/19/2025 email from Collier, attached as **Exhibit A**, which was produced by the EEOC in response to a FOIA request by Kettering's counsel.

Respectfully submitted,

/s/ James G. Petrie
James G. Petrie (0059446)
Jill K. Bigler (083789)
Chris T. Page McGinnis (0099165)
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
Phone: 614.872.2500
Fax: 614.633.1713
jpetrie@ebglaw.com
jbigler@ebglaw.com
ctpage@ebglaw.com
*Counsel for Kettering Adventist
Healthcare*

6

## CERTIFICATE OF SERVICE

I certify that on February 24, 2026, the foregoing *KETTERING ADVENTIST HEALTHCARE'S NOTICE REGARDING MARY T. SCOTT'S SUPPLEMENTAL STATEMENT OF LEGALLY COGNIZABLE CLAIMS AND DEFENSES IN SUPPORT OF SCOTT'S MOTION FOR ORDER TO SHOW CAUSE* was electronically filed using the Court's CM/ECF system and was automatically served to all counsel of record.

/s/ *James G. Petrie*
James G. Petrie (0059446)