THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KETTERING ADVENTIST HEALTHCARE, d/b/a KETTERING HEALTH NETWORK, | : | |
| Plaintiff/Counter-Defendant, | : | |
| | : | |
| v. | : | Case No. 3:25-cv-273 |
| | : | |
| SANDRA COLLIER, *et al.*, | | Judge Walter H. Rice |
| | : | Mag. Judge Caroline H. Gentry |
| Defendants/Counter-Plaintiffs, | : | |
| v. | : | |
| EPSTEIN BECKER & GREEN, PC, *et al.*, | : | |
| Third-Party Defendants. | | |

---

ORDER FINDING THAT MARY T. SCOTT, ESQ., AND H. LEON HEWITT, ESQ., ARE IN CONTEMPT OF THIS COURT AND HAVE VIOLATED FEDERAL RULE OF CIVIL PROCEDURE 11(b), AND, PURSUANT TO RULE 11(c), IMPOSING MONETARY SANCTIONS OF $5,000.00 AGAINST SCOTT AND $2,500.00 AGAINST HEWITT, TO BE PAID TO THE CLERK OF COURT WITHIN THIRTY (30) DAYS OF ENTRY; REQUESTING THE CHIEF JUDGE OF THE SOUTHERN DISTRICT OF OHIO TO DETERMINE WHETHER SANCTION FOR CONTEMPT IS NECESSARY; MOTION TO DISMISS OF DEFENDANTS/COUNTER-PLAINTIFFS SANDRA LEE COLLIER AND SCOTT (DOC. #13) IS STRICKEN WITHOUT PREJUDICE TO REFILING; UNDERSIGNED SHALL MAKE REPORT TO SUPREME COURT OF OHIO OFFICE OF DISCIPLINARY COUNSEL; NOTICE OF RECUSAL AND REQUEST THAT CHIEF JUDGE REASSIGN CASE TO ANOTHER DISTRICT JUDGE IN THE SOUTHERN DISTRICT OF OHIO IN THE CINCINNATI OR COLUMBUS SEAT OF COURT

On January 2, 2026, this Court issued a lengthy Decision and Entry detailing more than a dozen fraudulent citations made by Defendant/Counter-Plaintiff Mary T. Scott, Esq., both *pro se* and as former counsel for co-Defendant/Counter-Plaintiff Sandra Lee Collier, and/or by H. Leon Hewitt, Esq., current counsel for Collier. (Doc. #113, PAGEID 2020-26). These fraudulent citations were made by Scott in Collier and Scott's Motion to Dismiss (Doc. #13) and Reply in support of same (Doc. #69), signed by Scott alone, and Collier and Scott's memorandum *contra* the Motion to Dismiss of Third-Party Defendants Epstein Becker & Green P.C., James Petrie, Jill Bigler, and Christopher Page McGinnis (collectively "EBG Defendants"). (Memo. in Opp., Doc. #93) (collectively "the Filings"). From its review of the citations, the Court concluded that Scott and Hewitt had violated Rule 11's requirement that an attorney signing a filing "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED.R.CIV.P. 11(b)(2).

The Court also noted that, despite being put on notice by Plaintiff Kettering Adventist Healthcare, d/b/a Kettering Health Network ("Kettering") on September 15, 2025, that at least three cited cases in the Motion to Dismiss "did not state what Collier and Scott represented that they did, Collier and Scott cited those very

2

same cases for the very same propositions of law in their later Reply." (Doc. #113, PAGEID 2026, citing Kettering Memo. in Opp., Doc. #44, PAGEID 1215, 1218, 1220, nn. 7, 9-10). Finally, despite Scott and Hewitt having been on notice for more than three months and one month, respectively, that they had submitted phantom or wholly inaccurate citations, neither Scott nor Hewitt acknowledged their transgressions. The Court concluded that, by failing to do so, Scott and Hewitt had violated Ohio Rule of Professional Conduct 3.3.(a)(1). (*Id.* at PAGEID 2026-27).

