**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| KETTERING ADVENTIST HEALTHCARE d/b/a KETTERING HEALTH NETWORK, | Case No. 3:25-cv-00273 Judge Susan J. Dlott Magistrate Judge Caroline H. Gentry |
| Plaintiff, | |
| v. | |
| SANDRA COLLIER and MARY T. SCOTT, | Defendants. |

**DEFENDANT MARY T. SCOTT'S REPLY MEMORANDUM IN SUPPORT OF 12 (B)(6) MOTION TO DISMISS PLAINTIFF KETTERING ADVENTIST HEALTHCARE D/B/A KETTERING HEALTH NETWORK'S COMPLAINT**

NOW COMES Defendant Mary T. Scott, Esq. ( hereinafter "Scott"), pro se, submits her

Reply Memorandum to Plaintiff Adventist Healthcare d/b/a Kettering Health Network's

(hereinafter "Kettering") Opposition to and in further support of Defendant Scott's (12)(b)

Motion to Dismiss Kettering Complaint. Scott's Reply is supported by the following

Memorandum.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................3

INTRODUCTION ......................................................................................................................4

ARGUMENT ..............................................................................................................................5

A. Kettering's opposition does not excuse its failure to plead the elements of an underlying

criminal act under R.C. 2307.60. ..............................................................................................5

1

B. The opposition still identifies only one act by Scott-the transmission of a demand letter-and that is not enough to plead extortion. .........................................................................6

C. Kettering's own chronology and the attached email chain undermine any plausible inference of extortion and support the inference of calculated litigation tactics instead. ..........................8

D. Kettering's authorities do not carry the weight it assigns them. ..........................................10

E. The opposition's attack on privilege and whistleblower policy does not save Count VI. ....12

CONCLUSION ....................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...............................................................5, 6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................6

*Bickley v. Dish Network, LLC,* 751 F.3d 724 (6th Cir. 2014)....................................13

*Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019) ........................................................6

*Buddenberg v. Weisdack,* 161 Ohio St.3d 160, 2020-Ohio-3832...........................4, 5, 6, 10, 13

*Hecht v. Levin,* 66 Ohio St.3d 458, 1993-Ohio-110 ..................................................11

*Reister v. Gardner,* 164 Ohio St.3d 546, 2020-Ohio-5484.........................................11

*Smith v. Williams-Ash,* 520 F.3d 596 (6th Cir. 2008) ..................................................7

*United States v. Brock,* 501 F.3d 762 (6th Cir. 2007)..................................................8

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294 (1994) ........................10

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6)....................................................................................1

R.C. 2307.60 ...............................................................................................5,13

R.C. 2905.11(B)(4)-(5)......................................................................................5

**INTRODUCTION**

Plaintiff's opposition confirms the narrow question presented by Defendant Mary T. Scott's (hereinafter "Scott") Motion to Dismiss: whether Count VI plausibly pleads that Scott herself committed the underlying criminal act of extortion under R.C. 2905.11 so as to support a civil claim under R.C. 2307.60. See Pl.'s Opp'n, Doc. 132, PageID 2383 (asserting that Count VI concerns "Scott's extortion of Kettering during her former representation of Defendant Sandra Collier").

Kettering's opposition does not answer Scott's core point. The opposition still identifies only one act by Scott: a lawyer's transmission of a pre-suit demand letter on behalf of her client. See Id. at PageID 2385-2388. It does not plead that Scott accessed Kettering systems, possessed independent inside information, communicated with sponsors, regulatory agencies or media sources.  Scott merely attached copies of proposed correspondence addressed to the regulatory agencies and sponsors that her client, as a research professional, was required to send if Kettering refused to meet and discuss corrective measures addressing the research malfeasance and violations.  The press release was to be sent out simultaneously with the filing of a formal complaint (ONLY) if litigation became necessary as the issues affect the  health and safety of the global public and media notification is not only warranted but inevitable as a public filing. Irrespective of the amount requested,   Ms. Collier was and is entitled to seek monetary compensation for the harm she personally suffered.  All such conduct of Scott is consistent with ordinary pre-litigation advocacy.

Kettering attempts to avoid dismissal by shifting ground. It correctly notes that R.C. 2307.60 does not require a prior criminal conviction. *Buddenberg v. Weisdack,* 161 Ohio St.3d 160, 2020-Ohio-3832, ¶ 11-12. But that proposition does not relax Rule 12 or supply missing

elements of extortion. Kettering still must plead enough well-pleaded facts to permit a reasonable inference that Scott used a wrongful threat or calumny to obtain property or a valuable benefit. It has not done so.