In light of the above, the Court ordered Scott and Hewitt to show cause, no later than January 16, 2026, why they should not be sanctioned for violating Federal Rule of Civil Procedure 11(b) and not be held in contempt of this Court, and why Collier and Scott's Motion to Dismiss should not be overruled with prejudice as sanction. (Doc. #113, PAGEID 2035-36). The Court further indicated that, upon resolution of the Show Cause Order, the undersigned would refer Scott and Hewitt to the appropriate disciplinary committee and recuse himself from further proceedings. (*Id.* at PAGEID 2036).

On January 15, 2026, Scott filed her Response, stating that she used generative artificial intelligence ("AI") in research "for preliminary case identification. At the time, I mistakenly believed those tools were sufficiently reliable for that limited purpose. . . . Regardless of the tool used, the duty to verify citations rests entirely with counsel. I failed to satisfy that duty here." (Scott Resp., Doc. #114, PAGEID 2039). She also concedes that Kettering made her aware of several inaccurate citations, but that she did not "pause, reassess, and

3

independently verify the authority before filing again" using those fabricated citations, commonly known as "AI hallucinations," in Collier and Scott's Reply. (*Id.*). She acknowledges that, even though she did not fabricate factual assertions, her failure to acknowledge and correct the AI-hallucinated citations in the Filings violated her duty of candor. (*Id.* at PAGEID 2039-40).

On January 16, 2026, Hewitt filed his Response, conceding that, although "I joined the case late, [I] failed to independently verify the presented case law citations, and that failure fell below the standards of integrity, diligence, and care owed to this Court." (Hewitt Resp., Doc. #117, PAGEID 2046). He states that the fabricated citations were drafted by Scott, but that he erred in relying on those citations without verification before appending his name to the memorandum *contra* the EBG Defendants' Motion to Dismiss. (*Id.* at PAGEID 2046-47). As remediation, Hewitt intends to engage "additional experienced litigators for independent review where appropriate." (*Id.* at PAGEID 2047).

While Hewitt and Scott were making timely and contrite filings to the Court, including intended affirmative steps to prevent future errors (Doc. #114, PAGEID 2040; Doc. #117, PAGEID 2047), the omnibus case was set for mediation before Magistrate Judge Peter B. Silvain, Jr., on January 28, 2026. (Mag. Judge Order, Doc. #119, PAGEID 2056).[1] On January 21, 2026, just days after promising the

---

[1] Magistrate Judge Silvain, "with recognition of the sensitive nature of the mediation proceedings, . . . direct[ed] that this Order be filed under seal." (Doc. #119, PAGEID 2058). However, Magistrate Judge Silvain correctly determined that the "possible sanctions for misconduct" exception to this Court's local rule on nondisclosure of mediation statements applies (*id.*, quoting S.D. OHIO CIV.R.

4

undersigned that they would take affirmative steps to ensure that all citations in future filings would be accurate, Hewitt and Scott submitted mediation statements to Magistrate Judge Silvain on behalf of Collier and Scott herself, respectively. (Doc. #119, PAGEID 2058). Those statements were rife with "patent misstatements and mischaracterizations of the law." (*Id.*). Consequently, Magistrate Judge Silvain canceled the mediation and referred the matter back to the undersigned for further proceedings. (*Id.* at PAGEID 2071-72).

The breadth and depth of Scott and Hewitt's continued malfeasance leave the Court almost at a loss for words. The undersigned expresses his deep appreciation for Magistrate Judge Silvain's exhaustive discussion of Scott and Hewitt's misrepresentations in their mediation statements (Doc. #119, PAGEID 2059-71), incorporates that discussion by reference, and summarizes the discussion of their citations as follows:

> Hewitt: (1) Two cases that do not exist in the citation formats provided by Hewitt; (2) Three cases that are "completely unrelated to [Hewitt's] relevant assertions[,]" and in no way stand for the propositions for which he cites them; and (3) Eight cases that, as cited by Hewitt, "exaggerate[] or misappl[y] the law throughout [Collier's] mediation statement." (Doc. #119, PAGEID 2059-67).
>
> Scott: (1) Four cases unrelated or contrary to the propositions for which she cites them; and (2) Five cases for which Scott misstates the law. (Doc. #119, PAGEID 2067-71).

Notably, in its January 2, 2026, Decision, the Court observed that Collier and Scott had relied on *Kenty v. Transamerica Prem. Ins. Co.* for the proposition that

---

16.3(c)(3)(C)), and the undersigned is convinced that the magnitude of AI misuse by attorneys requires public disclosure. Accordingly, the Court DIRECTS the Clerk of Court to unseal the Order.