Just as important, the chronology reflected in the parties' email chain undercuts any plausible inference that Kettering understood Scott's letter as an immediate criminal shakedown. The correspondence shows a negotiation period, a request for more time, a court-directed TRO filing path if negotiations failed, and then the rapid filing of both a TRO and a disqualification motion. Those facts are far more consistent with a calculated litigation response than with a party responding to extortion.

## ARGUMENT

### A. Kettering's opposition does not excuse its failure to plead the elements of an underlying criminal act under R.C. 2307.60.

Kettering opens by arguing that R.C. 2307.60 "permits civil recovery for criminal acts" and that no criminal conviction is required. Doc. 132, PageID 2386-2387. Scott does not contend otherwise. *Buddenberg* answers only that a conviction is not a condition precedent. 161 Ohio St.3d 160, 2020-Ohio-3832, ¶ 11-12. *Buddenberg* does not hold that a plaintiff may survive Rule 12 without plausibly pleading the underlying criminal act itself.

That distinction matters. The Supreme Court of Ohio in *Buddenberg* repeatedly framed the issue as whether the plaintiff must prove an underlying conviction, not whether the plaintiff may dispense with pleading and proving the statutory elements of the criminal act. *Id*. at ¶ 6-12. Kettering therefore gains nothing from *Buddenberg* unless its complaint plausibly alleges extortion under R.C. 2905.11(B)(4) or (5).

The opposition says that Kettering need only allege that Scott, "with purpose to obtain any valuable thing or benefit," either made false or defamatory statements or threatened exposure

of matter tending to damage Kettering's reputation. Doc. 132, PageID 2387. But that formulation itself shows the defect in Count VI. The complaint alleges no concrete facts showing that Scott knowingly made false statements of fact as opposed to advocating disputed allegations on behalf of a client, and it alleges no facts showing that Scott threatened anything unlawful. It alleges only that Scott demanded settlement in the "high eight-figure range" and stated that, absent resolution in, she would file suit, notify regulators and sponsors, and issue a press release. *Id*. at PageID 2385-2388.

Under *Twombly* and *Iqbal*, labels do not substitute for facts. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). The Sixth Circuit applies that same standard by asking whether the pleaded facts allow a reasonable inference that the particular defendant is liable for the misconduct alleged. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). Here, Kettering's opposition still relies on conclusory characterizations- extortion, false statements, calumny-without factual allegations establishing the criminal elements as to Scott.

Kettering also quotes nonbinding federal district court decisions, including *Brack*, *Staton*, and *GS Holistic*. Doc. 132, PageID 2386-2387. None is controlling over this Court, and none overcomes the Ohio Supreme Court's actual holding in *Buddenberg* or the federal pleading rules in *Twombly* and *Iqbal*. More importantly, those decisions do not transform lawful pre-suit settlement advocacy into extortion merely because a defendant says the accusations are false.

**B. The opposition still identifies only one act by Scott-the transmission of a demand letter-and that is not enough to plead extortion.**

Kettering's factual theory remains exactly what Scott identified in her motion: Count VI is based on the sending of a single demand letter while Scott was acting as Collier's lawyer. Compare Doc. 125 at 1-4, with Doc. 132, PageID 2385-2388. The opposition quotes the letter's

demand, its draft regulator-and-sponsor notices, and its proposed media release. Id. But the question is not whether the letter applied pressure; every settlement demand does. The question is whether the pressure alleged was wrongful within the meaning of an extortion statute.

The Sixth Circuit has recognized the critical distinction between pressure arising from lawful authority and pressure arising from unlawful threats. In *Smith v. Williams-Ash,* the court adopted the reasoning that "[i]t is not a forbidden means of 'coercing' a settlement to threaten merely to enforce one's legal rights." 520 F.3d 596, 600 (6th Cir. 2008) (quoting *Dupuy v. Samuels*, 465 F.3d 757, 762 (7th Cir. 2006)). Smith explained that what makes consent involuntary is the use of threats the actor has no legal right to make. *Id*. at 600-01.