5

"[w]here claims are based on enforceable legal rights, settlement demands are privileged." (Doc. #113, PAGEID 2024, quoting *Kenty*, 72 Ohio St. 3d 415, 419 (1995); Collier and Scott Motion to Dismiss, Doc. #13, PAGEID 510). However, the Court further noted that "nothing resembling the purported language quoted by Collier and Scott appears in" *Kenty*. (*Id.*). Incredibly, despite this admonition from the Court, Scott cited *Kenty* for that very same proposition in her mediation statement. (Doc. #119, PAGEID 2068).

Magistrate Judge Silvain's Order reinforces the Court's previous conclusion: that Scott and Hewitt's fabricated citations constitute the most egregious, inexplicable, and repeated violations of Rule 11(b) by any attorneys that have ever appeared before the undersigned. (Doc. #113, PAGEID 2027-28). Moreover, despite multiple opportunities since Kettering filed its memorandum *contra* on September 15, 2025, for Scott and Hewitt to acknowledge their transgressions, it took a lengthy investigation and subsequent decision by the Court before they did so. Finally, and perhaps worst of all, at the very time Scott and Hewitt were promising the undersigned that they would not fabricate cases or misstate the law, they were doing just that in this very case to the undersigned's colleague. In sum, Scott and Hewitt's Responses reinforce the Court's conclusion that they violated both Rule 11(b)(2) and Ohio Rule of Professional Conduct 3.3.(a)(1), and that the Court is warranted in imposing sanctions against Scott and Hewitt. FED.R.CIV.P. 11(c)(1). Also, Scott and Hewitt's misrepresentations to

6

Magistrate Judge Silvain compel the undersigned to find Scott and Hewitt in contempt of this Court.

"The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [and/or] referring the matter to disciplinary authorities[.]" FED.R.CIV.P. 11 advisory cmte. note to 1993 am. The Court concludes that overruling with prejudice Collier and Scott's Motion to Dismiss (Doc. #13), as previously contemplated (Doc. #113, PAGEID 2035-36), while severe, is still "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED.R.CIV.P. 11(c)(4). However, such sanction would prejudice Collier, who should not be penalized. Thus, the Court orders Collier and Scott's Motion to Dismiss stricken without prejudice to refiling before the successor judge with accurate citations.

The imposition of sanctions for misuse of generative AI is relatively new; for instance, *Mata v. Avianca, Inc.*, one of the first significant federal cases on the topic, was not published until June 22, 2023. 678 F. Supp. 3d 443 (S.D.N.Y. 2023). However, Westlaw lists *Mata* as having been cited in *205* cases since then, which reflects the proliferation of generative AI, its infiltration into legal writing, and its repeated misuse by attorneys. The *Mata* court aptly explains the harm perpetrated by Scott and Hewitt, and why sanctions are appropriate:

7

> Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

678 F. Supp. 3d at 448-49 (footnote omitted).

The court in *Wadswoth v. Walmart*, in imposing monetary sanctions against the attorneys who submitted AI-hallucinated caselaw, noted that, by February 24, 2025, the date of publication, "[i]t is . . . well-known in the legal community that AI resources generate fake cases." 348 F.R.D. 489, 497 (D. Wyo. 2025). As evidenced by *Wadsworth* being cited in *61* cases since publication, by the time Collier and Scott filed the Motion to Dismiss in August 2025, every licensed attorney knew or should have reasonably known that relying on generative AI for research would likely result in a filing containing AI hallucinations. The volume of subsequent cases citing *Mata* and *Wadsworth* reinforce this Court's conclusion: that the problem of attorneys submitting hallucinated citations is rapidly worsening, and is one of the biggest threats currently facing federal civil litigation. Importantly, the January 2, 2026, Decision made clear that the Court's expectation of accurate citations has no exception for generative AI.

Courts have imposed monetary sanctions for attorneys filing AI-hallucinated citations ranging between $1,000 and $5,000. *Wadsworth*, 348 F.R.D.