That principle defeats Count VI as pleaded. The conduct attributed to Scott was a threat to enforce claimed legal rights: to file civil claims, to report alleged regulatory misconduct to agencies and sponsors, and to publicize a filed lawsuit involving asserted matters of patient safety and research integrity. Doc. 125 at 3-4; Doc. 132, PageID 2385-2388. Kettering may dispute the merits of those accusations, but a dispute over merits does not convert notice of intended legal action into extortion.

Kettering tries to sidestep this defect by asserting that Scott threatened to release "false information" to the press unless Kettering paid. Doc. 132, PageID 2388-2390. But the complaint does not plead facts showing that Scott knew any statement was false. Nor does it identify any false statement by Scott that was independent of Collier's claims. Kettering's opposition instead lists categories of supposed falsity and then cites its own complaint. *Id*. at PageID 2388. That is circular. A plaintiff cannot convert contested allegations into criminal calumny simply by pleading that its opponent was wrong.

Even the criminal-law authorities Kettering invokes underscore the point. In *United States v. Brock,* the Sixth Circuit emphasized the statutory elements of extortion and refused to expand the statute beyond its terms. 501 F.3d 762, 766-70 (6th Cir. 2007). The court emphasized that "extortion" means the obtaining of property from another, with his consent, induced by use of actual or threatened force, violence or fear, or under color of official right". 18 USC§ 1951(b)(2). In its discussion of the facts as it related to Brocks the court stated in relevant part "[T]he question is whether extortion, or a conspiracy to commit extortion, extends to the Brocks' scheme, which essentially amounted to the bribing of a state-court clerk to prevent bail bonds from being collected when the Brocks' criminal-defendant clients skipped town. All agree that the Brocks did not commit a substantive act of extortion. They did not "obtain[] . . . property from another" person. *Id.* § 1951(b)(2). And they are not public officials and thus could not have obtained any property "under color of official right," *Id.*, and did not otherwise use "actual or threatened force, violence, or fear" in the course of this bribery scheme, *id.*( citing to see *Evans v. United States*, 504 U.S. 255, 265 (1992).

Not only is Brock in applicable to the case at hand even assuming arguendo that *Brock* was somehow relevant, Kettering still failed to establish the requirements of extortion as contained within that opinion as applied to the actions of Scott. As Scott did not obtain or attempt to obtain property from another, with their consent. First, Scott Kettering did not alleged that Scott was liable for attempted extortion but actual extortion. It is undisputed that Scott did not obtain property belonging to Kettering. Nor did she attempt to obtain Kettering's property. Contrarily, Scott requested compensation from Kettering for the specific and clearly outlined claims Collier personally endured and the damages suffered as a result of Kettering's alleged retaliatory, discriminatory, wrongful discharge and malicious conduct received in

8

connection with her employment.  Such request was lawful, and any monies that Scott requested rightfully belonged to Collier, not another (Kettering).  Not only can Kettering not establish Scott attempted or received any property (monies) that belonged to them, Kettering has not and cannot allege that she attempted or obtain property from them by threatened force, violence or fear. Informing Kettering that Scott would file a suit and send out mandatory notices to the pharmaceutical sponsors and regulatory agencies on behalf of Collier if Kettering failed to meet and address the research malfeasance, regulatory violations and the injuries to Ms. Collier may have been undesirable, did not constitute an unlawful threat by force or violence and any perceived fear would be the result of the consequences that Kettering would face as a result of their own conduct and lack of case actually reinforces Scott's position.

Kettering's heaviest rhetorical reliance is on *Flatley v. Mauro, 1*39 P.3d 2 (Cal. 2006). Doc. 132, PageID 2388. *Flatley* is not binding here. More important, *Flatley* involved allegations of threats to accuse the target of rape and other criminal or immigration violations unless seven figures were paid and silence was purchased. Id. at 21-22, as quoted by Kettering at PageID 2388. That is a far cry from a lawyer's pre-suit letter identifying claimed civil and regulatory consequences arising from alleged workplace and research misconduct. *Flatley* cannot do the work Kettering assigns it.

**C. Kettering's own chronology and the attached email chain undermine any plausible inference of extortion and support the inference of calculated litigation tactics instead.**

Kettering's opposition asks the Court to view Scott's letter as a naked extortion attempt. The chronology reflected in the attached emails (attached hereto as Exhibit A1) points the other way. The Court may consider those emails because Scott's motion and Kettering's opposition both place the demand letter, the TRO filings, and the ensuing procedural sequence directly at issue. See Doc. 125 at 1-4; Doc. 132, PageID 2385-2390.