8

at 497 (collecting cases), 498. In imposing $3,000 and $1,000 fines on the drafting and co-signing attorneys, respectively, the *Wadsworth* court noted that both attorneys were "forthcoming, honest, and apologetic about their conduct. They also took steps to remediate the situation prior to the potential issuance of sanctions[.]" However, the attorneys were also "attorneys at a prominent national law firm with presumably deep resources" and access to Lexis or Westlaw. *Id.* For the drafting attorney, the court also considered "the number of hallucinated cases in the filing compared to real cases" and "the fact that attorneys have been on notice of generative AI's issues in hallucinating cases for quite some time." *Id.* at 498.

As discussed in the Court's January 2, 2026, Decision, Scott cited at least twelve cases that either do not exist or do not remotely stand for the purported propositions of law. (Doc. #113, PAGEID 2021-26). The volume of fabricated citations rendered the Court unable to discern "whether [any of the cases cited by Collier and Scott] exist at all and have any relevance whatsoever to the argument Collier and Scott are making." (*Id.* at PAGEID 2029). Nothing in Scott's response causes the Court to alter this conclusion. Moreover, unlike in *Wadsworth*, Scott did not notify the Court of her errors prior to the issuance of the Show Cause Order. Rather, it bears repeating that, even after being notified by Kettering of the nonexistent or inaccurate citations in Collier and Scott's Motion to Dismiss, Scott recited at least three fabricated citations for the exact same incorrect propositions in their Reply. (Doc. #113, PAGEID 2026). Finally, and most importantly, Scott

9

has now been caught misstating the law *four times*—by Kettering, the EBG Defendants, the undersigned, and Magistrate Judge Silvain, respectively—in a case that is barely six months old.

Finally, even though neither Kettering nor the EBG Defendants specifically moved for sanctions with respect to Scott and Hewitt's fabrications and misstatements, among the "harms that flow from the submission of fake opinions" is that "[t]he Court's time is taken from other important endeavors." *Wadsworth*, 348 F.R.D. at 498 (internal quotation marks omitted), quoting *Mata*, 678 F. Supp. 3d at 448; *see also Mezu v. Mezu*, 267 Md.App. 354, 370 (Md. Ct. App. 2025) (Counsel submitting fake opinions "also required this Court to take time to try to find the fake cases cited in [the party's] brief, and then research how other courts have dealt with situations involving similar attorney misconduct, diverting judicial resources from other pressing work."). Since November 13, 2025, when the EBG Defendants filed their reply memorandum detailing Scott and Hewitt's misconduct (Doc. #97), the Court has spent in excess of seventy-five hours addressing this specific issue. In sum, the factors in this case weigh in favor of imposing a sanction at the top end of the range discussed in *Wadsworth*. Thus, the Court imposes a monetary sanction of $5,000 against Scott, payable to the Clerk of Court within thirty (30) days of entry.

In imposing a fine of $1,000 against the co-signing attorney, the *Wadsworth* court noted that, although he was significantly less culpable than the drafting attorney, the co-signing attorney still violated Rule 11 by signing the filing with

10

fabricated citations. 348 F.R.D. at 498. The court further concluded that the co-signing attorney violated his "nondelegable duty to ensure a motion is supported by existing law." *Id.* Here, Hewitt had not appeared in the case when Scott filed Collier and Scott's Motion to Dismiss and Reply memorandum containing the hallucinated citations. Nonetheless, had he read Kettering's memorandum *contra* Collier and Scott's Motion while getting up to speed, he would have found out about the phantom citations and could have alerted Scott and the Court. At the very least, he would have known to check the cases cited by Scott carefully before signing the memorandum *contra* the EBG Defendants' Motion to Dismiss (Doc. #93); by signing without doing so, Hewitt violated both Rule 11 and his nondelegable duty to Collier—a client who, unlike the co-signing attorney in *Wadsworth*, he represented independently of the drafting attorney, Scott. Moreover, Hewitt also did not inform the Court of his transgression prior to the Court's January 2, 2026, Decision.

Finally, despite Hewitt's representations to the Court on January 16, 2026 (Doc. #117), and despite the importance of the mediation statement to resolving the case for Collier, Hewitt could not even be bothered to check whether the cases he cited existed, much less whether his citations were accurate. Accordingly, the Court imposes a sanction of $2,500, payable to the Clerk of Court within thirty (30) days of entry. The combined sanction amount of $7,500—$100 per hour that the Court spent addressing this issue—is more than reasonable to address the harm and resultant reallocation of judicial resources.