9

First, Kettering's own correspondence sought time. In the extension email (Exhibit A1), on July 30, 2025 counsel for Kettering, James Petrie, acknowledged receipt of the demand and requested additional time to complete their investigation in order to advise their client regarding settlement negotiations and requested up to and through August 18, 2025 to respond.(James Petrie email to Mary Scott, July 30, 2025, 10:53 a.m.) That request is incompatible with the notion that Kettering understood itself to be the victim of an immediate extortion scheme requiring emergency criminal redress.

Second, once Kettering turned to court intervention, the email chain still reflects negotiation and case-positioning rather than a response to criminal coercion. On August 13, 2025, the Court's deputy advised Kettering that if settlement negotiations fell through, Kettering should file a TRO and request a phone conference. (Bethany Russell email to James Petrie, Aug. 13, 2025, 12:03 p.m.) Petrie then advised the Court that the TRO had been filed and copied Scott as Collier's counsel. (Petrie email, Aug. 13, 2025, 2:15 p.m).

Third, on the morning after filing, the Court's deputy advised that the Court had received Plaintiff's motion and would likely contact counsel later that day to schedule a conference. (Bethany Russell email, Aug. 14, 2025, 6:52 a.m.)  Later that same day, the Court set a hearing on the TRO for August 15, 2025 at 1:30 p.m. by Zoom or telephone. (Bethany Russell email, Aug. 14, 2025, 2:14 p.m). And, on August 15, 2025  Kettering filed its motion to disqualify Scott on the morning of the TRO hearing itself. (James Petrie email to Bethany Russell and counsel, Aug. 15, 2025 at 9:00 a.m )

That sequence matters because it is not how a party behaves when it contemporaneously understands a demand letter to be criminal extortion. It is how a party behaves when it decides to counterattack through litigation and to reshape the battlefield before the merits of the threatened

10

claims are aired. At the pleading stage the Court need not adopt Scott's full account of motive, but the chronology at minimum defeats the opposition's assertion that the complaint itself plausibly tells only one story.

Ohio's abuse-of-process doctrine is not a counterclaim in this motion, but its principles are instructive. The Supreme Court of Ohio has explained that abuse of process addresses situations in which legal process is set in motion in proper form but then is used to accomplish an ulterior purpose for which it was not designed. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A., 6*8 Ohio St.3d 294, 298 (1994). The elements include a proceeding set in motion in proper form, perverted to attempt to accomplish an ulterior purpose, and direct damage. *Id.* at 298. Kettering's chronology, coupled with its decision to file both a TRO and a disqualification motion in immediate sequence, is at least as consistent with strategic process use not with extortion.

That does not mean Scott is asking this Court to adjudicate an abuse-of-process claim here. The point is narrower and directly relevant to Rule 12. When the facts the pleader itself invokes are equally or more consistent with ordinary litigation maneuvering, they do not plausibly plead extortion. See *Iqbal*, 556 U.S. at 678-79.

**D. Kettering's authorities do not carry the weight it assigns them.**

The opposition's case law does not save Count VI. *Buddenberg*, as explained above, addresses only whether R.C. 2307.60 requires a prior conviction. 161 Ohio St.3d 160, 2020-Ohio-3832, ¶ 11-12. It does not hold that a disputed demand letter is extortion, nor does it lessen the requirement that Kettering plead facts satisfying the extortion statute.

*Reister* likewise does not do what Kettering says it does. Kettering cites *Reister* for the proposition that the litigation privilege applies to statements made during and relevant to judicial

11

proceedings and not to conduct merely connected to litigation. Doc. 132, PageID 2389. That reading is only partially correct and ultimately beside the point. *Reister* held that the privilege protects participants from later suits over relevant statements made during judicial proceedings, but not independent conduct merely connected to litigation. *Reister v. Gardner,* 164 Ohio St.3d 546, 2020-Ohio-5484, ¶ 14. Here, Count VI is directed at the content of Scott's pre-suit letter, not separate conduct like board decisions or fiduciary acts. *Reister* therefore does not convert the letter into extortion; at most it limits one privilege argument.

*Hecht* confirms that Ohio continues to protect litigation-related statements when they bear some reasonable relation to the proceeding. 66 Ohio St.3d 458, 460-61 (1993). To be sure, *Hecht* arose from a disciplinary complaint and therefore is not a perfect fit. But together *Hecht* and *Reister* show the correct analytical frame: Ohio distinguishes between statements in connection with adjudicative processes and independent conduct outside that sphere. Count VI collapses that distinction by treating a lawyer's demand letter as criminal extortion without nonconclusory facts showing a wrongful threat.

Kettering's reliance on district-court and out-of-state cases is still weaker. *GS Holistic* and *Staton* are not binding. *Flatley* is not even persuasive on these facts, because its quoted conduct involved threats to accuse the target of rape and other criminal or quasi-criminal wrongdoing unless a private payment was made. Doc. 132, PageID 2388. The more Kettering leans on *Flatley*, the more it underscores how different this case is.

Finally, Kettering invokes *Argote-Romero* for the proposition that a simple threat to file a civil lawsuit is not extortion but says Scott's letter did more. Doc. 132, PageID 2390. That concession is fatal to the thrust of the opposition. The lawful portions of the letter-filing suit, seeking settlement, and discussing legal exposure-cannot be criminalized. What remains are the

12

same allegations of proposed regulator, sponsor, and media notices. Those notices were tied to the same subject matter as the threatened litigation and to matters Kettering itself describes as central to its clinical-research program. Id. at PageID 2383-2385. Without nonconclusory allegations of knowing falsity or unlawful means, Kettering has still not crossed the line from lawful pressure to criminal extortion.

**E. The opposition's attack on privilege and whistleblower policy does not save Count VI.**

Kettering argues that Scott seeks to "immunize herself" through litigation privilege and that no authority protects threats to send defamatory press releases to the media. Doc. 132, PageID 2389-2390. But Scott's motion does not rise or fall on absolute privilege. The primary point is elemental failure: Count VI does not plausibly allege wrongful extortionate conduct.

Nor is this a case in which the Court must decide, at the pleading stage, the outer boundary of litigation privilege for every pre-suit communication. It is enough that Kettering's own allegations describe ordinary lawyer conduct-a settlement demand coupled with threats to pursue legal and regulatory avenues if the matter was not resolved. If Kettering believes the underlying accusations were false, it may litigate the merits of those accusations in the proper causes of action. It may not short-circuit that merits dispute by relabeling the demand as extortion.

Scott's policy argument likewise remains sound. Kettering dismisses Scott's warning that liability here would discourage legal representation for whistleblowers. Doc. 132, PageID 2390. But that is not rhetoric; it is the practical effect of Kettering's theory. If a lawyer may be sued for extortion whenever a demand letter ties settlement to threatened litigation, regulator notification, sponsor notification, or public discussion of filed claims, then pre-suit dispute resolution is chilled across the board.

13

The Supreme Court of Ohio has recognized that R.C. 2307.60 authorizes civil recovery for injuries caused by criminal acts; it has not authorized courts to repackage hard settlement advocacy as extortion without careful adherence to statutory elements. *Buddenberg*, 161 Ohio St.3d 160, 2020-Ohio-3832, ¶ 11-12. And the Sixth Circuit has rejected conclusory pleading where the alleged ulterior purpose or wrongful motive is left unexplained. *Bickley v. Dish Network, LLC,* 751 F.3d 724, 737-38 (6th Cir. 2014) (formulaic abuse-of-process allegation insufficient; "It is not enough to allege an ulterior purpose without explaining what that purpose actually was"). Kettering's complaint and opposition suffer from the same defect. They say extortion, but the pleaded facts describe a lawyer pressing her client's claims.

Count VI should therefore be dismissed with prejudice. Kettering has already pleaded its theory, opposed dismissal, and identified every factual ingredient on which it intends to rely. Those facts do not state extortion as a matter of law.

## CONCLUSION

For these reasons, and for those stated in Scott's motion, Defendant Mary T. Scott respectfully requests that the Court grant her Motion to Dismiss Count VI and dismiss all claims asserted against her with prejudice.

Respectfully submitted,

/s/ Mary T. Scott
Mary T. Scott (0081729)
Trinity Law, LLC
7710 Reading Rd., Suite 102
Cincinnati, Ohio 45237
(513) 953-2499
mtfoster@trinitylawllc.com,
*Pro Se Defendant*

## CERTIFICATE OF SERVICE

14

I hereby certify that a copy of the foregoing Reply in Support of Motion to Dismiss was served upon all counsel of record through the Court's electronic filing system on the date of filing.

/s/ Mary T. Scott
Mary T. Scott, Esq.