11

As discussed above, the Rules Advisory Committee has long contemplated "referring the matter to disciplinary authorities" as a sanction for violating Rule 11. FED.R.CIV.P. 11 advisory cmte. note to 1993 am. Scott and Hewitt's Responses to the Show Cause Order do nothing to alter the Court's previous conclusion: that Collier and Scott's Motion to Dismiss, Reply in support of same, and memorandum *contra* the EBG Defendants' Motion to Dismiss constitute the most egregious violations of Rule 11 the undersigned has seen in his forty-six years on the federal bench. Moreover, Scott and Hewitt's failure to notify the tribunal of the fabricated citations once Kettering and the EBG Defendants made them aware constitutes a clear violation of Ohio Rule of Professional Conduct 3.3.(a)(1). Finally, Scott and Hewitt's misrepresentations to Magistrate Judge Silvain—less than three weeks after the Court's January 2, 2026, Decision—raise grave concerns as to whether either Scott or Hewitt should remain active members in good standing in the bar of this Court and of the Supreme Court of Ohio.[2] Given that the State of Ohio exercises plenary oversight of the professional conduct of

---

[2] Indeed, on February 10, 2018, Scott filed a Notice of Supplemental Authority, purportedly "identifying controlling authority supporting the legal propositions already pleaded[.]" (Doc. #118, PAGEID 2049). However, several of the cases cited therein (*id.* at PAGEID 2050-54) are the exact same cases cited by Scott or Hewitt in their mediation statements, and that the Magistrate Judge correctly concluded were misstatements of the law. Even if all citations had been accurate, however, the timing of the Notice—nearly five months after Kettering warned Scott and Collier about the improper citations in their Motion to Dismiss—would have been too little, too late.

Additionally, as the instant Order was being finalized, Kettering filed a Notice (Doc. #120) and supporting documentation (Doc. #120-1) that raise serious concerns as to whether Scott has continued to *de facto* represent Collier in violation of this Court's September 19, 2025, Disqualification Order. (Tr., Doc. #63). In its Notice, Kettering further asserts that Scott made numerous false representations of fact and misrepresented propositions of law. (*Id.* at PAGEID 2076-78 (citations omitted)). The Chief Judge may consider Kettering's Notice and any response made by Scott in evaluating whether further sanction for contempt of court is warranted.

attorneys admitted in Ohio, OHIO R.PROF.COND. 8.5(a), the undersigned concludes that the Supreme Court of Ohio's Office of Disciplinary Counsel ("ODC") is best-equipped to handle the violations of Ohio rules. Consequently, the Court will refer Scott and Hewitt's conduct to the ODC.

For the foregoing reasons, Scott and Hewitt ARE FOUND to be in contempt of this Court and ARE FOUND to have violated Rule 11(b). Pursuant to Rule 11(c), Collier and Scott's Motion to Dismiss (Doc. #13) is STRICKEN WITHOUT PREJUDICE to refiling, Scott is ASSESSED a monetary sanction of $5,000, and Hewitt is ASSESSED a monetary sanction of $2,500, both payable to the Clerk of Court within THIRTY (30) days of entry. The Court REQUESTS that the Chief Judge for the Southern District of Ohio determine whether sanction for contempt of Court is necessary beyond what the undersigned under Rule 11. The Court shall notify the ODC of Scott and Hewitt's conduct via letter, enclosing copies of: (a) the January 2, 2026, Decision; (b) Magistrate Judge Silvain's February 19, 2026, Order; and (c) the instant Order.

The undersigned hereby RECUSES himself from further proceedings in this matter. The undersigned further REQUESTS that the Chief Judge reassign the captioned case to another District Judge within the Southern District of Ohio in the Cincinnati or Columbus seat of court.[3]

---

[3] On February 24, 2026, Kettering filed a Motion for Video Status Conference to address, among other issues, "[t]he timing of this Court's reassignment of this matter to another District Judge." (Doc. #121, PAGEID 2086). The undersigned concludes that the Motion is best addressed by the successor judge.

13

IT IS SO ORDERED.

February 25, 2026

*Walter H. Rice*

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT